1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   IVETA OVSEPYAN, State Bar No. 279218
    Supervising Deputy Attorney General
3   LEEANN E. WHITMORE, State Bar No. 214870
    Deputy Attorney General
4   JOHN C. BRIDGES, State Bar No. 248553
    Deputy Attorney General
5     1300 I Street, Suite 125
      P.O. Box 944255
6     Sacramento, CA 94244-2550
      Telephone: (916) 210-7515
7     Telephone: (916) 210-7529
      Fax: (916) 322-8288
8     E-mail: LeeAnn.Whitmore@doj.ca.gov
      E-mail: John.Bridges@doj.ca.gov
9   *Attorneys for Defendants State of California,*
    *acting by and through the California Highway*
10  *Patrol and Edgardo Yepez*

11

12              IN THE UNITED STATES DISTRICT COURT

13              FOR THE EASTERN DISTRICT OF CALIFORNIA

14

15

16  **FRANCISCO HURTADO, AN**              Case No.: 2:19-CV-02343-DAD-AC
    **INDIVIDUAL,**
17                                          **DEFENDANTS' MEMORANDUM OF**
                                            **POINTS AND AUTHORITIES IN**
18                              Plaintiff,  **SUPPORT OF SPECIAL**
                                            **INTERROGATORIES FOLLOWING**
19          v.                              **VERDICT**

20  **STATE OF CALIFORNIA;**
    **CALIFORNIA HIGHWAY PATROL;**
21  **EDGARDO YEPEZ AKA EDGARDO**           Date:  March 11, 2024
    **LOPEZ; AND DOES 1 THROUGH 100,**      Time:  9:00 a.m.
22  **INCLUSIVE,**                          Dept:  4

23

24                             Defendants.

25                                          Trial Date:    March 11, 2024
                                            Action Filed:  April 2, 2019
26

27       Defendants, State of California, by and through the California Highway Patrol and Edgardo

28  Yepez request the use of the attached Special Interrogatories following the jury's verdict in this

                                          1

1    case. These Special Interrogatories are necessary to determine whether qualified immunity

2    applies to Plaintiff Hurtado's excessive force claims pursuant to 42 U.S.C. § 1983.

3        Pursuant to Federal Rule of Civil Procedure 49(a), "the court may require a jury to return

4    only a special verdict in the form of a special written finding on each issue of fact." Fed. R. Civ.

5    P. 49(a). The court may do so by "(A) submitting written questions susceptible of a categorical or

6    other brief answer; (B) submitting written forms of the special findings that right properly be

7    made under the pleadings and evidence; or (C) using any other method that the court considers

8    appropriate." Fed. R. Civ. P. 49(a)(1)(A)-(C).

9        Additionally, the court "must give the instructions and explanations necessary to enable the

10   jury to make its findings on each submitted issue." Fed. R. Civ. P. 49(a)(2)0. Moreover, if a party

11   does not demand submission of these interrogatories to a jury, "the court may make a finding on

12   the issue. Fed. R. Civ. P. 49(a)(1)(3).

13   **I.    QUALIFIED IMMUNITY**

14       An analysis of qualified immunity focuses closely on an analysis of existing precedent.

15   While it "do[es] not require a case directly on point...existing precedent must have placed the

16   statutory of constitutional question beyond debate, such that 'every' reasonable official – not just

17   'a' reasonable official – would have understood that he was violating clearly established right."

18   *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  This exacting standard "gives government

19   officials breathing room to make reasonable but mistaken judgments" by "protect[ing] all but the

20   plainly incompetent or those who knowingly violate the law." Id., at 563 U.S. 731, 743.  The

21   concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to

22   the legal constraints on particular police conduct. It is sometimes difficult for an officer to

23   determine how the relevant legal doctrine, here excessive force, will apply to the factual situation

24   the officer confronts. An officer might correctly perceive all of the relevant facts but have a

25   mistaken understanding as to whether a particular amount of force is legal in those circumstances.

26   If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to

27   the immunity defense. *Saucier v. Katz,* 533 U.S. 194, 205 (2001).

28       While qualified immunity is typically addressed at the summary judgment stage of a

2

1    lawsuit, qualified immunity cases often go to trial because disputed factual issues remain.

2    Qualified immunity is then transformed from a doctrine providing immunity from suit to one

3    providing a defense at trial. *See Torres v. City of Los Angeles*, 548 F.3d 1197, 1211 n.9 (9th Cir.

