**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

Humberto M. Guizar, Esq.     (SBN 125769)
Kent M. Henderson, Esq.      (SBN 139530)
Angel Carrazco, Jr., Esq.    (SBN 230845)
**GUIZAR, HENDERSON & CARRAZCO, L.L.P.**
18301 Irvine Boulevard, Tustin, CA 92780
Telephone:     (714) 541-8600
Facsimile:     (714) 541-8601
Email:         hguizar@ghclegal.com
               hendolaw@gmail.com
               angel@carrazcolawapc.com

Attorneys for Plaintiff FRANCISCO HURTADO

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO HURTADO, an individual<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA; CALIFORNIA HIGHWAY PATROL; EDGARDO YEPEZ aka EDGARDO LOPEZ; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:19-cv-02343-DAD-AC<br><br>**PLAINTIFF'S TRIAL BRIEF**<br><br><br>Trial Date:  March 11, 2024<br>Time:        9:00 a.m.<br>Courtroom:   4<br>Judge:       Hon. Dale A. Drozd |

-1-
PLAINTIFF'S TRIAL BRIEF

# TRIAL BRIEF

## I. STATEMENT OF FACTS

On March 15, 2018, Plaintiff Francisco Hurtado ("Plaintiff") left his home in Modesto, California in his father's SUV and traveled southbound on Freeway 99 on his way to work at a dairy ranch. Plaintiff had a handgun in the center console, passenger-side cupholder of the SUV and had planned on asking his boss if he could shoot bales of hay at the dairy ranch. While driving on Freeway 99, it started raining and Plaintiff saw flashing lights in his rearview mirror. However, the lights were far off and so Plaintiff did not think the lights were intended for him. He later learned the flashing lights belonged to CHP Officers Michael Randazzo ("Randazzo") and Edgardo Yepez ("Yepez").

Randazzo and Yepez claim that they intended conduct a traffic stop on Plaintiff's SUV and thus turned on their overhead lights. However, the officers only pursued Plaintiff for 15 seconds before Officer Randazzo decided to terminate the pursuit.

Plaintiff changed lanes in order to take the Keyes Road exit. He was traveling 70-75 miles per hour and had sped up to 80 miles per hour while taking the Keyes Road exit. Plaintiff had continued to try to monitor the flashing lights behind him. Plaintiff did not see any flashing lights when he exited the freeway. As he looked back to double check, he tried to apply the SUV's brakes but the brakes locked and Plaintiff ended up crashing his vehicle through the fence of the off-ramp.

Randazzo and Yepez had also taken the Keyes Road off-ramp and observed the broken fence and Plaintiff's overturned SUV down the embankment. It appeared to the officers that a severe accident had occurred and they heard moaning and groaning coming from inside the car. Randazzo wanted to check to see if anyone was injured to try to offer assistance.

Randazzo traveled down the embankment and went around the south side of the vehicle with his flashlight. He observed a gray sweatshirt and torso but no blood but could clearly see that Plaintiff was in the prone position on his stomach, on the overturned SUV's ceiling. It appeared to Randazzo that Plaintiff was severely injured. Plaintiff had lost consciousness after the accident and when he woken up, he was lying on his stomach on the roof of the overturned SUV in a belly-flop

position with his head facing north and his feet facing south. Plaintiff's legs were spread out behind him, his right arm was bent at the elbow with his right hand on or near his face, and his left hand was lying flat next to his body. Plaintiff never moved from that position.

Randazzo was initially two feet from Plaintiff when he made his observations and did not initially see a gun in the car. At some point, Randazzo claims he observed Plaintiff moving around and a silver metallic-colored gun approximately one foot away from Plaintiff's torso. Randazzo never saw Hurtado move his right arm, forearm, or hand towards the gun and never saw Plaintiff reaching for the gun. Randazzo announced, "There's a gun—there's a gun" before moving away to find cover pursuant to his training. Randazzo never pulled out his firearm nor fired his firearm. As Randazzo was moving away, he heard shots.

When Yepez initially looked inside the vehicle, which was very damaged, he initially did not see a threat. Yepez also did not have his gun out. Yepez also did not think this was a high-risk traffic stop. Yepez had on him a number of less-lethal options on his belt. It is undisputed that neither officer ever issued a warning that deadly force was going to be used before Yepez opened fire. It is further undisputed that Yepez never issued any commands before shooting. It is also undisputed that neither officer recognized Plaintiff or had any information regarding Plaintiff. Lastly, it is undisputed that Plaintiff had not verbally threatened anyone and was not resisting or attempting to evade arrest by flight nor in the commission of a crime at the time Yepez opened fire.

