**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

Humberto M. Guizar, Esq.    (SBN 125769)
Kent M. Henderson, Esq.    (SBN 139530)
Angel Carrazco, Jr., Esq.    (SBN 230845)
**GUIZAR, HENDERSON & CARRAZCO, L.L.P.**
18301 Irvine Boulevard, Tustin, CA 92780
Telephone:    (714) 541-8600
Facsimile:    (714) 541-8601
Email:    hguizar@ghclegal.com
            hendolaw@gmail.com
            angel@carrazcolawapc.com

Attorneys for Plaintiffs I.H., E.H., F.H., and A.H.

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.H., a minor by and through her mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; E.H., a minor by and through her mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; F.H., a minor by and through his mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; and A.H., a minor by and through his mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF CALIFORNIA; CALIFORNIA HIGHWAY PATROL; EDGARDO YEPEZ aka EDGARDO LOPEZ; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. 2:19-cv-02343-DAD-AC <br><br> *Honorable Dale A. Drozd* <br><br> **PLAINTIFFS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988** <br><br> [*Declarations and Exhibits thereto; Proposed Order filed concurrently herewith*] <br><br> Date:   January 27, 2025 <br> Time:  1:30 p.m. <br> Crtrm: 4 |

**<u>TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF</u>**
**<u>RECORD</u>:**

**PLEASE TAKE NOTICE** that on January 27, 2025, at 1:30 p.m. or as soon thereafter as is practicable for this Honorable Court, located 501 I Street, Sacramento, CA 95814, Courtroom 4, Plaintiffs I.H., E.H., F.H., and A.H., will and hereby do move this Court for an Order awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. Section 1988, Federal Rule of Civil Procedure 54(d), and Local Rule 54 in the enhanced lodestar amount of **$6,792,830.63**.  In addition to requesting compensation for their time spent in litigating this case and bringing it to trial, Plaintiffs are also requesting compensation for their counsel's time necessarily spent in drafting this motion and the anticipated reply brief. This Motion is based on grounds that the Plaintiffs were the prevailing party at trial on their Fourth Amendment civil rights claim and are entitled to statutory attorneys' fees as a matter of law.

**<u>Statement of Meet and Confer Compliance</u>**: This motion is made following a conference between counsel for the parties, indicating that Plaintiffs intended to file a motion requesting attorneys' fees.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed declarations, the attached exhibits, the pleadings on file herein, and such other oral and documentary evidence as may be presented at the time of the hearing.


Respectfully submitted,


DATED: December 9, 2024          LAW OFFICES OF DALE K. GALIPO



By _____*/s/ Hang D. Le*_____
        Dale K. Galipo
        Hang D. Le
        Attorneys for Plaintiffs

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  PLAINTIFFS ARE ENTITLED TO FEES UNDER § 1983 ................................. 1

    A.   Legislative History of 42 U.S.C. § 1988 ................................................ 1

    B.   The Supreme Court's Standard in *Hensley v. Eckerhart* ......................... 2

    C.   Plaintiffs are the Prevailing Party............................................................ 4

III. PLAINTIFFS' "LODESTAR" IS APPROPRIATE AND REASONABLE ......................... 5

    A.   Counsel's Hours Are Reasonable Given the Time and Labor Required and Preclusion from Other Employment .......................................................... 5

    B.   Skill Necessary to Perform Proper Legal Services Given the Complexity and Undesirability of the Case, and Risk of Non-Payment...................... 8

    C.   Counsel's Requested Hourly Rates Are Reasonable Considering the Unavailability of Local Counsel with Adequate Expertise, Customary Fee, Contingency Basis, Experience and Reputation, and Awards in Similar Cases......................................................................................................... 9

        1.   Hourly Rate for Dale K. Galipo ................................................ 12

        2.   Hourly Rate for Hang D. Le...................................................... 14

        3.   Hourly Rate for Kent M. Henderson.......................................... 14

        4.   Hourly Rate for Angel Carrazco, Jr........................................... 15

        5.   Hourly Rate for Humberto Guizar ............................................. 16

        6.   Hourly Rate for Christopher L. Holm ........................................ 17

        7.   Hourly Rate for Nathan Henderson............................................ 17

        8.   Hourly Rate for Antonio Gallegos ............................................ 18

        9.   Ely Arraiga ................................................................................ 18

        10.  Briseria Gomez........................................................................... 18

        11.  Hourly Rate for Santiago G. Laurel .......................................... 19

        12.  Hourly Rate for Leslie De Leon ................................................ 19

    D.   Lodestar Enhancement is Justified .......................................................... 20

    E.   Plaintiffs' Counsels are Entitled to Fees for Litigating the Instant Motion. ........... 21

IV.  CONCLUSION .................................................................................................. 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## **TABLE OF AUTHORITIES**

### Cases

*Arizona v. ASARCO LLC*,
    773 F.3d 1050 (9th Cir. 2014) ............................................................................. 2

*Avila v. Ford Motor Co.*,
    No. 5:22-CV-00395-SPG-SHK, 2024 WL 3311081 (C.D. Cal. May 15, 2024) ............... 18

*Barjon v. Dalton*, 132 F.3d 496, 501 (9th Cir. 1997) ..................................................... 10

*Barjon*, 132 F.3d at 501 ................................................................................................ 10

*Beaty v. BET Holdings, Inc.*,
    222 F.3d 607 (9th Cir. 2000) ............................................................................. 6

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................ 4, 9

*Bouman v. Block*,
    940 F.2d 1211 (9th Cir. 1991) ........................................................................... 3

*Brewster v. Dukakis*,
    786 F.2d 16 (1st Cir. 1986) ............................................................................... 3

*Camacho v. Bridgeport Financial, Inc.*
    523 F.3d 973 (9th Cir. 2018) ........................................................................... 11

*Chavez v. City of Los Angeles*,
    47 Cal. 4th 970 (2010) ...................................................................................... 4

*City of Riverside v. Rivera*,
    477 U.S. 561 (1986) .................................................................................... 3, 11

*Clark v. City of Los Angeles*,
    803 F.2d 987 (9th Cir. 1986) ........................................................................... 21

*Collins v. Chandler Unified Sch. Dist.*,
    644 F.2d 759 (9th Cir. 1981) ............................................................................. 2

*Craig v. Cnty. of Orange*,
    No. SACV1700491CJCKESX, 2019 WL 12378994 (C.D. Cal. Sept. 5, 2019) ............... 10

*Dang v. Cross*
    422 F.3d 800 (9th Cir. 2005) ........................................................................ 9, 10

*Davis v. City & County of San Francisco*,
    976 F2d 1536 (9th Cir. 1992) ........................................................................... 3

*Dennis v. Chang*,
    611 F.2d 1302 (9th Cir. 1980) ........................................................................... 2

*Donastorg v. City of Ontario*
   No. EDCV18992JGBSPX, 2021 WL 6103545 (C.D. Cal. Sept. 23, 2021)........................ 12

*Donastorg v. City of Ontario,*
   Case No. EDCV 18-992 JGB (SPx), 2021 WL 6103545 (C.D. Cal. Sept. 23, 2021).. 13, 14,
   17

*Estate of Aguirre v. Cnty. of Riverside,*
   No. CV 18-762-DMG (SPX), 2024 WL 2107727 (C.D. Cal. Mar. 29, 2024)................... 14

