# **EXHIBIT 8**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| FERMIN VINCENT VALENZUELA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ANAHEIM, *et al.*,<br><br>Defendants. | Case No.: SACV 17-00278-CJC (DFMx), consolidated with<br>SACV 17-02094-CJC (DFMx)<br><br><br>**ORDER GRANTING IN SUBSTANTIAL PART PLAINTIFFS' MOTION FOR ATTORNEY FEES [Dkt. 459]** |
| VINCENT VALENZUELA and XIMENA VALENZUELA by and through their guardian PATRICIA GONZALEZ,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ANAHEIM, *et al.*,<br><br>Defendants. | |

I. INTRODUCTION & BACKGROUND

On July 2, 2016, members of the Anaheim Police Department applied a neck restraint on Fermin Vincent Valenzuela Junior ("Mr. Valenzuela") called the "carotid hold." Mr. Valenzuela died. Plaintiffs Fermin Vincent Valenzuela Senior (Mr. Valenzuela's father), Vincent Valenzuela (Mr. Valenzuela's son), and Ximena Valenzuela (Mr. Valenzuela's daughter) brought this civil rights action against Defendants City of Anaheim (the "City"), Officers Daniel Wolfe, Officer Woojin Jun, and Sergeant Daniel Gonzalez. In November 2019, they presented evidence to a jury supporting their claims for excessive force, deprivation of substantive due process, municipal liability (on both unlawful policy and failure to train theories), wrongful death (on both negligence and battery theories), and violation of the Bane Act, Cal. Civ. Code § 52.1(b).

After five days of trial, the jury returned a verdict in favor of Mr. Valenzuela's children, finding, among other things, that Officers Jun and Wolfe used excessive force when they attempted to use the carotid hold, that Sergeant Gonzalez was liable as the supervising officer, and that the City's policy permitting the carotid hold in nondeadly force situations was unlawful. (Dkt. 358.) The trial proceeded to a second phase on damages. After two additional days of trial, the jury returned with a second verdict, awarding Mr. Valenzuela's children a total of $13.2 million in damages—$3.6 million in loss of life damages, $6 million in pre-death pain and suffering, and $1.8 million to each child for past and future loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, training, and guidance. (Dkt. 372.) The Court denied Defendants' motions for judgment as a matter of law and for new trial and granted in substantial part Plaintiffs' motion for attorney fees, awarding $1,082,930 in fees incurred through trial. (Dkt. 435.)

Defendants appealed to the Ninth Circuit, arguing that (1) the officers were entitled to qualified immunity, (2) the City was entitled to judgment as a matter of law because the policy was not unconstitutional, (3) Defendants were entitled to judgment on the Bane Act claim because it was inconsistent with the jury's finding on the Fourteenth Amendment claim, and (4) loss of life damages are not recoverable under 42 U.S.C. Section 1983. *See Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1101 (9th Cir. 2021); (Mot. at 17–18). In a published opinion and an unpublished memorandum decision, both of which drew a dissent from Judge Kenneth K. Lee, the Ninth Circuit affirmed this Court's ruling that Section 1983 permitted recovery of loss of life damages and that California state law to the contrary was inconsistent with Section 1983's goals. *Valenzuela*, 6 F.4th 1098, at 1101–02; *Valenzuela v. City of Anaheim*, 2021 WL 3362847 (9th Cir. Aug. 3, 2021). The Ninth Circuit denied Defendants' petition for panel rehearing and rehearing en banc, but eleven judges dissented on the issue of availability of loss of life damages. *Valenzuela v. City of Anaheim*, 29 F.4th 1093, 1094 (9th Cir. 2022). Defendants appealed to the United States Supreme Court, and the Supreme Court denied certiorari. *City of Anaheim v. Valenzuela*, 143 S. Ct. 523 (2022) (mem.).

Now before the Court is Plaintiffs' motion for attorney fees for their work responding to Defendants' appeals to the Ninth Circuit and the Supreme Court. (Dkt. 459 [hereinafter "Mot."].) Plaintiffs request a lodestar amount of $696,025 in attorney fees. Dkt. 461 [Reply] at 18.) In opposition, Defendants argue that (1) all of Plaintiffs' attorneys' hourly rates are excessive, and (2) some of those attorneys' hours are excessive and duplicative. (Dkt. 460 [Opposition, hereinafter "Opp."].) For the following reasons, Plaintiffs' motion is **GRANTED IN SUBSTANTIAL PART**.[1] The Court awards Plaintiffs $659,125 in attorney fees.

