| | |
|---|---|
| 1 | Humberto Guizar, Esq.        (SBN 125769) hguizar@ghclegal.com |
| 2 | Kent M. Henderson, Esq.     (SBN 139530) hendolaw@gmail.com |
| | Angel Carrazco, Jr. Esq.       (SBN 230845) angel@carrazcolaw.com |

**GUIZAR, HENDERSON & CARRAZCO, LLP**
18301 Irvine Boulevard
Tustin, CA  92780
Telephone: (714) 541-8600
Facsimile:  (714) 541-8601

Attorneys for Plaintiffs I.H., et. al.

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.H., a minor by and through her mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; E.H., a minor by and through her mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; F.H., a minor by and through his mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; and A.H., a minor by and through his mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado, <br><br>               Plaintiffs, <br><br>v. <br><br>STATE OF CALIFORNIA; CALIFORNIA HIGHWAY PATROL; EDGARDO YEPEZ aka EDGARDO LOPEZ; and DOES 1 through 100, inclusive, <br>               Defendants. | CASE NO: 2:19-cv-02343-DAD-AC <br><br>**DECLARATION OF KENT M. HENDERSON** <br><br>[*Hon. Dale A. Drozd, District Judge; Hon. Allison Claire, Magistrate J.*] |

1

DECLARATION

**DECLARATION OF KENT M. HENDERSON**

I, Kent M. Henderson, do hereby declare and state as follows:

1.  I am an attorney at law, duly licensed to practice before all courts of the State of California and the following Federal Courts: Supreme Court of the United States; United States Court of Appeals for the Ninth Circuit; United States Court of Appeals for the Fifth Circuit; United States Court of Federal Claims; United States District Court for the Northern, Eastern, Central and Southern Districts of California and the Eastern District of Texas. My Professional Corporation is a partner in GUIZAR, HENDERSON & CARRAZCO, LLP, counsel of record for the Plaintiffs in the above-entitled action. The facts stated in this declaration are of my own personal knowledge and/or I am informed and believe they are true and if called upon to testify as a witness, I could and would competently testify thereto.

2.  I have maintained contemporaneous time records reflecting the work and time spent on this case. As of this date I have so far spent 1764.85 hours of billable time in connection with tasks reasonably necessary to the favorable resolution of this action. A copy of my time records for this case is attached hereto as "Exhibit 12." I intend to include the billable time spent in connection with any further work on this case in a separate declaration and accompanying exhibit to be included in Plaintiffs' reply to the instant motion.

3.  I personally performed the work attributed to me in my billing statement and can personally attest that the hours I spent on this case have been reasonably expended in pursuit of litigation. I have tracked my time spent in one-tenths of an hour increments. I have attempted to keep contemporaneous records relating to the billable time I spent working on this case. Any time that I did not contemporaneously record has been reconstructed from detailed documentation from the case file and my notes. I have exercised billing judgment in excluding

unproductive time and time spent on administrative or clerical tasks. I have reduced or omitted time that would not ordinarily be charged to or paid by a fee-paying client.

4. In June of 1983, I graduated from the University of California Los Angeles (UCLA) with a Bachelor of Arts with a major in Political Science. In May of 1986, I graduated from Pepperdine University School of Law with a Juris Doctor degree, and I was admitted to the California Bar in May of 1989. I have over 35 years of experience as a litigator.

5. I have worked on Civil Rights Police Use of Force cases since I first began practicing law up until the present date. I also work on complex, large personal injury cases and have done so for the last 35 years. In the late 1980's and early 1990's, I worked on numerous police misconduct and civil rights cases, including cases of injuries suffered in the Orange County Jails. In the 1990's I worked on the Rodney King Federal civil case and I drafted the affirmative Motion of Summary Judgement that was filed on behalf of the Plaintiff Rodney Glenn King. At a point in time after filing the Motion, the City of Los Angeles stipulated to liability and I continued to work on the case working on the documents for the case when it was tried in the Federal Court in downtown Los Angeles.

