1  Humberto Guizar, Esq.        (SBN 125769) hguizar@ghclegal.com
2  Kent M. Henderson, Esq.      (SBN 139530) hendolaw@gmail.com
   Angel Carrazco, Jr. Esq.     (SBN 230845) angel@carrazcolaw.com
3  **GUIZAR, HENDERSON & CARRAZCO, LLP**
   18301 Irvine Boulevard
4  Tustin, CA  92780
   Telephone: (714) 541-8600
5  Facsimile:  (714) 541-8601

6  Attorneys for Plaintiffs I.H., et. al.

7

8                    **UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  I.H., a minor by and through her mother and        CASE NO: 2:19-cv-02343-DAD-AC
    guardian Priscilla Macias, as successor in
12  interest to Francisco Hurtado; E.H., a minor by    **DECLARATION OF ANGEL CARRAZCO,**
    and through her mother and guardian Priscilla      **JR.**
13  Macias, as successor in interest to Francisco
    Hurtado; F.H., a minor by and through his
14  mother and guardian Priscilla Macias, as           [*Hon. Dale A. Drozd, District Judge; Hon.*
    successor in interest to Francisco Hurtado; and    *Allison Claire, Magistrate J.*]
15  A.H., a minor by and through his mother and
    guardian Priscilla Macias, as successor in
16  interest to Francisco Hurtado,
17
18                         Plaintiffs,
19  v.
20  STATE OF CALIFORNIA; CALIFORNIA
    HIGHWAY PATROL; EDGARDO YEPEZ
21  aka EDGARDO LOPEZ; and DOES 1 through
    100,
22  inclusive,
                           Defendants.
23
24
25
26
27
28

                              1

## DECLARATION OF ANGEL CARRAZCO, JR.

I, Angel Carrazco, Jr., do hereby declare and state as follows:

1.        I am an attorney at law, duly licensed to practice before all courts of the State of California and the following Federal Courts: United States District Court for the Northern, Eastern, Central and Southern Districts of California.  My Professional Corporation is a partner in GUIZAR, HENDERSON & CARRAZCO, LLP, counsel of record for the Plaintiffs in the above-entitled action.  The facts stated in this declaration are of my own personal knowledge and/or I am informed and believe they are true and if called upon to testify as a witness, I could and would competently testify thereto.

2.        I have maintained contemporaneous time records reflecting the work and time spent on this case. As of this date I have so far spent **925.2** hours of billable time in connection with tasks reasonably necessary to the favorable resolution of this action. A copy of my time records for this case is attached hereto as "**Exhibit 13.**" I intend to include the billable time spent in connection with any further work on this case in a separate declaration and accompanying exhibit to be included in Plaintiffs' reply to the instant motion.

3.        I personally performed the work attributed to me in my billing statement and can personally attest that the hours I spent on this case have been reasonably expended in pursuit of litigation. I have tracked my time spent in one-tenths of an hour increments. I have attempted to keep contemporaneous records relating to the billable time I spent working on this case. Any time that I did not contemporaneously record has been reconstructed from detailed documentation from the case file and my notes. I have exercised billing judgment in excluding unproductive time and time spent on administrative or clerical tasks. I have reduced or omitted time that would not ordinarily be charged to or paid by a fee-paying client.

4.      In June of 1997-1998, I received bachelor degrees in International Business and Spanish Literature, from California State University, Fullerton.  In 2002, I received my J.D. degree from Loyola Law School.  I was admitted to the California Bar in 2004.  I have over 20 years of experience as a litigator.

5.      I have worked on Civil Rights Police Use of Force cases since I first began practicing law up until the present date. I have managed my own law firm specializing in workers' compensation, personal injury and civil right cases. I have specialized in handling police misconduct civil rights litigation for over twenty years, and I take on very difficult liability cases that require extensive expertise in this area of law.

6.      In 2014, I graduated from Gerry Spence's Trial Lawyers College, where I learned to become a better trial lawyer. It is now known as the Gerry Spence Method, which hones trial skills to ensure justice for indigents. In 2024, I returned to Thunderhead Ranch in Dubois, Wyoming, and completed the Advanced Trial Skills Program.

7.      I have obtained numerous recognitions for my work in civil rights, including receiving from the Orange County Trial Lawyers Association (OCTLA) the "TOP GUN" Trial Lawyer of the Year award in 2018.

8.      In 2022, I also received the "TOP GUN" Trial Lawyer of the Year Award from OCTLA.

9.      In 2022, I was a finalist for the "2022 Street Fighter of the Year" award from the Consumer Attorneys of California ("CAOC").

10.     I have also been elected as a "Super Lawyer" every year since the year 2019

11.     I have tried in excess of thirty (40) cases to Jury Verdict and some have settled post-verdict --hung Jury.  I provide a list of the most notable cases within the last 10 years:

DECLARATION

A.      Lopez v. City of Anaheim -- Shooting death captured on bystander video.  After extensive litigation and meticulous trial preparation, a fair settlement was reached which included a settlement of approximately $6,000,000.

