1  Humberto Guizar, Esq.     (SBN 125769) hguizar@ghclegal.com
   Kent M. Henderson, Esq.   (SBN 139530) hendolaw@gmail.com
2  Angel Carrazco, Jr. Esq.  (SBN 230845) angel@carrazcolawapc.com
   **GUIZAR, HENDERSON & CARRAZCO, LLP**
3  18301 Irvine Boulevard
   Tustin, CA  92780
4  Telephone: (714) 541-8600
   Facsimile:  (714) 541-8601
5

6  Attorneys for Plaintiffs I.H., et. al.

7

8                **UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11

12 | I.H., a minor by and through her mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; E.H., a minor by and through her mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; F.H., a minor by and through his mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; and A.H., a minor by and through his mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado, | CASE NO: 2:19-cv-02343-DAD-AC
13 | | **DECLARATION OF CHRISTOPHER L. HOLM**
14 | | [*Hon. Dale A. Drozd, District Judge; Hon. Allison Claire, Magistrate J.*]

19                      Plaintiffs,
   v.
20

21 STATE OF CALIFORNIA; CALIFORNIA
   HIGHWAY PATROL; EDGARDO YEPEZ
   aka EDGARDO LOPEZ; and DOES 1 through
22 100,
   inclusive,
23                      Defendants.
24
25 \\
26 \\
27 \\
28 \\

**DECLARATION OF CHRISTOPHER L. HOLM**

1

**DECLARATION OF CHRISTOPHER L. HOLM**

2

I, Christopher L. Holm, do hereby declare and state as follows:

3

1)      I am an attorney at law, duly licensed to practice before all courts of the State of

4

California and the following Federal Courts: the Central District of California, the Southern District

5

of California, and the Eastern District of California.  I am an attorney employed by GUIZAR,

6

HENDERSON & CARRAZCO, LLP, counsel of record for the Plaintiffs in the above-entitled action.

7

The facts stated in this declaration are of my own personal knowledge and/or I am informed and

8

believe they are true and if called upon to testify as a witness, I could and would competently testify

9

thereto.

10

2)      I have maintained contemporaneous time records reflecting the work and time spent

11

on this case. As of this date I have so far spent 746 hours of billable time in connection with tasks

12

reasonably necessary to the favorable resolution of this action. A copy of my time records for this

13

case is attached hereto as "Exhibit 15" to this Declaration.  I intend to include the billable time spent

14

in connection with any further work on this case in a separate declaration and accompanying exhibit

to be included in Plaintiffs' reply to the instant motion.

15

3)      I personally performed the work attributed to me in my billing statement and can

16

personally attest that the hours I spent on this case have been reasonably expended in pursuit of

17

litigation. I have tracked my time spent in one-tenths of an hour increments. I have attempted to keep

18

contemporaneous records relating to the billable time I spent working on this case. Any time that I

19

did not contemporaneously record has been reconstructed from detailed documentation from the case

20

file and my notes. I have exercised billing judgment in excluding unproductive time and time spent

21

on administrative or clerical tasks. I have reduced or omitted time that would not ordinarily be

22

charged to or paid by a fee-paying client.

23

4)      In June of 2002, I graduated from the University of Alaska, Fairbanks with a

24

Bachelors Degree in Business Administration, majoring in marketing and small business

25

management.  In May of 2012, I graduated from Pacific West College of Law with a Juris Doctor

26

degree, and I was admitted to the California Bar in January of 2016.  I have over 8 years of

27

experience as a litigator.

28

**DECLARATION OF CHRISTOPHER L. HOLM**

5)      I have worked on Civil Rights Police Use of Force cases since I first began practicing law up until the present date.  I also work on complex, large personal injury cases and have done so for the last 8.5 years.  Since I began practicing law, my practice and experience has been fully invested in personal injury and Civil Rights Police Use of Force cases.  I have worked on numerous police misconduct and civil rights cases, including cases of injuries suffered in the Orange County Jails.  I have extensive experience in all aspects of litigating these cases, from drafting complaints to discovery, from taking and defending depositions of parties to taking and defending expert depositions, to trial preparation and all facets involved therein.

