**DECLARATION OF MICHAEL J. HADDAD**

I, Michael J. Haddad, declare as follows:

1. I write this declaration in support of the Plaintiffs' motion for reasonable attorneys' fees in this matter. My own background and experience are set forth below at ¶¶ 2-16. My opinions concerning this matter start at ¶ 17.

2. **My Background and Experience.** I am an attorney licensed to practice before all the courts of the State of California and the State of Michigan, as well as federal courts in the Northern District of California, Eastern District of California, Eastern District of Michigan, Western District of Michigan, Ninth Circuit Court of Appeals, Sixth Circuit Court of Appeals, and the United States Supreme Court.

3. I have been a civil rights trial lawyer for about 33 years, having been admitted to the Michigan Bar in 1991 and the California Bar in 1997. I graduated from the University of Michigan Law School in 1991, and I have practiced in federal and state courts since that time. I have tried 25 cases, mostly civil rights cases in federal courts, including over a dozen police misconduct cases.

4. Currently, I am a partner in the firm of Haddad & Sherwin LLP, in Oakland, California, which I formed with my law partner and wife, Julia Sherwin, in October, 1998. My current firm consists of four attorneys, myself, my partner Julia Sherwin, one associate attorney and two paralegals. We specialize in civil rights cases, particularly in the areas of police misconduct and wrongful death, most often in federal courts. We handle every aspect of our cases, from retention through litigation, negotiations, mediations, trials and appeals. In our present practice, Ms. Sherwin and I are also responsible for all law firm business matters, including generation of new cases and work.

5. Before moving to California in 1998, I was a partner in a 15-attorney civil rights/personal injury firm, Goodman, Eden, Millender & Bedrosian, located in Detroit, Michigan. Goodman, Eden, Millender & Bedrosian (GEMB), originally formed in 1950 by Ernest Goodman and George Crockett (who later served a distinguished career in the United States House of Representatives), was the first racially integrated law partnership in the country. I began working

on civil rights cases at GEMB as a law clerk during the summer of my first year of law school (1989), was hired upon graduation in 1991, and became a partner at the beginning of 1997. I have been working on civil rights cases as an attorney, particularly police misconduct cases, for a few months shy of 30 years.

6.   By the time I came to California in 1998, I had tried over 10 cases in front of a jury, including a $461,000 verdict with $85,000 in punitive damages in a police false arrest/excessive force case. I had also successfully handled hundreds of civil rights or personal injury cases, many of which were high profile, and many of which resolved for very substantial settlements. Additionally, I had served as a mediator for the Wayne County Circuit Court, as a cooperating attorney handling cases with or for the ACLU of Michigan and the Sugar Law Center for Social Justice, and I was active on the Executive Board of the National Lawyers Guild, Detroit Chapter.

7.   For six years (from 2009-2015) I served as the President of the Board of Directors of the National Police Accountability Project (NPAP), which consists of over 600 attorneys and other professionals involved in handling police misconduct cases around the country. A goal of NPAP is to improve the practice of civil rights law nationally on behalf of victims of police misconduct through professional peer advice, continuing legal education, and providing amicus briefs to appellate courts in appropriate cases. I served on the NPAP Board of Directors for over 20 years.  I continue to write amicus briefs for NPAP which are submitted in Ninth Circuit or Supreme Court cases with important issues related to police and jail misconduct cases brought under 42 U.S.C. § 1983. I have also served on the Boards of Governors of the Alameda - Contra Costa Trial Lawyers Association (ACCTLA) (Board member for nine years, including Secretary and Treasurer; Education Committee Chairman for three years) and the Consumer Attorneys of California (CAOC) (Board member for two years). I have served as an advisor and panel attorney for Bay Area Police Watch (BAPW), and have been cooperating counsel with the Center for Constitutional Rights (CCR) in New York City, working on behalf of CCR on a number of matters.

