1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   CATHERINE WOODBRIDGE, State Bar No. 186186
    Supervising Deputy Attorney General
3   LEEANN E. WHITMORE, State Bar No. 214870
    Deputy General
4   JOHN C. BRIDGES, State Bar No. 248553
    Deputy Attorney General
5     1300 I Street, Suite 125
      P.O. Box 944255
6     Sacramento, CA 94244-2550
      Telephone: (916) 210-7515
7     Telephone: (916) 210-7529
      Fax: (916) 322-8288
8     E-mail: LeeAnn.Whitmore@doj.ca.gov
      E-mail: John.Bridges@doj.ca.gov
9   *Attorneys for Defendant State of California,*
    *acting by and through the California Highway*
10  *Patrol and Edgardo Yepez*

11

12                IN THE UNITED STATES DISTRICT COURT

13              FOR THE EASTERN DISTRICT OF CALIFORNIA

14

15

16  | **I. H., a minor by and through her mother** | Case No: 2:19-CV-02343-DAD-AC |
    | **and guardian PRISCILLA MACIAS, et al.,** | |
17  | | **DEFENDANTS' OPPOSITION TO** |
    | | **PLAINTIFFS' MOTION FOR** |
18  | Plaintiff, | **ATTORNEYS' FEES AND COSTS** |
19  | v. | Date:       February 3, 2024 |
    | | Time:       1:30 p.m. |
20  | | Dept:       4 |
    | | Judge:      The Honorable Dale A. Drozd |
21  | **STATE OF CALIFORNIA, et al.,** | |
22  | Defendants. | Action Filed: 4/02/2019 |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................... 1

Statement of Facts ................................................................................................. 2

    I.      Plaintiffs' Pleading and Claims............................................................... 2

Argument ............................................................................................................... 6

    I.      Plaintiffs' Claimed Hours are Not Supported by the Exhibits Submitted. ............. 6

    II.    Plaintiffs' Attorneys are Only to Be Compensated at the Lodestar Rate For Reasonable Hours Reduced By a Factor Which Takes Into Account Their Limited Success. ...................................................................................... 6

        A.    Plaintiffs' Counsel's Requested Hourly Rates Are Unreasonable.............. 6

        B.    Dale Galipo ............................................................................ 11

        C.    Hang Le ................................................................................. 12

        D.    Kent Henderson and Angel Henderson...................................... 12

        E.    Humberto Guizar..................................................................... 12

        F.    Christopher Holm.................................................................... 12

        G.    Hourly rates for Nathan Henderson and Antonio Gallegos ...................... 13

        H.    Hourly rates for Assistants ........................................................ 13

    III.   Plaintiffs' Counsel's Billed Hours are Not Reasonable. ....................................... 13

        A.    Plaintiffs' Motion for Attorney Fees Improperly Includes Blocked Billed Time. ............................................................................ 14

        B.    Plaintiffs' Motion for Attorneys' Fees Improperly Includes Duplicative Billings. ................................................................... 15

        C.    Plaintiffs Vague Entries Should be Disallowed .......................... 17

        D.    Plaintiffs May not Recover Expert Fees or Time Preparing Their Experts................................................................................... 17

        E.    Plaintiffs' May Not Recover Costs for Review of Medical Records or Payment to Treatment Providers as Those Were Not Reasonably Necessary and Are not Recoverable. ............................................ 18

        F.    Plaintiffs' May Not Recover for Intraoffice Conferences Between Attorneys............................................................................... 18

        G.    Plaintiff's May Not Recover for the Secretarial Tasks ............................ 19

        H.    Plaintiffs May Not Recover for Unnecessary Travel Time ...................... 20

        I.    Plaintiffs Should Not Recover Fees for Any of the Preparation of Future Care Arguments as They Were Not Necessary for the October 2024 Trial. .................................................................. 21

        J.    Plaintiffs Should not Recover Fees for Preparing for or Calling Mary Meinhard or Dr. Prager at the October 2024 Trial as they Were Unnecessary Witnesses ................................................... 21

        K.    Upward Adjustment to the Lodestar is Not Warranted............................ 22

i

# TABLE OF CONTENTS
(continued)

Page

       L.     The Court Should Reduce Plaintiffs' Claimed Attorneys' Fees Under Lodestar Due to Plaintiffs' Limited Success .................................. 23

   IV.    Plaintiffs' Costs Are Not Recoverable Under 42 U.S.C. § 1988. ......................... 24

Conclusion ................................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*A.D. v. State of Cal. Highway Patrol*
  712 F.3d 446 (9th Cir. 2013)............................................................................................. 23

*Ashker v. Sayer*
  No. 05-03759 CV, 2011 WL 825713 (March 7, 2011)................................................... 17, 24

*Barjon v. Dalton*
  132 F.3d 496 (9th Cir. 1997).............................................................................................. 11

*Beecham v. City of W. Sacramento*
  2009 U.S. Dist. LEXIS 111572........................................................................................... 23

*Blackwell v. Foley*
  724 F. Supp.2d 1068 (N.D. Cal. 2010) ............................................................................. 16

*Blum v. Stenson*
  465 U.S. 886 (1984)......................................................................................................... 6, 22

*Camacho v. Bridgeport Financial, Inc.*
  523 F.3d 973 (2008).......................................................................................................... 22

*Carpenters Pension Tr. Fund for N. Cal. v. Walker*
  No. 12-cv-01447-WHO, 2015 WL 105,0479 (N.D. Ca. Mar. 9, 2015)................................ 16

*Center v. for Biological Diversity v. Salazar*
  No. CV10-2130-PHX-DGC, 2012 WL 5608094 (D. Ariz. Nov. 15, 2012) .......................... 19

*City of Burlington v. Dague*
  505 U.S. 557 (1992).......................................................................................................... 22

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*
  482 U.S. 437 (1987)........................................................................................................... 24

*Deocampo v. Potts*
  2014 U.S. Dist. LEXIS 24639............................................................................................. 23

*Deocampo v. Potts*
  2014 U.S. LEXIS 24639 (E.D. Cal. Feb. 24, 2014)......................................................... 6, 14

*Doe v. State of California*
  No. 1:24-cv -03337-JLT-CDB, 2024 WL 5182467 (E.D. Cal. Dec. 20, 2024)...................... 12

*eMore v. SMD Software Inc.*
  No. CV-10-2052-PHX-JRG, 2012 WL 4856276 (D. Ariz. Oct. 11, 2012) ........................... 19

# TABLE OF AUTHORITIES
**(continued)**

**Page**

*Farrar v. Hobby*
506 U.S. 103 (1992) ............................................................................................. 22

*Gates v. Deukmejian*
987 F.2d 1392 (9th Cir. 1992) .............................................................................. 14

*Gonzalez v. City of Maywood*
729 F.3d 1196 (9th Cir. 2013) ................................................................. 14, 15, 21

*Guam v. Society of Obstetricians and Gynecologists v. ADA*
100 F.3d 691 (9th Cir. 1996) ................................................................................ 11

*Hensley v. Eckerhart*
461 U.S. 424 (1983) ....................................................................................... 13, 14

*Ingram v. Oroudjian*
647 F.3d 925 (9th Cir. 2011) .................................................................................. 6

*Kerr v. Screen Extras Guild, Inc.*
526 F.2d 67 (9th Cir. 1975) ............................................................................. 7, 22

*Kirtsaeng v. Wiley & Sons. Inc.*
579 U.S. 197 (2016) ............................................................................................... 1

*Lehr v. City of Sacramento.*
2013 U.S. Dist. LEXIS 42014 (E.D. Cal. Mar. 22, 2013) ...................................... 6

*McCown v. City of Fontana*
565 F.3d 1097 ....................................................................................................... 23

*McGinnis v. Kentucky Fried Chicken*
51 F.3d 805 (9th Cir. 2010) .................................................................................. 23

*Molina et. al. v. Federal Express Corp.*
No. 34-2022-00315405 (Sac. Co. Sup. Crt) ............................................ 4, 5, 9, 24

*Moreno v. City of Sacramento*
543 F.3d 1106 (9th Cir. 2008) .......................................................................... 6, 16

