1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  CATHERINE WOODBRIDGE, State Bar No 279218
   Supervising Deputy Attorney General
3  LEEANN E. WHITMORE, State Bar No. 186186
   Deputy Attorney General
4  JOHN C. BRIDGES, State Bar No. 248553
   Deputy Attorney General
5   1300 I Street, Suite 125
    P.O. Box 944255
6   Sacramento, CA  94244-2550
    Telephone:  (916) 210-7515
7   Telephone:  (916) 210-7529
    Fax:  (916) 322-8288
8   E-mail: LeeAnn.Whitmore@doj.ca.gov
    E-mail: John.Bridges@doj.ca.gov
9  *Attorneys for Defendants State of California,*
10 *acting by and through the California Highway*
   *Patrol and Edgardo Yepez*
11

12

13             IN THE UNITED STATES DISTRICT COURT

14        IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

15

16 | I.H., a minor by and through her mother and | Case No. 2:19-cv-02343-DAD-AC
   | guardian Priscilla Macias, as successor in |
17 | interest to Francisco Hurtado; E.H., a minor | **DECLARATION OF JAMES P.**
   | by and through her mother and guardian | **SCHRATZ IN SUPPORT OF**
18 | Priscilla Macias, as successor in interest to | **OPPOSITION TO PLAINTIFFS'**
   | Francisco Hurtado; P.H., a minor by and | **MOTION FOR ATTORNEYS' FEES**
19 | through his mother and guardian Priscilla |
   | Macias, as successor in interest to Francisco | Date: February 3, 2025
20 | Hurtado; and A.H., a minor by and through his | Time: 1:30 p.m.
   | mother and guardian Priscilla Macias, as | Courtroom: 4
21 | successor in interest to Francisco Hurtado; |

22                      Plaintiffs,

23         v.

24
   STATE OF CALIFORNIA; CALIFORNIA
25 HIGHWAY PATROL; EDGARDO YEPEZ
   aka EDGARDO LOPEZ; and DOES 1 through
26 100, inclusive,

27                      Defendants.

28

－1－
DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

1

## <u>TABLE OF CONTENTS</u>

2

**EXECUTIVE SUMMARY** .................................................................... **1**

3

**BACKGROUND AND QUALIFICATIONS AS A LEGAL FEE AUDITOR** ................ **1**

4

**COURTS THAT HAVE NOT ACCEPTED MY AUDIT FINDINGS** ........... **8**

5

**ADDITIONAL NOTES RE: AUDITS IN GENERAL** ....................................... **9**

6

**SCOPE OF REVIEW** .................................................................... **12**

7

**AUDIT METHODOLOGY** .................................................................... **12**

8

**STANDARD OF REVIEW** .................................................................... **12**

9

**SCOPE OF AUDIT AND CALCULATION ERRORS** ............................... **15**

10

**FINDINGS AND OPINIONS** .................................................................... **16**

11

    I.    **Excessive Timekeepers** ................................................... **17**

12

    II.    **Estimated Round Number Billing** ................................. **22**

13

    III.    **Long Days Billing 10 Hours +** ..................................... **23**

14

    IV.    **Failure to Delegate to Paralegals or Lower Billing Attorneys**...............**23**

15

    V.    **Vague Entries**......................................................................**25**

16

    VI.    **Questionable Billing Practices Including Excessive Time Spent on Particular Tasks**................................................................**27**

17

18

    VII.    **Unreasonable Requested Hourly Rates** ........................... **29**

19

    VIII.    **Billing for Clerical Tasks** ........................................... **41**

20

    IX.    **Excessive Inter/Intra-Office Conferencing** ................... **42**

21

    X.    **Disallowance of Fees Related to the First Trial Due to Mistrial**.............. **46**

22

    XI.    **Time Disallowed for Preparing Experts and Rule 26 Report**...................... **47**

23

    XII.    **All Fees Disallowed Related to Francisco Hurtado's Future Medical Treatment and Costs**........................................................ **47**

24

    XIII.    **Duplicative Work Including Attendance at Depositions and Second Trial.. 48**

25

    XIV.    **The Requested Multiplier is Not Warranted**................................. **49**

26

    XV.    **Recommended Across-The-Board Percentage Reduction** ........................... **52**

27

**SUMMARY OF FEE DISALLOWANCES** ....................................... **53**

28

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

## DECLARATION OF JAMES P. SCHRATZ

I, JAMES P. SCHRATZ, declare as follows:

1.    I have been retained in the above-entitled action on behalf of Defendants, State of California, acting by and through the California Highway Patrol and Edgardo Yepez, to provide and audit and opinions regarding the reasonableness and necessity of the attorneys' fees requested in Plaintiffs' Motion for Attorneys' Fees Pursuant to 42 U.S.C. § 1988 ("Fee Motion") filed by Law Offices of Dale K. Galipo and Guizar, Henderson & Carrazco, LLP (collectively, "Plaintiffs' Counsel") on behalf of Plaintiffs, I.H., a minor by and through her mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; E.H., a minor by and through her mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; P.H., a minor by and through his mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; and A.H., a minor by and through his mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado.  I have personal knowledge of the facts set forth herein, and if called as a witness I could and would competently testify thereto.

## EXECUTIVE SUMMARY

2.    Plaintiffs' Counsel claims to have billed 4,778.00 hours and $4,528,553.75 in fees based on 4,051 fee entries for 12 timekeepers (6 attorneys and 1 law clerk, 1 litigation assistant/law clerk and 5 litigation assistants) at hourly rates ranging from $175 to $1,400 between May 21, 2018 and October 15, 2024.  However, my independent calculations total **4531.60** hours and **$4,384,221.25** in fees which I use as the starting point of the audit, and which is a difference of 246.40 hours and $144,332.50 in fees from Plaintiffs' Counsels' claimed totals.

3.    Overall, Plaintiffs' Counsels' fee request is unreasonably inflated and lacks credibility based on my opinion which relate to, *inter alia,* Plaintiffs' Counsels' calculation errors in the Fee Motion, an excessive number of timekeepers, estimated round number billing, long days billing 10 plus hours, failure to delegate to paralegals or lower billing attorneys, vague entries, questionable billing practices including excessive time spent on particular tasks such as reviewing e-mails and expert reports, unreasonable requested hourly rates, billing for clerical tasks, excessive inter/intra-office conferencing, the disallowance of fees related to the first trial

1  due to the mistrial, time disallowed for preparing experts and Rule 26 Report, all fees disallowed

2  related to Francisco Hurtado's future medical treatment and costs, duplicative work including

3  attendance at depositions and the second trial, the requested multiplier is not warranted, and a

4  recommended across-the-board percentage fee reduction.

5        4.     My recommended fee disallowances discussed herein result in a minimum

6  recommended disallowance of fees totaling **$3,436,874.52** with recommended allowed fees of

7  **$947,346.73** in addition to any disallowances which the Court believes is proper and reasonable

8  through an exercise of its discretion. of and disallowed fees totaling

9        5.     It must be emphasized that if the Court has any questions about my declaration, I

10  am more than willing to appear at the hearing to answer them. I never want to give the appearance

11  that I am "hiding" from a strong cross-examination by either opposing counsel or the Court and

12  merely relying on the declaration. The purpose of my opinions in all the cases I handle is to

13  hopefully give the Court whatever benefit there may be in my 48 years of experience.

14  **BACKGROUND AND QUALIFICATIONS AS A LEGAL FEE AUDITOR**

15        6.     I am an attorney at law licensed to practice in the State of California and have been

16  so licensed since 1976. I received my law degree from the University of San Francisco School of

17  Law in June 1976, where I was the Editor-in-Chief of *The Law Review*. In September 1976, I

18  joined the law firm of Heller, Ehrman, White & McAuliffe, where I worked as an associate in its

19  litigation department.

20        7.     In March 1978, I left Heller, Ehrman, White & McAuliffe and joined a smaller

21  firm until August 1980, when I joined Fireman's Fund Insurance Company in San Francisco,

22  California, in its General Counsel's Office. My responsibilities included representing Fireman's

23  Fund as attorney of record in various litigation. In addition, I supervised outside counsel

24  throughout the country on various types of cases, including many complex civil litigation cases

25  and many employment cases.

26        8.     In 1984, I left the General Counsel's Office and transferred to the Claims

27  Department where I established the Major Litigation Unit, which was responsible for managing

28  complex litigation throughout the country, including the $65 million bankruptcy of The Woodson

1   Company. In this role, I was responsible for approximately 1,000 cases and a staff of ten people. I

2   also became very familiar with the rates charged not only by Fireman's Fund "panel counsel," but

3   also rates charged by solo practitioners and small, medium, and large law firms throughout the

4   United States.

5          9.     In July 1990, I was promoted to Vice President Major Claims, where my duties

6   were expanded to include responsibility for any case throughout the world that had potential

7   exposure of $3 million or more, and responsibility for supervising approximately 100 adjusters.

8   Again, I continued my involvement in supervising cases throughout the United States and stayed

9   abreast of what solo practitioners and small, medium, and large law firms charged their respective

10  clients.

11         10.    On January 1, 1994, I left Fireman's Fund to establish my own litigation

12  management and consulting firm. I am the principal of Jim Schratz and Associates, a firm that

13  conducts legal fee audits of various law firms throughout the country. Over the past 30  years, I

14  have personally supervised or conducted approximately 4,000 legal fee audits throughout the

15  country on behalf of both clients and law firms, including governmental agencies, insurance

16  companies, corporations, and private individuals. Several of these audits have been in The United

17  States District Court in and for the Eastern District involving civil rights cases.

18         11.    Many of these audits have involved fee requests in fee-shifting cases. In that role, I

19  have performed legal fee audits of various law firms on behalf of the California Department of

20  Justice, the City and County of San Francisco, the City of Huntington Beach, the Sonoma County

21  Sheriff's Office, the State of Wisconsin, United Airlines, and Avis Rent-A-Car, among others.

22  The amount of the fee requests audited ranges from a low of a few hundred thousand dollars to

23  approximately $60 million.

24         12.    In 1999, I was appointed by the District Court for the Northern Mariana Islands to

25  audit approximately $22 million in legal fees in *In re the Estate of Larry Lee Hillblom*, one of the

26  founders of DHL Express, whose estate was valued at approximately $1 billion. I was also

27  retained by the United States Department of Justice to conduct an audit of a fee request in a

28  nationwide class action lawsuit against the Immigration and Naturalization Service. I have served

as an arbitrator for the Sonoma County Bar Association and the State Bar of California in their mandatory fee arbitration programs.

13.     In January 2010, I was retained by investor Carl Icahn to serve as special litigation counsel to review approximately $60 million in legal fees in the *In re Tropicana Entertainment, LLC, et al*, Case No. 08-10856 (KJC) ("*Tropicana*") in the United States Bankruptcy Court for the District of Delaware.

14.     In February 2010, in *Department of Fair Employment and Housing v. United Dominion Realty* (Case Nos. 07CC12067, 02CC12069), the court accepted our audit findings stating,

> In awarding fees in these amounts, the court has fully accepted the declaration of James P. Schratz in opposition to the motion, including all of his recommended reductions. The court finds his qualifications to be impressive. Likewise, his reasoning as to why the fees sought are excessive is persuasive.

15.     In April 2010, I was again retained by Mr. Icahn to serve as special litigation counsel to review an additional $6 million in legal fees in the related *In re Adamar of New Jersey, Inc. and Manchester Mall, Inc.*, Case No. 09-20711 and 09-20716 in the United States Bankruptcy Court for the District of New Jersey.

16.     I have qualified as an expert witness in numerous state courts, including San Francisco County Superior Court, Alameda County Superior Court, Sacramento County Superior Court, Los Angeles County Superior Court, Orange County Superior Court, and Sonoma County Superior Court, District Court in Corpus Christi, Texas, and Seattle Washington, and in Federal District Court in California, Pennsylvania, Michigan, and Oklahoma.

17.     In the case of *Madrid v. Gomez*, No. C-90-3094, United States District Court for the Northern District of California, I was retained by the California Department of Justice to audit a fee request of $8.3 million in connection with a prisoners' civil rights case at Pelican Bay State Prison. The audit disclosed a number of billing concerns, and the audit report was submitted to Judge King, the settlement judge. The case resulted in a negotiated settlement of $4.25 million, or a reduction of approximately 50 percent. A copy of an article from *The Recorder* dated September 26, 1995*,* describing the settlement is attached as **Exhibit 1**.

18.     In *Rios v. Rowland*, No. 330211, Superior Court of California, County of Sacramento, I was retained to audit a fee request of $1.5 million. The audit disallowed a significant amount of the fees requested. The court upheld the audit results and reduced the fee request to approximately $227,000.

19.     In *CVB Corporation v. John Cavallucci*, No. 156505, Superior Court of California, County of Marin, I was retained to audit a fee request of approximately $2 million pursuant to a contractual provision. The audit uncovered a number of billing abuses, and the court disallowed approximately 50 percent of the fee request.

20.     In *Aguilar v. Avis Rent-A-Car System*, No. 948597, Superior Court of California, County of San Francisco, I was retained to audit a fee request of approximately $1.3 million. The audit disclosed several problem areas and disallowed a significant amount. The court followed the audit findings and reduced the request by approximately 50 percent, to $650,000.

21.     In *McCauley v. BFC Direct Mailing*, No. 5711562, Superior Court of California, County of Orange, the plaintiff alleged violations of campaign election laws and sought attorneys' fees of $1.1 million. The defendant, Howard Jarvis Tax Reform Movement, hired this office to conduct a legal fee audit, and we disallowed approximately 50 percent of the fees. The court followed the audit findings and awarded approximately $525,000 of the $1.1 million requested.

22.     In *Florida Asset Financing Corp. v. Borton, Petrini & Conron*, United States District Court, Central District of California, Southern Division (Santa Ana), Case No. 8:96 cv 01144 AHS-MLG, we were retained by a private client to audit a fee request of $600,000. Based on the audit report, the court awarded $80,000.

23.     I conducted an audit of plaintiff's motion for attorneys' fees in *Adam v. Norton*, Northern District of California, Case No. C-98-2094 CW, a case in which plaintiff sought total fees in the sum of $1,726,312.92. The Special Master appointed by Judge Claudia Wilken to adjudicate the fee petition cited my declaration and recommended a total award of only $434,581.95 in attorneys' fees, less than 25 percent of the amount originally sought. The Special Master stated, "I believe Mr. Schratz' expert testimony meets the standard. Schratz's testimony is

1    relevant, in that Schratz has provided a useful breakdown of the time spent by plaintiff's

2    attorneys, and reliable, in that Schratz has accurately summarized the time and expenses claimed

3    by plaintiff's attorneys." It must be stated the Special Master did not follow all of the audit

4    recommendations. However, the Special Master did recommend reducing the fee request by

5    approximately 75 percent, from $1,726,312.92 to $434,581.95, a result that Judge Claudia Wilken

6    adopted in total in July 2005.