4    2008). The role of the jury is to resolve the factual issues, and the role of the judge is to decide

5    whether the right was clearly established once those factual issues are resolved. *See, e.g., Dimick*

6    *v. Schiedt*, 293 U.S. 474, 486 (1935) ("The controlling distinction between the power of the court

7    and that of the jury is that the former is the power to determine the law and the latter to determine

8    the facts."). In the Ninth Circuit, the plaintiff has the burden of demonstrating that the right

9    violated by the defendant had been clearly established. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157

10   (9th Cir. 2000); see also *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011);

11   *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

12        In *Morales v. Fry*, 873 F.3d 817 (9th Cir. 2017), the court concluded that the district court

13   erred in submitting a "clearly established" inquiry to the jury. In that case the district court "did

14   not determine as a matter of law what the 'established law' was nor did it offer the jury the

15   opportunity to decide separately any factual determinations related to this prong of qualified

16   immunity." *Morales,* 873 F.3d at 825.

17        Regarding the excessive force claim, the first prong of a qualified immunity analysis is

18   relevant. In the present case, the Court has held there was a triable issue of fact as to whether

19   plaintiff was reaching for his gun, whether objective factors support Officer Yepez's fear for the

20   safety of him and his partner and whether it was reasonably feasible to provide a warning. (Dkt.

21   38, p. 12-13). The Ninth Circuit has held that liability for officers using deadly force turns on

22   whether an arrestee appeared to be reaching for a weapon when shot. *Cruz v. City of Anaheim*,

23   765 F.3d 1076, 1079 (9th Cir. 2014). Regarding qualified immunity, no Ninth Circuit or Supreme

24   Court case clearly establishes it is unreasonable to fire in response to a person reaching or

25   grabbing for a gun. The Special Interrogatories are necessary to identify the factual, evidentiary

26   basis for the jury's finding.

27        Qualified immunity can be raised by a post-verdict motion. *Ortiz v. Jordan*, 562 U.S. 180,

28   191 (2011) (holding qualified immunity must be raised by a Federal Rule Civil Procedure 50

3

1  motion where disputed facts precluded summary judgment). Post-verdict, a court must apply the

2  qualified immunity framework to the facts that the jury found. *A. D. v. California Highway*

3  *Patrol,* 712 F.3d 446, 459 (9th Cir. 2013). Thus, a special interrogatory to the jury, framed in

4  terms of "the who-what-when-where- why type of historical fact issues, that determines whether

5  such a right has been violated is proper. *See Morales v. Fry*, 873 F.2d 817, 824 (9th Cir. 2017).

6  Thus, the court can determine whether a clearly established right exists when ruling on

7  defendants' anticipated motions pursuant to Federal Rule Civil Procedure rule 50.

8  **II.   CONCLUSION**

9        For the foregoing reasons defendants respectfully request that the proposed Special

10 Interrogatories attached hereto be submitted to the jury to allow this Court to make an

11 appropriate legal determination if it is necessary for defendants to submit a rule 50 b motion.

12

13 Dated: February 26, 2024                    Respectfully submitted,

14                                             ROB BONTA
                                               Attorney General of California
15                                             IVETA OVSEPYAN
                                               Supervising Deputy Attorney General
16

17                                             */s/ LeeAnn E. Whitmore*

18
                                               LEEANN E. WHITMORE
19                                             Deputy Attorney General
                                               JOHN C. BRIDGES
20                                             Deputy Attorney General
                                               *Attorneys for Defendants State of*
21                                             *California, acting by and through the*
                                               *California Highway Patrol and*
22                                             *Edgardo Yepez*

23

24

25

26

27

28

4

1

2      **DEFENDANTS' PROPOSED SPECIAL INTERROGATORIES TO THE JURY**

3          We, the jury in the above entitled action, unanimously find by a preponderance of the

4      evidence the following facts on the questions submitted to us:

5          1. Did any CHP officer issue any commands to Francisco Hurtado at the scene on March

6      15, 2018?

7          Yes _____ No_____

8          2. If you answered yes to question 1, did Francisco Hurtado obey those commands?

9          Yes _____ No_____

10         3. Did Francisco Hurtado reach or grab for a gun prior to Officer Yepez firing shots?

11         Yes _____ No_____

12         4. Did Officer Yepez reasonably believe that Francisco Hurtado posed a threat to Officer

13     Randazzo and/or Officer Yepez prior to firing his weapon?

14         Yes _____ No_____

15         5. When Officer Yepez and Officer Randazzo went down the embankment on March 15,

16     2018, were they attempting to assist Francisco Hurtado?

17         Yes _____ No_____

18

19

20

21

22

23

24

25

26

27

28

5