Yepez fired four continuous shots directly at Plaintiffs' buttocks and did not stop until Randazzo yelled at him to "Cease fire." Yepez admitted that Plaintiff never picked up, grabbed, or held the gun prior to Yepez shooting him. Hurtado testified that he never reached for or grabbed for the gun at any time after the accident. Yepez also admitted that Plaintiff never pointed a gun at him, Randazzo, or anyone else.

Plaintiff was "shot on the right side of his butt, right upper thigh, and right ankle/foot." The officers extricated Plaintiff from the vehicle; Plaintiff was calm and did not resist. Randazzo never smelled alcohol on Plaintiff.

## II. POINTS OF LAW

### A. Fourth Amendment Excessive Force

A constitutional claim for excessive force is evaluated through the Fourth Amendment's reasonableness standard, considering "whether the officers' actions [we]re 'objectionably reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The "nature and quality of the intrusion" is weighed against the "countervailing governmental interests at stake." *Id.* at 396. Government interest factors to balance against the type of force used include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Additional factors to consider are whether the officer identified himself as law enforcement; whether the officer provided adequate commands prior to deploying forceful measures; whether, if feasible, a warning that failure to comply would result in deadly force; and the availability of alternative methods to effectuate an arrest. *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1137-38 (9th Cir. 2019).

"The most important *Graham* factor is whether the suspect posed an immediate threat to anyone's safety." *S.R. Nehad*, 929 F.3d at 1132 (citing *Mattos v. Agarano*, 666 F.3d 433, 441 (9th Cir. 2011)). "The intrusiveness of a seizure by means of deadly force is unmatched." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). Thus, deadly force is reasonable only "if the officer has probable cause to believe the suspect poses a significant threat of death or serious physical injury to the officers or others." *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994) (quoting *Garner*, 471 U.S. at 11.).

"[Ninth Circuit] precedent has long made clear that the suspect's possession of a weapon at some point in the incident does not provide an officer with carte blanche to use deadly force." *Lam v. City of Los Banos*, 976 F.3d 986, 1001 (9th Cir. 2020). An officer's "desire to resolve quickly a potentially dangerous situation" does not, on its own, justify the use of deadly force. *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). In order to justify the use of deadly force, it is not enough that the person armed with a weapon takes "dangerous, threatening, or aggressive actions;" their actions must "pose[] a threat of serious physical harm." *Ludwig v. Anderson*, 54

F.3d 465, 473 (8th Cir. 1995). Additionally, "law enforcement officials may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed." *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997).

Here, the totality of the circumstances does not support the contention that Plaintiff posed an immediate threat of death or serious bodily injury. Plaintiff had just been in a serious car accident, was severely injured, and was in and out of consciousness. A reasonable officer in Yepez's position would not have believed that Plaintiff posed a threat despite the presence of a gun, especially since Plaintiff never grabbed the gun, picked up the gun, or pointed to gun at anyone and Plaintiff was not facing Yepez at the time of the shooting.

B. State Law Battery

Under California law, a battery claim arising out of excessive force by a peace officer is evaluated by way of traditional Fourth Amendment analysis under *Graham*. *See Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004). Additionally, pursuant to recently updated Penal Code section 835a, "a peace officer is justified in using deadly force only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary to defend an imminent threat of death or serious bodily injury." "A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person." Penal Code § 835a(e)(2). Here, under the totality of the circumstances known to the officers, in which Plaintiff had just been in a serious car accident, was laying prone on the roof of an overturned SUV, was not facing Yepez, and appeared severely injured, Plaintiff did not pose an imminent threat of death or serious bodily injury.

C. State Law Negligence

"California negligence law regarding the use of deadly force overall is broader than federal Fourth Amendment law." *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) (citing *Villegas ex rel. C.V. v. City of Anaheim*, 828 F.3d 1252, 1257 n.6 (9th Cir. 2016) (internal quotation marks omitted). While California law generally considers federal Fourth

Amendment factors when assessing an officer's tactical conduct at the time of the shooting, California negligence also encompasses pre-shooting tactics and decisions. *Id.* at 1125, 1126. "Under California law, the officer's pre-shooting decisions can render his behavior unreasonable under the totality of the circumstances, even if his use of [] force at the moment…might be reasonable in isolation." *Id.* at 1125.

Here, Yepez's negligent pre-shooting conduct and tactics contributed to his overall use of unreasonable force. The officers failed to formulate plan prior to traversing the embankment and approaching the overturned vehicle and Yepez failed to act pursuant to his training and move to a position of cover when Randazzo identified a gun.