*Estate of Diaz v. City of Anaheim,*
   840 F.3d 592 (9th Cir. 2016)......................................................................... 7

*Fair Housing of Marin v. Combs,*
   285 F.3d 899 (9th Cir. 2002)......................................................................... 4

*Farrar v. Hobby,*
   506 U.S. 103 (1992) ..................................................................................... 5

*Fish v. St. Cloud State Univ.*
   295 F.3d 849 (8th Cir. 2002)........................................................................ 11

*French v. City of Los Angeles*
   Case No. EDCV 20-00416 JGB (SPx), 2022 WL 2189649 (C.D. Cal. May 10, 2022).... 12,
   14, 19

*Garcia v. Los Angeles Cnty. Sheriff's Dep't*
   No. CV 09-8943 MMM (SHX), 2015 WL 13646906 (C.D. Cal. Sept. 14, 2015)............ 10

*Gates v. Deukmjian,*
   987 F.2d 1392 (9th Cir. 1992)................................................................ 3, 9, 11

*Glass v. Pfeffer,*
   849 F.2d 1261 (10th Cir. 1988)..................................................................... 21

*Gregory v. Oliver,*
   2003 WL 1860270 (N.D. Ill. Apr. 9, 2003) ...................................................... 7

*Guam Society of Obstetricians & Gynecologists v. Ada,*
   100 F.3d 691 (9th Cir. 1996)......................................................................... 3

*Hall v. Cole,*
   412 U.S. 1 (1973) ........................................................................................ 2

*Hernandez v. George,*
   793 F.2d 264 (10th Cir. 1986)...................................................................... 21

*Hernandez v. Kalinowski,*
   146 F.3d 196 (3rd Cir. 1998)........................................................................ 21

*Hiken v. Dep't of Def.*
   836 F.3d 1037 (9th Cir. 2016)...................................................................... 11

*Horsford v. Bd. Of Trustees of Cal. State Univ.,*
   132 Cal. App. 4th 359 (2005)........................................................................ 6

*Jordan v. Multnomah Cnty.*,
    815 F.2d 1258 (9th Cir. 1987) ............................................................ 5

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ................................................................ 5

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001) ..................................................................... 5

*Lund v. Affleck*,
    587 F.2d 75 (1st Cir.1978) ............................................................... 21

*McGrath v. County of Nevada*,
    67 F.3d 248 (9th Cir. 1995) ................................................................ 5

*McKibben v. McMahon*
    2019 WL 1109683 (C.D. Cal. Feb. 28, 2019) ................................... 11

*Mendez v. County of San Bernardino*,
    540 F.3d 1109 (9th Cir. 2009) ........................................................... 2

*Missouri v. Jenkins by Agyei*
    491 U.S. 274 (1989) ................................................................... 11, 12

*Moore v. James H. Matthews & Co.*,
    682 F.2d 830 (9th Cir. 1982) ............................................................. 6

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ...................................................... 6, 11

*National Ass'n of Corder v. Gates*,
    688 F Supp 1418 (C.D. Cal. 1988) ..................................................... 4

*Odima v. Westin Tucson Hotel*,
    53 F.3d 1484 (9th Cir. 1995) .............................................................. 3

*Parker v. Vulcan Materials Co. Long Term Disability Plan*
    No. EDCV 07–1512 ABC (OPx), 2012 WL 843623 (C.D. Cal. Feb. 16, 2012) ............... 11

*Peak-Las Positas Partners v. Bollag*,
    171 Cal. App. 4th 101 (2009) ............................................................ 6

*Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*
    483 U.S. 711 (1987) ........................................................................ 12

*Perdue v.  Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010) ........................................................................ 20

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*,
    163 Cal. App. 4th 550 (Cal. Ct. App. 2008) ...................................... 7

*Prison Legal News v. Schwarzenegger*
    608 F.3d 446 (9th Cir. 2010) ............................................................. 9

*Ramon v. County of Santa Clara*,
   173 Cal. App. 4th 915 (Cal. Ct. App. 2009) ........................................................ 6

*Roberts v. City of Honolulu*
   938 F.3d 1020, (2019) ...................................................................................... 11

*Schwarz v. Secretary of Health & Human Servs.*,
   73 F3d 895 (9th Cir. 1995) .................................................................................. 4

*Serrano v. Unruh*,
   32 Cal. 3d 621 (1982) ..................................................................................... 3, 9

*Sethy v. Alameda County Water Dist.*,
   602 F.2d 894 (9th Cir. 1979) ............................................................................... 2

*Texas Teachers v. Garland School Dist.*,
   489 U.S. 782 (1989) ........................................................................................... 4

*Trevino v. Gates*
   99 F.3d 911 (9th Cir. 1996) ............................................................................... 10

*Ustrak v. Fairman*,
   851 F.2d 983 (7th Cir. 1988) ............................................................................... 3

*Valenzuela v. City of Anaheim*
   No. SACV1700278CJCDFMX, 2023 WL 2249178 (C.D. Cal. Feb. 23, 2023) ............... 13

*Vov. Las Virgenes Municipal Utility Dist.*,
   79 Cal. App. 4th 440 (2000) ................................................................................ 6

*Welch v. Metro. Life Ins. Co.*
   480 F.3d 942 (9th Cir. 2007) ............................................................................. 10

*Wiersta v. Heffernan*,
   789 F.2d 968 (1st Cir. 1986) ............................................................................... 7

*Wilson v. Union Pacific R. Co.*,
   56 F.3d 1226 (10th Cir. 1995) ............................................................................. 7

*Zeigler v. Cnty. of San Luis Obispo*
   No. CV179295MWFAFMX, 2023 WL 3432238 (C.D. Cal. Mar. 1, 2023) ..................... 12

*Zelaya v. City of Los Angeles*,
   No. 2:20-CV-08382-ODW (MAAX), 2024 WL 3183882 (C.D. Cal. June 25, 2024). 13, 14,
   19

## Statutes

42 U.S.C. § 1988 ................................................................................................... 1

## Other Authorities

Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in
   1976 U.S. Code Cong. & Ad. News 5908 .............................................................. 1

S. Rep. No. 94-1011 (1976) ............................................................................................................ 11

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On October 24, 2024, the jury in this matter reached a verdict against Defendants Edgardo Yepez and the State of California by and through the California Highway Patrol and in favor of Plaintiffs I.H., E.H., F.H., and A.H., on Plaintiffs' Fourth Amendment claim for excessive force and state law claims for negligence and battery brought on behalf of their father Francisco Hurtado. The jury awarded Plaintiffs damages totaling $1,500,000. As the prevailing party, Plaintiffs now request attorneys' fees pursuant to 42 U.S.C. § 1988 in the amount of **$6,792,830.63**. The attorney fee award is justified by the verdict in Plaintiffs' favor, Plaintiffs' counsel's skill and experience in the civil rights field, the difficulties and complexities of this case, and the risk assumed by Plaintiffs' counsel. Plaintiffs litigated this case for several years, with diligence and dedication to vindicating Mr. Hurtado's constitutional rights, ultimately culminating in a favorable result for Plaintiffs. Police misconduct lawsuits such as the instant matter advance the significant public benefit of deterring abuse by law enforcement officers who would otherwise operate free of any meaningful restraints. The instant case exemplifies that, but for competent willing counsel, police misconduct would have gone without consequences. For these reasons and those set forth in detail below and in the accompanying declarations, Plaintiffs' counsel are highly deserving of the full amount of the attorneys' fees requested herein.