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for March 6, 2023 at 1:30 p.m. is hereby vacated and off calendar.

## II. ANALYSIS

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). In an action brought pursuant to 42 U.S.C. § 1983, however, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). A party is considered the prevailing party if it succeeds on any significant issue in litigation that achieves some of the benefit sought in bringing the lawsuit. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Defendants do not dispute that Plaintiffs prevailed on their claim on appeal that the scope of recoverable survival damages in California for Section 1983 claims includes survival damages for the decedent's loss of life—a question that was previously unclear. Rather, Defendants contend that the fees Plaintiffs seek are unreasonable.

In assessing the reasonableness of a fee award, a district court considers twelve factors: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).

There is a strong presumption that the lodestar figure represents a reasonable fee. *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996); *see also Harris v. Marhoerfer*, 24 F.3d 16, 18 (9th Cir. 1994) ("Only in rare instances should the lodestar

figure be adjusted on the basis of other considerations."). The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Under the lodestar approach, many of the *Kerr* factors have been subsumed as a matter of law. *Morales*, 96 F.3d at 364 & n.9.

### A. Hourly Rates

The Court first determines Plaintiffs' counsel's reasonable hourly rates. "The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel, and fee awards in similar cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 114 (9th Cir. 2008). Courts also are guided by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996); *see also Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

#### 1. Dale Galipo

Dale Galipo, the lead trial lawyer who then reviewed and edited the appellate briefs and delivered oral argument before the Ninth Circuit panel, requests an hourly rate of $1,200. (Mot. at 7.) Mr. Galipo graduated from UCLA law school in 1984. (Dkt. 459-2 [Declaration of Dale K. Galipo] ¶ 3.) Since 1991, he has managed his own law firm, and he has specialized in civil rights cases over the last two decades. (*See id.* ¶ 4.) After trial in this case, the Court found that $1,000 was a reasonable hourly rate for Mr.

Galipo, citing its recent award in *Craig et.al. v. County of Orange et.al.*, Case No. SACV 17-00491-CJC (KESx), Dkt. 245.

Now, the Court has recently awarded fees for Mr. Galipo's appellate efforts in *Craig*. *See id.*, Dkt. 280 (hereinafter "*Craig* Order"). The Court found that a $1,200 hourly rate, although high, was reasonable for Mr. Galipo's work over the past three years, pointing to Mr. Galipo's strong reputation within the legal community, his continued consistent record of success with over $85 million in recovery in civil rights cases since 2019, and multiple courts that awarded him $1,100 hourly rates as early as 2020. (*Id.* at 4–6.) The Court finds that $1,200 is a reasonable hourly rate for Mr. Galipo in this case as well.

### 2. Kelsi Brown Corkran

Kelsi Brown Corkran, who led Plaintiffs' team in preparing and finalizing the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $1,075—her billing rate when she left private practice in 2021. (Mot. at 9–11; Dkt. 459-3 [Declaration of Kelsi Brown Corkran, hereinafter "Corkran Decl."] ¶¶ 12, 15.) Ms. Corkran graduated from the University of Chicago with a law degree and a master's degree in public policy in 2005. (Corkran Decl. ¶ 2.) Since 2021, she has been the Supreme Court Director at the Institute for Constitutional Advocacy & Protection ("ICAP"). (*Id.* ¶ 9.) The Court recently awarded an hourly rate of $1,075 for Ms. Corkran's work in *Craig*, (*Craig* Order at 6–7), and finds that rate to be reasonable in this case as well.

//
//
//

### 3. John Fattahi

John Fattahi, who "had primary responsibility for formulating strategy for, and drafting, Plaintiffs' answering brief and subsequent response to Defendants' petition for rehearing en banc before the Ninth Circuit," requests an hourly rate of $850. (Mot. at 11–14; Dkt. 459-4 [Declaration of John Fattahi, hereinafter "Fattahi Decl."] ¶ 3.) Mr. Fattahi graduated from UCLA School of Law in 2006. (Fattahi Decl. ¶ 4.) He served for one year as a law clerk to then-Chief U.S. District Judge Virginia A. Phillips in the Central District of California, was a litigation associate for two years at Quinn Emanuel Urquhart & Sullivan, LLP, and then worked for about two and a half years in Mr. Galipo's office before opening his own solo practice in 2011. (*Id.* ¶ 6.)