6. I was one of the Plaintiff's counsel in the case *Brian Thomas Drummond v. City of Anaheim, et. al.* 343 F.3d 1052 (2003). I authored the Opposition to MSJ and the Appellant's Briefs in the Drummond case which became a notable published decision. The *Drummond* case is the original, seminal "I can't breathe" case long before the incident involving George Floyd. Brain Drummond was compressed / asphyxiated by the Anaheim police for 27 minutes as he cried out "I can't breathe" but there was no video. The *Drummond* case established a factor to consider in whether the force used was excessive in the Ninth Circuit Pattern Jury Instructions. This factor is in Ninth Circuit Pattern Jury Instruction, 9.25 "Particular Rights – Fourth Amendment – Unreasonable Search and Seizure of a Person – Excessive (Deadly and

Nondeadly) Force." This factor #10 is "whether it should have been apparent to the officer that the person he used force against was emotionally disturbed."

7. After the *Drummond* MSJ was reversed on appeal, I tried the *Drummond* case in Federal Court in Santa Ana with Federico Sayre. I did about half of the trial including closing argument.

8. Other notable published decisions in which I did the briefing and the work, include, *Hernandez v. Paicius*, 109 Cal.App.4th 452 (2003). The *Hernandez* case stems from a medical malpractice case that I tried by myself before an Orange County Superior Court Jury. While there was a defense verdict in that Jury Trial, the *Hernandez* appellate published decision, reversing the defense verdict, reinforced the rule that undocumented status is inadmissible where an immigrant does not assert wage loss. This rule in an even more absolute form was later codified in the California Civil Code. More importantly, the *Hernandez* appellate published decision established for the first time a rule that experts have to be vetted such that, if an expert is the client of one of the opposing counsel, that counsel cannot cross-examine their own client (the opposing expert). In such a situation, the duty of undivided loyalty mandates that counsel withdraw from representation.

9. In *Hernandez v. KWPH Enterprises*, 116 Cal.App.4th 170 (2004), I opposed an MSJ and then did the Appellate Briefing. The case is one in which we argued to hold responsible EMTs who had a woman who was allegedly declared WIC 5150 and who they let escape on to a freeway where she was struck and killed. This was a difficult case in which we argued for the extension of duty where WIC 5150 (Danger to Oneself or Others) declared. The case became a published decision.

10. In *Angelotti v. the Walt Disney Company*, 192 Cal.App.4th 1394 (2011), I opposed the MSJ, prepared all of the Appellate Briefs and argued before the California Court of

Appeal. Anthony (Tony) Angelotti was the stunt double (including all of the sword work) for Johnny Depp in the Disney Movies Pirates of the Caribbean 2 and 3. Tony won the Taurus Stunt Award for Best Stunt Performer (the stunt equivalent of winning the Academy award for Best Actor). Tony was injured in an acrobatic fall suspended from a descender that was for the scene where the Pirate Jack Sparrow falls from a rope bridge. The case involved complex issues of Hollywood "Loan-Out" companies and third-party duty / workers compensation exclusivity issues. In the *Angelotti* published decision, we were pushing the envelope to make new law and the Court did not extend liability. I later tried another case for Tony before a Jury in Los Angeles County Superior Court in Van Nuys.

11. I have tried in excess of forty (40) cases to Jury Verdict. I have one multimillion dollar settlement after Jury liability verdict in bifurcated case and three high six figures Jury Verdicts and other verdicts. I have multiple multimillion dollar settlements in Civil Rights, Personal Injury, Product Liability and other litigation where I was the principal attorney who extensively prepared the case for trial. In terms of Civil Rights cases, some representative cases are:

- <u>Rodney King vs. The City of Los Angeles, Powell, Koon, Briseno, Wind</u> -- $5.5 Million (verdict plus attorneys' fee award).

- <u>Herrera v. City of Buena Park</u> -- Civil Rights Police Shooting/Death -- Four shots were fired and two shots missed including one slug that buried itself in the headliner of the vehicle. A bullet trajectory analysis of the wounds, the resting points of the slugs and the flight of the shots fired, demonstrated that Mr. Herrera was upright in his seat. This disproved the Defendants' reaching under the seat theory. After extensive litigation and meticulous trial preparation, a fair settlement was reached which included a lifetime payout of $5,000,000.00.