B.      Noel Aguilar v. County of Los Angeles, et. al. Shooting death captured on bystander video.  Extensive litigation.  $2,970,000.00.

C.      Estate of Ernesto Canepa vs. City of Santa Ana, et. al. Police shooting of man sitting in car.  Police claim reaching.  Extensive litigation.  $2,875,000.00.

D.      Andrew Garcia v. City of Garden Grove, et al. Police shooting of a young man running away from the police.  Extensive litigation.  $2,200,000.00.

E.      Estate of Antonio Zambrano Montes vs. City of Pasco (WA) – Internationally shown video of man shot to death by police while throwing rocks at police on a street in Pasco Washington.  Federal Court, Washington – Large Dollars resolution.

F.      T.N.A. v. City of Banning, et al. Police shooting of unarmed man. Police claim reaching for a gun.  Extensive litigation.  $1,850,000.00.

G.      Damion Russell vs. City of Los Angeles, et. al. Homeless person handcuffed and placed face down.  Police claim excited delirium.  Extensive litigation.  $1,800,000.00.

H.      Huizar v. City of Anaheim, et al. Jury Verdict with no offer. $200,000 ($1.755 million settlement with statutory fees) jury verdict after re-trial.

I.      D.F. v. City of Anaheim, et al. Police shooting of unarmed man. Police claim reaching for a gun.  Extensive litigation.  $1,650,000.00.

J.      S.A.C. v. County of San Diego, et al. Police shooting of unarmed man.  Police claimed reaching for a gun.  Extensive litigation.  $1,500,000.00.

K.       Estate of Steve Salgado vs. City of Santa Ana, et. al. – 16 year-old shot to death running away with thrown cell phone.  Captured on security camera video.  Heavily litigated $1,350,000.00.

L.       Estate of Oscar Ramirez v. County of Los Angeles, et. al.  – Late 20's man shot by Sheriff Deputy while alone.  Heavily litigated proven by cross examination and bullet trajectories. Story made into a documentary film.  $1,250,000.00.

M.       Millions of Dollars in settlements (many single cases over $1 million and $2 million), in numerous additional police shootings, asphyxiation, beatings – Gaeta, Hunter, Hermosillo, Hernandez, Noe, Padilla, Flores, Ramos, Matthew Hurtado, Alvarado, Coronel, Aguirre, Aceves, many more.

12.      I have been involved in litigating approximately 110 civil rights cases over the last 20 years.

13.      I started working on this Francisco Hurtado case in October of 2018.  The case was very, very difficult from the beginning.  Police shooting cases are hard to win and harder when the person shot had a gun anywhere near them, they were supposedly leading the police on a vehicle pursuit and/or an allegation that they were under the influence of drugs or alcohol when shot.  This case had all three allegations by the police that need to be disproved.  There was a gun in the car, video of the police following the car with lights on and there also an allegation of use of drugs.

14.      We retained a biomechanical and bullet trajectory expert, Jesse Wobrock, Ph.D., to analyze the medical evidence to show that the path of the bullets demonstrated that Francisco Hurtado was not in the position claimed by the shooter, Edgardo Yepez, when Yepez shot him.

15.      We retained a toxicology expert, Okorie Okorocha, to examine any drug evidence.  We subpoenaed the drug records and we showed there was no test of the blood by

5

DECLARATION

GCMS type testing.  There were no actual grams per milliliter levels of amounts in evidence.
Mr. Okorocha showed that there was no admissible drug evidence based on the way samples
have to be tested and the absence here of any confirmatory GCMS tests.

16.     We broke down the video of the supposed "pursuit" to show that the speeds were
not that fast, the police eventually turned off the lights and the police admitted that at the time he
exited Hurtado was not being pursued.

17.     I put hundreds of hours to try to develop and prove this case and the damages
suffered.  I have done these types of cases for over 20-years and this is probably the most hours I
have ever spent in any single case of this (or any other) type.  This case has literally lasted for
over six years.  We took and defended large numbers of depositions and we hired a team of the
most able and seasoned experts, that included, but is not limited to, Scott DeFoe (Police
Practices); Jesse Wobrock, Ph.D. (Biomechanical bullet trajectory); Joshua Prager, M.D. (World
renowned expert on CPRS); Christopher Stephenson (Physical Medicine and Rehabilitation);
Marilyn Jacobs, Ph.D. (Psychology); Mary Meinhard (Life Care Planner); and James Mills
(economist).

18.     We poured over and reviewed and re-reviewed the medical records, the photos,
the videos (audio), the statements and other evidence. I also traveled to Modesto many times
from Tustin, California.

19.     We prepared for hours and hours to take the depositions of the Defendants and
used their own after shooting statements and other evidence to show inconsistencies in their
stories, including that one officer was saying one thing happened and the other officer something
else.  I prepared for a lengthy amount of time to depose, cross-examine and impeach the opinions
of defense shooting expert, Clarence Chapman.