6)      In 2022, Mr. Carrazco and myself were finalists for the 'Street Fighter of Year' Award, a prestigious honor presented by the Consumer Attorneys of California for our work performed in the matter of Hindawi v. Value Cars, Inc., a Workers Compensation case.  This honor is presented to a plaintiff lawyer who has achieved a significant result in a case "that assisted consumers or changed consumer law for the better in California."  Mr. Hindawi sustained severe injuries while moving motorcycles in the course and scope of employment.  The case took ten (10) years, going to trial before the Workers Compensation Appeals Board.  A verdict was reached for Mr. Hindawi, and employer appealed the verdict to the Supreme Court of California, who declined to hear the case.  Ultimately, a settlement was reached with employer for over a million dollars.

7)      I have been heavily involved in preparing scores of personal injury and federal civil rights for trial, and have been involved in scores of multi-million dollar cases, and even more high six-figure cases.  I have multiple six-figure dollar settlements in Civil Rights, Personal Injury, Product Liability and other litigation where I was the principal attorney who extensively prepared the case for trial.  In terms of Civil Rights cases, some representative cases are:

a.  Estate of Antonio Zambrano Montes vs. City of Pasco (WA) – Internationally shown video of man shot to death by police while throwing rocks at police on a street in Pasco Washington.  Federal Court, Washington – Large Dollars resolution.

b.  Estate of Steve Salgado vs. City of Santa Ana, et. al. – 16 year-old shot to death running away with thrown cell phone.  Captured on security camera video.  Heavily litigated $1,350,000.00.

**DECLARATION OF CHRISTOPHER L. HOLM**

c. <u>Estate of Oscar Ramirez v. County of Los Angeles, et. al.</u> – Late 20's man shot by Sheriff Deputy while alone. This was one of the very first cases I worked on as a new associate at Guizar, Henderson & Carrazco, LLP. This case was heavily litigated and proven by cross examination and bullet trajectories. Story made into a documentary film. $1,250,000.00.

d. Millions of Dollars in settlements (many single cases over $1 million and $2 million), in numerous additional police shootings, asphyxiation, beatings – Gaeta, Hunter, Hermosillo, Hernandez, Noe, Padilla, Flores, Ramos, Matthew Hurtado, Alvarado, Coronel, Aguirre, Aceves, many more.

8) I have been involved in litigating an estimated 20-30 civil rights cases over the last 8.5 years.

9) I started working on this Francisco Hurtado case in October of 2018. The case was very, very difficult from the beginning. Police shooting cases are hard to win and harder when the person shot had a gun anywhere near them, they were supposedly leading the police on a vehicle pursuit and/or an allegation that they were under the influence of drugs or alcohol when shot. This case had all three allegations by the police that need to be disproved. There was a gun in the car, video of the police following the car with lights on and there also an allegation of use of drugs.

10) We retained a biomechanical and bullet trajectory expert, Jesse Wobrock, Ph.D., to analyze the medical evidence to show that the path of the bullets demonstrated that Francisco Hurtado was not in the position claimed by the shooter, Edgardo Yepez, when Yepez shot him.

11) We retained a toxicology expert, Okorie Okorocha, to examine any drug evidence. We subpoenaed the drug records and we showed there was no test of the blood by GCMS type testing. There were no actual grams per milliliter levels of amounts in evidence. Mr. Okorocha showed that there was no admissible drug evidence based on the way samples have to be tested and the absence here of any confirmatory GCMS tests.

12) We broke down the video of the supposed "pursuit" to show that the speeds were not that fast, the police eventually turned off the lights and the police admitted that at the time he exited Hurtado was not being pursued.