8. I am regularly asked to speak at seminars and events concerning civil rights issues on behalf of the National Police Accountability Project (NPAP), law enforcement groups, local law schools, legal educational organizations, and other groups. For example:

- In 2022, I presented at the Northern District Practice Program, Fall Civil Symposium, on qualified immunity.
- In 2021, I presented to NPAP about handling restraint asphyxia cases.
- In 2020, I have given multiple presentations to NPAP, Consumer Attorneys Association of Los Angeles (CAALA), and Consumer Attorneys of California (CAOC) concerning handling Bane Act cases.
- On multiple occasions in 2015, 2016, and 2017 at the invitation of the Public Agency Training Council (PATC) and by the Legal & Liability Risk Management Institute (LLRMI) I trained large groups of law enforcement officers, command staff, and risk managers (groups of 80-150) in Las Vegas, NV, and Ft. Myers, FL, concerning current issues in internal affairs and police misconduct liability.
- On July 31, 2015, I spoke at the American Bar Association (ABA) convention in Chicago on a panel concerning police misconduct issues post-Ferguson.
- At NPAP seminars, I co-presented (with Julia Sherwin) programs in August 2016, in Los Angeles, on "Police Misconduct Trials, A-Z," and in October, 2015, in Oakland, on jury selection and focus groups to over 50 civil rights attorneys. In October, 2010, I presented at an annual day-long seminar on litigating police misconduct cases held in New Orleans. I also organized and moderated one- and two-day long NPAP seminars in October, 2008 (Detroit) and in May, 2013 (Chicago).
- I have presented at police liability legal seminars for Lorman Education Services – for both attorneys and law enforcement officers – on at least eight occasions from 2002 -2013.
- For several years, I have been invited to speak at advanced civil rights litigation classes at Boalt Hall and Hastings College of the Law.

-3-
DECLARATION OF MICHAEL J. HADDAD

- I have presented at many other legal seminars and classes on various civil rights topics over the years, including for the San Francisco Trial Lawyers' Association (SFTLA), the Alameda-Contra Costa Trial Lawyers Association (ACCTLA), the National Lawyers Guild (NLG), and Bay Area Police Watch (BAPW).

9. My partner, Julia Sherwin, and I prepare for and go to trial in civil rights cases regularly:

    a. In June, 2000, we successfully tried an employment discrimination case in front of the Honorable William H. Orrick in U.S.D.C. (N.D. Cal.), over three weeks. We obtained a judgment in favor of the plaintiff with a finding that the defendant county intentionally discriminated against him because he spoke with a slight Arabic accent and that the county was deliberately indifferent to the need to train its employees on accent discrimination as a form of national origin/ race discrimination. This was the first judgment for intentional discrimination against the county, and the first "failure to train" accent discrimination verdict in the country. The district court's order of attorneys' fees was affirmed in an unpublished Ninth Circuit opinion. (*Hasan v. Contra Costa County, et al.*, U.S.D.C. No. C-99-0084 WHO).

    b. In July, 2001, we won a verdict of over $1.2 million (reduced by 30% for the decedent's contributory negligence) on behalf of the mother of 33-year-old, mentally ill man who was shot and killed by police. After a three week trial, the jury found that the police negligently created the situation where deadly force was ultimately used. The case was tried in front of the Honorable David F. Levi in U.S.D.C. (E.D. Cal). The judgment was affirmed in an unpublished Ninth Circuit opinion. (*Lifton v. Cities of Vacaville and Fairfield, et al.*, U.S.D.C. No. S-98-1678 DFL).

    c. In August, 2002, we won a verdict of $500,000 plus a finding of punitive damages liability on behalf of an African-American, San Leandro High School teacher who was subjected to discriminatory discipline for opposing an environment of homophobia and violence at school. The plaintiff sustained no economic loss or change in employment status other than written discipline placed in his personnel file; the entire

verdict was for untreated emotional distress. That case was tried before the Honorable Bonnie Sabraw in Alameda County Superior Court, and settled before the punitive damages phase well in excess of the verdict. (*Debro v. San Leandro Unified School District*, No. H 211565-4).

  d. In January, 2003, after settling a wrongful death truck accident case on behalf of one of the decedent's three children, we did a damages trial for our client, the decedent's posthumously born son. That case was tried before the Honorable John F. Kraetzer in Alameda County Superior Court, and resulted in our client receiving a favorable apportionment of the settlement proceeds. (*Andrews v. Moore and Son Trucking*, No. 829848-2).