*Nadorajah v. Hoder*
569 F.3d 906 (9th Cir. 2009) .......................................................................... 18, 19

*Robinson v. Padilla*
No. 2:07-cv-1072 ................................................................................................... 19

## TABLE OF AUTHORITIES
### (continued)

Page

*Rock River Commnc'ns Inc. v. Universal Musical Group*
  276 F.R.D. 633 (C.D. Cal 2011) .......................................................................... 17

*Ruff v. County of Kings*
  700 F.Supp.2d 1225 (E.D. Cal, 2010) ............................................................. 17, 24

*Seachris v. Brady-Hamilton Stevedore Co.*
  994 F.3d 1066 (9th Cir. 2021) .............................................................................. 14

*Shaw v. Kelley*
  2019 WL 5102610 ................................................................................................. 20

*Tarango v. City of Bakersfield*
  No. 1:16-CV-0099-JLT, 2017 WL 5564917 (E.D. Cal. Nov. 20, 2017.) ............... 18

*Welch v. Metro Life Ins. Co.*
  480 F.3d 942 (9th Cir. 2007)................................................................................. 14

*Willis v. County of Fresno*
  No. 1:09-CV-01766-BAM, 2-14....................................................................... 23

*Willits v. City of Fresno*
  2014 WL 3563310 (E.D. Cal 2014) ................................................................. 11, 22

*Z.F. v. Ripon Unified Sch. Dist.*
  No. 2:10-cv-00523-TLN-CKD, 2017 WL 1064679 (E.D. Cal. Mar. 21, 2017)..................... 12

**STATUTES**

42 U.S.C. § 1983 .................................................................................... 2, 3, 17, 24

42 U.S.C. § 1988 ......................................................................................... 10, 17

42 U.S.C. § 1988(c) .............................................................................................. 24

California Civil Code § 52.1 ............................................................................... 2, 3

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment .............................................................................................. 7

Fourteenth Amendment...................................................................... 2, 3, 15, 23

**COURT RULES**

Rule 26 ................................................................................................................ 7

v

1

**INTRODUCTION**

2     An oft stated concern of the United States Supreme Court is that an "application for

3     attorney's fees should not result in a second major litigation." *Kirtsaeng v. Wiley & Sons. Inc.*,

4     579 U.S. 197, 207 (2016). But that aptly describes Plaintiffs' extravagant request for

5     $6,792,830.65 in attorneys' fees for a police excessive force case against a single officer in which

6     they had limited success at trial.

7     The jury deadlocked in the March 2024 trial. In the October 2024 trial, plaintiffs' counsel

8     asked the jury to award $23,000 in past economic damages and $4 to 6 million in past non-

9     economic damages. The jury awarded $500,000 in past economic damages and $ 1 million in past

10    non-economic damages.[1] Plaintiffs' fee motion, which claims 4,778 hours includes 4,051 entries,

11    12 timekeepers, is excessive, contains multiple duplicative billing and non-billable intra-office

12    meetings, excessive review of materials, and billing for items that were not reasonably necessary

13    for trial and seeks hourly rates which are well in excess of the prevailing rate for the Eastern

14    District of California.

15    This Court should also find that Plaintiffs' total attorney fee award be cut in half because of

16    their limited success. This was not a complicated excessive force case. For an attorney of Mr.

17    Galipo's vast experience, it was a simple trial regarding whether it was reasonable for Officer

18    Yepez to shoot when he saw a gun near Mr. Hurtado. His theme through both trials was Officer

19    Yepez overreacted. The case did not require the staffing claimed in the fees motion. Additionally,

20    no multiplier is warranted.

21    This Court should also disallow Plaintiffs' attorneys hourly fee billings as outlined in this

22    opposition and Mr. Schrat'z declaration because they are duplicative, unreasonable and

23    unnecessary. Finally, this Court should reduce the claimed fees by the unsupported hours, then

24    reduce the claim by at least 50 % and award no more than $947,346.73.

25

26

27

28

---

[1] Defendants have moved for new trial based on the erroneous past-economic damages award. ECF 256. Additionally, Defendants have filed a notice of appeal. ECF 257.

1

**STATEMENT OF FACTS**

**I.   PLAINTIFFS' PLEADING AND CLAIMS.**

Mr. Hurtado's original complaint ECF 1, p. 9 was filed on April 1, 2019, in Los Angeles County Superior Court, although all events took place in Stanislaus County and no defendants resided in Los Angeles County. It named State of California and California Highway Patrol[2] and CHP Officer Edgardo Yepez, who was referred to as Edgardo Lopez. Plaintiff alleged "Defendant Lopez" observed plaintiff in an overturned vehicle while administering help to extricate plaintiff from the vehicle suddenly and without warning unholstered the gun and fired. ECF 1, p. 13, ¶ 20. It alleged that he had no firearm in his possession, although he subsequently pled no contest to possession of an unregistered firearm. Additionally, it claimed he was not speeding although the MVARS shows his speed and erratic driving and the vehicle download shows Mr. Hurtado was driving approximately 85 m.p.h. when he crashed his vehicle. The complaint also appeared to be copied from another pleading as it refers to Hurtado as decedent in several portions. ECF 1, p. 14, ¶25. It also alleges that Defendant Lopez failed to treat plaintiff and did not timely summon medical care. ECF 1, p. 14, ¶27.

Mr. Hurtado made the following claims for relief against Defendant Edgardo Lopez under federal law: 1) pursuant to 42 U.S.C. § 1983, violation of the further amendment for the shooting and failure to timely provide medical care and excessive use of force; 2) 42 U.S.C. § 1983 violation of substantive due process under the Fourteenth Amendment. Additionally, it alleged a third cause of action against the CHP for municipal liability under 42 U.S.C. § 1983.

The Complaint also alleged the following claims for relief under California law against Edgardo Lopez: 4) battery; 5) negligence and 6) violation of California Civil Code § 52.1.

After CHP was served, the parties met and conferred and stipulated that the action be transferred to Stanislaus County where all events occurred. Plaintiff filed a First Amended Complaint (FAC) for damages on September 3, 2019, which removed the municipal liability cause of action against CHP and named Edgardo Yepez.

---

[2] Which are actually only a single defendant: State of California by and through the California Highway Patrol.

After Officer Yepez was served, Defendants removed the action to the United States District Court for the Eastern District of California. The parties further met and conferred on the FAC. On December 11, 2019, Plaintiffs' counsel attempted to file the Second Amended Complaint. ECF 5. It was rejected because it required stipulation. Defense counsel stipulated and the applicable SAC was filed. ECF 7, 9.

Defendants denied all of Mr. Hurtado's claims for relief. ECF 12. After Defendants initial disclosures including the officers' statements, the investigative reports, MVARS and dispatch audio, Plaintiffs' counsel agreed to dismiss with prejudice the portion of Plaintiffs' Claims for Relief in the First Claim for relief (violation of 42 U.S.C. § 1983) that related to denial of medical care, the portion of the Fourth Claim for relief for negligence that related to denial of medical care and the entirety of Plaintiff's Fifth Claim for Relief for violation of California Civil Code § 52.1. ECF 18. There was minimal non-expert discovery. Plaintiffs' counsel took the depositions of Officer Yepez and Officer Randazzo. Defendants took the deposition of Mr. Hurtado, Ms. Macias, Mr. Hurtado's parents, Dr. Bratton and paramedic Diane Valenzuela.

Defendants filed their motion for summary judgment (MSJ) on October 29, 2021. ECF 23. On December 9, 2021, the Court vacated the hearing date for the MSJ and deemed it submitted. ECF 28.

The MSJ was pending for 18 months. Plaintiffs' counsel requested expert depositions begin in 2022. Defense counsel expressed some concern in having the damages expert depositions take place with the pending MSJ and no trial date set but agreed. Deputy Attorney General Bridges became involved in the case to assist in the coverage of depositions. Decl. of LeeAnn Whitmore "Whitmore Decl." at p. 2, ¶¶ 5,6.