7         24.    In January 2004, in *Frieders v. City of Glendale*, No. BC263271, Los Angeles

8    County Superior Court Judge David A. Workman adopted our findings with respect to an audit of

9    plaintiff's fee request. As a result, plaintiff's request of $4.1 million in fees was reduced to

10   $1.1 million. The court specifically referred to our audit and reduced the fee request by

11   approximately 75 percent. A copy of that order is attached as **Exhibit 2**.

12        25.    In August 2005, in *Rose v. Lancaster School District,* No. BC 303843, Superior

13   Court of California, County of Los Angeles, the court adopted the methodology, analysis, and

14   recommendations contained in our audit, and reduced plaintiff's request for fees by 58 percent

15   from $498,000 to $209,000.

16        26.    In *North Pacifica, LLC v. City of Pacifica*, United States District Court, Northern

17   District of California, Case No. C-01-4823 EMC, plaintiff sought damages at trial of

18   approximately $16 million. I was retained by the defendant to audit plaintiff's request for

19   $2,046,759.16 in fees and costs. In awarding plaintiffs only $453,810.75 in fees, Magistrate Judge

20   Edward M. Chen cited my audit with approval with respect to various billing issues. A copy of

21   the order dated December 16, 2005 is attached as **Exhibit 3**, and states, in pertinent part:

> [B]ased on the information provided in the declaration, Mr. Schratz has
> demonstrated that he is qualified to opine about fee awards and that his
> methodology in evaluating the billing records of NP's attorneys in this case is
> reasonable and sufficiently reliable. For example, Mr. Schratz's approach to
> categorizing the nature of the work of the attorneys is reasonable and sufficiently
> reliable as is, overall, his approach to unblocking the block-billed time entries.

27        27.    In *Poland v. L.A. Boxing*, Orange County Superior Court, Case No. 30-2009

0121184, plaintiff filed a lawsuit alleging eight causes of action against the defendants. Based

upon their expert's testimony at trial, plaintiff had suffered $4,959,023 to $6,423,566 in damages.

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

The jury found in favor of the plaintiff on two causes of action and on the statutory failure to pay owed wages claim awarded $2,800. This was the only cause of action on which they were successful that contained a statutory attorneys' fee provision. Plaintiff's counsel submitted a motion for attorneys' fees. They submitted bills totaling $709,242.50, and initially sought a 1/6 allocation (because two causes of action had been dismissed just prior to trial), or $118,207.08 in fees. I was retained by the defendant to audit plaintiff's request. Based upon deficiencies in the billing records such as block billing, redactions, excessive time to create deposition summaries, and excessive internal conferencing, and allocation issues, I recommended that plaintiff's counsel only be awarded fees in the range of $25,000 to $30,000. In a subsequent supplemental declaration, plaintiff increased the amount of attorneys' fees sought to approximately $350,000. In July 2011, the Court found that plaintiff should only be awarded $30,000 – which is the amount that I had recommended.

28.    In *Shiow Huey-Chang v. County of Santa Clara, et al.*, Santa Clara County Superior Court, Case No. 5:15-cv-02502-RMW, plaintiff filed a lawsuit alleging excessive force by police. Plaintiff prevailed at jury trial and was awarded $40,000.00, although certain parts of the verdict were overturned by a defense post-trial motion for judgment as a matter of law. Plaintiff was deemed the prevailing party for purposes of attorneys' fees, and defendants did not dispute that finding for purposes of the fee motion. Plaintiff sought $970,063.74 in attorneys' fees and costs. I was retained by the defendant to audit plaintiff's request. I recommended that the billing rates being requested be reduced and that fees related to excessive staffing and time billed for certain aspects of the case be adjusted. I recommended that the fee request should be reduced to $236,860.38 plus costs of $27,575.72 for a total of $264,436.10. The court's reasoning and deductions tracked many of those set forth in my declaration and it ruled that plaintiff's fee award, including costs, should be reduced to $350,000.00.

29.    In *Carroll v. State of California, et al.,* Sacramento County Superior Court Case No. 34-2012-00135527-CU-OE-GDS, plaintiff was dismissed from her employment as a Staff Attorney with the California Commission on Teacher Credentialing. She filed suit alleging the termination was a wrongful retaliation for whistleblowing. Plaintiff prevailed at trial and sought

1  attorneys' fees of $1,542,397.75, plus a 2.0 multiplier for a total of $3,084,795.50.

2  I recommended that the billing rates being requested be reduced and that fees related to transient

3  billers, unsuccessful claims, clerical billing, and duplicative billing be adjusted. I recommended

4  that the fee request should be reduced to $323,720.37. The court awarded $638,484 or

5  approximately 21 percent of the fees requested after reducing the requested billing rates, reducing

6  the time billed for certain tasks, and reducing the requested multiplier.

7          30.     In *Violante v. Jayco, Inc.,* Los Angeles Superior Court Case No. 21AVC00911,

8  plaintiffs brought suit under the Song-Beverly Act seeking damages for breach of express and

9  implied warranties arising out of their purchase of a 2017 Jayco motorhome. The parties settled

10  the matter but left the issue of attorneys' fees for the court. Plaintiffs' attorney claimed

11  $140,342.00 as their reasonable fees based upon 11 generalized categories of work without

12  submitting any billing records, let alone detailed billing records. Plaintiffs' attorney also

13  requested a 0.50 multiplier. It was my opinion that the Song-Beverly Act was unique in explicitly

14  requiring any award of fees to be tied to "actual time expended" and that generalized categories

15  of work did not meet that requirement. I also identified block billing and billing for an

16  unsuccessful appeal that mostly mirrored arguments made at the trial court level. Based upon my

17  analysis, I recommended that no more than $41,860 be awarded as fees with no multiplier. This is

18  precisely what the court awarded.

19          31.     The State Bar of California recently hired me to audit the attorney's fees billed by

20  attorney Drexel A. Bradshaw as part of their disciplinary investigation into Mr. Bradshaw's work

21  as both a trustee and attorney for a trust. (*In the Matter of Drexel Andrew Bradshaw, State Bar

22  No. 209584*, State Bar Court of California Case No. SBC-24-O-30022-PW.) I qualified as an

23  expert witness at trial in this matter.

24                  **COURTS THAT HAVE NOT ACCEPTED MY AUDIT FINDINGS**

25          32.     Of course, just like most other experts, not all courts have accepted my audit

26  findings: See, for example, *Oberfelder v. City of Petaluma,* United States Distinct Court,

27  Northern District of California, Case No. 3:98-cv-01470-MHP; *Estrada v. FedEx,* Superior Court

28

1    of California, County of Los Angeles, Case No. BC210130[1]; *Millar v. BART,* Superior Court of

2    California, County of Alameda, Case No. C830013-9; *Lopez v. San Francisco Unified School*

3    *District,* United States District Court, Northern District of California, Case No. CV-96-3585 SI;

4    *Gober v. Ralph's Grocery Company,* Superior Court of California, County of San Diego, North

5    County Judicial District, Case No. N72142; *Miller v. Vicorp,* United States District Court,

6    Northern District of California, San Jose Division, Case No. CV-03-00777-RMW; *Pop, et al.*

7    *v. Pasadena Area Community College District*, Superior Court of California, County of Los

8    Angeles – Central District, Case No. BC481207.

9          33.    Over the years we have attempted to track all cases that have rejected, in whole or

10   in part, my opinions and it appears that out of approximately 4,000 audits these are the only cases

11   that have done so.

12         34.    I know of no expert whose opinion is wholly accepted by courts 100 percent of the

13   time. I am aware of a handful of cases[2] in addition to the ones listed above (out of the

14   approximately 4,000 audits I have performed around the country), in which the courts have not

15   accepted my audit findings or have criticized aspects of my methodology or credentials. My

16   analysis of those cases is attached as **Exhibit 4**.

17         35.    If the Plaintiffs' Counsel in this matter or anybody else has other cases to add to

18   this list, we are more than willing to do so. It is my firm belief that all experts should be fully

19   transparent and inform both the court and all parties involved of all cases which did not accept

20   their opinions. More specifically, I believe any declarant in this case should provide any and all

21   information concerning any declarations they have filed in the past where the courts have

22   rejected, in whole or in part, their statements. I believe we all owe that to the court and to the

23   opposing party. As noted below, some courts have drastically reduced the fee requests by Mr.

24   Gallipo by either significantly reducing the hourly rate requested or determining the hours

---

25       [1] The Court of Appeal reversed the trial court's award of attorneys' fees using a 2.0 multiplier as excessive
26   and remanded for recalculation of an appropriate fee award.

27       [2] (1) *Zuegel v. Mt. View Police Dep't.*; (2) *Curtin v. County of Orange*; (3) *Kalani v. Starbucks Corp.*;
     (4) *Lopez v. San Francisco Unified Sch. Dist.*; (5) *Amphastar Pharms. Inc. v. Aventis Pharma SA*; (6) *Velez v. Roche*;
     (7) *Wit v. United Behav. Health*; (8) *Mahtesian v. Snow*; (9) *Branham v. Snow*; and (10) *Duran v. United States Bank*
28   *Nat'l Ass'n.*

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

1  claimed were not reasonable. It is my opinion that in the interest of full disclosure Mr. Gallipo

2  should have informed this court of those cases.

3  ## ADDITIONAL NOTES RE: AUDITS IN GENERAL

4      36.    An audit does not always uncover overbilling. On numerous occasions, I have

5  been retained by a client to audit a legal bill and have informed the client that there is little, if any,

6  overbilling and that the client should pay most, if not all, of the invoice.

7      37.    For example, previously I have been retained by the California Department of

8  Insurance to audit several law firms in connection with numerous matters, including the

9  insolvency of Golden Eagle Insurance Company, which was located in San Diego, California

10  (and was declared insolvent by the California Insurance Commissioner). On a number of these

11  audits, I found that most, if not all, of the fees involved were reasonable and necessary, and

12  recommended to the client that it pay most, if not all, of the fees audited.

13      38.    As a standard practice, I make an offer to all of my clients to review the bills free

14  of charge and arrive at a preliminary opinion as to whether an audit would uncover any

15  overbilling, so as to make an audit cost efficient. I estimate that in approximately 10 to 15 percent

16  of the requests I receive, I suggest to the client that an audit is not cost justified.

17      39.    On numerous occasions, I have been retained by a law firm engaged in litigation

18  with a client to conduct an audit, and if the audit discloses no overbilling, I testify as an expert

19  witness on behalf of the law firm. The following is a partial list of the law firms that I have

20  audited where the audit disclosed that most, if not all, of the fees, were reasonable.

21            Sidley & Austin
              Manatt, Phelps & Phillips
22            Mower, Koeller, Nebeker, Carlson & Halluck
              Lanahan & Reilley
23            Lurie & Zepeda
              Banning, Micklow, Bull & Lopez
24            Robles & Castles
              Thelen Reid & Priest
25            Stoel Rives
              Robinson & Cole
26            LeBoeuf, Lamb, Greene & MacRae
              Husch & Eppenberger
27            Parson, Behle & Latimer
              Christiensen Miller Fink Jacobs Glaser Weil & Shapiro, LLP
28            Berding & Weil

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

Meredith Weinstein & Numbers
Spector Law Offices

40.     The following is a sampling of cases where I have provided deposition and/or trial testimony in support of a law firm's fee request. It is important to emphasize that we use the same legal fee audit methodology whether we are retained by a law firm in support of its fee request or retained by an opposing party in opposition to the fee request. The purpose of the audit is to give an honest, unbiased opinion on the reasonableness of the legal fees.

- In *PNY Technologies, Inc. v. Miller, Kaplan, Arase & Co., LLP*, Case No. 3:15-cv-01728-MMC, in the United States District Court, Northern District of California, I testified in support of the national law firm Winston & Strawn's request for fees.

- In *Gen. Charles E. Yeager, Victoria Yeager, Charles E. Yeager Revocable Living Trust, and General Chuck Yeager Foundation v. Don A. Lesser, The Lesser Law Group, and Does 1 through 20, inclusive*, Case No. 34-2011-00109638, in the Superior Court of California, County of Sacramento, I testified in support of the law firm's request for fees.

- In *North Coast Engineering, Inc. v. State Farm General Insurance Company, et al.,* Case No. SCV 243762, in the Superior Court of California, County of Sonoma, I testified in support of a request for fees submitted by the Law Offices of Duncan James.

- In *Victaulic Company v. American Home Assurance Company, et al.,* Case No. RG12642929, in the Superior Court of California, County of Alameda, I testified in support of Pillsbury Winthrop's request for fees.

- In *Sonic Automotive, Inc., v. Chrysler Insurance Company, et al.,* Case No. 1:10CV717, in the United States District Court for the Southern District of Ohio – Western Division, we were retained to audit fees and expenses for over $10 million submitted by the law firms of Hinshaw & Culbertson LLP, Broad & Cassel, James McElroy & Diehl, P.A., and Williams & Connolly LLP. We performed a legal fee audit according to our standard audit methodology.

- In *EDUCAP, Inc. et al., v. Philadelphia Indemnity Insurance Company*, Civil Action No. 1:13-cv-72 LO/IDD, in the United States District Court for the Eastern District of Virginia – Alexandria Division, we were retained to audit $3.9 million in fees for the law firms of Williams & Connolly LLP, Simpson Thacher & Bartlett LLP, Skadden, Arps, Alte, Meagher & Flom LLP, and Jaffe Raitt Heuer & Weiss PC. We performed a legal fee audit according to our standard audit methodology.

41.     I have published approximately 35 articles, many of which involve the control of legal fees and abuses in the billing practices of attorneys. Over the past several years, I have given

– 11 –

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

1   numerous presentations on legal auditing and controlling legal costs throughout the United States,

2   Canada, and England. I have made a number of presentations to various Bar Associations,

3   insurance industry groups, and other organizations, including the American Bar Association, on

4   how to assist the court in analyzing fee requests. I wrote an article on employing legal fee

5   auditors in fee-shifting cases, which was published in *Trial Diplomacy Journal.* Most recently,

6   I wrote an article, "How to Win a Fee Petition," which was published in a number of publications

7   including *The Rhode Island Bar Journal*, *The Practical Litigator*, *The Federal Lawyer* and

8   Business Laws, Inc.'s *Law Department Management Adviser*. Among other points, this article

9   listed various "red flags" or questionable billing practices that should be avoided in submitting a

10   fee application.

11       42.    Attached hereto as **Exhibit 5** is a true and correct copy of my Curriculum Vitae,

12   which lists my work history, my publications, and my general experience.

13       43.    I am not being compensated based upon my "success" at reducing the requested

14   fees.

15   **SCOPE OF REVIEW**

16       44.    As part of my audit, I reviewed the Fee Motion including supporting declarations,

17   and pleadings, underlying motions, deposition transcripts, expert reports and trial transcripts for

18   both trials.  A comprehensive list of documents that I analyzed as part of this audit are set forth in

19   **Exhibit 6.**  I also conferred with Deputy Attorney General, LeeAnn Whitmore, regarding this

20   case.