D.  Qualified Immunity

Under the totality of the circumstances of this case, Yepez's use of deadly force is an "obvious case" of excessive deadly force against a non-threatening suspect. *See Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) (reaffirming *Hope*'s holding that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question") (per curiam); *A.D. v. California Highway Patrol*, 712 F.3d 446, 455 (9th Cir. 2013); *Hope v. Pelzer*, 536 U.S. 730, 740-41 (2002); *see also Brosseau*, 543 U.S. at 199 (per curiam) ("[I]n an obvious case, [highly generalized standards] can clearly establish [a constitutional violation], even without a body of relevant case law." (citations and internal quotation marks omitted)).

Moreover, "[c]ourts have repeatedly held that excessive force defendants are not entitled to qualified immunity in cases where the injured party did not have weapons on their persons, brandished weapons, or threatened to use them—even if the officers believed the injured party was armed." *Figueroa v. Gates*, 207 F. Supp. 2d 1085, 1093 (C.D. Cal. 2002); *see George v. Morris*, 736 F.3d 829, 832-33, 838-39 (9th Cir. 2013) (stating that "if a suspect is armed or reasonably suspected of being armed, a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat, but the mere fact that a suspect is armed with a deadly weapon does not render an officer's shooting of the suspect per se reasonable under the Fourth Amendment").

In *Harris v. Roderick*, the Ninth Circuit held that the officer's shooting of the plaintiff who was armed with a gun and had "committed a violent crime in the immediate past" was not objectively reasonable because he had "made no aggressive move of any kind" while running. 126 F.3d at 1203-04. In *Curnow v. Ridgecrest*, the Ninth Circuit held that deadly force was unreasonable where the decedent possessed a gun but was not pointing it at the officers and was not facing the officers when they shot him. 952 F.2d at 325. In *Figueroa v. Gates*, the district court held that the use of deadly force against unarmed suspects who had not threatened the officers with weapons and were facing away at the time of the shots was unlawful. 207 F. Supp. at 1093-94. Lastly, in *S.T. v. City of Ceres*, the district court held that a jury could reasonably conclude that the use of deadly force against a suspect who did not point a gun at the officers and was not facing the officers at the time of the shots was not reasonable. 327 F. Supp. 3d at 1278.

Plaintiff submits that these cases where "[the] officer act[ed] under similar circumstances as [Yepez and] was held to have violated the Fourth Amendment," *White v. Pauly*, 137 S. Ct. 548, 551 (2017), are sufficient to put Yepez on notice that his use of deadly force violated Plaintiff's Fourth Amendment to be free from unreasonable and excessive force.

Plaintiff will address Defendants' proposed special interrogatories in support of qualified immunity in a separate brief.

E. <u>Statutory Immunity</u>

"Immunity is reserved for those '*basic policy decisions* [which have] been [expressly] committed to coordinate branches of government, and as to which judicial inference would thus be 'unseemly.'" *Gillan v. City of San Marino*, (2007) 147 Cal.App.4th 1033, 1051 (2007) (quoting *Johnson v. State of California*, 69 Cal. 2d 782, 293(1968)). A police officer's decision to detain or arrest a suspect is "not a basic policy decision, but only an operational decision by the police purporting to apply the law." *Id.* California law denies immunity to police officers who use excessive force in arresting a suspect. *See Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012); *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002); *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007); *Scruggs v. Haynes*, 252 Cal.App.2d 256, 264 (1967). Because Plaintiff's claim arises out of Defendant Yepez's use of force during a detention/arrest,

which was not a policy decision, Yepez is not entitled to immunity under section 820.2.

Penal Code §835a, provides that "peace officers are privileged under state law to use reasonable force effect the arrest, to prevent escape or to overcome resistance." The operative language is clear-the privilege applies only to the use of "reasonable" force" not to "unreasonable" force. *Hernandez v. City of Pomona*, 46 Cal.4th 501 (2009) says the same. A Peace Officer is never privileged to use excessive force. *Scruggs vs. Haynes*, 252 Cal.App.2d 256 (1967).

### III. CONCLUSION

Plaintiff respectfully submits this Trial Brief for the Court's consideration in anticipation of the upcoming trial.

Respectfully submitted,

DATED: March 4, 2024

**LAW OFFICES OF DALE K. GALIPO**

**GUIZAR, HENDERSON & CARRAZCO, LLP**

By: _____/s/ Hang D. Le_____
    Dale K. Galipo
    Hang D. Le
    Kent M. Henderson
    Angel Carrazco, Jr.
    Attorneys for Plaintiff Francisco Hurtado