## II.   PLAINTIFFS ARE ENTITLED TO FEES UNDER § 1983

### A.   Legislative History of 42 U.S.C. § 1988

The Civil Rights Attorney's Fees Awards Act of 1976, codified as 42 U.S.C. § 1988, was enacted to encourage competent counsel to undertake and enforce civil rights cases by assuring them that if they were successful in vindicating federally protected rights, they would be paid in the same manner as "is traditional with attorneys compensated by feepaying clients," even when the results obtained are entirely non-pecuniary or solely of nominal pecuniary value. *See* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908. Section 1988 clearly provides that "[i]n any action or

proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."

Congress has recognized that "civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." *Id.* at 5910. "[T]he citizen who must sue to enforce the law has little or no money with which to hire a lawyer," thus, "citizens must have the opportunity to recover what it costs them to vindicate these rights in court." *Id.* Given this purpose, courts have long established that a court's discretion to deny attorney's fees to a successful civil rights litigant "is very narrow and . . . fee awards should be the rule rather than the exception." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2009), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014); *see also Sethy v. Alameda County Water Dist.*, 602 F.2d 894, 897 (9th Cir. 1979) ("Congress plainly intended that successful plaintiffs should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.").

The application for attorneys' fees "must be liberally construed to achieve Congress' purpose to encourage compliance with and enforcement of the civil rights laws." *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 764 (9th Cir. 1981) (citation omitted). Justice Brennan opined that "[n]ot to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose." *Hall v. Cole*, 412 U.S. 1, 13 (1973). The difficulty for citizens to stand up to the police is great, especially considering the disparity in funding. *See id.* "An award in these circumstances serves the purposes of the Act for two reasons: (1) the award encourages the legal services organization to expend its limited resources in litigation aimed at enforcing the civil rights statutes; and (2) the award encourages potential defendants to comply with civil rights statutes." *Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980).

**B.      The Supreme Court's Standard in *Hensley v. Eckerhart***

In *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), the Supreme Court held that the purpose of 42 U.S.C. § 1988 is to ensure effective access to the judicial process for persons with

civil rights grievances. Courts have repeatedly held that attorneys in civil rights suits are entitled to recover their full fees and costs if they achieve meaningful and substantial relief, even if they do not prevail on every theory or against every party. *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991). "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. Otherwise, attorneys would be discouraged from taking on high risk cases such as this one. *Id.*; *see also Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995); *Serrano v. Unruh*, 32 Cal. 3d 621 (1982); *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996) (plaintiffs cannot be faulted for their thoroughness in pleading related claims).

A full fee is one that encourages the vindication of constitutional and statutory rights through recovery of all costs and time spent on the case, calculated at private market rates. It must ensure that attorneys are paid for all the time they devote to the litigation. It is not limited by the number of causes of action on which relief is awarded, or the amount of damages recovered. *See City of Riverside v. Rivera*, 477 U.S. 561 (1986). Parsing discrete issues according to their relative importance or outcome is disfavored because doing so would require the trial court to make mini-determinations of prevailing party status on each dispute. *See Brewster v. Dukakis*, 786 F.2d 16, 18 (1st Cir. 1986). Once a plaintiff has been determined to be the prevailing party, he is entitled to all reasonable time spent:

> Where 'the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories,' so that 'much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'

*Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (quoting *Hensley*, 461 U.S. at 435 (1983)). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *See Gates v. Deukmjian*, 987 F2d 1392, 1405 (9th Cir. 1992); *Davis v. City & County of San Francisco*, 976 F2d 1536, 1546 (9th Cir. 1992), modified on other grounds (9th Cir. 1993) 984 F2d 345; *National*

*Ass'n of Corder v. Gates*, 688 F Supp 1418, 1422 (C.D. Cal. 1988), aff'd in part and rev'd in part 947 F2d 374 (9th Cir. 1991); *see also Fair Housing of Marin v. Combs*, 285 F3d 899, 908 (9th Cir. 2002); *Schwarz v. Secretary of Health & Human Servs.*, 73 F3d 895, 908 (9th Cir. 1995).

### C.      Plaintiffs are the Prevailing Party

Plaintiffs are the prevailing party in this litigation and judgment was entered in accordance with the jury verdict. The jury unanimously found that defendant Edgardo Yepez used excessive and/or unreasonable force against Mr. Hurtado, causing harm to him, and was negligent in his conduct towards Mr. Hurtado. The jury awarded Plaintiffs a total of $1,500,000 in damages. *See* Dkt. No. 241. Under 42 U.S.C. § 1988, civil rights plaintiffs who have prevailed on some significant issue in his or her litigation are entitled to an award of fees. *See*, *e.g.*, *Hensley*, 461 U.S. at 433; *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010) (citing *Hensley* and indicating that California law was "consistent" with it). Once the fee entitlement threshold has been crossed, the prevailing plaintiff's fee award is based upon the lodestar method. "[T]he number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435.

The appropriate rate is the "market rate," which is demonstrated by the moving party submitting "satisfactory evidence in addition to the attorney's own affidavit that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Such a rate "is normally deemed to be reasonable, and is referred for convenience as the prevailing market rate." *Id.*

The Supreme Court in *Texas Teachers v. Garland School Dist.*, 489 U.S. 782, 792 (1989) expressly held that *Hensley* sets forth the appropriate test for determining a plaintiff's prevailing party status. In determining whether a plaintiff has succeeded on any significant issue in litigation,

the *Garland* Court looked at whether the relief on the merits of plaintiff's claim changes the legal relationship between plaintiff and defendant. Applying this test, the Court in *Farrar v. Hobby,* 506 U.S. 103, 114 (1992), held that a money judgment in favor of the plaintiff for any amount modified the defendant's behavior in a way that benefits the plaintiff by forcing the defendant to pay an amount that would otherwise not be paid.

## III. <u>PLAINTIFFS' "LODESTAR" IS APPROPRIATE AND REASONABLE</u>

"In the Ninth Circuit, the method of determining the permissible amount of attorneys' fees under § 1988 is the 'lodestar' method." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). The lodestar method multiples the number of hours the prevailing party reasonably expended on litigation by a reasonable hourly rate. *Id.* (quoting *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995) (quotations omitted). After computation, courts then assess whether it is necessary to adjust the lodestar figure on the basis of the twelve *Kerr* factors. *Id.* (citations omitted). These twelve factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). "[T]here is a strong presumption" that the lodestar calculation "is a reasonable fee." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 405 (9th Cir. 1990) (citing *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987)).

### A. Counsel's Hours Are Reasonable Given the Time and Labor Required and Preclusion from Other Employment

The total number of hours for which Plaintiffs' counsel request compensation is reasonable. "Absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*, including those relating solely to the fee." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) (emphasis in original); *see also*

*Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612 (9th Cir. 2000) (Attorneys who take FEHA cases "ordinarily . . . can anticipate receiving full compensation for every hour spent litigating a claim." (internal quotations omitted)). Hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery . . . ." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (internal quotations omitted); *see also Ramon v. County of Santa Clara*, 173 Cal. App. 4th 915, 925 (Cal. Ct. App. 2009).