After trial, the Court found that $500 was a reasonable hourly rate for Mr. Fattahi, concluding that it was consistent with the prevailing rate of other attorneys in the Central District who practice civil rights litigation with similar experience, and reflected the lesser novelty and difficulty of the issues during the post-trial stage when Mr. Fattahi participated. (Order at 6.) The Court also considered a then-recent court award to Mr. Fattahi of a $550 hourly rate for second-chairing a police excessive force trial, and fee settlements resulting in $540 and $550 hourly rates. (*Id.*)

Since the Court's last fee award, Mr. Fattahi has gained substantial additional experience. He has successfully defended millions of dollars in judgments obtained by Mr. Galipo on post-trial motions and appeal, and courts have awarded Mr. Fattahi $725 and $775 hourly rates in excessive force cases. (Fattahi Decl. ¶¶ 4, 7.) In addition, whereas the Court's previous $500 rate for Mr. Fattahi was based in part on its determination that "[t]he more novel and difficult legal issues and the impressiveness of the results obtained by the Plaintiffs happened before and during trial, not after trial when

Mr. Fattahi participated," (Dkt. 435 at 38), this appeal involved multiple novel and difficult legal issues, justifying a higher hourly rate. *See Moreno*, 534 F.3d at 114.

The Court finds that $850 is a reasonable hourly rate for Mr. Fattahi's work on appeal. This rate reflects Mr. Fattahi's substantial and increased experience over the last few years, his continued strong reputation within the field, and the skill required to succeed on appeal and the novelty and difficulty of the issues presented on appeal. It is also consistent with the prevailing rate of other attorneys in the Central District who practice civil rights litigation and who graduated law school seventeen years ago. *See Donastorg*, 2021 WL 6103545, at *8 (explaining that the 2020 Real Rate Report lists partners working in commercial litigation at large firms in Los Angeles as earning between $941 and $1,235, with the median rate for litigation partners in Los Angeles at $660 per hour); *cf. McKibben*, 2019 WL 1109683, at *14; (Dkt. 459-1 [Declaration of Carol Sobel, hereinafter "Sobel Decl."] ¶¶ 44–50 [collecting evidence that Mr. Fattahi's requested rate is consistent with the market rate]).

### 4. Joseph Mead

Joseph Mead, who helped research and draft the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $850. (Mot. at 14–15; Dkt. 459-5 [Declaration of Joseph Mead, hereinafter "Mead Decl."] ¶ 10.) Mr. Mead graduated from the University of Michigan Law School *magna cum laude* in 2007. (Mead Decl. ¶ 2.) In 2021, he joined ICAP as Senior Counsel. (*Id.* ¶ 8.) The Court awarded an hourly rate of $850 for Mr. Mead's work in *Craig*, (*Craig* Order at 9–10), and finds that that rate is reasonable in this case as well.

//

//

### 5. Shelby Calambokidis

Shelby Calambokidis, who helped draft the brief in opposition to Defendants' petition for a writ of certiorari, seeks an hourly rate of $650. (Mot. at 16–17; Dkt. 459-6 [Declaration of Shelby Calambokidis, hereinafter "Calambokidis Decl." ¶ 5.)  After graduating *summa cum laude* from The University of Alabama School of Law in 2017, Ms. Calambokidis clerked for judges on the United States District Court for the District of Columbia and the Fourth Circuit and served as a law fellow at the American Federation of Labor and Congress of Industrial Organizations (AFL-CIO). (Calambokidis Decl. ¶¶ 2–3.)  In 2021, she joined ICAP as Counsel, where she has worked on multiple civil rights cases in federal district and appellate courts. (*Id.* ¶ 4.)

The Court finds that $650 is a reasonable hourly rate for Ms. Calambokidis.  This rate reflects her experience in appellate law, the novelty and difficulty of the issues on appeal, and the skill required to litigate the appeal, and is also consistent with the prevailing rate of other attorneys who graduated law school six years ago. *See Donastorg*, 2021 WL 6103545, at *9 ("The 2020 Real Rate Report provides that the median rate for litigation associates in Los Angeles is $535, with rates of $740 in the upper quartile."); *cf. McKibben*, 2019 WL 1109683, at *14; (Sobel Decl. ¶¶ 58–61 [collecting evidence that Ms. Calambokidis's requested rate is consistent with the market rate]).

### B. Billed Hours

The Court now determines whether the billed hours are reasonable.  A court may award attorney fees only for the number of hours it concludes were reasonably expended on the litigation. *Hensley*, 461 U.S. at 434 ("[Counsel] should make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary.").  "[T]he fee

applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of th[e] hours worked." *Gates*, 987 F.2d at 1397–98.