- The last successful police pursuit case in California. <u>Magdaleno v. City of Fountain Valley</u>-- Ernesto Magdaleno was a top ranked Light Heavyweight boxer who held several championship belts from various boxing associations (ranked #5 worldwide). The Police asserted that they were completely immune and the case was prepared with great detail and effort. Numerous depositions were taken including a deposition in Florida of the promoter for Mr. Magdaleno who worked for Don King and had arranged for Mr. Magdaleno to fight for the Unified World Light Heavyweight Championship just before his death. The law was changed to give the police complete immunity, which we had to prove did not apply here (no adopted pursuit policy) and this was the last case of its type. See *Nguyen v. City of Westminster*, 103 Cal.App.4th 1161 (2002) [no action for police pursuit – complete immunity]. Multiple Six Figures Settlement.

- <u>Noel Aguilar v. County of Los Angeles, et. al</u>. Shooting death captured on bystander video. Extensive litigation. $2,970,000.00.

- <u>Estate of Ernesto Canepa vs. City of Santa Ana, et. al</u>. Police shooting of man sitting in car. Police claim reaching. Extensive litigation. $2,875,000.00

- <u>Estate of Antonio Zambrano Montes vs. City of Pasco</u> (WA) – Internationally shown video of man shot to death by police while throwing rocks at police on a street in Pasco Washington. Federal Court, Washington – Large Dollars resolution.

- <u>Estate of Steve Salgado vs. City of Santa Ana, et. al.</u> – 16 year-old shot to death running away with thrown cell phone. Captured on security camera video. Heavily litigated $1,350,000.00.

- <u>Estate of Oscar Ramirez v. County of Los Angeles, et. al.</u> – Late 20's man shot by Sheriff Deputy while alone. Heavily litigated proven by cross examination and bullet trajectories. Story made into a documentary film. $1,250,000.00.

- Millions of Dollars in settlements (many single cases over $1 million and $2 million), in numerous additional police shootings, asphyxiation, beatings – Gaeta, Hunter, Hermosillo, Hernandez, Noe, Padilla, Flores, Ramos, Matthew Hurtado, Alvarado, Coronel, Aguirre, Aceves, many more.

In terms of Personal Injury, Product Liability and other litigation, the following are cases where I was the main attorney who did the majority of the work are representative:

- Commercial Trucking case (Case ID confidential) -- a family from Los Angeles on a cross-country trip to visit relatives in another state was struck on the Interstate Freeway by a big rig tractor-trailer truck causing multiple deaths and injuries of adults and children. The incident received nationwide news coverage. Complex third party and product liability settled for over Twelve Million Dollars ($12,000,000.00).

- Confidential Case Identification -- Product Liability, Defective Tire/SUV rollover, Passenger Paralyzed. The case was filed in the Federal Court in Northern California asserting that the tire and the SUV were defective products that caused the incident. Depositions of experts in New York City, Chicago, Denver and other cities across the country. After detailed preparation and aggressive litigation, this case was resolved for $8,400,000.00.

- Confidential Case Identification -- Big Rig Truck Collides with Vehicle Causing Fire, Five Deaths and Survivor with Third Degree Burns. A tragic collision occurred on the Interstate 5, Southbound Freeway near Buttonwillow, California. A tractor-trailer, big-rig truck crashed into a van which burst into flames. Unfortunately, five persons died and a survivor sustained third degree burns over 60 percent of his body. $7,600,000.00 settlement.

- *Pro Hac Vice* in Washington State. Confidential Case Identification -- Bus Passenger Paralyzed by Sudden Stop Throwing Her From Seat. Advanced strategies and experts performing time and motion studies and designing safe alternatives were utilized. $6,100,000.00 settlement.