DECLARATION

20.     We had to oppose the Motion for Summary Judgment, and we researched issues like Qualified Immunity, cases of guns or weapons in hand but possession not enough to use deadly force, and we prepared a finely tuned but super extensive separate statement of facts response including using diagrams to show that the shot position of Hurtado was inconsistent factually with the statements of Yepez, the shooter.  The Memorandum of Points and Authorities had the already prepared diagram by our biomechanical expert that we pasted right into the P and A.  (We had to arrange for the biomechanical expert to go to the scene of the incident and to meet with Mr. Hurtado and examine his bullet strike wounds). The MSJ Opposition was something that Chris Holm and Kent Henderson put in many hours, arriving early in the morning, day after day, and staying to midnight or later many nights and filing the Opposition at 11:30 p.m. on the day it was due (because we tried to make it very, very good).

21.     We obtained several previous deposition transcripts of the defense police practices expert, Clarance Chapman, to make sure we could impeach him if he tried to change several opinions he gave in other cases.  One of the cases in which Chapman was an expert was Salgado v. City of Santa Ana where our office took Chapman's deposition and already had his transcript (but we went out and got even more transcripts).  We knew that Chapman had previously testified that a shooting was okay even when the person was shot in the back and unarmed (Salgado case transcript) and we used this previous testimony to get Chapman to admit he testifies in cases where unarmed, shot in the back is okay with him.

22.     Expert depositions were arranged and then re-arranged.  Exhibits, Witness Lists, Motions in Limine, Pre-Trial Orders, Oppositions to MILs, and numerous other documents had to be prepared and reviewed.  There were countless emails, expert reports, medical records, meetings, and additional work to keep everything calendared.  The case started before COVID,

DECLARATION

was going on all through COVID and was tried twice, including after COVID had subsided to a great degree.  There were many zoom depositions which were new at the time.

23.    There was coordination with Mr. Galipo's office once Dale Galipo and Hang Le were working with us on the case.  We had strategy meetings, preparation and an outpost Airbnb for both trials for Kent Henderson, Nathan Henderson (Law Clerk), Antonio Gallegos (another Law Clerk) and I stayed / lived in Sacramento (away from our home office).

24.    I have spent approximately **$725,000.00** on costs in this case.  (See the GHC [Carrazco Law] costs which are immense in this case).

25.    Civil Rights cases are very hard to win.  Guizar, Henderson & Carrazco, LLP, is made up of three practitioners with over 90 years of combined experience in the field of civil rights litigation.  I have tried several civil rights cases in Federal Court and winning with a unanimous verdict is very difficult.  We have had some hung jury cases and many settlements, but there is huge risk in putting money, time and effort into these civil rights cases.  Nevertheless, we gave Francisco Hurtado and his family our all in this case for over six years and through two trials in Federal Court, hundreds of miles from our home offices and our families.

26.    Currently our firm has an active case list, with approximately 26 high profile use of force cases all involving serious injuries or death.

27.    This case involved a substantial amount of risk, a great deal of work and was vigorously litigated by a hardworking team of attorneys from Guizar, Henderson & Carrazco, L.L.P.  Combined with the extraordinary trial skill of Dale Galipo and the other outstanding lawyers at the Galipo Law Firm, like Hang Le, Plaintiffs' counsel together obtained outstanding results for our clients in this case.

28.     If Plaintiff I.H., et al.'s counsel were not awarded a fully compensatory fee in such a civil rights case, then this would discourage similarly situated attorneys from taking these types of cases.  Specifically, it would provide a disincentive for skilled attorneys to take cases involving these very difficult police shooting issues, which if anything require a higher level of legal expertise and experience than cases involving other types of civil litigation damages claims.

29.     Civil rights cases are difficult enough for attorneys to take and win, without the additional disincentive of a reduced fee at the end.  In sum, a reduction of the attorney's fees would inhibit the provision of high quality of legal services to civil rights victims which is antithetical to the purpose of 42 U.S.C. Sections 1983 and 1988 as enacted and as intended by the plain meaning of the statutes and the intent of the authors of those statutes.  In turn, Plaintiffs, such as I.H., et. al., would not be able to attract competent counsel who could achieve similar results.  Accordingly, Plaintiffs I.H., et. al.'s attorneys request the approval of the full amount of the requested attorneys' fees and costs.

30.     I have been practicing for over 20 years and I have prepared and litigated to trial cases in complex products liability, road design, construction accidents, Big Rig collisions, Traumatic Brain Injury (TBI), paralysis, burns and death (including pre-death, pulseless electrical activity pain and suffering) and Civil Rights cases.  My experience is broad in both Civil Rights and in other varied, complex, high-level, technical, high value litigation.  I have litigated against some of the very best defense counsel in the state and the country in these multiple sub-specialty areas of the law.  For the reasons stated above, and in the attorney's' fee motion, I request an hourly rate of **$1,000.00**.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.  Executed this 9th day of December 2024, at Tustin, California.

DECLARATION

/S/ ANGEL CARRAZCO, JR.

_____
Angel Carrazco, Jr., Declarant

DECLARATION