4

**DECLARATION OF CHRISTOPHER L. HOLM**

13)     I have put in huge numbers of hours to try to develop and prove this case and the damages suffered.  I have done these types of cases for over eight years, and this case and this is probably the most hours I have ever spent in any single case of this (or any other) type.  This case has literally lasted for over six years.  Our office took and defended large numbers of depositions and we hired a team of the most able and seasoned experts, that included, but is not limited to, Scott DeFoe (Police Practices); Jesse Wobrock, Ph.D. (Biomechanical bullet trajectory); Joshua Prager, M.D. (World renowned expert on CPRS); Christopher Stephenson (Physical Medicine and Rehabilitation); Marilyn Jacobs, Ph.D. (Psychology); Mary Meinhard (Life Care Planner); and James Mills (economist).

14)     We poured over and reviewed and re-reviewed the medical records, the photos, the videos (audio), the statements and other evidence.

15)     We prepared for hours and hours to take the depositions of the Defendants and used their own after shooting statements and other evidence to show inconsistencies in their stories, including that one officer was saying one thing happened and the other officer something else.  I heavily assisted in helping the trial attorneys prepare for depositions of parties and defense experts in this matter.

16)     We had to oppose the Motion for Summary Judgment, and we researched issues like Qualified Immunity, cases of guns or weapons in hand but possession not enough to use deadly force, and we prepared a finely tuned but super extensive separate statement of facts response including using diagrams to show that the shot position of Hurtado was inconsistent factually with the statements of Yepez, the shooter.  The Memorandum of Points and Authorities had the already prepared diagram by our biomechanical expert that we pasted right into the Points and Authorities. (We had to arrange for the biomechanical expert to go to the scene of the incident and to meet with Mr. Hurtado and examine his bullet strike wounds). The MSJ Opposition was something that Kent Henderson and I put an extensive amounts of time and work into, arriving early in the morning, day after day, and staying to midnight or later many nights and filing the Opposition at 11:30 p.m. on the day it was due (because we tried to make it very, very good).

17)     We obtained several previous deposition transcripts of the defense police practices expert, Clarance Chapman, to make sure we could impeach him if he tried to change several

**DECLARATION OF CHRISTOPHER L. HOLM**

1  opinions he gave in other cases.  One of the cases in which Chapman was an expert was <u>Salgado v.</u>

2  <u>City of Santa Ana</u> where our office took Chapman's deposition and already had his transcript (but

3  we went out and got even more transcripts).  We knew that Chapman had previously testified that a

4  shooting was okay even when the person was shot in the back and unarmed (Salgado case transcript)

5  and we used this previous testimony to get Chapman to admit he testifies in cases where unarmed,

6  shot in the back is okay with him.

7         18)     Expert depositions were arranged and then re-arranged.  Exhibits, Witness Lists,

8  Motions in Limine, Pre-Trial Orders, Oppositions to MILs, and numerous other documents had to be

9  prepared and reviewed.  There were countless emails, expert reports, medical records, meetings, and

10  additional work to keep everything calendared.  The case started before COVID, continued moving

11  throughout COVID and was tried twice, including after COVID had subsided to a great degree.

12  There were many Zoom depositions which were new at the time.

13         19)     Since this case first came to our offices, I have intimately involved in the litigation

14  process. Since the onset, I have worked on many aspects of this case.  I researched and drafted the

15  first Complaint and prepared it for filing.  I was involved in weekly meeting about the case,

16  discussing strategy and developments.  I sent and received hundreds of emails and other such

17  correspondence.  I was heavily involved with Mr. Kent Henderson, one of the three primary partners

18  of Guizar, Henderson, & Carrazco, LLP in researching, preparing and presenting for filing the

19  Opposition to Motion for Summary Judgment.

20         20)     Mr. Carrazco spent hundreds and hundreds of thousands of dollars on costs in this

21  case.  (See the GHC [Carrazco Law] costs which are immense in this case).