  e. In August, 2003, we tried and won a small excessive force case against a very high ranking member of the Sacramento County Sheriff's Department. That case was tried twice (due to a mistrial the first time) before the Honorable William B. Shubb in U.S.D.C. (E.D. Cal.). (*Gosciniak v. County of Sacramento, et. al.*, No. CIV. S-01-0174 WBS).

  f. In April, 2006, we tried a racial profiling case on behalf of an African-American CHP officer who was racially profiled at gunpoint by local officers, while he was on duty in plain clothes. That was a hard fought case that we lost at trial. That is the only trial we have lost in California. That case was tried before the Honorable Charles R. Breyer in U.S.D.C. (N.D. Cal.). (*Morgan v. City of Pleasant Hill, et al.*, No: C-04-04865 CRB).

  g. In April, 2009, we tried and won a false arrest/excessive force case arising from a high-risk stop and arrest at gunpoint of two African twin sisters, who had been sightseeing in West Sacramento with their young children. At the close of all of the evidence, the Court granted Judgment as a Matter of Law (JMOL) in favor of both Plaintiffs under both § 1983 and Cal. Civil Code § 52.1, and the jury awarded damages. That case was tried before the Honorable John A. Mendez in U.S.D.C. (E.D. Cal.). (*Beecham v. City of West Sacramento*, 2:07-CV-01115-JAM).

1       h.      In March and April, 2010, we tried a number of strip search claims for test
2   plaintiffs selected from a group of 44 plaintiffs in bench trials before the Honorable
3   Marilyn Hall Patel. We were co-counsel with attorneys John Burris and Ben Nisenbaum
4   on these strip search cases arising from the Oakland Police Department's written policies
5   and practices permitting public strip searches. We won for two plaintiffs, who the Court
6   awarded over $245,000, including punitive damages. (*Smith, et al. v. City of Oakland*,
7   No. 07-6298 MHP). Previously, the Court granted Plaintiffs' motion for partial summary
8   judgment challenging the constitutionality of the OPD strip search policies. (*Foster v.
9   City of Oakland*, 621 F. Supp. 2d 779 (N.D. Cal. 2008)). Together with the Law Offices
10  of John L. Burris, we represented 44 clients in related strip search cases pending before
11  United States District Court (N.D. Cal.). (*Taylor, et al. v. City of Oakland*, Related Case
12  No. C-04-4843 SI). In late 2012, we settled the cases of the remaining 39 plaintiffs for
13  $4.6 million, plus injunctive and policy relief.

14      i.      In June, 2011, we tried and won a verdict of over $217,000 in an excessive
15  force case brought by the 2006 "Mr. Universe," who was severely beaten by police while
16  he was having a diabetic emergency outside a movie theater. That case was tried before
17  the Honorable Richard Seeborg in U.S.D.C. (N.D. Cal.). (*Burns v. City of Redwood City*,
18  No. C-08-2995 RS).

19      j.      In October and November, 2013, we tried and won a verdict of over
20  $575,000 for a former San Francisco Police Officer who was wrongfully arrested while
21  jogging in Golden Gate Park after work. That case was tried over six weeks in San
22  Francisco Superior Court before a jury and the Honorable Lynn O'Malley-Taylor.
23  (*Cornell v. City and County of San Francisco*, No. CGC-11-509240).

24      k.      In August, 2014, we tried and won a verdict against the United States of
25  America in a bench trial under the Federal Tort Claims Act (FTCA) arising from a
26  federal park ranger Tasing a dog walker who had ignored orders to remain detained for a
27  leash violation. The Court awarded the Plaintiff a judgment for $50,000 for a single-
28  cycle Tasing, and wrote an influential order finding that the ranger used excessive force

in Tasing an unarmed, non-threatening man who "fled" from his detention for a minor infraction. The case was tried before the Honorable Jacqueline Scott Corley, and the judgment is reported in *Hesterberg v. United States*, 71 F.Supp.3d 1018 (N.D. Cal. 2014).