On June 16, 2023, the Court granted Defendants' MSJ as to the Fourteenth Amendment claim against Officer Yepez and as to the CHP for negligent hiring, supervision and ensuring adequate number of trained employees. ECF 38. Thus, the trial was streamlined to the issues of whether Officer Yepez used excessive or unreasonable force, committed battery, or was negligent when he shot Mr. Hurtado and the amount of Mr. Hurtado's damages. The Court also set the final pre-trial conference for August 22, 2023, and a jury trial on July 22, 2023. *Id.* Defense counsel

3

1   and attorney Henderson agreed the dates need to be moved because of their vacation schedules

2   and other conflicts with the scheduled dates in summer 2023. Whitmore Decl. at p. 3 ¶7. The

3   parties stipulated to move the pre-trial conference to September 26, 2023, and trial to January 29,

4   2024. ECF 39.

5          On January 9, 2024, Plaintiffs' counsel filed a stipulation and proposed order to continue

6   the January 29 trial date because Mr. Henderson and Mr. Carrazco were trial counsel in the case

7   of *Molina et. al. v. Federal Express Corp.*, No. 34-2022-00315405 (Sac. Co. Sup. Crt). On

8   January 16, 2024, the Court held a hearing regarding the request for continuance. Plaintiffs'

9   counsel represented that no one other than them could try the Hurtado case and the Court

10  continued the trial date to March 11, 2024. Whitmore Decl. at p.3 ¶ 10, Exh. 1, C.T. of hearing on

11  March 5, 2024, pp. 5:17-6:4, 8:22-9:2.

12         Mr. Galipo and Ms. Le claim to have become involved in this case on January 16, 2024.

13  ECF 263-2, ECF 263-13. On February 21, 2024, they filed a notice of appearance. On March 5,

14  2024, the Court held a hearing regarding Plaintiffs request to continue the trial date and heard

15  motions in limine. The Court commented that there were too many motions in limine and denied

16  several of Plaintiffs as overbroad. Whitmore Decl. Exh. 1, C.T. of hearing on March 5, 2024, p.

17  13:3-12, 14:12-15-21. The *Molina* case that plaintiffs' counsel claimed caused a conflict with the

18  January 29, 2024 trial date also commenced trial in March 2024. Mr. Carrazco participated in a

19  hearings on that case on February 26, 2024 March 8, 2024. Ex. 1, to Request for Judicial Notice,

20  Minute Orders in *Molina* case.

21         Trial commenced on March 11, 2024. Mr. Galipo was the only attorney to question

22  witnesses for plaintiff Hurtado. Additionally, Mr. Galipo was the only person who could make

23  decisions regarding stipulation and advise defense counsel regarding witness order. Whitmore

24  Decl. at ¶14. Trial took seven days. Mr. Galipo streamlined the future medical care costs of the

25  Life Care Planning expert and Dr. Stephenson. He requested the jury award between $16 million

26  to $18 million. The jury began deliberations on March 19, 2024. Only Mr. Henderson and Deputy

27  Attorney General Whitmore were present to address jury questions on March 20 and 21, 2024.

28  The jury deadlocked on March 21, 2024.

4

1    The *Molina* case commenced trial in the Sacramento County Superior Court on March 18,

2    2024. Minute orders show that Mr. Carrazco was personally present for that trial from March 18,

3    2024, to April 4, 2024. Minute Orders in *Molina* case Exh. 2 to Request for Judicial Notice.

4    On April 9, 2024, the Court set the re-trial date for October 16, 2024. ECF 170. On June 18,

5    2024, Mr. Galipo sent defendants a revised settlement demand. On June 27, 2024, the parties

6    agreed to a remote mediation on August 22, 2024 with retired Judge Hilberman. Mr. Hurtado was

7    killed on June 28, 2024. On August 2, 2024, defense counsel learned of the death and requested a

8    response from plaintiffs' counsel regarding the death and whether they would notify the court.

9    Whitmore Decl. at p. 4, ¶18. Plaintiff's counsel did not respond.  Mediation went forward  on

10   August 22, 2024, however, no party had been substituted in for plaintiff Hurtado and only the

11   Plaintiffs' attorneys were present. Plaintiffs' counsel finally filed the motion for substitution of

12   successors in interest on August 28, 2024.

13   Retrial commenced on October 16, 2024. Trial lasted five and half days. Again, only Mr.

14   Galipo questioned witnesses for plaintiffs. Deputy Attorneys General Whitmore and Bridges tried

15   the case for the defense. The sole issue remained whether Officer Yepez reasonably believed

16   plaintiff was reaching for the gun before he fired shots. The trial was streamlined as plaintiffs

17   could no longer pursue future damages. Ms. Macias was the only non-medical witness who

18   testified about Mr. Hurtado's claimed injuries and functional activity. Mr. Galipo read a portion

19   of Mr. Hurtado's testimony from the March trial. The only medical providers Plaintiffs called

20   were Dr. Bratton, Marilyn Jacobs, Phd., Dr. Stephenson and Dr. Prager. Plaintiffs did not seek to

21   admit any medical records or bills as evidence.

22   Mr. Galipo presented evidence of $23,000 in past medical expenses through Dr.

23   Stephenson's testimony. Whitmore Decl. Ex. 2, C.T. Trial Day 4, October 21, 2024, p. 110:14-16.

24   During his closing argument, Mr. Galipo requested $23,000 in past economic damages and asked

25   the jury to award between $4 to $ 6 million for past general damages. Whitmore Decl. Ex. 3, C.T.

26   Trial Day 6, October 23, 2024, p. 171:21-172:6.  The jury awarded $500,000 in economic

27   damages and $1 million in general damages.

28

1                                            **ARGUMENT**

2 **I.**      **PLAINTIFFS' CLAIMED HOURS ARE NOT SUPPORTED BY THE EXHIBITS SUBMITTED.**

3         Plaintiffs seek a lodestar figure of $4,528.553.75 in attorneys' fees based on 4,778 hours of

4 work. This amount is not supported or recoverable. An independent calculations of the 4,051

5 billing entries total 4,531.60 and $4,384,221.25 in fees. James Schratz Declaration (Schratz Decl.)

6 at p. 1, ¶2, p. 16¶55-17¶. This is a difference of 246.60 hours and $144,332.50 from Plaintiffs'

7 total claimed fees. *Id.*

8 **II.**     **PLAINTIFFS' ATTORNEYS ARE ONLY TO BE COMPENSATED AT THE LODESTAR**

                **RATE FOR REASONABLE HOURS REDUCED BY A FACTOR WHICH TAKES INTO**

9                 **ACCOUNT THEIR LIMITED SUCCESS.**

10         In awarding attorney's fees, a federal court "must strike a balance between granting

11 sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel."

12 *Moreno v. City of Sacramento*, 543 F.3d 1106, 1111 (9th Cir. 2008); *Lehr v. City of Sacramento.*

13 2013 U.S. Dist. LEXIS 42014, *10-11 (E.D. Cal. Mar. 22, 2013). The way to do so is to

14 compensate counsel at the prevailing rate in the community for similar work: no more, no less. *Id.*

15         Ultimately, a reasonable number of hours equals the number of hours which could

16 reasonably have been billed to a private client. *Moreno*, 534 F.3d at 1111. The determination of

17 the proper amount of fees is typically done using the "lodestar" method in which the court

18 determines the reasonable number of hours spent multiplied by the prevailing local rate for an

19 attorney of the skill required to perform the litigation. *Blum v. Stenson*, 465 U.S. 886, 895 (1984);

20 *Lehr* at *10-11. Additionally, district courts may rely on their own knowledge of customary rates

21 and their experience considering reasonable and proper fees. *See Ingram v. Oroudjian,* 647 F.3d

22 925, 928 (9th Cir. 2011).  The district court must start by determining the number of hours that

23 were reasonably expended on the litigation and then "multiply those hours by the prevailing local

24 rate for an attorney of the skill required to perform the litigation." *Moreno,* 534 F.3d at 1111;

25 *Deocampo v. Potts*, 2014 U.S. LEXIS 24639, * 4 (E.D. Cal. Feb. 24, 2014).