21       45.    I have personally reviewed Plaintiffs' Counsel's fee entries attached as exhibits to

22   the declarations filed in support of the Fee Motion.

23       46.    My staff and I have spent approximately 200 hours in this matter to both analyze

24   the fee motion, fee entries, and all available documents in order to give a proper foundation for

25   my opinions herein.

26   **AUDIT METHODOLOGY**

27       47.    As part of the audit process, all of the billing time records were input into a

28   computer database to allow for comprehensive searching and analysis. The computerized

– 12 –
DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION<br>TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

database permitted creation of summary reports of billing by categories of activities. To the best of my information and belief, all of these reports accurately reflect the information contained in the submitted billing records. Having the records in the computer database also allowed for accurate quantification of various other issues including, but not limited to, those discussed in this declaration. My staff and I analyzed each of the 4,051 billing entries for necessity and reasonableness.

## STANDARD OF REVIEW

48.     Based on my experience as an attorney, client, and legal fee expert, it is my opinion that billing standards have changed over the past 20 plus years. In the past, many courts nor clients were sensitive to the numerous potential problems caused by block billing, vague entries, or excessive minimum billing increments. However, as academicians such as William Ross, a law school professor at Samford University of Birmingham, Alabama and author of The Honest Hour, began to study both the prevalence of such billing practices and their potentially harmful effects, both courts and clients began to pay close attention. In response, the profession of legal fee auditing developed to aid clients and the courts in quantifying those potentially harmful effects. Courts began to look at these expert reports and then developed an increasing body of case law that the legal fee experts used as part of their methodology.

49.     As law firm fees began to be reduced because they were employing these questionable billing practices, law firms began establishing their own internal billing guidelines requiring timekeepers to refrain from such practices. I personally have put on presentations to such law firms. In addition, many law firms instituted Quality Control procedures to assure themselves that such questionable billing practices would not be permitted within the law firm. These Quality Control procedures developed because the law firms realized that certain questionable billing practices such as block billing, vague entries, excessive minimum billing increments, and excessive intra-firm conferencing were within the control of the law firm and to the degree they could be controlled or eliminated the law firm increased its chances of recovering its fees. Many of the more sophisticated law firms even issued their own internal billing guidelines prohibiting such practices.

50.     In conducting a legal fee audit, I analyze the invoices and work-product generated in light of one of two standards. The first standard is contained in any retainer agreement between the law firm and client, or in billing guidelines or any other instructions provided by the client to the law firm. In addition to looking at such agreements, guidelines, or instructions, I look to established case law for what are acceptable billing practices as the second standard. To the extent there are instructions from the client, State Bar opinions and case law may supplement or even override the instructions. **The case law referenced in this report is not being cited for its legal authority, but to establish that there is a foundation for the opinions stated herein.** In that way the cases may be analogized to Generally Accepted Accounting Principles, commonly known as GAAP, which are a collection of commonly followed accounting rules and standards for financial reporting. I am not aware of any billing guidelines that may be in place in this matter.

51.     In my experience, a significant issue related to attorneys' fees in fee-shifting matters is that there are no billing guidelines and the firm's billing is not contemporaneously or regularly reviewed by the client. The lack of any external oversight can lead to lax internal oversight of billing practices, particularly where billing overages accrue to the benefit of the ones who are billing.

52.     I approach all legal fee audits with the assumption that most attorneys do not intentionally inflate their bills, and that there must be a "preponderance of the evidence" to support an audit finding that a certain amount of fees should be disallowed. In this regard, I also believe that attorneys should be given the benefit of the doubt where possible overbilling may have occurred. On the other hand, in those cases where it is difficult to determine the nature and extent of the possible overbilling due to the firms' questionable billing practices, such as block billing or vague entries, it is incumbent upon the law firms to justify their fees.

53.     I view a law firm's billing records as a representation by the law firm that a particular task was performed on a particular day, by a particular timekeeper, and that the timekeeper spent the amount of time stated on the invoice. Billing format or billing practice irregularities that bring into question the credibility, integrity or reliability of a law firm's billing

1    records are not only unacceptable, but they are also potentially grounds for a significant

2    disallowance of fees.

3                         **SCOPE OF AUDIT AND CALCULATION ERRORS**

4         54.    The starting point in any audit is to determine the lodestar, or the amount being

5    requested. Plaintiffs' Counsel seeks an order awarding a "lodestar" figure of **$4,528,553.75** in

6    attorneys' fee based on **4,778** hours of work. (See Plaintiffs' Motion for Attorneys' Fees, 22:3-

7    27.)

8         55.    However, my independent calculations of the 4,051 entries total **4531.60** hours and

9    **$4,384,221.25** in fees which does not match Plaintiffs' Counsel totals based on their calculation

10   errors, as follows:

| Ex. | Biller | Stated Hours | Stated Fees | *Computed Hours* | *Computed Fees* | Fee Diff. | Hours Diff. |
|-----|--------|-------------|-------------|-----------------|----------------|-----------|-------------|
| 1 | Dale K. Galipo (attorney) | 713.50 | 998,900.00 | 713.50 | 998,900.00 | 0.00 | 0.00 |
| 19 (263 -13) | Hang D. Le (attorney) | 57.40 | 40,180.00 | 83.40 | 58,380.00 | **-18,200.00** | **-26.00** |
| 12 | Kent M. Henderson (attorney) | 1,764.85 | 1,941,335.00 | 1,764.85 | 1,941,335.00 | 0.00 | 0.00 |
| 13 | Angel Carrazco, Jr. (attorney) | 925.20 | 925,000.00 | 925.20 | 925,200.00 | **-200.00** | **0.00** |
| 14 | Humberto Guizar (attorney) | 41.20 | 40,170.00 | 43.20 | 42,120.00 | **-1,950.00** | **-2.00** |
| 15 | Chris L. Holm (attorney) | 746.00 | 447,600.00 | 471.5 | 282,900.00 | **164,700.00** | **274.50** |
| 16 | Nathan Henderson (law clerk) | 317.70 | 95,310.00 | 317.70 | 95,310.00 | 0.00 | 0.00 |
| 17 | Antonio Gallegos (litigation assistant & law clerk) | 51.10 | 8,942.50 | 51.10 | 8,942.50 | 0.00 | 0.00 |
| 18 | Ely Arraiga (litigation assistant) | 65.80 | 13,160.00 | 65.8 | 13,160.00 | 0.00 | 0.00 |

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

| 19 (263-29) | Briseria Gomez (litigation assistant) | 69.50 | 12,162.50 | 69.6 | 12,180.00 | **-17.50** | **-0.10** |
|---|---|---|---|---|---|---|---|
| 20 | Santiago Laurel (litigation assistant) | 9.75 | 2,193.75 | 9.75 | 2,193.75 | 0.00 | 0.00 |
| 263-33 | Leslie De Leon (litigation assistant) | 16.00 | 3,600.00 | 16 | 3,600.00 | 0.00 | 0.00 |
| | | **4,778.00** | **4,528,553.75** | **4,531.60** | **4,384,221.25** | **144,332.50** | **246.40** |

56.    Based on my independent calculations, Plaintiffs' Counsel billing totals **4531.60** hours and **$4,384,221.25** in fees which I use as the starting point of the audit which is a difference of 246.40 hours and $144,332.50 in fees.

57.    While some categories of disallowances recommended herein are based on the specific nature of the disallowance such as the excessive number of timekeepers, unreasonable requested rates or billing for clerical work, in my opinion Plaintiffs' Counsels' excessive fee request and corresponding excessive amount of time it would take to quantify the recommended fee disallowances necessitates an across-the-board percentage reduction for the billing practices such as estimated round number billing, long days billing 10 plus hours, the failure to delegate to paralegals or lower billing attorneys, vague entries, questionable billing practices including excessive time spent on particular tasks such as reviewing e-mails and expert reports, excessive inter/intra-office conferencing, the disallowance of fees related to the first trial due to the mistrial, time disallowed for preparing experts and Rule 26 Report, all fees disallowed related to Francisco Hurtado's future medical treatment and costs, and duplicative work including attendance at depositions and the second trial.

58.    Across the board percentage cuts in the fees claimed are routinely utilized so that courts do not misuse their time "set[ting] forth item-by-item findings concerning what maybe countless objections to individual billing items." *McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006); *Williamsburg Fair Housing Committee v.*

1   *The New York City Housing Authority*, 2007 WL 486610,*5 (S.D.N.Y. February 14, 2007);

2   *Daiwa Special Asset Corp.,* 2002 WL 31767817,*2 (citing *Lunday v. City of Albany*, 42 F.3d 131,

3   134 (2d Cir. 1994). See also *In re Poseidon Pools of America*, 180 B.R. at 751; *In re Navis*

4   *Realty, Inc., 126 B.R.* at 144; *In re Adventist Living Ctrs., Inc.,* 137 B.R. 701, 706 (Bankr.N.D.Ill.

5   1991).

6                                    **FINDINGS AND OPINIONS**

7         **I.        EXCESSIVE TIMEKEEPERS**

8         59.        Plaintiffs' Counsels' billing indicates there were 12 different timekeepers as

9   reflected in the table above. In comparison, the Attorney General's Office staffed this matter with

10   2 attorneys and 2 paralegals, with one additional paralegal assisting at the first trial in March for 2

11   days.

12        60.        Page 5 of the March 2016 Los Angeles Bar Association Arbitration Advisory on

13   bill padding attached as **Exhibit 7** states, in relevant part:

14   Generally, the determination of whether the matter was overstaffed is a question of fact
     the arbitrator must resolve. In a mandatory fee arbitration it is appropriate to place the
15   burden of proof on the lawyer to demonstrate that the disputed matters/tasks were properly
     staffed and not attempts to inflate time charged to a client.  Issues that may affect this
16   factual determination may include the complexity or significance of the case, the litigious
     nature of the parties, the amount in controversy, client consultation in advance, the client's
17   awareness and lack of objection, or any other fact tending to demonstrate whether it was
     appropriate for more than one lawyer or support staff to participate in a disputed task.
18

19        61.        The State Bar of California Mandatory Fee Arbitration Advisory No. 2003-01,

20   "Detecting Attorney Bill Padding," January 29, 2003, attached as **Exhibit 8**, states at page 5:

21   The least experienced lawyers are called "associates". They are employees of the firm and
     are paid a salary and sometimes a bonus for billing high hours in a year.  Many firms pay
22   bonuses if associates bill about 2,000 to 2,420 hours in a year.  Try to ascertain the plan in
     effect for the particular case and be aware that some firms will allow an associate to elect
23   a particular plan. Base salary is tied to a certain minimum, and an associate may get a
     bonus for meeting specified "billables".  New associates are often not efficient but they
24   need to record as many hours as they can to meet their targets. The matters they work on
     are usually ones where they have no direct relationship with the client. New associates are
25   most likely to be under great pressure to bill very high hours. If they have not developed
     the discipline to record their times daily, some time may go by before the associate enters
26   the work description and time.  Some will give in to the temptation to guess and to
     exaggerate in order to meet the demands on them, anticipating that it will be at least a
27   month and maybe longer before anyone questions the time. Be observant for elastic
28

phrases to describe what they did in a way which is easy to justify or at least hard to disprove.   Phrases such as "review documents produced by counsel, 8.0 hours", "discovery, 6.0 hours", "prepare for trial 9.0 hours", etc., should trigger suspicion. Scrutinize newer associates' times first.  The fewer the years of practice, the higher the probability of padding. The ABA Commission on Billable Hours Report recognizes that hourly billing penalizes efficient and productive lawyers and "may allow, indeed may encourage, profligate work habits" [ABA Commission on Billable Hours Report (August, 2002), at pages 6 -8].

It is also generally accepted that the more timekeepers on a case, the higher the bill will be.  Pay particular attention to time recorded by newer associates who record time on the matter only briefly, such as one or two months

62.     In *Hensley v. Eckerhart* (1983) 103 S.Ct. 1933, the United States Supreme Court stated that in staffing cases, counsel is required to exercise "billing judgment", which means exercising judgment to adjust or write down fees and/or expenses incurred when the fees would be excessive, duplicative, or unnecessary:

Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here."  (Id. at 1939-40.)

63.     While 12 timekeepers in this case, on its face, appears to be excessive indicating a lack of billing judgment, an analysis of the few very time entries by Humberto Guizar, Leslie De Leon and Santiago Laurel totaling 68.95 hours and $47,913.75 in fees appear to be particularly unnecessary and/or non-recoverable clerical work:

| Timekeeper | Computed Hours | Computed Fees |
|---|---|---|
| Humberto Guizar (attorney) | 43.2 | $42,120.00 |
| Leslie De Leon (litigation assistant) | 16 | $3,600.00 |
| Santiago Laurel (litigation assistant) | 9.75 | $2,193.75 |
| | **68.95** | **$47,913.75** |

– 18 –

64.     For instance, attorney Humberto Guizar billed the following entries (listed in alphabetical order) for a total of 43.2 hours and $42,120.00 in fees at a requested hourly rate of $975.00 consisting of only 2.5 hours of substantive work on April 23, 2023 for "Defended depositon of expert Jesse Wobruck" (sic) with the remaining entries overwhelming consisting of reviewing documents and attending weekly meetings:

| Date | Description | Hours Billed | Rate | Total |
|------|-------------|--------------|------|-------|
| 4/23/2023 | Defended depositon of expert Jesse Wobruck | 2.5 | 975 | 2,437.50 |
| 3/14/2020 | Partner weekly review to discuss case | 2 | 975 | 1,950.00 |
| 2/17/2021 | Partner weekly review to discuss case | 2 | 975 | 1,950.00 |
| 4/23/2021 | Partner weekly review to discuss case | 0.5 | 975 | 487.50 |
| 1/6/2022 | Partner weekly review to discuss case | 0.5 | 975 | 487.50 |
| 4/26/2022 | Partner weekly review to discuss case | 0.5 | 975 | 487.50 |
| 10/6/2022 | Partner weekly review to discuss case | 0.5 | 975 | 487.50 |
| 11/7/2022 | Partner weekly review to discuss case | 0.5 | 975 | 487.50 |
| 11/30/2018 | Prepared and send email to the firm partners and team | 0.2 | 975 | 195.00 |
| 3/4/2024 | Review depositions and entire file | 4 | 975 | 3,900.00 |
| 2/24/2020 | Review emails from partners | 1 | 975 | 975.00 |
| 2/30/2020 | review entire file | 3 | 975 | 2,925.00 |
| 12/6/2024 | Review hours billed on the case | 1 | 975 | 975.00 |
| 10/29/2021 | Review of defendant's MSJ documents and review of file | 4 | 975 | 3,900.00 |
| 7/10/2021 | Review of depo summaries | 1 | 975 | 975.00 |
| 12/6/2021 | Review of MSJ opposition prepared by office and input | 5 | 975 | 4,875.00 |
| 12/12/2019 | Reviewed 200 page personnel file of Yepez | 2 | 975 | 1,950.00 |
| 10/14/2023 | Reviewed all pre-trial documents | 5 | 975 | 4,875.00 |
| 12/11/2019 | Reviewed amended complaint and met with partners and team to discuss | 2 | 975 | 1,950.00 |
| 3/22/2019 | Reviewed complaint and other docs | 2 | 975 | 1,950.00 |
| 4/2/2019 | Reviewed emails re: protective order | 1 | 975 | 975.00 |
| 10/21/2024 | Trial debriefing | 2 | 975 | 1,950.00 |
| 7/9/2021 | Weekly review discussion of Hurtado case | 1 | 975 | 975.00 |
|  |  | 43.2 |  | 42,120.00 |