In making that determination, courts must look at "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself . . . ." *Vo v. Las Virgenes Municipal Utility Dist.*, 79 Cal. App. 4th 440, 447 (2000); *see also Peak-Las Positas Partners v. Bollag*, 171 Cal. App. 4th 101, 114 (2009) (fees reasonable because of complexity of issues, results obtained, and defendants' aggressive litigation). As the courts have recognized, civil rights lawyers working without payment from their clients have little to gain from "inflating their fees," as the payoff is too uncertain. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Accordingly, they should be fully compensated for taking the steps that they reasonably believe are necessary to *win* the case: "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id.*

Counsel's sworn declarations and attached time records filed concurrently herewith document the attorney and legal assistant hours reasonably spent in the successful prosecution of this action. *See* Galipo Decl. and Ex. 1 thereto; Le Decl. and Ex. 11 thereto; Henderson, K. Decl. and Ex. 12 thereto; Carrazco Decl. and Ex. 13 thereto; Guizar Decl. and Ex. 14 thereto; Holm Decl. and Ex. 15 thereto; Henderson, N. Decl. and Ex. 16 thereto; Gallegos Decl. and Ex. 17 thereto; Arraiga Decl. and Ex. 18 thereto; Gomez Decl. and Ex. 19 thereto; Laurel Decl. and Ex. 20 thereto; De Leon Decl. and Ex. 21 thereto. These time records are *prima facie* evidence that counsel's hours were reasonable. *See Horsford v. Bd. Of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005) ("[T]he verified time statements of the attorneys, as officers of the court,

are entitled to credence in the absence of a clear indication the records are erroneous."). Plaintiffs' attorneys also have exercised billing judgment. First, attorney hours that were duplicative, unnecessary, or administrative in nature were either not entered by attorneys during the initial timekeeping process or were reduced during the review of the billing records done for this motion. Erroneous and overly vague billing entries were also removed during this review.

The burden shifts to Defendants to prove that any specific time is unreasonable and "to point to the specific items challenged, with a sufficient argument and citations to the evidence." *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*, 163 Cal. App. 4th 550, 564 (Cal. Ct. App. 2008). The hours for which Plaintiffs' counsel request compensation were reasonably necessary for the prosecution of Hurtado' claims and then Plaintiffs' claims for over 5 years. Plaintiffs' counsel had an obligation to be diligent and thorough. Excessive force cases are extremely difficult given the inherent bias in favor of the police, especially in a case such as this where there is negative evidence, such as the presence of a firearm. *See Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003); *Wiersta v. Heffernan*, 789 F.2d 968, 972 (1st Cir. 1986); *Wilson v. Union Pacific R. Co.*, 56 F.3d 1226, 1231 (10th Cir. 1995); *Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016).

Defendants' position was that the case had little to no value, as was reflected in their arguments to the jury and their settlement posture. Thus, Plaintiffs' counsel was forced to prepare and prosecute not one, but *two* trials due to the first one being declare a mistrial and the parties' failure to come to a settlement agreement in order to avoid a retrial. That came at a heavy burden and with great risk. First, Plaintiffs bore the burden of proof and persuasion. Therefore, it was necessary to convince the jury that the defendant Edgardo Yepez's recitation of the events lacked credibility based on the physical and forensic evidence. This required obtaining and meticulously analyzing all the relevant documents, and extensive preparation for trial. Secondly, this case required a significant commitment of time and expenses from Plaintiffs' counsel.

Indeed, a tremendous amount of time was required to be devoted to this case. This case involved numerous experts, most of whom were medical experts. It took a significant amount of

time for Plaintiffs' counsel to not only review all police reports related to this case and examine the physical and forensic evidence, but also to consult with a number of experts regarding the significant and complex physical and mental injuries Mr. Hurtado sustained as a result of the incident. Defendants produced almost 400 pages of police reports and over 900 related incident photos, and it was necessary for Plaintiffs' counsel to review these documents in order to litigate the case.

Additionally, there were 23 depositions taken in the case, including expert depositions. In addition to participating in the depositions, it was necessary for Plaintiffs' counsel to review the deposition transcripts in order to oppose Defendants' motion for summary judgment and to prepare for witness examination at trial. Plaintiffs' counsel's close examination, organization, and analysis of the audio recordings, photographs, reports, and transcripts proved worthwhile for the successful result for Plaintiffs.

Lastly, this case had to be tried *twice* on the account of the jury being deadlocked during the first trial. Trial preparation and trial requires a tremendous amount of work and effort, especially here, where Plaintiffs' counsel was required to be hundreds of miles away from their offices and homes during the two trials.

**B.      Skill Necessary to Perform Proper Legal Services Given the Complexity and Undesirability of the Case, and Risk of Non-Payment.**

In general, successfully litigating police misconduct cases requires extensive experience and skill and an understanding of issues that are unique to civil rights victims as compared to general civil practice. Even experienced civil rights attorneys have difficulty overcoming the built-in bias favoring the police on the part of many jurors, and the inherent expert testimony of officers trained to testify. The complexity and undesirability of this matter separates it from others. The favorable trial result in this case on Plaintiffs' civil rights claim was the product of a tremendous amount of hard work and skill on the part of Plaintiffs' counsel in preparing and presenting this case at trial. This is especially true in light of the particular difficulty presented in this case, especially given the evidence that a firearm was found near Mr. Hurtado's body after the shooting. Despite all of this, Plaintiffs' counsel achieved a successful result.

At Plaintiffs' counsel's first review of this case, they were aware of the difficulty, risk, and expense in taking this case on a contingency basis. Nevertheless, Guizar, Henderson & Carrazco LLP took on this case. Despite the difficult evidence produced in discovery, the Law Offices of Dale K. Galipo associated into this case and Mr. Galipo, as lead trial counsel, ultimately won a favorable verdict for the Plaintiffs, after the first trial resulted in a hung jury and mistrial—a testament that truly difficult cases such as this require truly dedicated and highly skilled representation. For all of these reasons, the risk of losing at trial was very high. To succeed, Plaintiffs' counsel had to conduct numerous depositions, review audio and video recordings, retain, pay and consult with numerous experts, and spend over two weeks away from the office. Defendants vigorously defended this case. From the outset, Defendants contended that the use of deadly force by Defendant Edgardo Yepez was reasonable, and that Mr. Hurtado posed an immediate threat of death or serious bodily harm to Defendant Yepez when he failed to follow commands and grabbed the nearby gun. Defendants' trial arguments showed that they believed they should receive a defense verdict. No cameras captured any portion of the shooting Thus, Plaintiffs' counsel had to effectively cross-examine the involved officers and litigate well enough to win. "[A party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Serrano v. Unruh*, 32 Cal. 3d 621, 633 (1982).

**C.      Counsel's Requested Hourly Rates Are Reasonable Considering the Unavailability of Local Counsel with Adequate Expertise, Customary Fee, Contingency Basis, Experience and Reputation, and Awards in Similar Cases.**

Generally, the prevailing market rates in the relevant community in the forum where the district court sits govern the reasonable hourly rate for computing the lodestar amount. *See Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (quoting *Blum*, 465 U.S. at 895); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). However, market rates outside of the district in which this court sits are permitted if there is proof that "Sacramento firms could not successfully have provided the expert representation required to effectively represent litigants in this matter." *Gates*, 987 F.2d at 1405 (concluding that the district court did not abuse its discretion in awarding fees at San Francisco rates despite the forum being in Sacramento because

"Sacramento attorneys with adequate expertise were unavailable."). "[P]laintiffs must only prove the unavailability of counsel within the local forum in order to justify the use of outside counsel." *Barjon v. Dalton*, 132 F.3d 496, 501 (9th Cir. 1997) (cleaned up). Additionally, "*Gates* allows proof of either unwillingness *or* inability due to lack of experience, expertise, or specialization." *Barjon*, 132 F.3d at 501 (emphasis in original).