In support of Plaintiffs' motion for fees, each attorney has submitted time records detailing the work they performed on the case. Mr. Galipo and Mr. Fattahi were primarily responsible for tasks related to the Ninth Circuit appeal and billed 391.8 hours to those tasks. Ms. Corkran, Mr. Mead, and Ms. Calambokidis were primarily responsible for tasks related to the Supreme Court petition and billed 281.3 hours to those tasks. The Court has carefully reviewed these five attorneys' billing records and finds that the billed hours are reasonable.

Defendants argue that no work performed by the ICAP attorneys—Ms. Corkran, Mr. Mead, and Ms. Calambokidis—should be compensated because "[i]t was not necessary to bring on three more lawyers to oppose the petition" for certiorari as Plaintiffs already had enough lawyers. (Opp. at 13.) The Court is unpersuaded. Supreme Court litigation is specialized and complex, and it was not unreasonable for Plaintiffs to bring on a team of specialists to handle the petition. This is especially so given that eleven Ninth Circuit judges dissented from the denial of rehearing en banc on the loss of life damages issue, and that the Supreme Court had previously granted review of the primary question presented by Defendants' petition, but ultimately dismissed it as improvidently granted due to a jurisdictional defect. (*See* Corkran Decl. ¶ 14 [citing *Jefferson v. City of Tarrant*, 522 U.S. 75 (1997)].)

Defendants also argue that some of the ICAP attorneys' time duplicates work performed at the Ninth Circuit level or was excessive. (Opp. at 13–14.) They submit annotations on Ms. Corkran's, Mr. Mead's, and Ms. Calambokidis's time records to this effect. (Dkt. 460-1.) However, the Court has reviewed these attorneys' time records and

finds the billed hours reasonable under the circumstances of this case. This was an extremely complex appeal presenting numerous issues, some of which had never been decided before. Thorough research was required both before the Ninth Circuit and the Supreme Court. *See Moreno*, 534 F.3d at 1112 ("When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research: Cases are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed with the research previously performed. All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time."). It was not unreasonable to spend substantial time researching, drafting, and revising the several briefs involved, or to have multiple people involved in that process. *Cf. id.* ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.").

The Court will make one deduction to the fees Plaintiffs request, however. Plaintiffs seek fees for work performed by Garo Mardirossian and Lawrence Marks. (*See* Mot. at 22 [Lodestar Calculation Table].) However, a review of both attorneys' billing records reveals that nearly all of Mr. Mardirossian's 19.2 hours billed and Mr. Marks' 44.4 hours billed was for "receipt and review" of the various documents on appeal. (*See* Dkt. 459-7, Ex. 1; Dkt. 459-8, Ex. 1.) Neither Plaintiffs' brief nor Mr. Mardirossian or Mr. Marks' declarations explains why their receipt and review of these documents was necessary or even helpful to Plaintiffs' success on appeal. Accordingly, the Court will not award fees for their work.

Finally, Plaintiffs' counsel request compensation for their work related to their motion for attorneys' fees. Time spent establishing an entitlement to fees under 42 U.S.C. § 1988 is compensable. *See Clark v. City of L.A.*, 803 F.2d 987, 992 (9th Cir. 1986). Plaintiffs' counsel included time spent preparing the motion in their original time

records. In preparing the reply, Mr. Fattahi billed an additional 27.9 hours. (*See* Dkt. 461-1 [Supplemental Declaration of John Fattahi].) The Court will include this additional billed time in its lodestar calculation.

### C. Lodestar Calculation

Based on the above analysis, the lodestar amounts for Plaintiffs' counsel are as follows:

| Attorney | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Dale Galipo | $1,200 | 99.7 | $119,640 |
| Kelsi Brown Corkran | $1,075 | 144 | $154,800 |
| John Fattahi | $850 | 320[2] | $272,000 |
| Joseph Mead | $850 | 97.2 | $86,620 |
| Shelby Calambokidis | $650 | 40.1 | $26,065 |
| **Total** | | | **$659,125** |

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorneys' fees is **GRANTED IN SUBSTANTIAL PART**. Based on the Court's lodestar calculation, Plaintiffs are awarded $659,125 in attorneys' fees.

DATED:     February 23, 2023

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

**CC: FISCAL**

---

[2] This number is calculated based on 193.1 (total billed hours) + 27.9 (hours spent preparing reply).