- <u>Navarette v. Green Valley Agriculture/Oropeza</u>: 14 Farmworker Death Case. This case received national and international media exposure. In the early morning hours, on a country road, in the fog near Five Points, California a van carrying farmworkers collided with a flatbed truck. Unfortunately, 14 farmworkers lost their lives that day. The case resulted in a change in the law in California requiring that in transporting agricultural workers, seats and seatbelts must be provided. There was a multimillion-dollar settlement.

- Confidential Case Identification-- Commercial Trucking Negligence and Product Liability for Big Rig Truck with Cruise Control Stuck on Causing Death of Husband and Father and Associated Bad Faith Insurance Claim. We had an expert build (and he later patented) a cruise control shut-off device to prove commercial feasibility. We had the expert videotape with a test run with actual driving of a big rig and the cruise control shut off device installed, demonstrating it would have prevented the accident. Combined $5,600,000.00 in settlement.

- Securities Arbitration. Hollywood producer of "Gettysburg", "Milagro Beanfield War" and owner of cable television distributor brought claim against major Securities Brokerage firm regarding negligent failure to transfer his shelf registration/restricted stock. This was prepared all the way up to and through and including a three-week Arbitration to final award. $3,276,815.00 arbitration award.

- Confidential Case Identification -- Concrete Truck Crashes into Family's Vehicle Causing Death and Injury. A family driving on a two-lane highway was hit head-on by a concrete truck that crossed over the centerline that caused the death of the grandfather and severe injuries to other passengers. Settlement in excess of $3,800,000.00 on first day of trial with Jury Panel waiting

- Confidential Case Identification-- Defective Tire Causes Loss of Control of Vehicle, Collision with Object and Death. A family was on their way to work in a pick-up truck on the Freeway, when a defective, recalled tire delaminated. The incident resulted in the deaths of Husband and Wife and their eight-year-old son. All available legal theories and responsible parties were pursued until the eve of the Trial date when the case was resolved. $2,897,000.00 settlement.

- Confidential Case Identification -- Tow Truck Runs Over Man Causing Death. A husband and father was run over by a tow-truck causing his death. The case resulted in a settlement of $2,000,000.00.

- Confidential Case Identification -- Movie Set Explosion Causes Third Degree Burns, in the rehearsals of a major release action movie, a worker sustained third degree burns, lengthy hospitalization and almost died when an explosive charge detonated well before it was supposed to go off. Complex Third-Party Liability/Claimed Workers' Compensation/Exclusive Remedy Defense case that required strategic planning in order to maximize the Plaintiff's recovery resulting in an overall $2,000,000.00 settlement.

12. I have also tried numerous cases to verdict in Civil Rights. Several of these were settled post-verdict (some were hung Jury).

13. I have been involved in litigating an estimated 75-90 civil rights cases over the last 35 years.

14. I started working on this Francisco Hurtado case in October of 2018. The case was very, very difficult from the beginning. Police shooting cases are hard to win and harder when the person shot had a gun anywhere near them, they were supposedly leading the police on a vehicle pursuit and/or an allegation that they were under the influence of drugs or alcohol when shot. This case had all three allegations by the police that need to be disproved. There was a gun in the car, video of the police following the car with lights on and there also an allegation of use of drugs.

15. We retained a biomechanical and bullet trajectory expert, Jesse Wobrock, Ph.D., to analyze the medical evidence to show that the path of the bullets demonstrated that Francisco Hurtado was not in the position claimed by the shooter, Edgardo Yepez, when Yepez shot him.

16. We retained a toxicology expert, Okorie Okorocha, to examine any drug evidence. We subpoenaed the drug records and we showed there was no test of the blood by GCMS type testing. There were no actual grams per milliliter levels of amounts in evidence. Mr. Okorocha showed that there was no admissible drug evidence based on the way samples have to be tested and the absence here of any confirmatory GCMS tests.

17. We broke down the video of the supposed "pursuit" to show that the speeds were not that fast, the police eventually turned off the lights and the police admitted that at the time he exited Hurtado was not being pursued.