22         21)     Civil Rights cases are very hard to win.  Guizar, Henderson & Carrazco, LLP, is

23  made up of three partners with over 80 years of combined experience in the field of civil rights

24  litigation.  I have been an associate of GHC since I was licensed in 2016.  Civil rights cases in

25  Federal Court are very difficult, and winning with a unanimous verdict is very difficult.  In spite of

26  all the work we put into such a case, a few over the years I have worked on have had some hung jury

27  cases and many settlements but there is huge risk in putting money, time and effort into these civil

28  rights cases.  Nevertheless, we gave Francisco Hurtado and his family our all in this case for over six

**DECLARATION OF CHRISTOPHER L. HOLM**

1  years and through two trials in Federal Court, hundreds of miles from our home offices and our

2  families.

3     22)  Currently our firm has an active case list, with approximately 26 high profile use of

4  force cases all involving serious injuries or death.

5     23)  This case involved a substantial amount of risk, a great deal of work and was

6  vigorously litigated by a hardworking team of attorneys from Guizar, Henderson & Carrazco, L.L.P.

7  Combined with the extraordinary trial skill of Dale Galipo and the other outstanding lawyers at the

8  Galipo Law Firm, like Hang Le, Plaintiffs' counsel together obtained outstanding results for our

9  clients in this case.

10    24)  In cases where I have sought to have my hourly fee approved by the Federal Courts,

11 there was evidence in some cases of my skill and experience being within the upper quartile of

12 practitioners in this area and/or of having the fees requested approved based on experience, skill of

13 work product, etc.

14    25)  If Plaintiff I.H., et.al.'s counsel were not awarded a fully compensatory fee in such a

15 civil rights case, then this would discourage similarly situated attorneys from taking these types of

16 cases.  Specifically, it would provide a disincentive for skilled attorneys to take cases involving these

17 very difficult police shooting issues, which if anything require a higher level of legal expertise and

18 experience than cases involving other types of civil litigation damages claims.

19    26)  I have tried to become a student of and knowledgeable about 42 U.S.C. §§1983,

20 1985, 1988, etc. including their origins, history and purpose.  The reality is the "Ku Klux Klan Act"

21 or aka the "Enforcement Act of 1871" is a Civil War Reconstruction Era statue passed by the radical

22 Republicans (including as sponsored by its primary author, Congressman Samuel Shellbarger).  The

23 history is important here because the law was drafted to incentivize lawyers to take on cases where

24 the actors who caused injury and death (highwaymen, deputized and others in the former

25 Confederate South) had violated the civil rights (lynched, beaten) persons (mainly newly freed

26 slaves) while "acting under color of state law or authority."

27    27)  Civil rights cases are difficult enough for attorneys to take and win, without the

28 additional disincentive of a reduced fee at the end.  In sum, a reduction of the attorney's fees would

inhibit the provision of high quality of legal services to civil rights victims which is antithetical to

**DECLARATION OF CHRISTOPHER L. HOLM**

1
2
3
4
5

the purpose of 42 U.S.C. §§1983 and 1988 as enacted and as intended by the plain meaning of the statutes and the intent of the authors of those statutes.  In turn, Plaintiffs, such as I.H., et.al., would not be able to attract competent counsel who could achieve similar results.  Accordingly, Plaintiffs I.H., et.al.'s attorneys request the approval of the full amount of the requested attorneys' fees and costs.

6
7
8
9
10
11
12

      28)     I have been practicing for over eight years and I have involved in the preparation and litigation up to and including trial in my relatively short time as an attorney in a variety of complex matter, including personal injury, wrongful death, premises liability, Traumatic Brain Injury (TBI), and death (including pre-death, pulseless electrical activity pain and suffering) and Civil Rights cases.  I have been heavily involved in litigation with Guizar, Henderson & Carrazco, LLP against some of the very best defense counsel and firms in the state and the country in these multiple sub-specialty areas of the law.  For the reasons stated above, and in the attorney's' fee motion, I request an hourly rate of $ 600.00.

13
14
15

      I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.  Executed this 9th day of December 2024, at Tustin, California.

16

                      /S/ CHRISTOPHER L. HOLM

17

                      _____

18

                       Christopher L. Holm, Declarant

19
20
21
22
23
24
25
26
27
28

**DECLARATION OF CHRISTOPHER L. HOLM**