l. In February, 2015, after one week of trial, we obtained the largest wrongful death settlement in a civil rights case in the history of California – $8.3 million – for the adult children of a 50-year-old alcoholic man who died in jail from untreated, severe alcohol withdrawal and a brutal beating and Tasing by jail deputies. The settlement also included statewide injunctive relief, requiring the private, for-profit jail health care corporation, Corizon, to staff its jails in California with Registered Nurses, rather than unqualified Licensed Vocational Nurses, to perform all inmate medical assessments. The case was tried before the Honorable John S. Tigar in U.S.D.C. (N.D. Cal.). (*M.H. v. County of Alameda*, C-11-2868 JST (LB)).

m. In June, 2015, we won a $125,000 jury verdict for a 76-year-old man who was punched once, taken to the ground, and unlawfully arrested for approximately 12 hours by a CHP officer. The trial of that case also revealed a CHP quota for enforcement stops in the Sacramento Area, and received prominent news coverage. That case was tried before the Honorable William B. Shubb in U.S.D.C. (E.D. Cal.). (*Orr v. CHP*, No. 2:14-cv-00585-WBS-EFB).

n. In June, 2017, we won a $1.1 million verdict for a 62-year-old man who was attacked by a sheriff deputy's canine when he had trespassed into a secured construction site at night to rescue a cat. The plaintiff had moderate injuries that took approximately a year to heal, with four medical visits. The verdict includes $100,000 in punitive damages against the canine handler. That case was tried before Magistrate Judge Laurel Beeler in U.S.D.C. (N.D. Cal.). *May v. San Mateo County, et al.,* No. 3:16-cv-00252-LB (DMR).

10. Since my firm formed in 1998, my partner and I have tried 14 civil cases – the vast majority of them police misconduct cases in federal courts – and we have won 13 of those 14 cases tried. In the Eastern District, we won all four police misconduct cases we tried.

11. My firm also has settled scores of substantial civil rights cases, many of which are reflected on the "Results" page of my firm's website: https://www.haddadandsherwin.com/results/

12. Additionally, my firm has achieved important reforms beyond monetary compensation for our clients in many cases, as reflected on the "Reforms" page of my firm's website: https://www.haddadandsherwin.com/reforms/

13. I also have extensive appellate experience in civil rights cases. I have briefed and argued more than a dozen appeals in civil rights cases, mostly federal appeals in the Ninth or Sixth Circuits. My clients prevailed in all but one of those appeals. I also have drafted the briefs and have been counsel for *amici* before the Ninth Circuit (twice), the United States Supreme Court (once), and the California Supreme Court (once). For approximately the last 15 years, I have served on the *Amicus* Committee of the National Police Accountability Project (NPAP), which is responsible for vetting approximately 10-20 requests for *amicus* briefs per year, and for drafting, editing and reviewing NPAP's *amicus* briefs before federal circuit courts and the Supreme Court. Additionally, I have always personally briefed and argued virtually all dispositive motions, all legal issues at trial, and appeals, in my and my firm's cases, and I have worked to develop a high level of knowledge and expertise in the civil rights legal issues we regularly encounter. Attorneys throughout the state and around the country often contact me for advice on their civil rights cases, and I frequently share with them multiple briefs I have written on legal issues that arise in civil rights and law enforcement misconduct cases.

14. Some of my reported cases include: *Cuevas v. City of Tulare*, 107 F.4th 894 (9th Cir. 2024); *Hampton v. California*, 84 F.4th 754 (9th Cir. 2023), *cert denied sub nom Diaz v. Polanco*, 144 S.Ct. 2519 (2024); *Polanco v. Diaz*, 76 F.4th 918 (9th Cir. 2023), *cert denied sub nom Diaz v. Polanco*, 144 S.Ct. 2519 (2024); *Martinez v. City of Pittsburg*, 809 Fed.Appx. 439 (9th Cir. 2020); *Orr v. Plumb*, 884 F.3d 923 (9th Cir. 2018); *Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766 (2017) (review denied); *Green v. City and County of San*