26       **A.**     **Plaintiffs' Counsel's Requested Hourly Rates Are Unreasonable.**

27         Mr. Galipo and the other attorneys all claim extensive experience in excessive force cases.

28 Mr. Galipo has tried over 100 civil trials through verdict. ECF 263-1, p. 4¶16. For approximately

10 years, Ms. Le has drafted all pre-trial documents, worked with opposing counsel on joint documents, assisted Mr. Galipo with trial preparation and prepared post-trial documents. ECF 253-12, p. 3. Mr. Henderson claims to have handled complex civil matters and excessive force cases for 35 years. ECF 263-14, p. 3, ¶5. Mr. Carrazco also claims 20 years experience in excessive force cases. ECF 263-16, p. 3, ¶5.

Yet, with all this expertise, there were an inordinate number of inter-office conferences, duplicative billing and preparation and strategy sessions. It is unclear why these were necessary, especially when they brought Mr. Galipo in to try the case for them. Mr. Galipo is an experienced attorney and for the hourly rate sought could have tried the matter by himself.

Counsel presented no evidence that they have sought, been contracted for or have been paid the claimed hourly rates. Additionally, the attorneys have failed to show they were precluded from other employment. The 12 *Kerr* factors concerning the hourly rate do not support the fee awards sought. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

### 1.   Time and labor

Plaintiffs' counsel claims to have billed 4,778 hours in the case. Independent calculations show 4,531.60. Schratz Decl. at p. 1 ¶2.  On occasion 4 or 5 attorneys were working on reviewing documents, revising or discussing strategy on pleadings, pre-trial documents, Rule 26 reports and discovery and Mr. Carrazco and Mr. Henderson claimed to have weekly meetings on the case within the firm for six years. Yet. Mr. Galipo was the sole trial attorney on the case, only one attorney appeared at each of deposition and Ms. Le claims she prepared all trial documents once Mr. Galipo's office associated in.

### 2.   Novelty and Difficulty of the Questions Involved

This case was a straightforward Fourth Amendment violation case. The main issue was whether Officer Yepez overreacted when he saw a gun within reach of Mr. Hurtado.  The manner of the injury, a gun shout wound, and the results of the wound were not complex. The main contested issue on damages was Mr. Hurtado's functional level and future medical care needs. In the March 2024 trial, Plaintiffs waived past medical specials and punitive damages against Officer Yepez. Those future damages claims were not raised in the second trial. The liability

7

1    issues remained the same in the second trial and plaintiffs raised relatively few past medical

2    special claims.

3          This is not likely a case from which new civil rights law will be established.  While there

4    were evidentiary issues, these are the types of issues which occur in civil rights trials when there

5    is a dispute as to how events occurred.

6          **3.     Requisite Skill**

7          This was not a complex matter requiring a specific skill-set.  The main legal issues

8    pertained to the admissibility of evidence. Mr. Galipo's experience was evidenced by him

9    streamlining the issues, cross-examining the officers and limiting the defense's ability to cross-

10   examine Mr. Hurtado. These skills are reflected in the hourly rates he has been awarded in the

11   past.

12         However, as a seasoned trial attorney the work he performed is his stock and trade. Mr.

13   Galipo had two months to prepare for and try the case in March 2024. Yet, Mr. Galipo was the

14   only attorney to do opening and closing, respond to objections and question witnesses. The retrial

15   of the matter was substantially simplified because he knew what all witnesses would testify to and

16   future damages were moot. Therefore, Mr. Galipo did not have to do much additional preparation

17   for the re-trial.

18         Additionally, Mr. Henderson and Mr. Carrazco claim they have done civil rights cases for

19   decades, yet they alleged non-viable causes of action against CHP and Officer Yepez which were

20   either dismissed voluntarily or through the MSJ. Additionally, it is unclear why such experienced

21   attorneys would need to have so many intra-office meetings, review medical records which were

22   not presented at trial and spend so much time preparing for and defending routine expert

23   depositions.  See Schratz Ex. 22.

24         **4.     Preclusion of Other Employment**

25         While Mr. Galipo claims this case precluded him from accepting other employment

26   opportunities ECF 263-1, Galipo Dec, p. 11 ¶29, this is not borne out by the short trials. While

27   this case was pending, Mr. Galipo had 12 other cases pending with the Attorney General's Office.

28   Whitmore Decl. at Exh. 4.

1    Mr. Galipo was lead counsel in *Solis v. County of Riverside,* United States District Court

2    Central District case number 5:23-cv-00515-HDV-JPR; that was scheduled to begin trial on

3    October 29, 2024. Mr. Galipo appeared at the hearing on the motions in limine on October 1,

4    2024. Request for Judicial Notice, Exhibit 3.  The *Solis* trial was continued to February 2025 on

5    October 3, 2024. *Id.*

6    Additionally, the *Sesma v. State of California*, United States District Court Centra District

7    case number, 5:21-cv-1694-JWH proceeded to trial on December 2, 2024.

8    Mr. Henderson and Mr. Carrazco made similar assertions that this case precluded them

9    from doing other work.  However, they also claim to have an active case list and 26 high profile

10   cases. 263-14, p. 14¶27; 263-16, p. 8¶26.

11   In this case, Mr. Henderson references the number of depositions in this case. However, he

12   only appeared at four depositions. He took the depositions of biomechnanical expert, Bahram

13   Ravani, Life Care Expert Jennifer Craigmyle and economist Craig Enos and defended the

14   deposition of Okie Okorocha. Additionally, all depositions were completed by September 2023

15   with the exception of Ms. Meinhard who had to be deposed a second time because of her updated

16   Life Care Plan report. None of the expert depositions were long or overly complicated.

17   Mr. Henderson and Mr. Carrazco were also trial counsel in the case of *Molina et. al. v.*

18   *Federal Express Corp.*, Sac. Co. Sup. Crt. No. 34-2022-00315405. The *Molina* trial actually

19   began on March 18, 2024. Mr. Carrazco also appeared at hearings on that matter on February 26,

20   2024 and March 8, 2024. Request for Judicial Notice Exh. 1, Minute Orders from *Molina v.*

21   *Federal Express Corp.*, Sac. Co. Sup. Crt. No. 34-2022-00315405.

22   Also, this case did not have extensive discovery or pleadings. The only motions filed was

23   the MSJ, motions in limine and objections to evidence.

24       **5.    Customary Fee**

25   No Plaintiffs' counsel refers to a retainer agreement or claims to have customary fee or a

26   regular billing rate. All attorneys are valuing their work based upon speculation and fee awards

27   from other districts.

28

9

### 6. Fixed or Contingent Fees

This is a contingency fee case in which counsel are relying upon an award under 24 U.S.C. § 1988 to get paid. Although 42 U.S.C. § 1988 permits courts to award attorneys who take on such work, it does not allow the award of exorbitant fees that are not supported or reasonably necessary for trial.

### 7. Time Limitations

There is no declaration or facts which would support a claim for time limitations. This case was extremely efficiently litigated and tried. The only delay in the matter was the time between the filing of the MSJ and the Court's ruling on it. This was not caused by defendants.

### 8. Amounts Involved and Results Obtained

Plaintiffs were not the prevailing party in the March 2024 trial. The jury deadlocked on liability. Therefore, they should not recover attorney's fees for that trial. In the retrial, Plaintiffs only presented evidence of $23,000 in medical treatment. They produced minimal evidence of Mr. Hurtado's pain, suffering and emotional distress. The jury awarded $1 million in pain and suffering and $500,000 in economic damages. This was significantly less that the requested award sought by Mr. Galipo in his closing argument or during any settlement discussions.

### 9. Experience, Reputation and Ability of Attorneys

Mr. Galipo is an excellent attorney. The other attorneys brought him in for his trial experience.

Ms. Le has 10 years of experience. In this case, she was responsible for pretrial documents. She has no known civil rights experience other than her experience with Mr. Galipo.

Mr. Henderson and Mr. Carrazco brought Mr. Galipo in to try the case.

The other attorneys and law clerks who submitted declarations have no known reputation and did minimal if any work on the case.

### 10. Undesirability of Case

Undesirability is a factor that comes into play in those rare circumstances when the nature of the case is such that attorneys might be unwilling to take it for fear of ostracization or concerns for personal safety. *Guam v. Society of Obstetricians and Gynecologists v. ADA*, 100 F.3d 691,

10

1   697 (9th Cir. 1996).  The circumstances of this case to do not fall within these parameters so it is

2   not a factor.