– 19 –

65.    Legal Assistant Leslie De Leon billed the following entries for a total of 16 hours and $3,600.00 in fees at a requested hourly rate of $225.00 consisting exclusively of clerical work:

| Date | Description | Hours Billed | Rate | Total |
|------|-------------|--------------|------|-------|
| 8/1/24 | Receive and calendar notice of hearing from ADR Services, Inc. on Mediation set for August 22, 2024 at 10:00 am.; Calendar deadlines. | 0.2 | 225 | 45.00 |
| 8/22/24 | Set up mediation remote appearance via zoom for DKG | 0.1 | 225 | 22.50 |
| 8/28/24 | Arrange for service of the Motion to Substitute to the following parties: Julissa Diaz Ruelas (mother of minor David Joseph Diaz Ruelas) at Merced County Jail, and David Diaz and Rosa Ruelas (grandparents of minor). | 2 | 225 | 450.00 |
| 8/30/24 | Email court reporter re cost estimate on trial transcripts | 0.1 | 225 | 22.50 |
| 8/30/24 | E-file proofs of service on Motion to Substitute | 0.2 | 225 | 45.00 |
| 9/5/24 | Calculate and calendar deadline for Plaintiffs' Opposition to Defendants' Motion to Continue Trial | 0.1 | 225 | 22.50 |
| 9/19/24 | Process invoice for trial transcripts | 0.2 | 225 | 45.00 |
| 9/19/24 | Exchange emails with court reporters Abigail Torres and Maryann Valenoti re turnaround time for transcript delivery | 0.5 | 225 | 112.50 |
| 9/20/24 | Exchange further emails with court reporters re transcript delivery | 0.2 | 225 | 45.00 |
| 9/24/24 | Calculate and calendar deadline for Plaintiffs' Opposition to Defendants' Motions In Limine | 0.1 | 225 | 22.50 |
| 10/2/24 | Sent follow up emails to court reporters re transcripts | 0.1 | 225 | 22.50 |
| 10/7/24 | Sent follow up email to court reporter Maryann Valenoti re delivery of transcripts | 0.1 | 225 | 22.50 |
| 10/10/24 | Process final invoice for trial transcripts | 0.1 | 225 | 22.50 |
| 10/11/24 | Gather and print the trial transcripts for the first trial. | 5.0 | 225 | 1,125.00 |
| 10/14/24 | Prepare binders and tabs for the trial transcripts. Organize in numerical orders. Four sets. | 4.0 | 225 | 900.00 |

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

| 10/14/24 | Arrange the binders in boxes and prepare for shipment.<br>Create shipment labels. Drop off the package at Fedex, Woodland Hills. | 2.0 | 225 | 450.00 |
| 10/15/24 | Prepare Dale's trial binder. Gather and print copies of operative complaint, witness list, exhibit list, motions in limine, jury instructions, and other trial documents. | 1.0 | 225 | 225.00 |
| | | **16.0** | | **3,600.00** |

66.    Litigation Assistant, Santiago Laurel, billed the following entries for a total of 9.8 hours and $2,193.75 in fees at a requested hourly rate of $225.00 consisting exclusively of clerical work:

| Date | Description | Hours Billed | Rate | Total |
|------|-------------|--------------|------|-------|
| 02/23/24 | Drafted an email to co-counsel requesting documents for review and a copy of the entire file. Reviewed the email from co-counsel's office. Created a Dropbox folder and shared it with Ms. Gomez and Mr. Carrazco. | 0.50 | 225 | 112.50 |
| 02/26/24 | Downloaded the contents from Dropbox and organized the files. Created separate files for pleadings and documents to prepare for trial. Reviewed and inventoried the contents for trial preparation. | 2.00 | 225 | 450.00 |
| 02/26/24 | Added the Court's trial-ordered deadlines to the calendar and updated Mr. Galipo's schedule with the relevant dates. | 0.50 | 225 | 112.50 |
| 03/04/24 | Coordinated with co-counsel to confirm availability for a conference call. Drafted and sent an email with the conference details and dial-in instructions. | 0.25 | 225 | 56.25 |
| 03/05/24 | Downloaded and printed NEF-stamped trial documents. Assembled the pretrial binder for Mr. Galipo, including preparing the table of contents with appropriate tabs. | 2.0 | 225 | 450.00 |
| 03/05/24 | Downloaded and printed NEF-stamped motions in limine, including their oppositions. Organized and prepared a table of contents for the motions, oppositions, and declarations, totaling 37 documents. Assembled Mr. Galipo's Motion in Limine binder, including | 2.0 | 225 | 450.00 |

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

| | | | | |
|---|---|---|---|---|
| | tabs and the table of contents. | | | |
| 04/04/22 | Printed deposition transcripts and statements for Mr. Galipo in preparation for trial. Took inventory of the transcripts and printed three copies of each, along with separators for the deposition and statement transcripts. | 2.5 | 225 | 562.50 |
| | | 9.8 | | 2,193.75 |

67.     Given these timekeepers' limited number of hours worked on the case, the lack of substantive work product and the clerical nature of work, it is unclear why their work could not have been performed by another timekeeper. While the grounds for disallowing clerical entries are discussed in more detail below, it is my opinion that the inclusion of these timekeepers collectively totaling $47,913.75 reflects a general lack of billing judgment and should be disallowed in their entirety as excessive and unnecessary with the exception of Mr. Guizar's 2.5 hours and $2,437.50 in fees for defending a deposition.  This amounts to a recommended disallowance of $45,476.25.

**Recommended Disallowance:**
**Calculated Fees: $4,384,221.25**
**Excessive Timekeepers Disallowance: - $45,476.25**
**Net Fees: $4,338,745.00**

**II.     ESTIMATED ROUND NUMBER BILLING**

68.     The March 2016 Los Angeles County Bar Association Arbitration Advisory on bill padding states, in relevant part, at pages 8-9: "If the bills show time entries in whole numbers, especially large time entries such as 8.0, 9.0 or 10.0, these are probably estimates rather than actual time spent and should be scrutinized, [except where the event involved trial, mediation, day-long deposition, or other inherently extended activity]." (See Exhibit 7.)

69.     The State Bar of California Mandatory Fee Arbitration Advisory No. 2003-01, "Detecting Attorney Bill Padding," January 29, 2003, at page 6 likewise states that such entries "are probably estimates rather than actual time spent and should be investigated."  (See Exhibit 8.)

– 22 –
DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

70.     Plaintiffs' Counsel billed numerous large time entries ending in whole numbers. Attached as **Exhibit 9** are 846 entries (excluding round number entries from Guizar, Laurel and De Leon) reflecting round number billing of 1 hour or more totaling **2,146** hours and **$2,137,800.00** in fees.

71.     The Arbitration Advisory and case law referenced above would justify a disallowance for use of estimated round number billing, and this practice is considered in my across-the-board percentage reduction discussed below as part of an overall recommended fee reduction based on the many questionable billing practices engaged in by Plaintiffs' Counsel.

### III.     LONG DAYS BILLING 10 HOURS +

72.     Attorneys billing more than 10 hours a day, when they are not traveling, not in court or not at a deposition, should be suspect.  In all, Plaintiffs' Counsel billed **753.30** hours and **$907,940.00** in fees in ten-hour plus days spent in the office.  Attached as **Exhibit 10** is a table reflecting these entries.  Based on my experience as an attorney and legal fee expert, it is my been my opinion that in order to bill 10 hours a day in the office an attorney must spend at least an additional two or three hours in the office in order to account for bathroom breaks, personal business etc.

73.     This excessive billing practice is considered in my across-the-board percentage reduction discussed below as part of an overall recommended fee reduction based on the many questionable billing practices engaged in by Plaintiffs' Counsel.

### IV.     FAILURE TO DELEGATE TO PARALEGALS OR LOWER BILLING ATTORNEYS

74.     In *Kronfeld v. Transworld Airlines, Inc.,* 129 F.R.D. 598, 602 (S.D.N.Y. 1990), a class action wherein fees were awarded, the court had to determine the lodestar and adjustment thereof for "overstaffing and other forms of duplicative or inefficient work … In addition, a court must analyze the tasks entrusted to various lawyers to ensure that they were performed by individuals with appropriate skills and experience. Partners should not perform duties that could as readily be performed by associates, and associates should not do paralegal work." (Citation omitted).  See also *Lochren v. County of Suffolk,* 344 Fed. Appx. 706, 709 (2nd Cir. 2009) (court

1  did not err in applying 25% across-the-board reduction in fees to compensate for overstaffing and

2  needless duplication).

3      75.   In *Frias v. City of Los Angeles*, Central District of California, Case No. CV 16-

4  4626 PSG (SKx), Order Granting in Substantial Part Plaintiffs' Motion for Attorneys' Fees, dated

5  April 23, 2020, attached as Exhibit 4 to the Declaration of Dale Galipo, the court reduced Mr.

6  Galipo's time for failure to properly delegate certain tasks to junior associates. In particular, the

7  Court found it "inappropriate that Galipo, at his proposed $1200 per hour rate, did not delegate

8  legal research to another attorney. See, e.g., *Asset Mktg. Sys., Inc. v. Gagnon*, No. 03-CV-2234-B

9  (CAB), 2009 WL 10720557, at *6 (S.D. Cal. May 7, 2009) ("By contrast, a senior attorney

10  should delegate appropriate tasks to associates, for example, legal research.")."

11      76.   Here, it is clear that Plaintiffs' Counsel systemically failed to delegate work to

12  paralegals or lower billing attorneys for which such work would be more appropriate.  For

13  instance, Attorney Henderson spent 42.5 hours of vague "Extensive review of medical records

14  and documents in Hurtado case" and billed $46,750 in fees with a requested hourly rate of

15  $1,100.00 which is work typically performed by a paralegal or associate with a much lower

16  hourly rate:

| Date | Description | Hours Billed | Rate | Total |
|---|---|---|---|---|
| 1/29/2021 | Extensive review of medical records and documents in Hurtado case | 6 | $1,100.00 | $6,600.00 |
| 12/14/2021 | Extensive review of medical records and documents in Hurtado case | 3 | $1,100.00 | $3,300.00 |
| 6/21/2022 | Extensive review of medical records and documents in Hurtado case | 4.5 | $1,100.00 | $4,950.00 |
| 10/12/2022 | Extensive review of medical records and documents in Hurtado case | 3.5 | $1,100.00 | $3,850.00 |
| 11/18/2022 | Extensive review of medical records and documents in Hurtado case | 1.8 | $1,100.00 | $1,980.00 |
| 12/12/2022 | Extensive review of medical records and documents in Hurtado case | 3 | $1,100.00 | $3,300.00 |
| 2/16/2023 | Extensive review of medical records and documents in Hurtado case | 4.5 | $1,100.00 | $4,950.00 |
| 3/24/2023 | Extensive review of medical records and documents in Hurtado case | 2 | $1,100.00 | $2,200.00 |

– 24 –

| 5/16/2023 | Extensive review of medical records and documents in Hurtado case | 3.5 | $1,100.00 | $3,850.00 |
|---|---|---|---|---|
| 7/20/2023 | Extensive review of medical records and documents in Hurtado case | 2.5 | $1,100.00 | $2,750.00 |
| 8/31/2023 | Extensive review of medical records and documents in Hurtado case | 1.5 | $1,100.00 | $1,650.00 |
| 9/12/2023 | Extensive review of medical records and documents in Hurtado case | 2.1 | $1,100.00 | $2,310.00 |
| 11/2/2023 | Extensive review of medical records and documents in Hurtado case | 4.6 | $1,100.00 | $5,060.00 |
|  |  | **42.5** |  | **$46,750.00** |

77.     Further, it's unclear what, if anything, Mr. Henderson's document review contributed to the case, especially in light of Mr. Henderson's lack of work product. This excessive billing practice is considered in my across-the-board percentage reduction discussed below as part of an overall recommended fee reduction based on the many questionable billing practices engaged in by Plaintiffs' Counsel.

## V.     VAGUE ENTRIES

78.     I identified a number of entries that are vague because they lack sufficient specificity about what was done to justify the time and fees billed.  Based on a review of all the billing records in the case, I found vague entries throughout the billing records.  Vague entries provide little or no information about the nature or significance of the work performed, thereby severely hampering a realistic assessment of its utility or the reasonableness of the associated fees.  Specifically, billing records should provide "sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., Inc.,* 732 F.2d 495, 502 n.2 (6th Cir. 1984).  Vague entries and terse summaries will not suffice to support a fee award. *Levinson v. Prentice-Hall, Inc.*, Civ. No. 85-3440 (CSF), 1989 WL 65622, at *6 (D.N.J. June 7, 1989).

79.     Typically, vague entries omit crucial information about one or more essential elements of a time description, such as the specific activity undertaken, a particular document reviewed or drafted, identities of participants in a meeting or telephone conference, or the subject

1  matter of the meeting or telephone conference.  Vague time entries simply mention or hint at a

2  particular task and leave it to the reader to fill in the gaps.  Vague time entries are essentially

3  incomplete entries.  As such, they neither sufficiently document nor adequately support a

4  statement for fees for services.

5       80.    The vagueness of Plaintiffs' Counsels' fee descriptions and other similarly

6  deficient billing practices makes it impossible for an auditor to assess whether the time claimed

7  was reasonably expended.  *See Davis v. Prison Health Servs.,* No. C 09-2629 SI, 2012 WL

8  4462520, at *11 (N.D. Cal. Sept. 25, 2012) (concluding that such billing entries as "conference

9  calls with co-counsel," "review e-mail from opposing counsel," "review e-mail chain," "draft e-

10  mail," and "legal research" were insufficiently detailed and reducing the fee award on that

11  ground); *McCarthy v. R.J. Reynolds Tobacco Co.,* No. CIV. 2:09-2495 WBS DAD, 2011 WL

12  4928623, at *4 (E.D. Cal. Oct. 17, 2011) (reducing a fee award where most of counsel's entries

13  referred generally to "legal research" and "conversations with [co-counsel]" "without identifying

14  the subject of the research or conversations"); *Ambriz v. Arrow Fin. Servs., LLC*, No. CV 07-

15  5423-JFW (SSx), 2008 WL 2095617, at *5 (C.D. Cal. May 15, 2008) (finding that billing entries

16  for a "telephone conference" were inadequate because the Court could not determine the

17  reasonableness of the time spent without being provided any information on the "nature of the

18  conference"); *Lowe v. Unum Life Ins. Co. of Am.*, No. CIV. S-05-00368 WBS GGH, 2007 WL

19  4374020, at *4-5 (E.D. Cal. Dec. 14, 2007) (denying attorney's fees for time spent on "monthly

20  file review," "review" and "paperwork" for lack of sufficiently detailed time records).