Here, Plaintiffs seek hourly rates consistent with the Los Angeles rather than the Sacramento legal community. This is because "[w]hen  it comes to police excessive force cases, Mr. Galipo [Plaintiffs' lead trial counsel] is without question at the top of his field[,]" *Craig v. Cnty. of Orange*, No. SACV1700491CJCKESX, 2019 WL 12378994, at *2 (C.D. Cal. Sept. 5, 2019), there are very few attorneys with experience in the field of civil rights police misconduct in the Eastern District or the Sacramento community and none with comparable skills and expertise to Mr. Galipo who could have successfully won this case. *See* Haddad Decl. ¶ 21; Merin Decl. ¶ 46. Sacramento-based attorney Mark Merin attended both the original and re-trial in this case and believes it was a verry difficult case for Plaintiffs. Merin Decl. ¶¶ 41, 44. According to Mr. Merin, there are no attorneys in the Sacramento area who could have or would have taken this case. *Id.* ¶ 45. While Mr. Merin has taken some tough cases, Mr. Merin would have declined Mr. Hurtado's case due to the evidence regarding the gun and drugs. *Id.* Accordingly, the Court should award hourly rates consistent with the Los Angeles legal community. *See* Haddad Decl. ¶¶ 21, 23; Merin Decl. ¶ 46.

Within the relevant community, the Court should take into account the "experience, skill and reputation of the [requesting] attorney." *Dang*, 422 F.3d at 813; *see Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007). "Affidavits of the plaintiffs' attorney . . . and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am.*, 896 F.2d at 407 . "[C]ourts can also use survey data to evaluate the reasonableness of attorneys' rates." *Garcia v. Los Angeles Cnty. Sheriff's Dep't*, No. CV 09-8943 MMM (SHX), 2015 WL 13646906, at *16 (C.D. Cal. Sept. 14, 2015) (citing *Fish v. St. Cloud*

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

1   *State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002)); *McKibben v. McMahon*, 2019 WL 1109683, at

2   *14 (C.D. Cal. Feb. 28, 2019)). Once the party claiming fees presents evidence supporting the

3   claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing

4   evidence. *Gates*, 987 F.2d at 1405 (9th Cir. 1992). Congress expressly recognized that fees in

5   federal civil rights cases should be comparable to those in complex federal civil litigation. *See City*

6   *of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986) ("Congress made clear that it 'intended that

7   the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in

8   other types of equally complex Federal litigation.'" (citing S. Rep. No. 94-1011, at 6 (1976),

9   *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913)).

10       Moreover, the Ninth Circuit has repeatedly held that "in determining the prevailing market

11  rate a district court abuses its discretion to the extent it relies on cases decided years before the

12  attorneys actually rendered their services." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973,

13  981 (9th Cir. 2018); *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1045 (9th Cir. 2016) (reversing

14  because "the court simply re-invoked the 2015 rates and added a $30 enhancement, without

15  discussion of why the 2015 rates are an appropriate anchor or why an increase in $30 is

16  reasonable"); *Moreno*, 534 F.3d at 1115  ("If the lodestar leads to an hourly rate that is higher than

17  past practice, the court must award that rate . . . ."); *Roberts v. City of Honolulu*, 938 F.3d 1020,

18  1024-25 (2019) ("Examining prior fee awards to Holcomb and Beck in the district was not an

19  acceptable substitute for considering the declarations submitted by Holcomb, and explaining why

20  those declarations did or did not establish the prevailing hourly rate in the district."). Courts also

21  appropriately recognize that rates, and inflation, increase over time. *Parker v. Vulcan Materials*

22  *Co. Long Term Disability Plan*, No. EDCV 07–1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal.

23  Feb. 16, 2012) (approving as reasonable an approximate 10 percent increase between 2011 rates

24  and 2012 rates and because "[i]t is common practice for attorneys to periodically increase their

25  rates for various reasons, such as to account for expertise gained over time, or to keep up with the

26  increasing cost of maintaining a practice").

27       Additionally, the Supreme Court in *Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989)

recognized that compensation received several years after an attorney renders his or her services "is not equivalent to the same dollar amount received promptly as the legal services are performed, as would normally be the case with private billings." *Id.* at 283. Accordingly, "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of [§ 1988]." *Id.* at 284; *see also Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 483 U.S. 711, 716 (1987) ("In seeing fees for prevailing counsel, the courts have regularly recognized delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.").

Thus, the Ninth Circuit "recognize[s] that district courts have discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use of funds." *Gates*, 987 F.2d at 1406. The prevailing practice is to award the current requested rate for all work performed. *See e.g.*, *Zeigler v. Cnty. of San Luis Obispo*, No. CV179295MWFAFMX, 2023 WL 3432238, at *5 (C.D. Cal. Mar. 1, 2023) (awarding requested rates commensurate with current practice experience for work that commenced years prior); *French v. City of Los Angeles*, No. EDCV2000416JGBSPX, 2022 WL 2189649, at *1, 17-19 (C.D. Cal. May 10, 2022) (same); *Donastorg v. City of Ontario*, No. EDCV18992JGBSPX, 2021 WL 6103545, at *1, 8-9 (C.D. Cal. Sept. 23, 2021) (same).

### 1.     Hourly Rate for Dale K. Galipo

With 36 years of experience, the majority of which was spent litigating civil rights cases, Mr. Galipo's requested hourly rate of $1,400 is well-within the reasonable range of billing rates for civil rights attorneys in Los Angeles with comparable skill and experience. Mr. Galipo graduated with a B.B.A. from the University of Michigan in 1981. Galipo Decl. ¶ 3. He attended law school at UCLA from 1981 to 1984. *Id.* Since 1991, he has managed his own law firm specializing in major personal injury and wrongful death cases and criminal defense. His practice grew to specialize in serious police excessive force resulting in serious injury and death. *Id*. ¶ 4.

In 2012, Mr. Galipo received the Defender of the Constitution Award from the Inland Empire Chamber of the Federal Bar Association. *Id*. ¶ 5. From 2017 to 2024, Mr. Galipo prevailed

in twenty-nine (29) jury trials. Nearly all of the jury trials were civil rights cases. *Id.* ¶ 18. In approximately the last twelve years, Mr. Galipo has had approximately fifteen published opinions in civil rights cases, and has argued numerous appellate cases before the Ninth Circuit. *Id.* ¶ 24. In 2019, Mr. Galipo was elected to the American College of Trial Lawyers. *Id.* ¶ 9. He was also elected to the Inner Circle of Advocates, which is limited to one hundred members nationwide, representing some of the top plaintiff's attorneys in the country. *Id.* ¶ 8. Further in 2019, Mr. Galipo was chosen by UCLA School of Law to give the Irving H. Green Memorial Lecture to students and faculty. *Id.* ¶ 10.  Past attorneys who have been honored with this recognition include Johnnie Cochran, Jr. *Id.* Mr. Galipo has also been invited to speak to the law students at UC Irvine and UCLA on several occasions. *Id.* ¶ 14. In 2020, Mr. Galipo was recognized as both CAALA Trial Lawyer of the Year and CAOC Consumer Attorney of the Year.  *Id.* ¶ 11, 12.