18. I have put in huge numbers of hours to try to develop and prove this case and the damages suffered. I have done these types of cases for over 35-years and this is probably the most hours I have ever spent in any single case of this (or any other) type. This case has literally lasted for over six years. We took and defended large numbers of depositions and we hired a team of the most able and seasoned experts, that included, but is not limited to, Scott DeFoe (Police Practices); Jesse Wobrock, Ph.D. (Biomechanical bullet trajectory); Joshua Prager, M.D.

(World renowned expert on CPRS); Christopher Stephenson (Physical Medicine and Rehabilitation); Marilyn Jacobs, Ph.D. (Psychology); Mary Meinhard (Life Care Planner); and James Mills (economist).

19. We poured over and reviewed and re-reviewed the medical records, the photos, the videos (audio), the statements and other evidence.

20. We prepared for hours and hours to take the depositions of the Defendants and used their own after shooting statements and other evidence to show inconsistencies in their stories, including that one officer was saying one thing happened and the other officer something else. I prepared for a lengthy amount of time to depose, cross-examine and impeach the opinions of defense shooting expert, Dr. Ravani (who was then never called to testify in either trial after I took his deposition).

21. We had to oppose the Motion for Summary Judgment, and we researched issues like Qualified Immunity, cases of guns or weapons in hand but possession not enough to use deadly force, and we prepared a finely tuned but super extensive separate statement of facts response including using diagrams to show that the shot position of Hurtado was inconsistent factually with the statements of Yepez, the shooter. The Memorandum of Points and Authorities had the already prepared diagram by our biomechanical expert that we pasted right into the P and A. (We had to arrange for the biomechanical expert to go to the scene of the incident and to meet with Mr. Hurtado and examine his bullet strike wounds). The MSJ Opposition was something that Chris Holm and I put in giant amounts of work, arriving early in the morning, day after day, and staying to midnight or later many nights and filing the Opposition at 11:30 p.m. on the day it was due (because we tried to make it very, very good).

22. We obtained several previous deposition transcripts of the defense police practices expert, Clarance Chapman, to make sure we could impeach him if he tried to change several

opinions he gave in other cases.  One of the cases in which Chapman was an expert was <u>Salgado v. City of Santa Ana</u> where our office took Chapman's deposition and already had his transcript (but we went out and got even more transcripts).  We knew that Chapman had previously testified that a shooting was okay even when the person was shot in the back and unarmed (Salgado case transcript) and we used this previous testimony to get Chapman to admit he testifies in cases where unarmed, shot in the back is okay with him.

23.  Expert depositions were arranged and then re-arranged.  Exhibits, Witness Lists, Motions in Limine, Pre-Trial Orders, Oppositions to MILs, and numerous other documents had to be prepared and reviewed.  There were countless emails, expert reports, medical records, meetings, and additional work to keep everything calendared.  The case started before COVID, was going on all through COVID and was tried twice, including after COVID had subsided to a great degree.  There were many zoom depositions which were new at the time.

24.  There was coordination with Mr. Galipo's office once Dale Galipo and Hang Le were working with us on the case.  We had strategy meetings, preparation and an outpost Airbnb for both trials for Mr. Carrazco, my son, Nathan (Law Clerk), Antonio Gallegos (another Law Clerk) and I stayed / lived in Sacramento (away from our home office).

25.  Mr. Carrazco spent hundreds and hundreds of thousands of dollars on costs in this case.  (See the GHC [Carrazco Law] costs which are immense in this case).

26.  Civil Rights cases are very hard to win.  Guizar, Henderson & Carrazco, LLP, is made up of three practitioners with over 80 years of combined experience in the field of civil rights litigation.  I have tried several civil rights cases in Federal Court and winning with a unanimous verdict is very difficult.  We have had some hung jury cases and many settlements but there is huge risk in putting money, time and effort into these civil rights cases.  Nevertheless, we gave Francisco Hurtado and his family our all in this case for over six years

and through two trials in Federal Court, hundreds of miles from our home offices and our families.

27. Currently our firm has an active case list, with approximately 26 high profile use of force cases all involving serious injuries or death.