1  *Francisco*, 751 F.3d 1039 (9th Cir. 2014); *Wilkins v. City of Oakland*, 350 F.3d 949 (9th Cir.
2  2003); *Spencer v. U.S.D.C.*, 393 F.3d 867 (9th Cir. 2004); *Johnson v. Shasta County*, 83
3  F.Supp.3d 918 (E.D. Cal. 2015); *Moore v. City of Vallejo*, 73 F.Supp.3d 1253 (E.D. Cal. 2014);
4  *Hesterberg v. United States*, 71 F.Supp.3d 1018 (N.D. Cal. 2014); *M.H. v. County of Alameda*, 62
5  F.Supp.3d 1049 (N.D. Cal. 2014); *M.H. v. County of Alameda*, 90 F.Supp.3d 889 (N.D. Cal.
6  2013); *Burns v. Redwood City*, 737 F.Supp.2d 1047 (N.D. Cal. 2010); *Foster v. City of Oakland*,
7  675 F.Supp.2d 992 (N.D. Cal. 2009) *Foster v. City of Oakland*, 621 F.Supp.2d 779 (N.D. Cal.
8  2008); *Dimas v. City of Warren*, 939 F.Supp. 554 (E.D. Mich. 1996); and *Johnson v. Wayne*
9  *County*, 213 Mich. App. 143 (Mich. Ct. App. 1995).

15. For over twenty years, I have held an "AV rating" from Martindale-Hubbell, based on a survey of attorneys and judges in the community. Martindale-Hubbell defines this rating as follows: "An AV rating reflects an attorney who has reached the heights of professional excellence. He or she has usually practiced law for many years, and is recognized for the highest levels of skill and integrity." I have also been named a "Northern California Super Lawyer" in the area of civil rights by *San Francisco Magazine*, from 2004 to 2024 based on a survey of Northern California lawyers. Since 2013, I have been selected to the National Trial Lawyers' Top 100 Attorneys in California. I am also a member of the Million Dollar Advocates Forum.

16. My firm, Haddad & Sherwin LLP, has been recognized in the Bar Register of Preeminent Lawyers for high professional legal standards and ethics, since 2008. My firm's website, containing additional information about me and my firm's cases, is at www.haddadsherwin.com.

17. **My Knowledge and Opinions Concerning Attorney Dale Galipo.** I have known Dale Galipo professionally for approximately ten years, and I learn about his frequent and consistently outstanding successes in civil rights cases as reported in the news and on list serves I regularly monitor. In August, 2016, Mr. Galipo and I spoke at a day-long seminar in Los Angeles on "Police Misconduct Trials A-Z" that was sponsored by the National Police Accountability Project.  In May, 2023, I attended a two-day intensive seminar taught by Mr. Galipo for Trial Lawyers University about trying police misconduct cases.  Due to our professional interest in each

other's work, Mr. Galipo and my firm worked together on a police shooting case in the Eastern District. When it comes to success at trying challenging police misconduct cases anywhere in the State of California, Dale Galipo is in a class of his own. I am aware of no other attorney with equal experience to Mr. Galipo in trying and winning substantial verdicts for his clients, who are generally family members of a person killed by law enforcement misconduct. Mr. Galipo has a state-wide civil rights trial practice, and his services are appropriately in very high demand, simply because no one else wins as often, or as much, for their clients at trial as he does.  I have also referred a number of strong police misconduct and jail death cases to Mr. Galipo, because I know that he will achieve excellent results for the clients in those cases.

18. Excellent Results in a Difficult But Important Case. Police misconduct cases are among the most difficult and challenging cases for victims and their counsel to successfully prosecute. I know this from 30 years of working on police misconduct cases, trying several of them, and settling many more. Jurors tend to have inherent biases against believing that some law enforcement officers, whose job is to protect the public from crime, are not credible. Difficult constitutional issues and statutory immunity questions also are often involved, as are the vigorous defenses that well-funded governmental entities are able to assert. For these reasons and others, the result in this case was very difficult to achieve, particularly considering that Francisco Hurtado was driving erratically and evading police pursuit and was in possession of a gun at or near the time of the shooting. Based on my experience and knowledge of this case, Mr. Galipo and his team achieved an outstanding result in this matter. Their skill and work brought about these excellent results despite complex factual, legal and constitutional issues, which in my experience, greatly increases the plaintiff's risk of losing in a police misconduct case. This case was particularly hard-fought, and the parties' factual scenarios had little overlap. Winning a unanimous verdict required Mr. Galipo and the plaintiffs' team to convince every member of the jury that their client was unquestionably correct and the defendants were unquestionably wrong. Additionally, this was an important case to bring and this plaintiff's victory serves a great public purpose of vindicating fundamental constitutional rights while furthering public safety.