3        Here, the location of the gunshot wounds, the level of Mr. Hurtado's injury and claimed

4   future care needs made this an attractive case for Plaintiffs' counsel which is why they sent Mr.

5   Hurtado to so many doctors, including Dr. Stephenson and Dr. Prager had Ms. Meinhard create a

6   Life Care Plan and retained six experts for damages to attempt to bolster the claimed future

7   economic damages.

8        **B.    Dale Galipo**

9        Plaintiffs requested an hourly rate of $1,400 for Mr. Galipo in their motion for attorneys'

10  fees. However, none of the awards he submitted in support show $1,400 was awarded and none

11  are from the Eastern District. Additionally, the requested fees are almost three times the

12  prevailing hourly rate for attorneys in the Eastern District of California.

13       The relevant legal community for determining attorney's fees is the Eastern District and not

14  Los Angeles, absent proof by Plaintiffs that Los Angeles area attorneys available to take their

15  cases either because they were unwilling or because they lacked experience, experience, expertise

16  or specialization. *Barjon v. Dalton*, 132 F.3d 496, 500-502 (9th Cir. 1997); *Willits v. City of*

17  *Fresno*, 2014 WL 3563310 * 10 (E.D. Cal 2014).   Plaintiffs have produced insufficient evidence

18  that Sacramento area attorneys were unable to take the case or that they lacked sufficient

19  experience to support the fee requested. Courts in this venue have almost uniformly and

20  consistently held that rates awarded in this venue should be based on other cases in this venue and

21  not on other cases decided in other venues. *Estate of Castillos v. City of Fresno*, 1:16-cv-01042-

22  AWI-SAB * 13 (February 21, 2020). In *Estate of Castillos*, the Court awarded Mr. Galipo $400.

23  The Court rejected Mr. Galipo's $1,200 requested rate, despite it having been awarded many

24  times in the Central District, as not being in line with Fresno rates and awarded him $400. (*16).

25       The hourly rates for attorneys with over 15 years of experience in the Eastern District

26  generally are capped at $550. Paralegal and legal assistants generally range from $100 to $125 an

27  hour, also depending on experience. *See Doe v. State of California,* No. 1:24-cv -03337-JLT-

28  CDB, 2024 WL 5182467, at *5 (E.D. Cal. Dec. 20, 2024); *Z.F. v. Ripon Unified Sch. Dist.*, No.

11

1    2:10-cv-00523-TLN-CKD, 2017 WL 1064679, at *3 (E.D. Cal. Mar. 21, 2017) (Prevailing

2    hourly rates in the Eastern District are in the $350 to $550 per hour claim); Schratz Dec. at pp.

3    39-40.

4       Further, Mr. Galipo only joined this matter shortly before the initial trial. Thus, Mr.

5    Galipo's task in this matter involved the trial of this matter and not the bulk of the actual pre-

6    litigation work, further demonstrating that an increased rate of $1,400 is not reasonable for Mr.

7    Galipo for his specific work in this matter. Mr. Galipo's hourly fee should be capped at the

8    prevailing hourly rate of $550. See Schratz Decl. at p. 40.

9       **C.**    **Hang Le**

10       Plaintiffs request an hourly rate of $700 for Ms. Lee. Ms. Lee has not provided any support

11    for the fee sought.

12       Ms. Le's involvement in this case was limited to preparing trial documents and motions.

13    Defendants respectfully request that her reasonable hourly rate to be $350 per hour. See Schratz

14    Decl. at p. 40.

15       **D.**    **Kent Henderson and Angel Henderson**

16       Plaintiffs have not produced any evidence to support the request for $1,100 an hour for

17    either attorney. Their fees should be the prevailing hourly rate for Sacramento area attorneys.

18    Defendants respectfully request their hourly rate be $473 per hour. See Schratz Decl. at p. 40.

19       **E.**    **Humberto Guizar**

20       Plaintiffs have not produced evidence to support that $975 is reasonable for Mr. Guizar. He

21    defended one deposition in the case. Additionally, the fee should be prevailing hourly rate for

22    Sacramento area attorneys. Defendants respectfully request his hourly rate be $473 per hour. See

23    Schratz Decl. at p. 40. Mr. Guizar's work was limited to defending one deposition and

24    participating in intra-office meetings.

25       **F.**    **Christopher Holm**

26       Plaintiff has provided no evidence to support an award of $600 an hour for Mr. Holm.

27    Defendants respectfully request his reasonably hour rate be $331 per hour. See Schratz Decl. at p.

28

40. Additionally, he did not provide any work other than review of e-mails and firm meetings.

Schratz Ex. 22.

### G. Hourly rates for Nathan Henderson and Antonio Gallegos

Plaintiffs produce no evidence to support the hourly rates for the law clerks. Additionally, the hourly rate sought is not reasonable. The hourly rate should be the prevailing hourly rate for law clerks in the Sacramento area. Defendants respectfully request their rate be set at $118 per hour. See Schratz Decl. at p. 40.

### H. Hourly rates for Assistants

The hourly rate should be the prevailing hourly rate for assistants in the Sacramento area. Defendants respectfully request their hourly rate be set at $118 per hour. See Schratz Decl. at p. 40.

Based on the above, Defendants respectfully request the reasonable hourly rate be set as follows:

| Attorney | Galipo | $550 |
| --- | --- | --- |
| Attorney | Le | $350 |
| Attorney | Guizar | $473 |
| Attorney | K. Henderson | $473 |
| Attorney | Carrazco | $473 |
| Attorney | Holm | $331 |
| Law Clerk | N. Henderson | $118 |
| Legal Asst | Gomez | $118 |
| Lit Asst Sup | Arraiga | $118 |
| Legal Asst | Laurel | $118 |

## III. PLAINTIFFS' COUNSEL'S BILLED HOURS ARE NOT REASONABLE.

To determine appropriate reasonable number of hours to be included in a lodestar calculation, the district court should exclude hours that are excessive, redundant, or otherwise unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) A district court can reduce a lawyer's request for duplicative and unnecessary work. *Id; Seachris v. Brady-Hamilton Stevedore*

13

1    *Co.*, 994 F.3d 1066, 1083 (9th Cir. 2021); *Deocampo v. Potts*, 2014 U.S. LEXIS 24639, * 4.

2    Cases may be overstaffed, and the skill and experience of lawyers vary widely, *Hensley*, 461 U.S.

3    at 434 (1983).  If a court determines that some hours billed are not reasonable, it may exclude

4    them using one of the two methods. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir.

5    2013). The court may either conduct an "hour-by-hour analysis of the fee request or make an

6    "across the board percentage cut." *Id.*  When faced with a massive fee application, the district

7    court has the authority to make across-the board percentage cuts either in the number of hours

8    claimed or in the final lodestar as a practical means of excluding non-compensable hours from a

9    fee application. *Id.* The fee applicant bears the burden of demonstrating appropriate hours

10   expended in litigation and must submit evidence of the hours worked. *Gates v. Deukmejian*, 987

11   F.2d 1392, 1399 (9th Cir. 1992).

12        In this case, an across-the-board percentage cut of at least 50 percent is appropriate. A large

13   portion of Plaintiffs' claimed fees should be excluded because they are excessive, redundant, or

14   otherwise unnecessary. The gross amount of hours, duplicative review of materials, number of

15   attorneys and support staff as well as the large number of inter-office meetings are excessive and

16   support the fee cut.

17       **A.**   **Plaintiffs' Motion for Attorney Fees Improperly Includes Blocked Billed**
18              **Time.**

19        In general, courts look unfavorably on block billing on timesheets because it does not allow

20   the Court to scrutinize the amount of time spent performing each task. *see Welch v. Metro Life*

21   *Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (suggesting that block billing may justify a

22   reduction of up to 30%). Block billing warrants a reduction in the number of hours spent on a

23   matter where, because of the manner of billing, the court cannot ascertain whether such hours

24   "could reasonably be billed to a private client." *Gonzalez*, 729 F.3d at 1202.