21       81.    In *In re Pierce,* 190 F.3d 586, 593-94 (D.C. Cir. 1999), the D.C. Circuit confirmed

22  that its general practice was to reduce vaguely entered hours of plaintiffs' attorneys by 10%.

23  Similarly, the Eighth Circuit in *H.J. Inc. v. Flygt Corp.,* 925 F.2d 257, 260 (8th Cir. 1991), upheld

24  a district court's reduction of hours billed by the prevailing plaintiff's attorney by 20% for vague

25  billing entries.  Further, in *Gratz v. Bollinger,* 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005),

26  District Judge Duggan reduced requested fees 10% due to block billing and vague entries.  *See*

27  *Fox v. Vice,* 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees . . . is to do rough

28  justice, not to achieve auditing perfection."); *see also McCarthy*, 2011 WL 4928623, at *5

(utilizing a one-third reduction of the requested hours where the counsel's billing records lacked sufficient detail).

82.     A list of examples of vague entries is attached hereto as **Exhibit 11.**  In my opinion, both case law and standard billing practice require more justification by Plaintiffs' Counsel for the vague billing entries in this case.

83.     Due to the vague nature of Plaintiffs' Counsels' billing entries where the lack of specificity severely interferes my ability to analyze the billing records in this case, this billing practice is considered in my across-the-board percentage reduction discussed below as part of an overall recommended fee reduction based on the many questionable billing practices engaged in by Plaintiffs' Counsel.

## VI.   QUESTIONABLE BILLING PRACTICES INCLUDING EXCESSIVE TIME SPENT ON PARTICULAR TASKS SUCH AS REVIEWING E-MAILS AND EXPERT REPORTS.

84.     Based on a close scrutiny of Plaintiffs' Counsels' fee entries, it is clear that they engaged in numerous systemic questionable billing practices including billing for non-recoverable tasks in addition to excessive billing throughout the duration of the case, such as Mr. Holm billing between 0.2 and 3.5 hours each time he simply reviewed or forwarded a single e-mail:

| Date | Description | Hours Billed | Requested Rate | Total |
|------|-------------|--------------|----------------|-------|
| 5/19/2022 | forwarded email regarding case meeting | **0.2** | $600.00 | $120.00 |
| 11/4/2021 | reviewed email from partner regarding the case | **0.3** | $600.00 | $180.00 |
| 4/4/2022 | reviewed email regarding case | **0.4** | $600.00 | $240.00 |
| 9/3/2019 | forwarded email to staff regarding reminder to be at meeting to discuss strategy | **0.5** | $600.00 | $300.00 |
| 9/2/2021 | reviewed email from partner about the case | **1** | $600.00 | $600.00 |
| 3/9/2021 | reviewed email from partner about the case | **1.5** | $600.00 | $900.00 |
| 12/20/2021 | read email and reviewed subpoenas attached in the case | **2** | $600.00 | $1,200.00 |
| 11/4/2021 | reviewed email and materials sent by partner regarding the case | **2.5** | $600.00 | $1,500.00 |

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

| 12/4/2020 | Reviewed email and attachments of email sent containing pretrial scheduling order and all deadlines in the case | 3 | $600.00 | $1,800.00 |
| 11/30/2021 | reviewed email from partner and attachment about the case | 3.5 | $600.00 | $2,100.00 |

85.     Further, Mr. Holm systemic billed excessive questionable entries, for instance:

 - 90 separate 0.5 entries with the same description of "firm meeting regarding case, discussion of strategy"; and

- 90 separate 0.5 entries with the varying descriptions of "reviewed email regarding case meeting" or "reviewed email regarding meeting";

86.     Attached as **Exhibit 12** are Mr. Holms fee entries listed in alphabetical order so the Court can analyze Mr. Holm's identical excessive fee entries grouped together.

87.     Similarly excessive, on January 29, 2024 Mr. Galipo billed 6.2 hours for "Review Meinard Report":

| Date | Description | Hours Billed | Requested Rate | Total |
|------|-------------|--------------|----------------|-------|
| 01/29/2024 | Review Meinhard Report | 6.20 | $1,400.00 | $8,680.00 |

88.     The two Meinhard reports that I have analyzed consist of one report that is 32 pages long and another report that is 24 pages long which in my opinion collectively should take less than a half hour to review.  The two Meinhard reports are collectively attached as **Exhibit 13.**

89.     Other questionable billing practices include litigation assistant Antonio Gallegos billing 15.4 for transporting attorneys and experts, and traveling to/from the office:

| Date | Description | Hours Billed | Requested Rate | Total |
|------|-------------|--------------|----------------|-------|
| 3/13/2024 | Transported attorneys to the court | 0.5 | 175 | 87.50 |
| 3/13/2024 | Transported attorneys to Airbnb | 0.5 | 175 | 87.50 |
| 3/14/2024 | Transported attorneys to the court | 0.5 | 175 | 87.50 |
| 3/14/2024 | transported expert from Airport to Court | 0.7 | 175 | 122.50 |
| 3/14/2024 | transported expert from court to Airport | 0.7 | 175 | 122.50 |
| 3/14/2024 | Transported attorneys to Airbnb | 0.5 | 175 | 87.50 |
| 3/15/2024 | Transported Attorneys to court | 0.5 | 175 | 87.50 |
| 3/15/2024 | Took trial boxes back From SAC To LA | 9 | 175 | 1,575.00 |

– 28 –

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

| 3/15/2024 | Uber from office to home | 0.5 | 175 | 87.50 |
|-----------|--------------------------|-----|-----|-------|
| 3/25/2024 | Transported attorneys from the court to home | 0.5 | 175 | 87.50 |
| 3/25/2024 | Transported attorneys to the court for trial | 0.5 | 175 | 87.50 |
| 3/26/2024 | Transported attorneys from court to home | 0.5 | 175 | 87.50 |
| 3/26/2024 | Transported attorneys to the court for trial | 0.5 | 175 | 87.50 |
| | | **15.4** | | **2,695.00** |

90.     "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 635 [186 Cal.Rptr. 754, 652 P.2d 985]; accord, *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1137 [104 Cal.Rptr.2d 377, 17 P.3d 735].) [47 Cal.4th 991].

91.     As the Ninth Circuit explained, instead of setting forth an hour-by-hour analysis of a fee request, the court may make an across-the-board percentage cut with respect to disputed hours as a "practical means of trimming the fat" from a fee application. See *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

92.     During my review of Plaintiff's Counsel's billing entries, it was obvious that there was a surprising amount of excessive billing.  These questionable billing entries are considered in my across-the-board percentage reduction discussed below as part of an overall recommended fee reduction.

## VII.     UNREASONABLE REQUESTED HOURLY RATES

**1.     The Requested Billing Rates Are Unsupported and Unjustified.**

93.     I regularly have access to current law firm rates in conducting legal fee audits and auditing law firms' billing invoices. I also regularly review court opinions on attorneys' fee motions and requests and I am familiar with what law firms practicing in Sacramento County Superior Court and the United States District Court for the Eastern District of California, Sacramento Division are seeking as hourly rates and what courts are awarding, including, but not limited to, firms specializing in civil rights litigation. Based on my experience in having conducted approximately 4,000 legal fee audits, my experience as an attorney and expert in legal fees over the past 48 years, and my review of the above-mentioned material, I have personal knowledge of hourly billing rates for attorneys and staff in the Sacramento County Superior Court

and the United States District Court for the Eastern District of California, Sacramento Division

market areas. On that basis, it is my opinion that the billing rates being claimed in Plaintiffs' Fee

Motion are not typically awarded in civil rights or unreasonable force cases in this venue.

**A.      Not Usual and Customary Rates That Are
            Paid by Clients or Awarded by Courts.**

94.      With the exceptions of Mr. Galipo and Mr. Laurel, plaintiffs' attorneys and staff

present no information in their declarations as to any clients paying the requested rates or any

court anywhere awarding any of them the requested rates or any rate in any type of case.

However, they have provided information for some of the timekeepers in the unsworn Motion for

Fees.

95.      Each supporting declaration (again, other than Mr. Galipo's and Mr. Laurel's)

simply states that their requested rate in this case is reasonable. (See, e.g., Guizar Decl., ¶ 7;

K. Henderson Decl., ¶ 35; Carrazco Decl, ¶ 30; Holm Decl., ¶ 28; N. Henderson Decl., ¶ 9;

De Leon Decl., ¶ 7; Gomez Decl., ¶ 8; Arraiga Decl., ¶ 7; Gallegos Decl., ¶ 7; Le Decl., ¶ 12.)

96.      Mr. Galipo cites to seven cases, all venued in or near Los Angeles, in which he has

been awarded fees. (Galipo Decl., ¶¶ 19-24.) Mr. Laurel states that he was awarded fees in two

Los Angeles cases. (Laurel Decl., ¶ 6.)

97.      Out of venue rates, such as those cited by Mr. Galipo and Mr. Lauren from Los

Angeles, *may* be applicable if Plaintiffs had attempted to find Sacramento County attorneys to

take this case but were ultimately unsuccessful. Plaintiffs have made no such declaration in this

case. Mr. Merin (ECF 263-35) states (under penalty of perjury) that no Sacramento attorney

would or could have taken this case. (Merin Decl., ¶¶ 44-45.) However, I did not see any basis or

evidence for this opinion in his declaration.

98.      Plaintiffs' attorneys claim that Ms. Le has been awarded rates of $550 and $650

for cases out of this venue. (MPA, p. 14:6-23.)

99.      Plaintiffs' attorneys provide no information for any previous fee awards to

Mr. Kent M. Henderson. (MPA, pp. 14:24-15:18.)

100.    Plaintiffs' attorneys provide no information for any previous fee awards to Mr. Angel Carrazco, Jr. (MPA, pp. 15:19-16:10.)

101.    Plaintiffs' attorneys provide no information for any previous fee awards to Mr. Humberto Guizar whose time I have recommended be disallowed in its entirety as discussed above. (MPA, p. 16:11-26.)

102.    Plaintiffs' attorneys provide no information for any previous fee awards to Mr. Christopher L. Holm. (MPA, p. 17:1-15.)

103.    Plaintiffs' attorneys provide no information for any previous fee awards to Mr. Nathan Henderson. (MPA, pp. 17:16-18:3.) They do cite to a Central District case (apparently not involving Mr. Henderson), in which paralegals were awarded $300 per hour.

104.    Plaintiffs' attorneys provide no information for any previous fee awards to Mr. Antonio Gallegos. (MPA, p. 18:4-13.)

105.    Plaintiffs' attorneys provide no information for any previous fee awards to Ms. Ely Arraiga. (MPA, p. 18:14-23.)

106.    Plaintiffs' attorneys provide no information for any previous fee awards to Ms. Briseria Gomez. (MPA, pp. 18:24-19:5.)

107.    As noted above, Plaintiffs' attorneys provide information for two Los Angeles area cases in which Mr. Laurel was awarded fees at $200 and $220 per hour, but cite to no cases in the Sacramento or Eastern District regions. (MPA, p. 19:6-21.)  However, I have recommended that her time be disallowed in its entirety as clerical work, as discussed above.

108.    Plaintiffs' attorneys provide no information for any previous fee awards to Ms. Leslie De Leon whose time I have recommended be disallowed in its entirety as clerical work, as discussed above. (MPA, pp. 19:22-20:8.)

109.    None of plaintiffs' attorneys or staff have provided any documentation as to Sacramento County or Eastern District courts awarding them their requested hourly rates. Mr. Galipo and Mr. Laurel have only provided evidence of rates awarded by Los Angeles-area courts.

– 31 –

**B.    The Two Supporting Declarations From Other Attorneys are Insufficient.**

110.    **Declaration of Mark E. Merin (ECF 263-35).** Mr. Merin is a Sacramento-based attorney. (Merin Decl., ¶ 1.) He states that he knows Mr. Galipo and watched parts of both trials in this case. (Merin Decl., ¶ 44.) He thus has some familiarity with this case and is aware that it is an excessive force case. However, the extent of his knowledge of this case beyond these basic facts is unspecified and unknown. The primary basis for his opinion that Mr. Galipo's requested rate is reasonable appears to be his past experience with Mr. Galipo and his understanding of Mr. Galipo's history. He does not cite to any rates awarded by any courts or any evidence in support of the requested rate.

111.    **Declaration of Michael J. Hadid (ECF 263-34).** Mr. Hadid is an Oakland attorney who states that he knows Mr. Galipo and that the requested rate is reasonable. (Hadid Decl., ¶ 4.) He does not cite to any rates awarded by any courts or any evidence in support of the requested rate.

112.    Plaintiffs' attorneys have submitted no supporting evidence from attorneys not involved in this case addressing the issue of the reasonableness of the hourly rates being sought. Therefore, I believe they have not met this evidentiary standard and have provided no supporting evidence as to the reasonableness of the rates being sought.

**C.    No Prior Awards Documenting the Requested Rates.**

113.    As noted above, there is no indication in the moving papers that the rates being sought here are their usual and customary rates, that their clients routinely pay these rates, or that any courts in Fresno County have awarded them these rates. Again, this does not include the reference to Los Angeles courts and rates for Mr. Galipo and Mr. Lauren.

114.    The evidence proffered by Plaintiffs' attorneys show that they have only been awarded fees in other venues and it is undetermined whether those fee requests were stipulated or challenged.

**D.    Plaintiffs' Attorneys' Failure to Substantiate Their Rates**

115.    The result of Plaintiffs' attorneys' insufficient supporting declarations that they have been paid these amounts by clients or awarded these amounts by courts is that "[Plaintiffs'

attorneys] have provided the court with no credible source to determine if the hourly rates they seek are reasonable. Reasonable hourly rates are calculated by reference to "prevailing market rates in the relevant community," with a special emphasis on fees charged by lawyers of "comparable skill, experience, and reputation." *Jacobs v. California State Automobile Association Inter-Insurance Bureau* (N.D. Cal. 2009) 2009 U.S. Dist. LEXIS 101586, *8-9, citing *Davis v. City of San Francisco* (9th Cir. 1992) 976 F.2d 1536, 1546. A true and correct copy of the *Jacobs* opinion is attached hereto as **Exhibit 14** and incorporated herein by this reference.