Courts within the Central District of California have consistently recognized Mr. Galipo as one of the top civil rights attorneys in the area of police misconduct in Los Angeles. *See, e.g., Zelaya v. City of Los Angeles*, No. 2:20-CV-08382-ODW (MAAX), 2024 WL 3183882, at *3 (C.D. Cal. June 25, 2024) ("The Court agrees that Mr. Galipo is unquestionably at the top of his field and finds Mr. Galipo's requested rate [of $1,300] is appropriate given his 'experience, skill, and reputation.'"); *Valenzuela v. City of Anaheim*, No. SACV1700278CJCDFMX, 2023 WL 2249178, at *3 (C.D. Cal. Feb. 23, 2023) ("The Court found that a $1,200 hourly rate, although high, was reasonable for Mr. Galipo's work over the past three years, pointing to Mr. Galipo's strong reputation with the legal community, his continued consistent record of success with over $85 million in recovery in civil rights cases since 2019, and multiple courts that awarded him $1,100 hourly rates as early as 2020."); *Craig v. Cnty. of Orange*, Case No. SACV 17-00491-CJC (KESx), Dkt. 280, at 5-6 (awarding Mr. Galipo an hourly rate of $1,200 because "[w]hen  it comes to police excessive force cases, Mr. Galipo continues to be without question at the top of his field."); *Donastorg v. City of Ontario*, Case No. EDCV 18-992 JGB (SPx), 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021) ("The Court agrees with the courts that have recognized that, when it comes to police excessive force cases in Los Angeles, Mr. Galipo is without question at the top of

his field.") (cleaned up). Mr. Galipo is considered to be one of the top civil rights attorneys in the state and country. Le Decl. ¶ 6. He has gone to trial and won more cases against the police for excessive force than any attorney in the country. Le Decl. ¶ 6. Accordingly, Mr. Galipo's requested hourly rate of **$1,400** is reasonable for an attorney with his experience, skill, expertise, and reputation. Galipo Decl. ¶ 28; *see* Haddad Decl. ¶¶ 22-23; Merin Decl. ¶ 46.

### 2.     Hourly Rate for Hang D. Le

Ms. Le graduated from the University of Southern California Gould School of Law in May 2013. Le Decl. ¶ 4. In May 2014, Ms. Le joined the Law Offices of Dale K. Galipo, where she currently works as a senior associate attorney. *Id.* ¶ 6. Since joining Mr. Galipo's firm, she has worked almost exclusively on 42 U.S.C § 1983 civil rights cases involving police excessive force. *Id.* Ms. Le is the primary associate attorney at Mr. Galipo's office assigned to this case and was responsible for the case's day-to-day management. *Id.* Over the past ten years as a civil rights attorney, Ms. Le has managed numerous civil rights cases that resulted in multi-million-dollar verdicts and settlements. *Id.* ¶¶ 8-9. In 2021, Ms. Le was awarded an hourly rate of $550. *See Donastorg*, 2021 WL 6103545, at *9. In March of this year, Ms. Le was awarded an hourly rate of $650 for work performed from 2020 to 2023. *See Estate of Aguirre v. Cnty. of Riverside*, No. CV 18-762-DMG (SPX), 2024 WL 2107727, at *4 (C.D. Cal. Mar. 29, 2024). Accordingly, Ms. Le's requested hourly rate of **$700** is a reasonable rate for an attorney with her experience, skill, and expertise. *Id.* ¶ 12; *see* Galipo Decl. ¶ 31; ex. 10 to Galipo Decl. at 7 (awarding Ms. Le's colleagues of comparable experience $800 per hour in 2024); *Zelaya*, 2024 WL 3183882, at *3 (awarding Ms. Le's colleague of comparable experience $700 per hour in 2024) ; *French v. City of Los Angeles*, Case No. EDCV 20-00416 JGB (SPx), 2022 WL 2189649, at *19 (C.D. Cal. May 10, 2022) (awarding Ms. Le's colleagues of comparable experience $600-$700 per hour in 2022).

### 3.     Hourly Rate for Kent M. Henderson

Mr. Henderson has worked on Civil Rights Police Use of Force cases since he began practicing law in 1989 and has also worked on complex, large personal injury cases for the past 35 years of his career as a litigator. Henders, K. Decl. ¶ 5. Mr. Henderson graduated with a B.A. in

Political Science from the University of California Los Angeles in 1983. *Id.* ¶ 4. He attended law school at Pepperdine University School of Law and graduated with a Juris Doctor degree in 1986 and was admitted to the California Bar in 1989. *Id.* In the late 1980's and 1990's, Mr. Henderson worked on numerous police misconduct and civil rights cases, including cases of injuries suffered in Orange County jails. *Id.* ¶ 5. In the 1990's, Mr. Henderson worked on the Rodney King federal civil rights case. *Id.* Mr. Henderson also authored the opposition to the Motion for Summary Judgment and the appellate brief in the *Brian Thomas Drummond v. City of Anaheim* case, which became the seminal case for officer-involved positional asphyxia in the Ninth Circuit. *Id.* ¶ 6.

Mr. Henderson has tried in excess of forty cases to jury verdict, with one resulting in a multimillion-dollar settlement after a bifurcated liability verdict and three high six-figure verdicts. Henderson, K. Decl. ¶ 11. Mr. Henderson was also the principal attorney on multiple civil rights, personal injury, and product liability cases that resulted in multimillion dollar settlements. *See id.* Mr. Henderson has been practicing for 35 years and has litigated against some of the very best defense counsel in the state and country in cases of complex products liability, road design, securities, construction accidents, traumatic brain injury, paralysis, burns and death, and civil rights. *Id.* ¶ 35. He has been published on several important and rule-setting issues in state and federal courts. *Id.* Accordingly, Mr. Henderson's requested hourly rate of **$1,100** is a reasonable rate for an attorney with his experience, skill, and expertise. *Id.*

### 4. Hourly Rate for Angel Carrazco, Jr.

Mr. Carrazco has over 20 years of experience as a litigator and has worked on civil rights police use of force cases since he first began practicing law up until now. Carrazco Decl. ¶¶ 4, 5. Mr. Carrazco graduated from California State University, Fullerton with a degree in International Business and Spanish Literature in 1998. *Id.* ¶ 4. Mr. Carrazco went to law school at Loyola Law School and graduated in 2022. *Id.* He was admitted to the California Bar in 2004. *Id.* Mr. Carrazco manages his own firm, specializing in workers' compensation, personal injury, and civil rights cases and has specialized in handling in handling police misconduct civil rights litigation for over twenty years. *Id.* ¶ 5.