28. This case involved a substantial amount of risk, a great deal of work and was vigorously litigated by a hardworking team of attorneys from Guizar, Henderson & Carrazco, L.L.P. Combined with the extraordinary trial skill of Dale Galipo and the other outstanding lawyers at the Galipo Law Firm, like Hang Le, Plaintiffs' counsel together obtained outstanding results for our clients in this case.

29. In cases where I have sought to have my hourly fee approved by the Federal Courts, there was evidence in some cases of my skill and experience being within the upper quartile of practitioners in this area and/or of having the fees requested approved based on experience, skill of work product, etc.

30. If Plaintiff I.H., et al.'s counsel were not awarded a fully compensatory fee in such a civil rights case, then this would discourage similarly situated attorneys from taking these types of cases. Specifically, it would provide a disincentive for skilled attorneys to take cases involving these very difficult police shooting issues, which if anything require a higher level of legal expertise and experience than cases involving other types of civil litigation damages claims.

31. Through the years, after the Rodney King case involvement, I have tried to become a student of and knowledgeable about 42 U.S.C. Sections 1983, 1985, 1988, etc. including their origins, history and purpose. The reality is the "Ku Klux Klan Act" or aka the "Enforcement Act of 1871" is a Civil War Reconstruction Era statue passed by the radical Republicans (including as sponsored by its primary author, Congressman Samuel Shellbarger). The history is important here because the law was drafted to incentivize lawyers to take on cases

where the actors who caused injury and death (highwaymen, deputized and others in the former Confederate South) had violated the civil rights (lynched, beaten) persons (mainly newly freed slaves) while "acting under color of state law or authority."

32. The statute was designed so that Federal jurisdiction (which is narrow) was conferred as a Federal Question so that the Claims could be brought in Federal Court (where the President appointed the Judges) rather than in State Courts (where the Southern Governors appointed the Judges). Relevant here is that the presence of attorneys' fees to a prevailing party is not a normal feature of American Law (to have prevailing party awarded attorneys' fees it has to be written in and agreed to in advance by the parties – like in a Real Estate Contract -- not by statute).

33. But under 42 U.S.C. Section 1988, there is this provision for an award of attorneys' fees and that Section is literally called "Proceedings in Vindication of Civil Rights." The attorneys' fee provision was placed there to encourage attorneys to take on these difficult cases and it lay there not really utilized until the Civil Rights movement of the late 1950's and 1960's when the U.S. Supreme Court found that this nearly 100-year-old statue was as valid as any other law. Nevertheless, summarizing – the Federal Law as passed by the Congress and signed by the President in 1871 specifically encourages the Federal Courts to award attorneys' fees for lawyers to take these cases and be fully compensated for "Vindication of Civil Rights" – which applies here.

34. Civil rights cases are difficult enough for attorneys to take and win, without the additional disincentive of a reduced fee at the end. In sum, a reduction of the attorney's fees would inhibit the provision of high quality of legal services to civil rights victims which is antithetical to the purpose of 42 U.S.C. Sections 1983 and 1988 as enacted and as intended by the plain meaning of the statutes and the intent of the authors of those statutes. In turn, Plaintiffs,

such as I.H., et. al., would not be able to attract competent counsel who could achieve similar results. Accordingly, Plaintiffs I.H., et. al.'s attorneys request the approval of the full amount of the requested attorneys' fees and costs.

35. I have been practicing for over 35 years and I have prepared and litigated to trial cases in complex products liability, road design, securities, construction accidents, Big Rig collisions, Traumatic Brain Injury (TBI), paralysis, burns and death (including pre-death, pulseless electrical activity pain and suffering) and Civil Rights cases. I have been published on several important and rule-setting issues in State and Federal Courts. My experience is broad in both Civil Rights and in other varied, complex, high-level, technical, high value litigation. I have litigated against some of the very best defense counsel in the state and the country in these multiple sub-specialty areas of the law. For the reasons stated above, and in the attorney's' fee motion, I request an hourly rate of $1,100.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 9th day of December 2024, at Tustin, California.

/S/ Kent M. Henderson
_____
Kent M. Henderson, Declarant