19. Had the Plaintiffs not been represented by counsel with the experience and skill of Mr. Galipo, this case easily could have been lost. Facts that would have made the representation of Mr. Hurtado's family particularly risky for Plaintiff's counsel include that Francisco Hurtado was driving erratically and evading police pursuit and was in possession of a gun at or near the time of the shooting. In my experience, juries tend to believe and give great consideration to officers' claims that they perceived an immediate threat, unless the plaintiff's attorneys are able and skilled enough to present overwhelming physical and other evidence that the officers' justification was either incorrect or dishonest.

20. **Contingent Risk.** The risk of losing all or part of this case – which would have meant losing the client costs advanced as well as never being paid for many hours of work performed in this case, not to mention the delay in payment even if the plaintiff were victorious – would be significant to any small firm like Dale Galipo's. Furthermore, the contingent risk involved in handling a case like this also requires plaintiff's counsel to make sure time spent working on this case is **necessary**, since time spent on this case is time that counsel does not have to spend on other cases or on new client generation. As then-Chief Judge Kozinski wrote in *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008):

> "It must be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."

21. Given the high risk involved in this case, a significant fee enhancement would also be appropriate under California law, to reflect how the legal marketplace treats contingent cases. Such an award would further the purposes of the fee-shifting statutes to encourage other attorneys to take on civil rights cases which are generally less attractive than non-civil rights personal injury cases. Under our system, Constitutional rights – the highest law of the land – generally are not

enforced by any prosecutor or government agency. Enforcement is left up to individual plaintiffs acting as "private attorneys general." If civil rights lawyers are not fully compensated for such important and difficult work, with appropriate enhancements to reflect how the legal marketplace treats contingent risk and undesirable cases, then our system for enforcing fundamental Constitutional rights will not function properly. Additionally, there are very few lawyers with experience in the field of civil rights police misconduct in the Eastern District or Sacramento community. I am not aware of any attorney in the Sacramento community with comparable skills and expertise to Mr. Galipo in the field of civil rights police misconduct and who could have successfully won this case for Plaintiffs. At substantial risk, Mr. Galipo litigated and won this hard-fought civil rights case. Accordingly, he and his team should be fully compensated at their Los Angeles legal community rates for their efforts and for this important civil rights victory.

22. **Hourly Rates.** As a civil rights attorney, I and my firm are frequently paid our hourly civil rights fees in cases where we prevail either by verdict or settlement. Thus, I am familiar with current billing rates that my firm is paid for work by our four attorneys of differing years and experience. I also regularly review and stay current on billing rates paid to other civil rights attorneys throughout California, so that I can set my firm's rates appropriately according to the current legal market. I maintain current knowledge on civil rights billing rates by regularly consulting with experts, by keeping abreast of current court opinions and orders concerning civil rights attorneys' fees that appear in the *Recorder*, on the several civil rights/trial attorney list serves I am on, that are in published cases, and that are sent to me or I seek out from other attorneys.

23. Mr. Galipo has a state-wide civil rights trial practice and is in a class all his own as the pre-eminent police misconduct/wrongful death trial attorney in the entire State of California. There is certainly no other trial attorney working in the State of California, including the Eastern District of California, with Mr. Galipo's skills, experience, and success in winning wrongful death/police misconduct cases, and his rate of $1,400 per hour, or more, is what the market pays for the skill, experience, and success that only Mr. Galipo brings to a tough case like this.

1  I declare under penalty of perjury under the laws of the State of California and the United
2  States of America that the foregoing is true and correct, and that this was executed this 3rd day of
3  December, 2024, at Oakland, California.

6  */s/ Michael J. Haddad*
7  Michael J. Haddad