25        Here, there are several instances of improper blocked billing where the time spent on each

26   specific task cannot be scrutinized. For example, on December 2, 2021, Mr. Henderson billed six

27   hours "drafted 14th Amendment Battery and Negligence sections of MSJ opp, emails back and

28

<center>14</center>

forth, plus research." ECF 263-15, p. 13. He failed to denote how long drafting the motion took, who the emails were to, and how much time was spent on research. Additionally, the opposition to the MSJ on Fourteenth Amendment and Negligence against CHP were not successful.

On March 7, 2024, he billed eight hours for "Further Trial Preparation, review of materials, contact of experts," but failed to delineate what preparation was done, materials reviewed or experts contacted. ECF 263-15, p. 40. Additionally, it is unclear whether the contact of experts was clerical, i.e. scheduling or substantive, which would have been unnecessary as he was not the attorney who would question them. He also has block bill entries for trial dates ranging from eight to ten hours from eight to twelve hours. ECF 263-15, p. 41-47. It is unclear what work he did, whether it was it was reasonable or why that was necessary as he was not the lead trial attorney.

Mr. Carrazco has similar improper block billing. He bills 15 hours per day from March 11-March 15, 2024 for "Prep. for trial, trial, post trial debrief and strategy." ECF 263-17 pp. 20-21. Similarly, he billed 15 hours on October 16, October 17, October 18, October, October 22, October 23, October 24 and October 25, 2024, for "Prepared for, attended and debriefed re: trial." ECF 263-17, pp. 24-26. Mr. Carrazco only attend a portion of the March trial did not question a witness or present any argument. During the October trial, he did not question a single witness or present argument. It was unnecessary for him to be at trial, let alone bill 15 hours per day.

Accordingly, Plaintiffs' inappropriate blocked billing of this matter should appropriately be reduced by 30 %.

**B.  Plaintiffs' Motion for Attorneys' Fees Improperly Includes Duplicative Billings.**

While Defendants recognize that a second attorney may be needed at trial, plaintiffs' attorneys motion seeks fees for unnecessarily duplicative work. Three trial attorneys and a law clerk did not need to attend where Mr. Galipo was lead trial attorney. The defense had two trial attorneys, but divided up the questioning of witnesses, motion arguments and opening and closing argument. At most one additional attorney should have been allowed at trial.

Where a lawyer does unnecessarily duplicative work the court may legitimately cut the hours. *Moreno*, 543 F.3d at 1113. It must appear that the time claimed is obviously and

<div align="center">15</div>

convincingly excessive under the circumstances. *Blackwell v. Foley* 724 F. Supp.2d 1068, 1071 (N.D. Cal. 2010). A court should reduce the fee by 75% for an attorney who is present but does not conduct the deposition or defense. *Moreno*, 534 F.3d at 1111.

Overstaffing can be a basis for reducing the award of attorneys' fees. *See Hensley*, 461 U.S. 43 (noting that casers may be overstaffed and that counsel must make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary.); *Carpenters Pension Tr. Fund for N. Cal. v. Walker*, No. 12-cv-01447-WHO, 2015 WL 105,0479, at *2 (N.D. Ca. Mar. 9, 2015) (reducing attorney's fees by ten percent to account for overstaffing); *Trs. Operating Engineers Tr. v. Diamond St. Sweepers*, NV 07-8394-GAF, 20090 WL 1067600, at *2 (C.D. Cal. Mar. 9, 2009) (noting that reasonable hours may be reduced under the lodestar "if the case was overstaffed and hours are duplicated. (quoting *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1985.))

In this case, the billing is replete with unnecessarily duplicative of work. Exhibit 23 to Mr. Schratz's declaration provides the unnecessary duplicative work. Mr. Carrazco billed 2.5 hours for defending the deposition of Dr. Wobrock, which was actually defended by Mr. Guizar. ECF 263-17, p. 8. Mr. Carrazco also billed three hours for defending Ms. Macias deposition. ECF 263-17, p. 4. However, the Ms. Macias deposition was defended by Christian Contreras, Mr. Carrazco was not present. The deposition lasted two hours. Whitmore Decl. at p. 5, ¶26.

Similarly, Mr. Henderson and Mr. Carrazco each billed 3.5 hours for Dr. Ravani's deposition on April 19, 2023. ECF 263-15, p. 27; ECF 263-17, p. 9. However, only Mr. Carrazco took Dr. Ravani's deposition.

Mr. Carrazco spent 20 hours of "trial preparation time" in Sacramento on March 9 and 10, 2024 which was unnecessary. ECF 263, p. 17, p. 19. Additionally, as he did not question a single witness or make an argument during trial, it is unclear why he billed this excessive trial preparation time.

1    Additionally, Ms. Le billed 1.1 hours for appearance at the March 5, 2024 hearing

2  regarding motions in limine and trial continuance, but did not participate in the hearing. ECF 263-

3  13, p. 2.

4    All of the duplicative billing should be disallowed. Similar, there are excessive timekeepers

5  that could have been performed by others and are unclear why they are necessary. Schratz Decl.

6  at pp. 23-28.

7    Thus, Defendants respectfully requests that this Court reduce Plaintiffs' requested

8  attorney's fees based on the improper cumulative billing identified above.

9    **C.    Plaintiffs Vague Entries Should be Disallowed**

10    Billing records should provide sufficient detail and probative value to enable the court to

11  determine with a high degree of certainty that such hours were actually and reasonably expended.

12  *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n. Local 307 v. G.*

13  *& M Roofing & Sheet Metal Co. Inc.*, 732 F.2d 495, 502 n.2 (6th Cir. 2984.)  In this case Mr.

14  Schratz has identified examples of 520.4 hours of vague entries for weekly review of email,

15  weejly review and discussion as well as vague trial prearation entries which should be disallowed.

16  Schratz Exh. 11. Similarly, Mr. Henderson billed 42.5 hours for extensive review of medical

17  records and documents. Schratz Decl. at p. 24, ¶76-25- p. 25¶77.  The billing for review of

18  medical records should also be disallowed as it is unclear what records were reviewed or why it

19  was necessary for Mr. Henderson to review them.

20    **D.    Plaintiffs May not Recover Expert Fees or Time Preparing Their Experts**

21    Plaintiffs have sought an exorbitant number of hours and costs for communications and

22  interactions with experts.  Expert fees are not recoverable in actions brought pursuant to 42

23  U.S.C. §1983. *Ashker v. Sayer,* No. 05-03759 CV, 2011 WL 825713 at *4 (March 7, 2011); *Ruff*

24  *v. County of Kings,* 700 F.Supp.2d 1225, 1243 (E.D. Cal, 2010); *Rock River Commnc'ns Inc. v.*

25  *Universal Musical Group* 276 F.R.D. 633, 637 (C.D. Cal 2011) (party is free to have its expert

26  prepare as thoroughly or review his depo transcript as meticulously as it wishes albeit at his

27  expense.)  As such all billing relating to the experts, payments to experts, claimed expert fees

28  should be disallowed.

**E.   Plaintiffs' May Not Recover Costs for Review of Medical Records or Payment to Treatment Providers as Those Were Not Reasonably Necessary and Are not Recoverable.**

Mr. Carrazco and Mr. Henderson each billed extensive hours for review of unknown providers medical records. This review was not necessary for trial as the only non-retained medical provider called was Dr. Bratton and they did not question any witnesses. Therefore, all billing for review of medical records by Mr. Henderson, Mr. Carrazco or their law clerk should be disallowed.

Additionally, Mr. Carrazco's billing for items related to Priority Funding contracts for experts or medical treatment is not reasonably necessary for trial or a recoverable cost under 42 U.S.C. § 1988. ¶ECF-263-17. This is not an item that is recoverable as an attorney fee. If plaintiffs' counsel paid for Mr. Hurtado's medical treatment, travel to medical appointments or liens for medical treatment, then the amounts should have been sought as an item of damage at trial. Similarly, his time spent reviewing invoices or seeking recovery of the fees is not recoverable under 42 U.S.C. § 1988. These amounts should be denied in their entirety.