116.    The Court in *Muniz v. United Parcel Service, Inc.* also demanded relevant information regarding hourly rates from the party seeking attorneys' fees:

> To ascertain an attorney's reasonable hourly rate, courts consider "the hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type." Ketchum v. Moses, 24 Cal.4th 1122, 1133, 104 Cal. Rptr. 2d 377, 17 P.3d 735 (2001) (emphasis in original). The moving party has the burden "to prove the appropriate market rate to be used in calculating the lodestar." MBNA Am. Bank, N.A. v. Gorman, 147 Cal.App.4th Supp. 1, 16, 54 Cal. Rptr. 3d 724 (2006).

*Muniz v. United Parcel Service, Inc.* (N.D. Cal. March 25, 2011) 2011 U.S. Dist. LEXIS 36697, *3-4. A true and correct copy of this opinion is attached hereto as **Exhibit 15** and incorporated herein by this reference.

117.    The *Muniz* court went on to analyze the fee request at issue in that case. The court noted that although the attorney requesting fees indicated when he graduated from law school (1970), the primary focus of his law practice (individuals in employment law cases), the number of depositions he had taken, and the number of times he had gone to trial (35), he "did not indicate the disposition of any of his cases." (*Id.*, at *4-5.)

**E.    Sacramento Market Rates.**

118.    Courts in this venue have almost uniformly and consistently stated that rates awarded in this venue should be based on other cases in this venue and not on cases decided in other venues.

> "As this court has previously held, case comparisons and evidentiary support citing prevailing rates the Northern District, Central District, Southern District and anywhere

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

else outside the Eastern District—Fresno Division are irrelevant to the determination of prevailing rates" in this forum. Luna v. Hoa Trung Vo, 2011 WL 2078004, at *4 (E.D. Cal. May 25, 2011) (citation and internal quotation marks omitted); see also, Johnson v. Allied Trailer Supply, 2014 WL 1334006, at *4-5 (E.D. Cal. Apr. 3, 2014) ("Comparisons to cases citing prevailing hourly rates in the Central District and Southern District are only marginally relevant to the determination of prevailing rates in the Eastern District ....")

*Estate of Casillas v. City of Fresno* (E.D. Cal. Feb. 21. 2020), Case No. 1:16-cv-01042-AWI-SAB, *13.

119.    Thus, the relevant venue for comparative rates is Sacramento.

**F.    Reference Rates**

120.    *Estate of Casillas v. City of Fresno*, (USDC ED Cal. Feb. 21, 2020), Case No. 1:16-cv-01042-AWI-SAB involved a police shooting in Fresno. Plaintiffs prevailed on several claims at trial, including a claim for excessive force. (*1.)

121.    Mr. Galipo was one of five plaintiffs' attorneys who handled that matter and he requested fees at $1,200 per hour. (*7.) The evidence he submitted in support of his fees in that case approximately mirror what he has presented in this case (a declaration from Mr. Galipo, fee awards from other cases, and supporting declarations from five attorneys.) (*7.)

122.    The court noted that all of the cases he submitted in support of his fee request were from the United States District Court for the Central District of California. (*Id.*)

123.    The court analyzed the evidence and noted that the rates have to be in line with the forum:

> As set forth above, "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Blum, 465 U.S. at 895-96 n.11, and "the relevant community is the forum in which the district court sits." Gonzalez, 729 F.3d at 1205. Thus, "[w]hen a case is filed in the Fresno Division of the Eastern District of California, the hourly rate is compared against attorneys practicing in the Fresno Division of the Eastern District of California." See J&J Sports Prods., Inc., 2018 WL 2155710, at *1 (citing Munoz v. Giumarra Vineyards Corp., 2017 WL 2665075, *17 (E.D. Cal. June 21, 2017); Nadarajah v. Holder, 569 F.3d 906, 917 (9th Cir. 2009)).

(*12.)

124.    The court explicitly rejected the relevance of the Los Angeles-area cases:

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

> "As this court has previously held, case comparisons and evidentiary support citing prevailing rates the Northern District, Central District, Southern District and anywhere else outside the Eastern District—Fresno Division are irrelevant to the determination of prevailing rates" in this forum. <u>Luna v. Hoa Trung Vo</u>, 2011 WL 2078004, at *4 (E.D. Cal. May 25, 2011) (citation and internal quotation marks omitted); see also, <u>Johnson v. Allied Trailer Supply</u>, 2014 WL 1334006, at *4-5 (E.D. Cal. Apr. 3, 2014) ("Comparisons to cases citing prevailing hourly rates in the Central District and Southern District are only marginally relevant to the determination of prevailing rates in the Eastern District ...."); <u>Jadwin v. County of Kern</u>, 767 F. Supp. 2d 1069, 1125 (E.D. Cal. 2011) (holding that Fresno division, not Sacramento division, was relevant legal community to be used in selecting appropriate hourly rates).

(*13.)

125.    The court then evaluated when exemptions from the "Local Forum Rule" are permissible and found that there was no evidence that local counsel were unavailable. (*14.)

126.    Based upon their analysis, the court rejected Mr. Galipo's $1,200 requested rate, despite it having been awarded many times in the Central District, as not being in line with Fresno rates and awarded him $400. (*16.)

127.    It should be noted that Mr. Galipo did not include this award in the motion for fees in this case even through it was an excessive force case in the Eastern District of California.

128.    *Lam v. City of Los Banos* (USDC ED Cal. May 13, 2019), Case NO. 2:15-cv-00531-MCE-KJN came about as a result of an officer-involved shooting and death. The court noted that:

> While Plaintiff provides evidence that he was unable to find counsel willing to take this case in Los Banos or the surrounding area, it does not appear from the record that he attempted to secure representation in Sacramento, where there are a number of counsel equipped to handle a case of this nature

(*5.)

129.    The Court used Sacramento rates and awarded Plaintiff's counsel John L. Burris, a well-known Oakland, California civil rights and police misconduct attorney with 43 years of experience, $400 per hour. The court awarded other attorneys (Andante D. Pointer with 14 years of experience and Ayana Curry with 19 years of experience) $280 per hour and Melissa Nold (a fourth-year attorney) $175 per hour. (*5.)

130.     *Schmidt v. Shasta Cnty. Marshal's Office* (USDC ED Cal. Mar. 10, 2020), Case No. 2:14-cv-02471-MCE-DMC was a sexual discrimination case which went to trial on retaliation claims. The jury unanimously found in favor of Plaintiff and awarded her damages. Plaintiff sought attorney's fees, which defendant opposed on various grounds.

131.     Plaintiff sought $750 per hour for lead counsel, Anthony Joseph Poidmore, who at that time had 48 years of experience as an attorney. The court analyzed the request and determined that the rates awarded in *Lam* were more appropriate. It awarded Mr. Poidmore $400 per hour, $280 per hour for two senior attorneys, $175 for all other associates, and $100 per hour for paralegals and law clerks. (*7.)

132.     On a motion to compel in *Libby v. City of Gridley* (USDC ED Cal. Aug 2, 2021), Case No. 2:21-cv-00017 JAM AC, an excessive force case, the court granted the motion to compel and awarded plaintiff their attorney's fees. The court awarded $300 per hour. Lead counsel for Plaintiff was Mark E. Merin.

133.     It is my opinion that Plaintiffs' attorneys have not *demonstrated* all the rates being sought in this matter are reasonable and appropriate market rates for them.

**G.     Recommended Rates**

134.     Of note, on Friday, December 20, 2024, the United States District Court for the Eastern District of California issued a Finding and Recommendation to Grant Plaintiff's Motion for Attorney's Fees as Modified, in Jennifer Doe, et al. v. State of California, et. al., Case No. 1:24-cv-00337-JLT-CDB (PC), Doc. 19, which states, in relevant part:

> A reasonable hourly rate is not defined by reference to the rates actually charged by the prevailing party. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Rather, reasonable fees must be calculated based on the prevailing market rates charged by "attorneys in the relevant community engaged in 'equally complex [f]ederal litigation.' " *Van Skike v. Dir., Off. of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009). Thus, when a case is filed in the Eastern District of California, this District "is the appropriate forum to establish the lodestar hourly rate..." *Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011).

> Courts may also draw upon "[d]ecisions by other courts regarding the reasonableness of the rate sought," as well as the court's "own experience in determining what constitutes a reasonable rate." *Base v. FCA US LLC*, No. 17-cv-01532-JCS, 2020 WL 363006, at *4 (N.D. Cal. Jan. 22, 2020).

1

2
3       Without the benefit from counsel for Plaintiff of a survey of fee awards in the
        Eastern District of California, the undersigned has reviewed relatively recent
4       decisions addressing fees in section 1983 actions and concludes that, as of 2017,
        hourly fee rates for attorneys with over 15 years of experience generally were
5       capped at $550. *See Z.F. v. Ripon Unified Sch. Dist.*, No. 2:10–cv–00523-TLN-
        CKD, 2017 WL 1064679, at *3 (E.D. Cal. Mar. 21, 2017) ("Prevailing hourly
6       rates in the Eastern District of California are in the $350–$550/hour range for
        experienced attorneys with over 15 years of experience in civil rights and class
7       action litigation."). Paralegal and legal assistant work in the Eastern District
        generally ranges from $100 to $125, also depending on experience.

8       Plaintiff's counsel seeks an attorney hourly rate of $675 and a paralegal hourly rate
9       of $179. (Doc. 9 at 5). She does not cite any case in the Eastern District approving
        fees in the general range she has requested. Rather, she cites cases arising in the
10      Central District of California, which reflect the prevailing rates in other
        communities, not the Eastern District. *Id.* She also cites the Laffey Matrix of the
11      Department of Justice, which is based on rates in the Washington, D.C.
        metropolitan area, which counsel acknowledges can be "somewhat higher than
12      other parts of the United States." *Id.* at 6-7. Counsel provides that her rate is half of
        the current applicable rate in the Laffey Matrix. *Id.*
13

14      Additionally, counsel describes her experience and training and attaches her CV as
        an exhibit to her declaration. (Doc. 19-2). In brief, she provides that she is trained
15      in trauma-informed representation (Doc. 19 at 7-8; Doc. 19-1 at 1-2), has over
        seven years of experience as a prosecutor (Doc. 19 at 5; Doc. 19-1 at 2; Doc. 19-2
16      at 5), has served on Criminal Justice Act panels (Doc. 19-1 at 3), has been in
        private practice for 19 years and tried numerous cases in front of juries (Doc. 19 at
17      5; Doc. 19-2 at 2-5), and has taught trial advocacy at the Trial Lawyers College, as
        well as in foreign countries (Doc. 19 at 6; Doc. 19-1 at 2), among other things.
18

19      Considering all the factors named above, the Court is not persuaded by Ms.
        Bertrand's declaration that her rates are reasonable and commensurate with her
20      experience as compared to rates commonly set in this district. Plaintiff's motion,
        declaration, and exhibits do not provide that Ms. Bertrand, or any other
21      practitioner in the Eastern District with comparable experience, has been awarded
        rates at or around $675 per hour for attorneys or $179 per hour for paralegals in
22      this locality in section 1983 cases similar to the instant action.

23
        **\*6** Although Ms. Bertrand's years of experience and training reflect demonstrated
24      expertise and competency within the field, counsel's proposed rates are generally
        above the prevailing market rates for attorneys with comparable experience in the
25      Eastern District. Accordingly, to better align counsel's rates with those
        customarily awarded in this district, the Court will reduce Ms. Bertrand's hourly
26      rate to $550 per hour (*see Z.F.*, 2017 WL 1064679, at *3) and her paralegals' rate
        to $125 per hour. *See Meeks*, 2024 WL 4437098, at *8 ("Consequently, the rate for
27      Mr. Calderon is adjusted to $125, which the Court finds reasonable for non-
        attorney staff in the Eastern District.").
28

– 37 –

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

135.     Attached hereto as **Exhibit 16** is a true and correct copy of the *Doe* Finding and Recommendation.

136.     Based on the *Doe* Finding and Recommendation, the reference rates discussed above, and my 48 years of experience as an attorney and legal fee auditor, I recommend that Mr. Galipo be awarded an adjusted rate of $550.00 with the remaining timekeepers' rates be adjusted as set forth in the table below.

137.     Mr. Galipo's legal assistants, Mr. Laurel and assistant De Leon are requesting $220 per hour. (Galipo Decl., ¶¶ 32-33.) However, as seen in the reference cases above, paralegals and law clerks were awarded $100 per hour in 2020. The $220 appears to be far out of the reasonable range for this venue, and I have recommended that their time be disallowed in its entirety as clerical.

138.     Attorney Guizar requests $950 per hour (Guizar Decl., ¶ 7 at p. 7:12-13) but provides no supporting evidence, citations to any prior awards, or anything else to substantiate this request, and I have recommended that his time be disallowed in its entirety with the exception of 2.5 hours for defending a deposition.

139.     Attorney Kent Henderson requests $1,100 per hour (K. Henderson Decl., ¶ 35 at p. 15:12-13) but provides no supporting evidence, citations to any prior awards, or anything else to substantiate this request.

140.     Attorney Carrazco requests $1,000 per hour (Carrazco Decl., ¶ 30 at p. 9:23-24) but provides no supporting evidence, citations to any prior awards, or anything else to substantiate this request.

141.     Attorney Holm requests $600 per hour (Holm Decl., ¶ 28 at p. 8:11-12) but provides no supporting evidence, citations to any prior awards, or anything else to substantiate this request.

142.     Attorney Le requests $700 per hour (Galipo Decl., ¶ 31 at p. 12:14-15) provides no supporting evidence, citations to any prior awards, or anything else to substantiate this request.

143.     Law Clerk Nathan Henderson requests $300 per hour (N. Henderson Decl., ¶ 9) but provides no supporting evidence, citations to any prior awards, or anything else to

1  substantiate this request. In addition, although he indicates that he has a J.D. degree and passed

2  the July 2024 California Bar Exam, as of December 19, 2024 his name does not appear on the

3  web site of the California Bar even though the Bar Admission Ceremony was scheduled to take

4  place on December 10, 2024.

5         144.    Litigation/legal assistant Briseira Gomez requests $100 per hour. (Gomez Decl.,

6  ¶ 8) but provides no supporting evidence, citations to any prior awards, or anything else to

7  substantiate this request.

8         145.    Litigation Assistant Supervisor Ely Arraiga requests $200 per hour (Arraiga Decl.,

9  ¶ 7) but provides no supporting evidence, citations to any prior awards, or anything else to

10  substantiate this request.