In 2014, Mr. Carrazco graduated from Gerry Spence's Trial Lawyer's College and in 2024, he returned and completed the Advanced Trial Skills Program. Carrazco Decl. ¶ 6. In 2018, Mr. Carrazco received the Orange County Trial Lawyers Association "Top Gun" Trial Lawyer of the Year Award for his work in civil rights and once again in 2022. *Id*. ¶¶ 7, 8. In 2022, Mr. Carrazco was a finalist for the "2022 Street Fighter of the Year" award from the Consumer Attorneys of California (CAOC). *Id*. ¶ 9. He has been selected as a "Super Lawyer" every year since 2019. *Id*. ¶ 10.  Mr. Carrazco has tried in excess of forty cases to jury verdict and has settled many more. *Id*. ¶ 11. He has been involved in litigating approximately 110 civil rights cases over the last twenty years. *Id*. ¶ 12. Accordingly, Mr. Carrazco's requested hourly rate of **$1,000** is a reasonable rate for an attorney with his experience, skill, and expertise. *Id*. ¶ 30.

### 5.    Hourly Rate for Humberto Guizar

Mr. Guizar has approximately 37 years of experience and began practicing in 1987, handling personal injury, criminal defense and family law. Guizar Decl. ¶ 2. Mr. Guizar graduated with two B.A.'s from California State University, Northridge in 1981. *Id*. He subsequently attended law school at the University of La Verne, College of Law from 1981 to 1985. *Id.* Mr. Guizar began prosecuting civil rights actions in his first year as a lawyer and argued his first civil rights jury trial in 1988. *Id.* ¶ 3. Since then, he has been lead counsel on numerous civil rights trials involving claims of excessive force. *Id.* ¶ 3. Mr. Guizar has tried approximately 140 civil cases through verdict, including multiple wrongful death civil rights cases. *Id*. ¶ 4. He has generated approximately $75 million in verdicts and settlements for his clients. *Id*. Mr. Guizar is also one of the founders of Justice X, a coalition of Latino and Black attorneys who advocate for the Los Angeles Communities of Color to seek justice in the community and battle system inequality. *Id*. ¶ 5. He has been a "gang expert" for approximately fourteen years and has been retained as a gang expert in civil cases involving gang issues. *Id*. ¶ 6. Accordingly, Mr. Humberto's requested hourly rate of $975 is a reasonable rate for an attorney with his experience, skill, and expertise. *Id*. ¶ 7.

//

### 6. Hourly Rate for Christopher L. Holm

Mr. Holm graduated from Pacific West College of Law with a Juris Doctor degree in May of 2012. Holm Decl. ¶ 4. Mr. Holm was admitted to the California Bar in January of 2016 and has eight years of experience as a litigator. *Id*. He has worked on civil rights police use of force case since he began practicing law and has also worked on complex, large personal injury cases. *Id*. ¶ 5. In 2022, along with Mr. Carrazco, Mr. Holm was a finalist for the Consumer Attorneys of California "Street Fighter of the Year" award for his work in *Hindawi v. Value Cars, Inc.*, a worker's compensation case, an honor presented to a plaintiff's attorney who has achieved a significant result in a case "that assistant consumers or changed consumer law for the better in California." *Id*. ¶ 6. Mr. Holm has also been heavily involved in preparing personal injury and civil rights cases for trial and was also involved in multiple cases that resulted in multimillion dollar and six-figure settlements. *Id*. ¶ 7. Accordingly. Mr. Holm's requested hourly rate of **$600** per hour is a reasonable rate for an attorney with his experience, skill and expertise. *Id*. ¶ 28; *see Donastorg*, 2021 WL 6103545, at *9 (awarding Ms. Le an hourly rate of $550 when she had eight years of experience in 2021).

### 7. Hourly Rate for Nathan Henderson

Mr. Henderson has approximately seven years of experience in the legal field, working in both state and federal courts as a law clerk and litigation assistant. Henderson, N. Decl. ¶ 2. After graduating from the University of Southern California, Mr. Henderson started as a legal assistant at Carrazco Law, A.P.C. in May 2017. *Id.* ¶ 4. In Fall of 2021, Mr. Henderson began attending Chapman University Fowler School of Law while continuing to work for Carrazco Law. *Id.* Beginning in May of 2022, Mr. Henderson spent approximately one year as a patent and trademark law clerk at the Patel Firm, P.C. *Id.* ¶ 5. In May 2023, Mr. Henderson joined Guizar, Henderson & Carrazco, where he currently works as a law clerk and assists the attorneys with legal research, drafting, and other tasks on their cases. *Id.* ¶¶ 6-7. Mr. Henderson graduated with a Juris Doctor from Chapman University in May of 2024 and recently passed the July 2024 California Bar Exam. Accordingly, Mr. Henderson's requested hourly rate of **$300** per hour is a

reasonable rate for a law clerk with his experience, skill and expertise. *Id.* ¶ 9; *see Avila v. Ford Motor Co.*, No. 5:22-CV-00395-SPG-SHK, 2024 WL 3311081, at *4 (C.D. Cal. May 15, 2024) (awarding $300 per hour for paralegals).

### 8.  Hourly Rate for Antonio Gallegos

Mr. Gallegos has approximately five years of experience in the legal field, working in both state and federal courts. Gallegos Decl. ¶ 2. He joined Guizar, Henderson & Carrazco, LLP in April 2020 as a litigation assistant. *Id.* ¶ 3. Since then, he has worked as a litigation assistant and legal clerk for the firm and is currently assigned to support Mr. Holm and Mr. Henderson on approximately fifty cases. *Id.* Mr. Gallegos is currently attending Western State College of Law in Irvine, California and is currently finishing his first semester as a law student. *Id.* at ¶ 5. He anticipates on graduating in 2027. *Id.* Accordingly, Mr. Gallegos's requested hourly rate of **$175** per hour is reasonable for a litigation assistant/law clerk with his experience, skill and expertise. *Id.* ¶ 7.

### 9.  Ely Arraiga

Ms. Arraiga has approximately thirteen years of experience in the legal field, working in both state and federal courts, initially as a legal assistant/administrator and subsequently as a legal assistant for Guizar, Henderson & Carrazco, LLP. Arraiga Decl. ¶ 2. She joined Guizar, Henderson & Carrazco in June 2010 and has worked under the supervision of Mr. Carrazco and Mr. Henderson in over 200 cases from pre-litigation to trial. *Id.* ¶ 3. Ms. Arraiga attended California State University, Dominguez Hills and graduated with a degree in Criminal Justice Administration and a minor in Sociology in 2008. *Id.* ¶ 5. Accordingly, Ms. Arraiga's requested hourly rate of **$200** per hour is reasonable for a litigation assistant with her experience, skill and expertise. *Id.* ¶ 7.

### 10.  Briseria Gomez

Ms. Gomez has approximately four years of experience in the legal field in both state and federal courts. Gomez Decl. ¶ 2. She started as a legal assistant in 2020 at another law firm before joining Guizar, Henderson & Carrazco, LLP as a litigation assistant in 2021. *Id.* ¶¶ 2, 3. Ms.

Gomez has worked under the supervision of Mr. Carrazco and Mr. Henderson in over 200 cases from pre-litigation to trial. *Id*. ¶ 4. Ms. Gomez attended Santa Ana College and graduated with a paralegal certificate in June 2024. *Id.* ¶ 6. Prior to that, Ms. Gomez received extensive legal training at Santa Ana College. *Id.* Accordingly, Ms. Gomez's requested hourly rate of **$175** per hour is reasonable for a litigation assistant with her experience, skill and expertise. *Id*. 8.