**F.   Plaintiffs' May Not Recover for Intraoffice Conferences Between Attorneys**

The billings from the Guizar, Carrazco firm show a large amount of billing are from intra-office communication. Mr. Carrazco and Mr. Henderson claim their office had weekly meetings on this case since 2018. This is unnecessary and should disallowed. In general, two attorneys cannot bill for communicating with each other as, such time is duplicative and unnecessary. *Tarango v. City of Bakersfield*, No. 1:16-CV-0099-JLT, 2017 WL 5564917 at *11 (E.D. Cal. Nov. 20, 2017.) Mr. Schratz created the following timetable showing the total number of conferring hours.

| Timekeeper | Lodestar Hours | Total Conferencing Hours | Total Conferencing Hours as a % of Lodestar |
|---|---|---|---|
| Christopher L. Holm | 471.50 | 285.00 | 60.4% |
| Angel Carrazco Jr. | 925.20 | 142.15 | 15.4% |

| Kent M. Henderson | 1,764.85 | 374.80 | 21.2% |
| Humberto Guizar | 43.20 | 11.70 | 27.1% |

Schratz Decl. at p. 45¶160.

Mr. Guizar and Mr. Holm's billing consisted almost entirely of intra-office conferencing or billing for review of e-mails regarding intra-office conferencing. Schrtaz Decl. at p. 19, ¶64, p. 27, ¶84-28, ¶86, Exh. 12. Exhibits 21 and 22 to Mr. Schratz's declaration provide a list of the duplicative intra-office conferencing.

Similarly, Mr. Carrazco billed 40 hours conferencing with Mr. Galipo's firm and Mr. Henderson billed 63.40 hours conferencing with Mr. Galipo's firm. Experienced attorneys should not require this exorbitant amount of time conferencing. This intraoffice conferencing should also be disallowed in its entirety.

### G.   Plaintiff's May Not Recover for the Secretarial Tasks

#### 1.   Assistants Time is Not Recoverable

Plaintiff is seeking to recover 212.5 in for tasks of its assistants.  Purely clerical tsks are generally not recoverable in a motion for attorney's fees and should instead be subsumed in normal overhead costs. *Nadorajah v. Hoder*, 569 F.3d 906, 921 (9th Cir. 2009) (filing, transcript and document organization were clerical in nature and should have been subsumed in firm overhead rather than billed at paralegal rates) Plaintiffs may not recover for secretarial tasks such as calendaring, scheduling, copying documents, serving documents, mailing documents and bate stamp are secretarial task. *See Center v. for Biological Diversity v. Salazar,* No. CV10-2130-PHX-DGC, 2012 WL 5608094 at *4 (D. Ariz. Nov. 15, 2012) (concluding "researching USPS tracking and filing the complaint and other documents" were secretarial activities); *eMore v. SMD Software Inc.*, No. CV-10-2052-PHX-JRG, 2012 WL 4856276 at * 7 (D. Ariz. Oct. 11, 2012) (noting tasks such as "filing, scheduling, calendaring activities and bates labeling documents" were secretarial tasks. *Robinson v. Padilla*, No. 2:07-cv-1072 GEB-KJM at * 1(E.D. Cal. 8, 2008.) (holding that serving documents is a secretarial task).

Litigation assistant Gallegos is claiming 51 hours for secretarial tasks, driving experts and attorneys, transporting boxes, sending invoices and office tasks. ECF 263-25 at p. 2; Schratz

1    Decl. at p. 28, ¶89-p.29.  None of this claimed time is reasonable or recoverable as an attorney

2    fee.

3          Similarly, Ms. Arraiga's 65.8 hours are for secretarial tasks such as receiving invoices,

4    filing documents or sending documents to counsel are not recoverable as attorney's fees. ECF

5    263-27 at p. 2-23.

6          Ms. Gomez also seeks 69.5 hours for secretarial tasks such as processing invoices,

7    scheduling and filing documents. ECF 263-28 at p. 2-27.

8          Ms. Laurel seeks 9.75 hours for secretarial tasks of downloading documents, calendaring

9    deadlines and conference calls and organizing documents. ECF 263-31 at p. 2.

10         Ms. De Leon also seeks 16 hours for secretarial tasks of arranging service of process, e-

11    mail court reporters and serving documents and preparing trial binders and tabs. ECF 263-31 at p.

12    2.

13         The secretarial tasks are not recoverable as attorney's fees. Thus, the Court should disallow

14    the claimed 212.5 hours of secretarial tasks.

15          **2.**    **Plaintiffs' Counsel May Not Recover for Administrative Tasks**

16         The attorneys from Guizar, Carrazco and Henderson improperly billed for administrative

17    tasks and directing their staff to perform clerical duties. When clerical tasks are billed at hourly

18    rates, the court should reduce the hours requested to account for the billing errors. *Nadorajah v.*

19    *Hoder*, 569 F.3d at 921.  Even if attorneys themselves do not perform these tasks, "their

20    'instruct[ions] delegating those tasks to their support staff are no less clerical in nature. *Shaw v.*

21    *Kelley*, 2019 WL 5102610, at (7 N.D. Cal. Oct. 11, 2019.)

22        **H.**    **Plaintiffs May Not Recover for Unnecessary Travel Time**

23         Plaintiffs' counsel are seeking attorney fees for three attorneys and two law clerks to travel

24    to Sacramento for trial. As noted above, such fees are not reasonable. It was not necessary for

25    three attorneys to be at trial.

26         Mr. Carrazco appears to have billed 12 hours round trip and an overnight stay for Mr.

27    Wobrock to meet with Hurtado. ECF 263-15. This was unnecessary and also relates to expert fees

28    which are not recoverable in this action. Additionally, Mr. Carrasco billed three hours to drive

<div align="center">20</div>

1    Mr. Hurtado to his medical evaluation with Dr. Jacobs on November 14, 2021. ECF 263-17, p. 5.

2    Mr. Carazco acting as a chauffer for his retained expert and to drive his client to medical

3    evaluations he scheduled is not a reasonable charge or recoverable as an attorney fee.

4         Mr. Carrazco billed either five or eight hours to fly into Sacramento to prepare for trial on

5    March 6, 2024. ECF 263-17, p. 19. A flight from Southern California to Sacramento takes at most

6    two hours.

7         Additionally, Mr. Henderson billed 9 hours for travel to Sacramento for trial on March 6,

8    2024. ECF 263-15 p. 39. He also billed 10 hours for trial preparation in Sacramento on March 9,

9    2024. ECF 263-15, p. 40.

10        No in person hearings were scheduled for the Hurtado matter during the week of March 6.

11   It was unnecessary for Mr. Henderson or Mr. Carrazco to travel to or be in Sacramento.

12        **I.    Plaintiffs Should Not Recover Fees for Any of the Preparation of Future
             Care Arguments as They Were Not Necessary for the October 2024 Trial.**

13

14        Plaintiffs' counsel claim a large number of hours for developing the future medical

15   damages. During the March 2024 trial, plaintiffs' counsel waived past medical specials and relied

16   solely on the future damage claims and witnesses. The trial ended in a mistrial, thus plaintiffs did

17   not prevail on the issue of future damages.

18        Mr. Hurtado died in June 2024, rendering the future medical care evidence moot. Plaintiffs

19   claimed damages were limited to past medical expenses and past pain and suffering from March

20   15, 2018, to June 28, 2024. Plaintiffs counsel request for the fees for the preparation of

21   witnesses, arguments or documents related to the future medical care claims should be disallowed

22   as the attorneys fees sought were not necessary.

23        **J.    Plaintiffs Should not Recover Fees for Preparing for or Calling Mary
             Meinhard or Dr. Prager at the October 2024 Trial as they Were
             Unnecessary Witnesses**

24

25        Despite Mr. Hurtado's death, Plaintiffs' counsel called its Life Care expert Mary Meinhard

26   and future care provider Dr. Prager at trial. Defense counsel objected to their testimony and both

27   Ms. Meinhard and Dr. Prager's testimony was extremely limited, The fees for items related to

28

                                            21

1   preparation, scheduling or reviewing documents or examination of Meinhard or Dr. Prager

2   should be disallowed.

3   **K.   Upward Adjustment to the Lodestar is Not Warranted**

4       Plaintiffs' counsel seeks an upward enhancement of 50% based on the claimed large

5   expenditure of out-of-pocket costs by plaintiffs' counsel, protracted litigation or unanticipated

6   delay and setbacks including a mistrial and Mr. Hurtado's death in June 2024. None of these

7   factors warrant an upward adjustment in this case.