11         146.    The 2022 LexisNexis CounselLink® Enterprise Legal Management Trends

12  Report: Insight into 7 Key Metrics was published by CounselLink, a LexisNexis company. The

13  Report was based on data derived from over $49 billion in legal spending, more than 350,000

14  timekeepers, and more than 1.2 million matters. The report found that hourly rates increased by

15  3.4 to 3.5 percent per year from 2020 through 2022:

16         Consistent with what we observed in 2020, despite pandemic-related and
other pressures for legal departments to reduce outside counsel spending, hourly
17  rate increases paid to US firms showed no signs of slowing. On average, 2021
partner hourly rates increased by 3.4% relative to 2020. This compares to 3.5% growth
18  in 2020 versus 2019.

19         147.    Other analyses have found that law firm rate increases averaged slightly higher, at

20  four percent per year[3]. The last two years saw slightly higher average rate increases.

21         148.    Using the rates supplied in the reference cases and factoring in the historical rate

22  increases (four percent in 2021 through 2023 and five percent in 2024) results in the following

23  rates:

24

25

26        [3] https://abovethelaw.com/2019/11/just-because-billing-rates-are-up-doesnt-mean-bonuses-will-follow/, last
visited December 29, 2024. The article refers to a 4 percent rate increase. See also https://www.law.com/
27  americanlawyer/2018/02/21/sorry-clients-higher-law-firm-billing-rates-really-do-pay-off/, last visited December 29,
2024. The article states "Top-performing firms increased their rates at an average annual rate of 4.4 percent,
28  compared with an increase of 3.3 percent for the broader sample …."

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

|  | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|
| Lead Atty | $400 | $416 | $433 | $450 | $473 |
| Senior Atty | $280 | $291 | $303 | $315 | $331 |
| Junior Atty | $175 | $182 | $189 | $197 | $207 |
| Paralegals/ Legal Assts | $100 | $104 | $108 | $112 | $118 |
|  |  | 4% Increase |  |  | 5% Increase |

149.    Using these rates, it is my opinion that the following rates are more in line with what Eastern District courts have awarded:

| Attorney | Galipo | $550 |
|---|---|---|
| Attorney | Guizar | $473 |
| Attorney | K. Henderson | $473 |
| Attorney | Carrazco | $473 |
| Attorney | Le | $350 |
| Attorney | Holm | $331 |
| Law Clerk | N. Henderson | $118 |
| Legal Asst | Gomez | $118 |
| Lit Asst Sup | Arraiga | $118 |
| Legal Asst | Laurel | $118 |
| Legal Asst | De Leon | $118 |
| Legal Asst | Gallegos | $118 |

150.    These recommended adjusted rates results in the following adjusted fee amounts (with Santiago Laurel's 9.75 hours and Leslie De Leon's 16 hours excluded/disallowed as excessive timekeepers and only 2.5 hours allowed included for Humberto Guizar for defending one deposition):

| Biller | Computed Hours | Requested Rate | Computed Fees | Adjusted Rate | Adjusted Fees | Fee Difference |
|---|---|---|---|---|---|---|

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

| | | | | | | |
|---|---|---|---|---|---|---|
| Dale K. Galipo (attorney) | 713.50 | $1,400.00 | $998,900.00 | $550.00 | $392,425.00 | $606,475.00 |
| Hang D. Le (attorney) | 83.40 | $700.00 | $58,380.00 | $350.00 | $29,190.00 | $29,190.00 |
| Kent M. Henderson (attorney) | 1,764.85 | $1,100.00 | $1,941,335.00 | $473.00 | $834,774.05 | $1,106,560.95 |
| Angel Carrazco, Jr. (attorney) | 925.20 | $1,000.00 | $925,200.00 | $473.00 | $437,619.60 | $487,580.40 |
| Humberto Guizar (attorney) | 2.5 | $975.00 | $2,437.50 | $473.00 | $1,182.50 | $1,255.00 |
| Chris L. Holm (attorney) | 471.5 | $600.00 | $282,900.00 | $331.00 | $156,066.50 | $126,833.50 |
| Nathan Henderson (law clerk) | 317.70 | $300.00 | $95,310.00 | $118.00 | $37,488.60 | $57,821.40 |
| Antonio Gallegos (litigation assistant & law clerk) | 51.10 | $175.00 | $8,942.50 | $118.00 | $6,029.80 | $2,912.70 |
| Ely Arraiga (litigation assistant) | 65.8 | $200.00 | $13,160.00 | $118.00 | $7,764.40 | $5,395.60 |
| Briseria Gomez (litigation assistant) | 69.6 | $175.00 | $12,180.00 | $118.00 | $8,212.80 | $3,967.20 |
| | 4,465.15 | | $4,338,745.00 | | $1,910,753.25 | $2,427,991.75 |

**Recommended Disallowance:**
**Net Fees: $4,338,745.00**
**Hourly Rate Adjustment: - $2,427,991.75**
**Net Fees: $1,910,753.25**

## VIII.   BILLING FOR CLERICAL WORK

151.     Clerical work is considered overhead, and as such, it is neither billable nor

recoverable. As the Court in *Pelayo Pelayo, et al. v. Platinum Limousine Services, Inc., et al.*,

2016 WL 5402185 (Civil No. 15-00023, September 27, 2016) stated:

> Clerical costs, on the other hand, are part of an attorney's overhead and are
> subsumed in the attorney's charged hourly rate. Jeremiah B. v. Dep't of Educ.,
> 2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010) (citation omitted). See also

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

1

2

Frankl v. HGH Corp., 2012 WL 1755423, at *8 (D. Haw. Apr. 23, 2012), F&R
adopted by, 2012 WL 1753644 (D. Haw. May 14, 2012) ("[I]t is not customary to bill for
purely clerical or secretarial work separately from attorney's services. As previously
stated, in this district, such tasks are subsumed in an attorney's overhead costs.")
*Pelayo* at *7.

3

4

152.    Tasks such as reviewing Court-generated notices, notifying clients of court

5

hearings, filing documents with the Court, communication with court staff, scheduling, and

6

corresponding regarding deadlines, are clerical and not compensable.

7

153.    As set forth in **Exhibit 17** attached hereto, Plaintiffs' Counsels' timekeepers billed

8

667 separate entries consisting of **136.10** hours and **$16,059.80** in fees at adjusted hourly rates

9

involving or relating to clerical tasks which are not appropriately billed, and which I recommend

10

be disallowed in their entirety.

11

12

**Recommended Disallowance:**
**Net Fees: $1,910,753.25**
**Clerical Work Disallowance: - $16,059.80**
**Net Fees: $1,894,693.45**

13

14

**IX.     EXCESSIVE INTER/INTRA-OFFICE CONFERENCING.**

15

150.    Although attorneys within a firm need to coordinate work and discuss strategy,

16

when done to excess, such intra-office conferencing becomes troubling. Here, where there were

17

two law firms, I identified conferencing within each law firm as well as between the two law

18

firms.

19

151.    Conferencing is not directly related to any particular work product and consists of

20

exactly what it says – attorneys and staff discussing the case amongst themselves, giving or

21

receiving assignments, and other such communications. In my experience, excessive conferencing

22

is typically subject to disallowance by courts. Some strategic conferencing among attorneys does

23

have value, but not when done to excess.

24

152.    In *Munoz v. California Business Bureau, Inc.* (E.D. Cal., July 14, 2017) Case

25

No. 1:15-cv-1345-BAM, 2017 U.S. Dist. LEXIS 212842, the court examined the issue of intra-

26

office conferencing in the context of evaluating a fee request. A true and correct copy of this

27

opinion is attached as **Exhibit 18** The court reasoned as follows:

28

With regard to the time and labor required, the Court has reviewed the billing records submitted by Plaintiff's counsel and finds that, with two exceptions, the number of hours expended to be reasonable. First, a review of counsels' billing records reveals that counsel billed over 10 attorney hours for interoffice conversations between all three attorneys to discuss case status or strategy. While it is reasonable to spend some time coordinating legal resources, it is not reasonable to double or triple-bill a client for internal meetings, many of which appear to be for partner, Mr. Hyde, to provide instructions to his junior associates, Mr. Connolly and Ms. Dorman. *See Gauchat-Hargis v. Forest River, Inc.*, No. 2:11-cv-02737-KJM-EFB, 2013 U.S. Dist. LEXIS 128508, 2013 WL 4828594, (E.D. Ca l. Sep. 6, 2013) (finding it unreasonable for partners and associates to collectively "triple-bill" a client for attending internal meetings).

For example, on June 16, 2016, Mr. Connolly and Ms. Dorman each billed .4 hours to "speak with Robert Hyde" about "opposing counsel's summary judgment letter." (Doc. 29-8, Exh. A at 4). Mr. Hyde billed a slightly longer .6 hours for that same meeting ostensibly in preparation to provide Mr. Connolly and Ms. Dorman further instruction at the meeting. Given the triple-billing here for these kinds of internal communications, the Court agrees with Defendant that such charges are excessive. *See Chalmers*, 796 F.2d at 1211 (The court may reduce those hours where a case is overstaffed and hours are duplicated and where the hours expended are deemed to be excessive). Thus, while the billing of 3.3 hours to conduct strategy meetings by Mr. Hyde was reasonable, the additional duplicative billing to attend those meetings was not. Accordingly, the Court will deduct the 3.3 hours each spent by Ms. Dorman and Mr. Connolly to attend meetings with co-counsel for a total reduction of 6.6 hours.

(*12-13.)

153.     The court thus allowed the time for one timekeeper to be involved in a meeting, but disallowed the time billed by other timekeepers for that same meeting. The same analysis can apply in cases in which one timekeeper bills to draft and send an email or memo and another timekeeper bills to receive and review that communication.

154.     In *Scott v. Jayco, Inc.* (E.D. Cal. Dec. 18, 2021) 1:19-cv-0315 JLT, at *7-8, the court said:

As this Court previously observed, "many courts ... reduced fee awards for time spent in 'interoffice conferences' or other internal communications." *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013) citing, *e.g., Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1194 (S.D. Cal. 2003); *see also United States v. One 2008 Toyota Rav 4 Sports Util. Vehicle,* 2012 WL 5272281 at *9 (C.D. Cal. Oct. 18, 2012) ("[w]hen attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys" [citation omitted]); *Coles v. City of Oakland*, 2007 WL 39304, at *10 (N.D. Cal. Jan. 4, 2007) (observing that billing for communications between attorneys may be a sign of overstaffing, warranting a reduction in hours billed).

A true and correct copy of this order is attached as **Exhibit 19**.

155.     In *Lemmons v. Ace Hardware Corp.* (N.D. Cal. Feb. 1, 2015) Case No. 12-cv-03936-JST, the court reduced fees due to excessive and vague conferencing.

– 43 –

1

2

3

4

5

6

7

8

> The Court knows that co-counsel sometimes need to strategize. But lawyers who are experts in the field of disability litigation, working at a small firm that exclusively handles that kind of work, should not need to bill 259 separate entries for strategizing. "The Ninth Circuit has approved of reductions in fees for unnecessary and duplicative intra-office conferences," and other courts in this District have "previously been critical of excessive conferencing by Rein Law." *Hernandez*, 2014 WL 1724356 at \*10. Compounding these concerns is that some entries lack any specificity, such as "Meet w/ co-co re: pending issues" or "Strategize w/ staff re current case issues," which make such review more difficult and cause the Court some concern. ECF No. 130-8 at 3, 5.
>
> Because the Court finds that Defendants' criticisms of the excessive nature of Plaintiff's counsel's billing for internal meetings are valid, it will exercise its discretion to reduce the $39,048.00 that Defendants characterize as having been billed for time spent on internal meetings by 50%, awarding $19,524.00 for these entries.

9

(*4.) A true and correct copy of this opinion is attached as **Exhibit 20.**

10

11

12

156.    While I found limited billing for conferencing within and by the Galipo firm, four timekeepers at Guizar Henderson Carrazco billed significant amounts of time for conferencing amongst themselves and with timekeepers at the Galipo firm.

13

14

15

16

17

18

19

20

21

22

23

157.    To quantify the extent of intra-office conferencing in the billing records, I conducted word searches for words pertaining to conferencing such as "meet with," "discuss," "co-counsel," "call," or "correspond." I also searched in the task descriptions for the names or initials of the timekeepers for entries that would indicate intra-office communications. Certain entries indicating communications did not specifically identify an individual within either law firm or the litigation team but the subject matter specified in the narrative made it highly probable that it was referring to an internal communication or conference. As noted elsewhere in this report, the burden of proof initially lies with the party seeking their attorney's fees to be paid and to the extent that they have failed to supply sufficient information, the burden rests on them to prove that the requested fees are both reasonable and necessary. All intra-office conferencing entries I identified are included in the table attached as **Exhibit 21.**

24

25

26

158.    The following table identifies the four timekeepers (with Humberto Guizar's time previously disallowed except for 2.5 hours for defending a deposition), their lodestar hours, and the number of hours of intra-office conferencing (within their own firm):

27

28

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

| Timekeeper | Lodestar Hours | Conferencing Within Their Firm |
|---|---|---|
| Christopher L. Holm | 471.50 | 285.00 |
| Angel Carrazco Jr. | 925.20 | 102.15 |
| Kent M. Henderson | 1,764.85 | 311.40 |
| Humberto Guizar | 43.20 | 11.70 |

159.    The following table identifies two timekeepers and the number of hours of conferencing with the Galipo firm:

| Timekeeper | Conferencing With the Galipo Firm |
|---|---|
| Angel Carrazco Jr. | 40.00 |
| Kent M. Henderson | 63.40 |

160.    Combining these two tables results in the following summary:

| Timekeeper | Lodestar Hours | Total Conferencing Hours | Total Conferencing Hours as a % of Lodestar |
|---|---|---|---|
| Christopher L. Holm | 471.50 | 285.00 | 60.4% |
| Angel Carrazco Jr. | 925.20 | 142.15 | 15.4% |
| Kent M. Henderson | 1,764.85 | 374.80 | 21.2% |
| Humberto Guizar | 43.20 | 11.70 | 27.1% |

161.    Over the past 30+ years, I have audited major national and international law firms and in general I have found that the amount of intra-office conferencing in well-managed litigation averaged between two to four percent of the total fees so the conferencing here by these four timekeepers is far outside of this reasonable amount.

162.    If the Guizar Henderson Carrazco law firm is as experienced in this type of litigation as they claim, they should not have needed to spend up to 60 percent of their time conferring.

163.    Based upon the above analysis, the excess fees over 4.0 percent of the total hours should be disallowed.

– 45 –

| Timekeeper | Total Conferencing Hours as a % of Lodestar | % of Hours Over 4% | # of Hours Over 4% |
|---|---|---|---|
| Christopher L. Holm | 60.4% | 56.4% | 266.14 |
| Angel Carrazco Jr. | 15.4% | 11.4% | 105.14 |
| Kent M. Henderson | 21.2% | 17.2% | 304.21 |
| Humberto Guizar | 27.1% | 23.1% | 9.97 |

164.    This excessive conferencing is considered in my across-the-board percentage reduction discussed below as part of an overall recommended fee reduction based on the many questionable billing practices engaged in by Plaintiffs' Counsel.