### 11.     Hourly Rate for Santiago G. Laurel

Mr. Laurel has approximately seventeen years in the legal field, working in both state and federal courts as a legal and litigation assistant for multiple law firms. Laurel Decl. ¶ 2. Prior to joining the Law Offices of Dale K. Galipo, Mr. Laurel worked as a Senior Litigation Assistant at Shimmel and Parks, APLC for five years. *Id.* In that role, Mr. Laurel provided high-level support to three trial attorneys, overseeing cases from their inception through trial preparation, including complex litigation matters. *Id.* Mr. Laurel joined the Law Offices of Dale K. Galipo in September 2021 as a litigation secretary. *Id.* ¶ 3. Since then, he is one of three litigation assistances to Mr. Galipo and eight associate attorneys. *Id.* Mr. Laurel has worked on approximately fifty civil rights cases from pre-litigation to trial and currently supports Mr. Galipo's associates with their day-to-day tasks on approximately fifty cases. *Id.* In 2022, Mr. Laurel was awarded a rate of $200 per hour in *French, et al. v. City of Los Angeles, et al*. *Id.* ¶ 6; *French*, 2022 WL 2189649, at *19. Earlier this year, Mr. Laurel was awarded $220 in the matter of *Zelaya v. City of Los Angeles, et al.* by a district court judge in the Central District of California. *Id.*¶ 6; *Zelaya*, 2024 WL 3183882, at *4. Accordingly, Mr. Laurel's requested rate of **$220** per hour is reasonable. *Id.* ¶ 6; Galipo Decl. ¶ 32.

### 12.     Hourly Rate for Leslie De Leon

Ms. De Leon is a litigation assistant at the Law Offices of Dale K. Galipo who works under the supervision of Mr. Galipo and associates Hang Le and Eric Valenzuela. De Leon Decl. ¶ 1. Ms. De Leon has been in the legal field for approximately 7 years, with experience in both state and federal court, working as a legal and litigation assistant for multiple law firms. *Id.* ¶ 2. Ms. De Leon also holds a Juris Doctor (J.D.) degrees in Law from the University of San Tomas in Manila,

Philippines, which she earned in March 2008. *Id.* Prior to joining the Law Offices of Dale K. Galipo, Ms. De Lon worked at Nemecek and Cole, where she provided high-level support to attorneys in all phases of litigation. De Leon Decl. *Id.* ¶ 3. Ms. De Leon joined the Law Offices of Dale K. Galipo in March 2024, where she currently works as a litigation assistant, supporting attorneys Dale Galipo, Eric Valenzuela, Hang Le, and Shannon Leap and other associates on a variety of cases and tasks. De Leon Decl. *Id.* ¶ 4. Based on Ms. De Leon's comparable experience to Mr. Laurel, Ms. De Leon's requested hourly rate of **$220** per hour is reasonable. *Id.* ¶ 7; Galipo Decl. ¶ 33.

### D. Lodestar Enhancement is Justified

Complex civil rights litigation, such as this case, is often lengthy and demanding. *Hensley*, 461 U.S. at 436. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. "[I]n some cases of exceptional success and enhanced award may be justified. *Id.* Additionally, "an enhancement may be appropriate if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted" or there is an unanticipated delay. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 555, 556 (2010).

Here, Plaintiffs' counsel obtained excellent results despite multiple setbacks. This case took six years to come to a resolution, during which Plaintiffs' counsel poured thousands of hours of uncompensated work to ultimately achieve these results for Plaintiffs. The liability and damages issues in this case were complex, requiring the retention of numerous medical and non-medical experts, with Plaintiffs' counsel advancing a total of approximately $725,000 in costs to date. *See* Carrazco Decl. ¶24. A portion of the costs incurred was due to the first trial resulting in a deadlocked jury and being declared a mistrial, forcing Plaintiffs' counsel to incur additional costly expenses in order to zealously advocate for Plaintiffs during the second trial. Plaintiffs' counsel had to spend weeks out of office and hundreds of miles away from home for the first and second trial. Additionally, between the first trial and the second trial, Mr. Hurtado unfortunately passed away due to unrelated causes. Due to Mr. Hurtado's passing, the $17 million in Mr. Hurtado's

future medical costs were no longer recoverable. Thus, the value of the case was significantly reduced at the time of the second trial, thereby significantly reducing any recovery Plaintiffs' counsel may recover from the jury award.

Despite these setbacks, Plaintiffs' counsel continued to work tirelessly to advocate for Plaintiffs, resulting in a jury verdict in Plaintiffs' favor. Accordingly, a lodestar enhancement is appropriate under the circumstances because Plaintiffs' counsel incurred extraordinary expenses in litigating this case and bringing the case to trial twice and despite unanticipated setbacks and delays, was still able to achieve exceptional success for Plaintiffs. Plaintiffs contend that a lodestar enhancement of 50% is appropriate to account for the extraordinary costs incurred in this case as well as the reduction in the value of the case due to Mr. Hurtado's passing.

**E.** **Plaintiffs' Counsels are Entitled to Fees for Litigating the Instant Motion.**

In addition to the attorneys' fees derived from legal work performed in preparing and litigating a case, Plaintiffs' counsel are entitled to attorneys' fees for their time spent establishing their right to attorneys' fees in the amount requested. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable."); *see also Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3rd Cir. 1998); *Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th Cir. 1988); *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978) ("It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee."). Plaintiffs' counsel will supplement their total hours to include any additional time associated with the instant motion, reply brief, any work on any other post-trial motions, and preparation for and appearance at any related hearings.

**IV.**   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court award attorneys' fees in the amount of **$6,792,830.63**. Plaintiffs also request that the Court award attorneys' fees for

work performed in the litigation of the instant motion for attorney fees, and the related reply and hearing.

The table below summarizes the fees requested, including the name of each biller, years of practice and graduation year if an attorney, the hourly rate, hours claimed, and the total for that biller. If the person is not an attorney, then the qualifying position of the biller is listed.

| Attorney/Biller | Yrs. Practice | Rate | Hours | Total |
|---|---|---|---|---|
| Dale K. Galipo | 36 | $1400 | 713.5 | $998,900 |
| Hang D. Le | 11 | $700 | 57.4 | $40,180 |
| Kent M. Henderson | 35 | $1100 | 1764.85 | $1,941,335 |
| Angel Carrazco, Jr. | 20 | $1000 | 925.2 | $925,000 |
| Humberto Guizar | 37 | $975 | 41.2 | $40,170 |
| Christopher L. Holm | 8 | $600 | 746 | $447,600 |
| Nathan Henderson | Law Clerk | $300 | 317.7 | $95,310 |
| Antonio Gallegos | Litigation Assistant/Law Clerk | $175 | 51.1 | $8,942.50 |
| Ely Arraiga | Litigation Assistant | $200 | 65.8 | $13,160 |
| Briseria Gomez | Litigation Assistant | $175 | 69.5 | $12,162.50 |
| Santiago Laurel | Litigation Assistant | $225 | 9.75 | $2,193.75 |
| Leslie De Leon | Litigation Assistant | $225 | 16 | $3,600 |
| **SUBTOTAL:** | | | | **$4,528,553.75** |
| **50% Multiplier:** | | | | **$2,264,276.88** |
| **TOTAL:** | | | | **$6,792,830.63** |

1

2   Respectfully submitted,

3

4   DATED: December 9, 2024          LAW OFFICES OF DALE K. GALIPO

5

6                                   By_____/s/ Hang D. Le_____

7                                      Dale K. Galipo
                                       Hang D. Le
8                                      Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27