8       The lodestar is presumptively reasonable. *Gonzalez*, 729 F.3d at 1202. However, in rare

9   cases, a district court may make an upward adjustment based to the presumptively reasonable

10  lodestar on the basis of those factors set out in *Kerr v. Screen Extras Guild, Inc.* that have not

11  been subsumed in the lodestar calculation. *Camacho v. Bridgeport Financial, Inc.,* 523 F.3d 973,

12  982 (2008). Noting that the lodestar method already takes into account the risk of a contingent

13  fee in its calculation, the Supreme Court has found that enhancements based on contingency are

14  unwarranted in fee shifting cases and amount to double counting. *City of Burlington v. Dague,*

15  505 U.S. 557, 562 (1992).

16      The burden of justifying a deviation rests on the party proposing it. *See Blum v. Stenson,*

17  465 U.S. 886, 898 (1984) (stating that the burden of proving that an upward adjustment is

18  necessary to the determination of a reasonable fee is on a fee applicant). Upward adjustment is

19  not warranted where the skill of counsel, difficulty and novelty of the underlying legal issues, and

20  the contingent nature of the fee awards are already baked into the unadorned lodestar. *See Willis*

21  *v. Fresno*, 2014 WL 3563310 at *22 (denying request for upward adjustment of lodestar where

22  the lodestar already included the *Kerr* factors).

23      The *Kerr* factors do not support an upward adjustment of the loadstar. Here, the primary

24  effect was to vindicate Mr. Hurtado's personal economic interests in the form of past economic

25  damages and past general damages. It is worth noting a large amount of the $725,000 was

26  expended for payment to treatment providers who were not called at trial or claimed as medical

27  specials, expert costs or non-compensable costs in an attempt to bolster the future damage claim.

28  But, Plaintiffs waived past medical specials in the March 2024 trial. They only sought $23,000 in

1  past medical specials. Mr. Hurtado's death was completely unrelated to the March 15, 2018

2  incident and precluded Plaintiffs from pursing the future damage claim. This is a risk of

3  contingent fee litigation and not a basis for an upward adjustment of attorney's fees.

4  **L.    The Court Should Reduce Plaintiffs' Claimed Attorneys' Fees Under**
        **Lodestar Due to Plaintiffs' Limited Success**

5

6      Where recovery of private damages is the purpose of ... civil rights litigation, a district

7  court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded

8  as comparted to the amounts sought. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting

9  *Riverside v. Rivera*, 477 U.S. 561, 585 (1986) (Powell, J., concurring in judgment)). Where the

10  relief sought and obtained is limited to money, the phrase "extent of success" is a euphemistic

11  way of referring to money. *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 809-810 (9th Cir.

12  2010). In a case where a plaintiff's recovery clearly falls short of his goal, it is unreasonable to

13  grant his attorneys more than a comparable portion of the fees and costs they requested. *McCown*

14  *v. City of Fontana*, 565 F.3d 1097, 1104-1105; *Beecham v. City of W. Sacramento*, 2009 U.S.

15  Dist. LEXIS 111572 at *13-16; *Deocampo v. Potts*, 2014 U.S. Dist. LEXIS 24639 at *30-37;

16  *Willis v. County of Fresno*, 2014 WL 3563310 * 23-25 (discussing court's discretion to reduce

17  attorney's fees rewards between 35% to 80% due to limited success and reducing plaintiffs' fee

18  award 35%). A district court may consider the amount discussed in settlement negotiations as

19  evidence of the extent of plaintiff's success. *A.D. v. State of Cal. Highway Patrol*, 712 F.3d 446,

20  460-461 (9th Cir. 2013).

21      Plaintiffs had limited success in this case. They dismissed several causes of action including

22  the failure to treat and Bane Act causes of action and waived punitive damages. Summary

23  adjudication was granted as to the Fourteenth Amendment claim and the direct claims against

24  CHP.

25      Plaintiffs' limited success is also present in the settlement discussions. Plaintiffs' attorneys

26  demanded $20 million at the mandatory settlement conference on January 3, 2024. At the March

27  2024 trial, the jury deadlocked on liability. Following trial, Mr. Galipo sent a new settlement

28  demand of $10 million. After Mr. Hurtado's death, mediator Hilberman said Mr. Galipo's

1   demand was $5 million at mediation.  At the October 2024, trial plaintiffs' counsel requested the

2   jury award $23,000 in economic damages and $4 to $6 million in general damages. Whitmore

3   Decl. at ¶¶9, 17, 19.  The jury awarded $500,000 in economic damages and $1 million in general

4   damages.  This award is significantly less than the amount sought.

5        Owing to their limited success in this case, the Court should reduce the lodestar amount of

6   fees claimed on the merits by at least 50% after disallowing the time for excessive timekeepers,

7   duplicative work, unreasonable hourly rates and billing for clerical tasks.  Mr. Schratz

8   recommends allowing $947,346.73 in fees and disallowing $3,436,874.52. Schratz Decl. at p. 53-

9   54, ¶195.

10  **IV.   PLAINTIFFS' COSTS ARE NOT RECOVERABLE UNDER 42 U.S.C. § 1988.**

11       Defendants incorporate by reference herein in its entirety their objections to Plaintiffs' Cost

12  Bill. ECF 272.  Defendants contend the exorbitant costs claimed are unreasonable and not

13  recoverable in this action.   While Mr. Carrazco claims he has spent $725,000 in this case, the

14  costs are not reasonable or recoverable under 42 U.S.C. § 1988. Expert witness fees are only

15  recoverable pursuant to a contract or explicit statutory authority. *Crawford Fitting Co. v. J.T.*

16  *Gibbons, Inc.,* 482 U.S. 437, 439 (1987). 42 U.S.C. §1988(c) allows the Court in its discretion to

17  award expert witness fees "in any action or proceeding to enforce a provision of §§1981 or 1981a

18  of this title." Plaintiffs brought this action under 42 U.S.C. § 1983.  Expert fees are not

19  recoverable in actions brought pursuant to 42 U.S.C. §1 983. *Ashker v. Sayer,* No. 05-03759 CV,

20  2011 WL 825713 at *4 (March 7, 2011); *Ruff v. County of Kings,* 700 F.Supp.2d 1225, 1243

21  (E.D. Cal, 2010).

22       Additionally, the costs for an Airbnb are not reasonable. It is also unclear, if the costs for

23  the Airbnb were for this case or the *Molina* case in March 2024. Whitmore Decl. p. 3 at ¶8.  It is

24  also unclear why plaintiffs are seeking costs for hotels and Air Bnb in Southern California.

25       Providing gas or food money to clients, clothes for trial, food, or hotels for them are not

26  reasonable or necessary for litigation. Similarly, seeking reimbursement for driving plaintiff to be

27  examined by retained experts is not reasonable or recoverable as an attorney's fee.  Plaintiffs have

28

1   failed to provide sufficient documentation for any of the claimed costs. The costs should therefore

2   be disallowed.

3   <center>**CONCLUSION**</center>

4     Plaintiffs' attorneys are claiming approximately $6.8 million in attorneys' fees and another

5   approximately $709,000 in costs when Plaintiffs were awarded $1.5 million dollars. Plaintiffs

6   have presented no evidence that this case warrant a departure from basing attorney rates on

7   Sacramento prevailing rates. The billing is excessive, duplicative, seeks recovery for intra-office

8   meetings and items that were not reasonable or necessary to the case. In light of the limited

9   success, plaintiffs' attorneys are entitled only to the lodestar based on the prevailing Sacramento

10   rates and reduced by 50% for the reasonable attorneys' fees in this case.

11   Dated:  December 31, 2024      Respectfully submitted,

12
               ROB BONTA
13
               Attorney General of California
               CATHERINE WOODBRIDGE
14
               Supervising Deputy Attorney General

15

16                  */s/ LeeAnn E. Whitmore*

17

18                  LEEANN E. WHITMORE
               Deputy Attorney General
19
               *Attorneys for Defendant State of*
               *California, acting by and through the*
20
               *California Highway Patrol and*
               *Edgardo Yepez*

21

22   LA2019501468
23   38615654.docx

24

25

26

27

28

<center>25</center>