## X.    DISALLOWANCE OF FEES RELATED TO THE FIRST TRIAL DUE TO MISTRIAL

165.    "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)). "The district court ...should exclude from this initial fee calculation hours that were not reasonably expended." *Hensley*, 461 U.S. at 434 (internal quotation marks omitted). Hours not reasonably expended are those that are "excessive, redundant, or otherwise unnecessary." Id. A district court may reduce hours by either conducting an hour-by-hour analysis or by making an across-the-board percentage cut. See *$28,000.00 in U.S. Currency*, 802 F.3d at 1106.

166.    Plaintiff's Counsel should not recover fees such as expert depositions, trial preparation and trial attendance related to the first trial for which they were not the prevailing party.  It is well established that where a "plaintiff has achieved only partial or limited success, an attorney's fee based upon the product of hours reasonably spent times a reasonable hourly rate may be excessive[.]" *Joseph v. Ruffo*, 476 N.Y.S.2d 386, 388 (N.Y. App. Div. 1984).  This is so even when "the nonsuccessful claims are interrelated with the successful claims." *Id.*  In such a case, "[t]he District Court may, in its discretion, attempt to identify specific hours that should be

1   eliminated, or it may simply reduce the [requested] award to account for the limited success."

2   *Abrahamson v. Bd. of Educ.*, 374 F.3d 66, 79 (2d Cir. 2004).

3        167.    The improper inclusion of these fees is considered in my across-the-board

4   percentage reduction discussed below as part of an overall recommended fee reduction based on

5   the many questionable billing practices engaged in by Plaintiffs' Counsel.

6
7   **XI.    TIME DISALLOWED FOR PREPARING EXPERTS AND RULE 26 REPORT**

8        168.    It is my understanding that Plaintiffs' Counsel is not entitled to recover expert fees

9   under 42 USC 1988.  As such, Plaintiffs' Counsels' time preparing their expert witnesses for

10  depositions and preparing the Rule 26 report should not be recoverable.  (See *Monagahan v.*

11  *Telcom Italia Sparkle of N. AM. Inc., No CV 13 00646-ABC-PLAx*, 2014 WL 1263928 (expenses

12  incurred to prepare expert report are recoverable under Rule 26 nor is time spent preparing expert

13  for deposition); *Rock River Commnc'ns Inc. v. Universal Musical Group* 276 F.R.D. 633, 637

14  (C.D. Cal 2011) (party is free to have its expert prepare as thoroughly or review his depo

15  transcript as meticulously as it wishes albeit at his expense.)

16       169.    The improper inclusion of these fees is considered in my across-the-board

17  percentage reduction recommended below as part of an overall recommended fee reduction based

18  on the many questionable billing practices engaged in by Plaintiffs' Counsel.

19
20  **XII.    ALL FEES DISALLOWED RELATED TO FRANCISCO HURTADO'S FUTURE MEDICAL TREATMENT AND COSTS**

21       170.    As acknowledged by Plaintiffs' Counsel, "Due to Mr. Hurtado's passing, the $17

22  million in Mr. Hurtado's future medical costs were no longer recoverable." (MPA, 20:26-21:3).

23  As discussed above in my recommendation for the disallowance of fees related to the first trial,

24  The Court should disallowed fees that are "excessive, redundant, or otherwise unnecessary."

25  Hensley, 461 U.S. at 434 (internal quotation marks omitted).  Here, because the $17 million

26  sought in Mr. Hurtado's future medical costs were no longer recoverable, all fees related to this

27  area of damages should also not be recoverable.

28

171.    The improper inclusion of these fees is considered in my across-the-board percentage reduction recommended below as part of an overall recommended fee reduction based on the many questionable billing practices engaged in by Plaintiffs' Counsel.

### XIII.   DUPLICATIVE WORK INCLUDING ATTENDANCE AT DEPOSITIONS AND THE SECOND TRIAL

172.    Plaintiffs' Counsel submitted their billing records separated by timekeeper, rather than as a unified submittal containing all of the time records. When combining the billing records for the 12 timekeepers into a single database for review and analysis, a pattern of duplicative billing was evident.

173.    An exhibit showing these duplicative billing entries is attached hereto as **Exhibit 22.**

174.    Further, it is standard audit methodology to analyze the attorney attendance at depositions, court appearances and trial.  Plaintiffs' Counsel frequently billed for more than one attorney to attend depositions, hearings and trial whereat only one attorney defended or asked questions at a deposition, or took the lead at the hearing and trial.

175.    With respect to duplicative attendance at the second trial whereat Mr. Galipo was the lead, I acknowledge that a second chair attorney may be necessary at times although a third attorney, such as in this case, does not appear to have been necessary.  Based on my analysis of the trial transcripts and corresponding fee entries, I recommend that the fees incurred for the attorneys and staff beyond Mr. Galipo and a second attorney be disallowed as duplicative and unnecessary.  An exhibit showing the duplicative attendance hours is attached hereto as **Exhibit 23.**

176.    Rather than engage in a line-by-line fee disallowance, this excessive billing practice is considered in my across-the-board percentage reduction discussed below as part of an overall recommended fee reduction based on the many questionable billing practices engaged in by Plaintiffs' Counsel.

## XIV.   The Requested Multiplier is Not Warranted.

177.   Plaintiffs' attorneys argue that a "lodestar enhancement of 50% is appropriate" in this case. (MPA, pp. 20:9-21:10.) However, they do not present any reasoned basis for this argument; simply claiming that they obtained excellent results, took six years, and was complex. (*Id.*)

178.   The following are the typical points used to justify a requested multiplier, as taken from established case law:

    a.   The firm's assumption of contingent risk.
    b.   Delay in payment of fees and reimbursement of costs.
    c.   The skill required and the quality of work.
    d.   Litigation challenges and the skill displayed in presenting them.
    e.   The results obtained.
    f.   The public benefit and the importance of the case.

179.   ***The contingent fee risk.*** Virtually all non-class action or PAGA cases are brought on this type of contingent fee agreement whereby counsel recovers fees only if plaintiff prevails. This case is no different. If the Court were to accept the argument that a multiplier is *de facto* automatically warranted in each and every case of this type, it would be creating new law. Courts have never set forth this proposition and the fact that the legislature did not make a multiplier a statutory requirement forcefully argue against this being the primary basis for any multiplier, much less a 50% (1.50) multiplier.

180.   In *Perdue v. Kenny A. ex rel. Winn* (2010) 559 U.S. 542, 550, the Supreme Court held, in the context of addressing a "reasonable fee" under a federal fee-shifting statute, that "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." (*Id.*, at p. 552.) Moreover, with respect to whether a multiplier could be utilized under the lodestar method, the Supreme Court emphasized that a multiplier is warranted only in "rare and exceptional" circumstances, and provided the following explanation:

> [W]e have noted that the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee, and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation. We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably [are] fully reflected in the number of billable hours recorded by counsel. We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar because

– 49 –

considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.

(*Id.* at p. 553 (quotations and citations omitted).)

181.    The Court then, after explicitly rejecting "any contention that a fee determined by the lodestar method may not be enhanced in any situation," held that superior attorney performance could only serve as a basis for an enhancement in *narrow* circumstances:

In this case, we are asked to decide either the quality of an attorney's performance or the results obtained are factors that may properly provide a basis for an enhancement. We treat these two factors as one. When a plaintiff's attorney achieves results that are more favorable than would have been predicted based on the governing law and the available evidence, the outcome may be attributable to superior performance and commitment of resources by plaintiff's counsel. Or the outcome may result from inferior performance by defense counsel, unanticipated defense concessions, unexpectedly favorable rulings by the court, an unexpectedly sympathetic jury, or simple luck. Since none of these latter causes can justify an enhanced award, superior results are relevant only to the extent it can be shown that they are the result of superior attorney performance. Thus, we need only consider whether superior attorney performance can justify an enhancement. And in light of the principles derived from our prior cases, we inquire whether there are circumstances in which superior attorney performance is not adequately taken into account in the lodestar calculation. We conclude that there are a few such circumstances but these circumstances are indeed "rare" and "exceptional" and require specific evidence that the lodestar fee would not have been "adequate to attract competent counsel."

(*Id.* at p. 554; see also *Scudder v. Department of Transportation* (2nd App. Dist., Case No. B293859, 7/14/2020) *5, *7 [unpublished] ("The trial court, however, declined to apply a multiplier. First, it found the case concerned workplace harassment and discrimination based on race for one plaintiff, which was not so unusual or complex that it required exceptional skill. The court further concluded that plaintiff's attorneys did not display such exceptional skill that exceeded the quality of an attorney with comparable skill and experience. Plaintiff does not dispute these findings.")

182.    In an earlier case, the U.S. Supreme Court held:

An attorney operating on a contingency fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not. To award a contingency enhancement under a fee-shifting statute would, in effect, pay for the attorney's time (or anticipated time) in cases where his client does *not* prevail.

*City of Burlington v. Dague*, 505 U.S. 557, 565 (1992).

183.    "To the extent plaintiff contends the trial court was required, as a matter of law, to apply a multiplier, we disagree." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1138 ["the trial court is not required to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof"]."

184.    The court in *Davis v. City and County of San Francisco* (9th Cir. 1992) 976 F.2d 1536, 1549-50 found that the risk of no-fees is not relevant.

185.    In *Zargarian v. BMW of N. Am., LLC* (C.D. Cal. 2020) 442 F. Supp. 3d 1216, 1230, the Court found a multiplier was not needed simply because the case was taken on contingency:

> The Court declines Plaintiff's request to apply an upward multiplier of 1.5 in this case. The amount of time and skill required to properly resolve this litigation, counsel's success in resolving the matter, and the case's novelty or complexity are reflected in the number of billable hours recorded and the reasonable hourly rate. Further, Plaintiff does not argue that counsel was prevented from taking other work because of the representation here. The Court acknowledges the contingent nature of this case; nonetheless, "[a]n attorney operating on a contingency-fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not. To award a contingency enhancement under a fee-shifting statute would in effect pay for the attorney's time ... in cases where his client does not prevail." *City of Burlington v. Dague*, 505 U.S. 557, 565, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). While Plaintiff claims that Defendant's litigation tactics made the risks associated with the contingent nature of this litigation extremely high, the Court finds that this case does not warrant the requested enhancement. The lodestar reflects the reasonable amount of attorneys' fees Plaintiff should recover, and the Court DENIES the requested 1.5 multiplier enhancement.

186.    This "risk" factor does not support Plaintiffs' attorneys' request for a multiplier.

187.    ***The difficulty of the case, skills involved, and high quality representation.*** Based upon discussions with defense counsel and my review of the case materials, this was not an exceptional excessive force case. The issues were relatively straightforward. While there were some more complex factual issues involved, the case did not require arguing novel approaches to the law. The court is best placed to observe and determine the skills displayed by all of Plaintiffs' attorneys and the quality of their representation.

188.    ***The results achieved.*** The result is that Plaintiffs prevailed, which is why this Motion for Fees is being brought.

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

189.     ***The delay in payment.*** This is essentially the same as the initial argument related to the risk of contingency. California courts commonly and appropriately use current rates to determine reasonable fees, as rough compensation for the delay in payment the prevailing attorneys have experienced. *See Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 583; *Robles v. Employment Dev. Dept.* (2019) 38 Cal.App.5th 191, 205.

190.     Therefore, to award current rates to compensate for the delay in payment and then to apply a multiplier for the delay in payment would be doubly compensating.

191.     The lodestar is presumptively reasonable and, in most cases, does not need to be enhanced.

> "The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in 'rare' or 'exceptional' cases, supported by both specific evidence on the record and detailed findings … that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citation omitted). "[T]he trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof." *Ketchum*, 24 Cal.4th at 1138, 104 Cal.Rptr.2d 377, 17 P.3d 735 (emphasis in original).

(*Newton v. Equilon Enters.* (N.D. Cal. 2019) 411 F. Supp. 3d 856, 883.)

192.     The established factors for awarding a multiplier, although not specifically argued by Plaintiffs' attorneys, do not support the request for a multiplier.

## XV.  RECOMMENDED ACROSS-THE-BOARD PERCENTAGE REDUCTION

193.     Based on the foregoing thirteen areas of problematic billing practices, Plaintiffs' Counsels' fee request is unreasonably inflated and lacks credibility based on the use of an excessive number of timekeepers, numerous questionable billing practices including estimated round number billing, long days billing 10 plus hours, the failure to delegate to paralegals or lower billing attorneys, vague entry descriptions, excessive time spent on particular tasks such as reviewing e-mails and expert reports, unreasonable requested hourly rates, billing for clerical tasks, excessive inter/intra-office conferencing, and the inclusion of fees related to the first trial due to the mistrial, preparing experts and Rule 26 Report, the inclusion of fees related to

Francisco Hurtado's future medical treatment and costs, and duplicative work including duplicative attendance at the second trial.

194.     As a result, and based on the case law and GAAP discussed herein, it is my opinion that that Court would be justified in making a minimum 50% across the board fee reduction after taking into account Plaintiffs' Counsels' fees disallowance of the excessive timekeepers, recommended adjusted hourly rates and disallowances for clerical work.  A summary of my recommended fee disallowances is set forth below, resulting in recommended allowed fees of **$947,346.73** and disallowed fees totaling **$3,436,874.52.**

### SUMMARY OF FEE DISALLOWANCES

| *Calculated* Fees (after adjusting for calculation errors) | $4,384,221.25 |
|---|---|
| | |
| **Recommended Categories of Fee Reductions:** | |
| Excessive Timekeepers Disallowance | - $45,476.25 |
| Unreasonable Requested Hourly Rates | - $2,427,991.75 |
| Billing for Clerical Tasks (at adjusted hourly rates) | - $16,059.80 |
| **Net Fees Subtotal:** | **$1,894,693.45** |
| | |
| **Recommended 50% Reduction of Remaining Net Fees of $1,894,693.75 Due to the Following:** | **-$947,346.72** |
| Estimated Round Number Billing | |
| Long Days Billing 10 Hours + | |
| Failure to Delegate to Paralegals or Lower Billing Attorneys | |
| Vague Entries | |
| Questionable Billing Practices Including Excessive Time on Particular Tasks | |
| Excessive Inter/Intra-Office Conferencing | |
| Disallowance of Fees Related to the First Trial Due to Mistrial | |

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

| | |
|---|---|
| Time Disallowed for Preparing Experts and Rule 26 Report | |
| All Fees Disallowed Related to Mr. Hurtado's Future Medical Treatment/Costs | |
| Duplicative Work and Duplicative Attendance at Depositions and Second Trial | |
| **Net Fees Subtotal:** | **$947,346.73** |
| | |
| **Total Recommended Disallowance** | **-$3,436,874.52** |
| **Total Recommended Allowance** | **$947,346.73** |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 31th day of December, 2024, at Norwell, Massachusetts.

_____

James P. Schratz

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF OPPOSITION
TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES