**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

Humberto M. Guizar, Esq.      (SBN 125769)
Kent M. Henderson, Esq.      (SBN 139530)
Angel Carrazco, Jr., Esq.      (SBN 230845)
**GUIZAR, HENDERSON & CARRAZCO, L.L.P.**
18301 Irvine Boulevard, Tustin, CA 92780
Telephone:      (714) 541-8600
Facsimile:      (714) 541-8601
Email:      hguizar@ghclegal.com
          hendolaw@gmail.com
          angel@carrazcolawapc.com

Attorneys for Plaintiffs I.H., E.H., F.H., and A.H.

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.H., a minor by and through her mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; E.H., a minor by and through her mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; F.H., a minor by and through his mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; and A.H., a minor by and through his mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF CALIFORNIA; CALIFORNIA HIGHWAY PATROL; EDGARDO YEPEZ aka EDGARDO LOPEZ; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. 2:19-cv-02343-DAD-AC <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR NEW TRIAL** <br><br> [*Declarations and Exhibits thereto filed concurrently herewith*] <br><br> Date:   February 3, 2025 <br> Time:  1:30 p.m. <br> Crtrm: 4 |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    SUMMARY OF FACTS ....................................................................................... 1

III.   RELEVANT TRIAL PROCEDURAL HISTORY AND FACTS ........................ 2

    A.    Pretrial for Hurtado v. State of California, et al. (First Trial) ................... 2

    B.    Hurtado v. State of California, et al. Trial (First Trial) ............................ 3

    C.    Pretrial of I.H., et al. v. State of California, et al. (Second Trial) ............ 6

    D.    I.H., et al. v. State of California, et al. Trial (Second Trial)..................... 7

IV.    LEGAL STANDARD ........................................................................................... 8

V.     ARGUMENT ........................................................................................................ 9

    A.    A New Trial is Not Warranted Because the Jury's Past Economic Damages
        Award is Supported by the Evidence ........................................................ 9

    B.    A New Trial is Not Warranted Because the Court's Exclusion of Hurtado's
        Statements Regarding Cocaine and Alcohol Use were Neither Erroneous
        nor Substantially Prejudicial to Defendants ........................................... 10

        1.    The Court Properly Excluded Evidence of Hurtado's Statements
            Regarding Cocaine and Alcohol Use that were Unknown to the
            Officers at the Time of the Shooting ......................................... 11

        2.    Admission of Hurtado's Statements at the Scene Would Not Have
            Changed the Jury's Verdict ....................................................... 15

VI.    CONCLUSION ................................................................................................... 19

# **TABLE OF AUTHORITIES**

## **Cases**

*Barillas v. City of Los Angeles*,
    No. CV1808740CJCASX, 2021 WL 4434977 (C.D. Cal. Apr. 12, 2021) ........................ 13

*Boyd v. City & Cnty. of San Francisco*,
    576 F.3d 938 (9th Cir. 2009)............................................................................. 10, 11, 13

*Del Monte Dunes v. City of Monterey*,
    95 F.3d 1422 (9th Cir. 1996)................................................................................... 8

*Dominguez v. City of Los Angeles*,
    No. CV174557DMGPLAX, 2018 WL 6164278 (C.D. Cal. Oct. 9, 2018)..................... 13

*Estate of Diaz v. City of Anaheim*,
    840 F.3d 592 (9th Cir. 2016)................................................................................ 5, 13

*Estate of Tindle v. Mateu*,
    No. 18-CV-05755-YGR, 2020 WL 5760287 (N.D. Cal. Sept. 28, 2020)..................... 12

*Glenn v. Washington Cnty.*,
    673 F.3d 864 (9th Cir. 2011).................................................................................... 11

*Graham v. Connor*,
    490 U.S. 386 (1989) ................................................................................................ 11

*Harper v. City of Los Angeles*,
    533 F.3d 1010 (9th Cir. 2008)................................................................................... 9

*Hayes v. Cnty. of San Diego*,
    736 F.3d 1223 (9th Cir. 2013)................................................................................. 12

*Jackson v. Cnty. of San Bernardino*,
    194 F. Supp. 3d 1004 (C.D. Cal. 2016)................................................................... 12

*Morad v. City of Long Beach*,
    No. CV166785MWFAJWX, 2018 WL 11352372 (C.D. Cal. June 15, 2018)............... 12

*Rubalcava v. City of Los Angeles*,
    64 F.3d 1323 (9th Cir. 1995)................................................................................ 9, 12

*Seymour v. Summa Vista Cinema, Inc.*,
    809 F.2d 1385 (9th Cir. 1987)................................................................................. 10

*Shirar v. Guerrero*,
    No. EDCV13906JGBDTBX, 2017 WL 6001270 (C.D. Cal. Aug. 2, 2017) ................. 11

*Stringer v. City of Pablo*,
    No. C 07–03544 MEJ, 2009 WL 5215396 (N.D. Cal. Dec. 28, 2009) ........................ 12

*Stroh v. Saturna Capital Corp.*,
    746 Fed. App'x 639 (9th Cir. 2018) ......................................................................... 10

*United States v. 4.0 Acres of Land,*
    175 F.3d 1133 (9th Cir. 1999)........................................................................... 8

*Willis v. City of Fresno,*
    No. 1:09–CV–01766–BAM, 2013 WL 6145232 (E.D. Cal. Nov. 21, 2013)...................... 12

### <u>Statutes</u>

Fed. R. Civ. P. 59(a)(1)(A)................................................................................. 8

Fed. R. Civ. P. 61........................................................................................... 8

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      <u>INTRODUCTION</u>**

This case arises out of the officer-involved shooting of Francisco Hurtado on March 15, 2018, by California Highway Patrol Officer Edgardo Yepez. The action was originally tried on March 11, 2024, but resulted in a mistrial. A retrial was then set for October 16, 2024. In the interim, Mr. Hurtado tragically passed away due to causes unrelated to the incident at the center of this case. Mr. Hurtado's four minor children were subsequently substituted in as plaintiffs, as Mr. Hurtado's successors in interest. Retrial on this matter proceeded on October 16, 2024. On October 24, 2024, the jury returned a verdict in favor of the plaintiffs, awarding the plaintiffs, on behalf of Mr. Hurtado, $500,000 in past economic damages and $1,000,000 in past non-economic damages. (Doc. No. 241). This Court entered judgment in accordance with the jury verdict on October 30, 2024. (Doc. No. 243).

**II.      <u>SUMMARY OF FACTS</u>**

After a short pursuit that CHP officers decided to terminate, Hurtado drove his Escalade off the freeway offramp, over the guardrail and down a steep embankment. In the process, the Escalade turned upside down and onto its roof. CHP Officers Yepez and Randazzo followed behind and discovered what they contended to be a potentially serious accident with very serious injuries, as they heard moaning and groaning coming from the car. When Officer Randazzo approached the driver's side of the vehicle with his flashlight, he claimed to see Hurtado in the prone position on the upturned roof of the vehicle, slightly moving, and a gun near Hurtado. Officer Randazzo announced his observation of the gun and backed up to find cover. Officer Randazzo never unholstered his gun. Officer Yepez, who was positioned at the back window of the vehicle, claimed he crouched down and looked into the car and observed Hurtado grabbing the gun, at which point, Officer Yepez discharged his firearm at Hurtado, striking him several times and causing him serious bodily injuries.

//

//

//

**III.** **RELEVANT TRIAL PROCEDURAL HISTORY AND FACTS**

    **A.** **Pretrial for Hurtado v. State of California, et al. (First Trial)**

Prior to the March 2024 trial, the parties filed motions *in limine* regarding evidentiary issues in the case. Then-Plaintiff Hurtado filed a motion *in limine* (Plaintiff's Motion in Limine No. 1) seeking to exclude any and all information not known to the officers at the time of the incident, including prior and subsequent arrests, charges filed and/or convictions of Hurtado, and any reference to prior drug use or abuse. (Doc. No. 58). Plaintiff filed another motion *in limine* (Plainitff's Motion in Limine No. 2) specifically seeking to exclude any and all evidence or reference to Hurtado being under the influence at the time of the incident, testified positive for drugs after the incident, or had drugs in his system at the time of the incident. (Doc. No. 59). Defendants filed oppositions to Plaintiffs' Motions *in Limine* Nos. 1 and 2. In Defendants' Opposition to Plaintiff's Motion in Limine No. 1, Defendants argued that because "Officer Yepez and plaintiff's version of events are in dispute," "[e]vidence of plaintiff's alcohol and drug use are relevant to plaintiff's recollection of events and actions and reactions" and that "[s]ignificantly, plaintiff claims not to remember Officer Randazzo giving him any commands or anything about the event, except not reaching for the gun" so the evidence regarding Hurtado's drug and alcohol use was relevant to his "then existing state of mind and as a prior inconsistent statement." (Doc. No. 79 at 5). In Defendants' Opposition to Plaintiffs' Motion in Limine No. 2, Defendants argued that "Plaintiff's state of mind is relevant as his conduct is disputed," (Doc. No. 80 at 4) and that Hurtado's alcohol and drug use were "relevant to plaintiff's recollection of events and actions and reactions" because "plaintiff claims to not remember Officer Randazzo giving him any commands or anything about the event, except not reaching for the gun" and were also "relevant as to his state of mind at the time of the incident" (Doc. No. 80 at 6).

At the hearing for the parties' motions *in limine*, the Court granted the exclusion of evidence regarding Hurtado's prior drug and alcohol use except with respect to Hurtado's own statements to officers and paramedics made after the shooting on the date of the incident. (*See* Doc. No. 138). The Court reasoned that the statements corroborated the officers' account of Hurtado's erratic driving on the freeway prior to the accident.

**B.  Hurtado v. State of California, et al. Trial (First Trial)**

At trial, the defense played a portion of a "MVARS" (video footage captured by dashboard camera) that captured Hurtado's vehicle on the freeway before and during the brief pursuit during the testimony of Defendant Officer Yepez. (*See* Trial Tr. March 12, 2024 at 89-95). Officer Yepez testified that Officer Randazzo had decided to pull Hurtado's vehicle over for a speed violation. (Trial Tr. March 12, 2024 at 11:7-9). Officer Yepez observed Hurtado's vehicle serve through three lanes and onto the shoulder and then back into two lanes and eventually off the Keyes exit, at which point Officer Randazzo turned off his lights. (Trial Tr. March 12, 2024 at 11:17-12:1). The patrol vehicle's lights were on for approximately a mile, approximately fifteen to twenty seconds. (Trial Tr. March 12, 2024 at 12:2-5). Officer Yepez testified that at one point, he considered the attempted traffic stop of Hurtado to be felony high-risk traffic stop because Hurtado was evading them, but that he no longer considered his interactions with Hurtado to be a felony high-risk traffic stop when he was interacting with while down the embankment because his priority was to help him. (Trial Tr. March 12, 2024 at 86:16-87:5).

Both Officer Yepez and Officer Randazzo testified that they heard moaning and groaning as they approached the overturned vehicle and that this was consistent with their expectation of someone who could be potentially injured from a severe accident. (Trial Tr. March 12, 2024 at 18:5-7; 18:25-19:9; 138:8-19). Based on the damage to the vehicle, Officer Yepez thought that at the very minimum the occupants inside the vehicle were severely injured. (Trial Tr. March 12, 2024 at 90:3-8).

When Officer Randazzo approached the driver's side of the vehicle to get a better look inside, he saw Hurtado on his chest or stomach, in the prone position, "kind of wiggling around" and a gun. (Trial Tr. March 12, 2024 at 139:2-140:2). Officer Randazzo gave Hurtado commands to show his hand several times as a standard law enforcement command. (Trial Tr. March 12, 2024 at 143:9-16). When Officer Randazzo spotted the gun, it was to the right side of Hurtado's torso while Hurtado was lying chest down. (Trial Tr. March 12, 2024 at 144:24-145:11). After seeing the gun, Officer Randazzo said, "Gun, gun," and gave Hurtado commands not to move. (Trial Tr. March 12, 2024 at 146:23-147:10). Officer Randazzo never saw Hurtado reach for or

touch the gun while he was at the driver's side of the car. (Trial Tr. March 12, 2024 at 144:10-13, 145:12-14).

Prior to hearing Officer Randazzo say, "gun,", Officer Yepez was standing near the rear of the vehicle trying to look inside the vehicle with his flashlight illuminating the inside but never saw anyone inside. (Trial Tr. 31:3-32:18). Officer Yepez testified that *after* the shooting, when they pulled Hurtado out of the vehicle, Hurtado told him that he was "just drunk and [] blown" (Trial Tr. March 12, 2024 at 120:16-121:4). Officer Yepez testified that based on his training and experience as a police officer, he interpreted the word "blown" to mean that Hurtado was high off marijuana. (Trial Tr. March 12, 2024 at 122:2-6).

Hurtado testified on March 15, 2024, and March 18, 2024. He was cross-examined by defense counsel on March 15. Hurtado testified that he never reached for the gun, touched the gun, grab the gun, or pick up the gun to point it at any police officer. (Trial Tr. March 18, 2024 at 15:13-23). Hurtado further testified that he did not have any intention to shoot any officers and could not see any officers from the position he was in. (Trial Tr. March 18, 2024 at 15:24-16:2). At no point during any of his testimony, including defense counsel's cross-examination of Hurtado, did the subject of Hurtado's ability to recollect the events of the incident come up, including whether his ability or inability to recollect the incident was impaired by his use of drugs or alcohol that or whether his use of drugs or alcohol affected his perception or actions during the incident, ever come up. (*See* Trial Tr. March 15, 2024 at 81:16-19:19). While defense counsel reserved the right to recall Hurtado, they never did. (*See* Trial Tr. March 15, 2024 at 119:18-21; March 18, 2024 at 16:8-9).

The parties later held a discussion with the Court regarding reading the deposition transcript of paramedic Diane Valenzuela due to her unavailability, the topic of Hurtado's comments to Ms. Valenzuela regarding his drug use, specifically his comments to Ms. Valenzuela about using cocaine, came up as Plaintiff had submitted objections to Defendants' designated portions of Ms. Valenzuela's transcript. (*See* Trial Tr. March 18, 2024 at 99:19-101:10, 104:9-13, 105:3-19). Specifically, Plaintiffs argued that Defendants could not link the cocaine use with Hurtado's behavior at the time, especially considering Defendants did not designate an expert to

explain the effects (Trial Tr. March 18, 2024 at 105:3-19), and that the prejudicial effect outweighed the probative value (Trial Tr. March 18, 2024 at 110:4-13). The Court informed the parties that at the time the Court issued its rulings on the motions *in limine* and admitted Hurtado's statements regarding his use of drugs and alcohol on the day of the incident to corroborate the officers' testimony of the manner of Hurtado's driving, the Court had not realized that there was a video that actually captured Hurtado's vehicle driving on the freeway that "clearly support[ed] the officers' version of what happened." (Trial Tr. March 18, 2024 at 105:22-106:15). Thus, although the admission of Hurtado's statements regarding his use of drugs and alcohol was a "close call," now that the jury has seen the video, it was "less so" but that the Court could not at that point, reverse its prior ruling. (Trial Tr. March 18, 2024 at 106:16-107:3).

After a lunch break, the Court revisited the issue and indicated that under *Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016), evidence of a suspect's drug use is unduly prejudicial if there is no evidence that the suspect was acting erratically at the time of the shooting, and here, there was no evidence that Hurtado was acting erratically at the time of the shooting. (Trial Tr. March 18, 2024 at 118:23-120:1). The Court further stated that at the time it made its ruling on Plaintiff's motions in limine, it was focused on the officers' account of Hurtado's driving, which was irrefutably established by video, and had the Court been focused on the issue of Hurtado's behavior while lying on the roof of the car, the Court's ruling may have been different. (Trial Tr. March 18, 2024 121:19-122:4). Additionally, the Court acknowledged that while Hurtado's use of drugs, specifically "cocaine," may have arguably have "some conceivable possible relevant to explain plaintiff's  response or nonresponse at the time," that another reasonable explanation for his nonresponse was that he was dazed from just having tumbled down an embankment and ending up on the roof of an overturned car and thus could not have been quickly responsive to anything. (Trial Tr. March 18, 2024 at 122:5-14). Thus, the Court ruled that Defendants could present only one reference regarding Hurtado's use of cocaine in the reading of Ms. Valenzuela's testimony. (Trial. Tr. March 18, 2024 at 120:23-24, 122:15-19).

While the parties were finalizing jury instructions with the Court prior to closing arguments, Defendants confirmed that they were withdrawing their claim for comparative

negligence. (Trial Tr. March 19, 2024 at 4:16-6:4). Despite withdrawing their claim for contributory negligence and the Court's clear admonition to counsel restricting evidence of Hurtado's statements on his use of cocaine and alcohol, one theme of defense counsel's closing argument was about the "choices" Hurtado made on the night of the incident, including "[t]hat day, Mr. Hurtado chose to consume alcohol during the day. Mr. Hurtado chose to snort some cocaine that day and after drinking alcohol and snorting cocaine, Mr. Hurtado chose to get behind the wheel of a vehicle" and how Hurtado only made wrong choices that day versus Officer Yepez having to make the correct, difficult choice. (Trial Tr. March 19, 2024 at 76:5-9, 76:22-77:7). Defense counsel further argued that when deciding whose story to believe, the jury should not believe Hurtado's testimony because of all the "bad choices" he made that night. (Trial Tra. March 19, 2024 at 87:13-18).

On March 21, 2024, at 9:32 a.m., during jury deliberations, the Court received a note that the jury was deadlocked. (*See* Doc. No. 161). After the Court inquired whether there was any additional evidence the jury could review to continue deliberations, the jury was sent back to continue deliberations. At 1:05 p.m., the Court received a second note that the jury was deadlocked. (*See* Doc. No. 163). After inquiring whether the jury was deadlocked on all questions or whether it could come to a consensus on one of the questions, the jury was sent back for further deliberations. At 1:54 p.m., the Court received a note that the jury was deadlocked on all questions. (*See* Doc. No. 164). After inquiring whether there was anything that the Court could do to assist in the jury's deliberations, a mistrial was declared and the jury was discharged. (Trial Tr. March 21, 2024 at 19:21-21:9).

At a Status Conference on April 9, 2024, the Court set the retrial for October 16, 2024. (*See* Doc. No. 170).

## C.  <u>Pretrial of I.H., et al. v. State of California, et al. (Second Trial)</u>

Hurtado tragically passed away due to causes unrelated to this incident on June 28, 2024. At a Status Conference on August 27, 2024, the Court was informed of Hurtado's passing and Plaintiff's intention to file a Motion to Substitute Hurtado's four minor children as his successors in interest to continue the action. (*See* Doc. No. 173). Plaintiff's Motion to Substitute was filed on

-6-

that same day. (*See* Doc. No. 174). On September 18, 2024, the Court granted the Motion to Substitute and directed the Clerk of Court to update the docket to reflect the substitution of I.H., E.H., F.H., and A.H., through their mother and guardian Priscilla Macias, a successors in interest for plaintiff Francisco Hurtado. (*See* Doc. No. 189).

At the October 4, 2024 Status Conference, the Court ordered the parties to notify the Court as to whether prior motions *in limine* apply. (Doc. No. 205). Plaintiffs' counsel requested that the Court revisit its prior ruling on Plaintiffs' Motion in Limine Nos. 1 and 2 with regards to Hurtado's statements to the paramedic and officers on the day of the statement regarding his alcohol and drug use in light of the Court's comments regarding its ruling at the previous trial.

**D.  I.H., et al. v. State of California, et al. Trial (Second Trial)**

On the first day of the retrial, the Court revisited its previous ruling on Plaintiffs' Motion in Limine Nos. 1 and 2 and subsequently granted the motions, including the exclusion of Hurtado's statements to the paramedic and officers after the incident regarding his use of drugs and alcohol on the day of the incident. (*See* Doc. No. 224). At trial, due to Hurtado's unavailability, portions of his testimony at the previous trial were read before the jury.

During his testimony at trial and in his deposition, Officer Yepez admitted that Hurtado did not grab the gun and was not holding the gun at the time of the shooting. Officer Yepez conceded that the gun was not pointed at him nor coming up in his direction at the time of the shooting and that Hurtado had not picked it up and did not make eye contact with him prior to the shooting. Officer Yepez further conceded that he did not give any commands or any warning that deadly force was going to be used prior to the shooting.

Officer Randazzo testified that he was right at the driver's side, including at the time of the shots, and that he observed Hurtado chest down and never saw Hurtado reaching or touching the gun. Officer Randazzo never unholstered his gun, was surprised when the shooting occurred and was not expecting the shots.

Both Plaintiffs' and Defendants' police practices expert testified that under the facts of this case, a gun in the hand was not enough to justify the use of deadly force—the gun must be pointing at or coming in the direction of the officer in order for the use of deadly force to be in

compliance with standard police practices and training. Both police practices experts also agreed that in order to use deadly force, there must be an "in defense of life" (IDOL) situation where no reasonable alternatives are available and that a warning that deadly force is going to be used should be given when feasible. Defendants' police practice expert, Clarence Chapman, further testified that under the facts of this case, if Hurtado had not grabbed or acquired the gun immediately to use it, the shooting would be inappropriate under standard police practices and training.

Plaintiffs presented Hurtado's testimony regarding his limited ability to work since sustaining injuries from the 2018 incident. Hurtado previously testified that his partner, Priscilla had to work by herself for some time due to his injuries and that at some point, he started to work jobs, such as cutting hair and car detailing, that did not require too much movement in order to help bring in money to pay bills. Hurtado further testified that it took him longer than average to detail a car and that he was limited in his ability to detail cars due to his pain and mobility issues. Plaintiffs further presented expert testimony regarding some of Hurtado's past medical bills, including one medical expert testifying that his bills alone totaled approximately $23,000.

## IV.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 59 authorizes new trials "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Court may grant a new trial if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent…a miscarriage of justice." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999). The Court may also grant a new trial where the amount of damages is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996).

"Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." Fed. R. Civ. P. 61. "[T]he court must disregard all errors and defects that do not effect any party's substantial rights." *Id.* "A

new trial is only warranted when an erroneous evidentiary ruling 'substantially prejudiced' a party." *Rubalcava v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) (internal citations omitted). Prejudice is found only if the error "more probably than not…tainted the verdict." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008).

## V.     <u>ARGUMENT</u>

### A.   <u>A New Trial is Not Warranted Because the Jury's Past Economic Damages Award is Supported by the Evidence</u>

For damages, the verdict form listed "Past Economic Damages" and "Past Non-Economic Damages." (Doc. No. 241 at 3). For "Past Economic Damages," the verdict form indicated that these damages included medical *and* non-medical damages. (*Id*.). Under Jury Instruction Number 20, the jury was instructed to consider not only "[t]he reasonable value of necessary medical care, treatment and services received up to the time of Francisco Hurtado's death on June 28, 2024," but also "[t]he reasonable value of necessary household help, services other than medical, and expenses required up to the time of Francisco Hurtado's death on June 28, 2024." (Doc. No. 242 at 25). Defendants choose to focus only on evidence of medical damages that Plaintiffs presented at trial, while the jury focused on both—evidence of medical and non-medical damages that were presented at trial. The evidence Plaintiffs presented regarding Hurtado's medical and non-medical economic damages supports the jury's award of $500,000 in "Past Economic Damages."

Defendants focus on only one of Plaintiffs' medical expert's testimony regarding past medical expenses. However, Plaintiffs' presented evidence that Hurtado required hospitalization, additional medical care, and numerous medical treatments—besides the treatments that totaled $23,000. A reasonable jury could infer that Hurtado incurred more than $23,000 in past medical expenses. In addition to evidence regarding Hurtado's medical bills, Plaintiffs presented Hurtado's prior trial testimony regarding his inability to work for some time after the incident due to his injuries and pain, and his limited ability to work thereafter. Hurtado testified that when he did start to work in order to help his partner pay the bills and support his children, he had to choose jobs that did not require a lot of movement due to his pain and mobility issues stemming from the injuries sustained from the incident. Even within those jobs, Hurtado was limited in his earnings

due to his injuries. While Hurtado chose car detailing because it did not require much movement, it still took him longer than average to detail a vehicle and he was only able to detail the inside of vehicles due to his injuries. His limited mobility, loss of earnings and decreased earning capacity, which in turn created a need for additional household help and services and additional expenses, spanned a total of six years, from March 15, 2018 to June 28, 2024. This testimony and Plaintiffs' medical experts' testimony provided sufficient evidence to support the jury's award of $500,000 in past economic damages.

Should the Court find the economic damages award to be excessive, Plaintiffs contend a remittitur is the appropriate solution over a new trial. *See Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1387 (9th Cir. 1987) ("Where there is no evidence that passion and prejudice affected the liability finding, remittitur is an appropriate method of reducing an excessive verdict.").

### B. <u>A New Trial is Not Warranted Because the Court's Exclusion of Hurtado's Statements Regarding Cocaine and Alcohol Use were Neither Erroneous nor Substantially Prejudicial to Defendants</u>

In terms of evidentiary error at trial, the Ninth Circuit has stated:

> The decision to admit potentially prejudicial evidence under Rule 403 is committed to the sound discretion of the trial court. Proof the evidence was prejudicial to one party is insufficient to establish that the prejudice was unfair, or that the trial court abused its discretion in weighing that prejudice against the evidence's probative value. As long as it appears from the record as a whole that the trial judge adequately weighed the probative value and prejudicial effect of proffered evidence before its admission, we conclude that the demands of Rule 403 have been met.

*Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009) (cleaned up). Even if the exclusion of evidence at trial was an abuse of discretion, a new trial should not be granted if the exclusion of evidence was harmless, and in light of the totality of the evidence presented at trial, the admission of the evidence unlikely would have changed the verdict. *See Stroh v. Saturna Capital Corp.*, 746 Fed. App'x 639, 640 (9th Cir. 2018) (Mem.) (citing *Rubalcava*, 64 F.3d at 1328). Here, a new trial is not appropriate because Defendants have not shown that the Court's evidentiary ruling was erroneous nor that had they been able to "challenge[] Mr. Hurtado's

perception of events" (Doc. No. 256 at 6) based on his statements regarding his use of drugs and alcohol earlier in the day, it would have likely changed the jury's verdict.

> ### 1. *The Court Properly Excluded Evidence of Hurtado's Statements Regarding Cocaine and Alcohol Use that were Unknown to the Officers at the Time of the Shooting*

The Court's evidentiary ruling excluding Hurtado's after-shooting statements regarding was appropriate under Rule 403 and Ninth Circuit case law regarding information not known to the officers at the time of the use of force. The Supreme Court has held that the inquiry in an excessive force case "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). And while the reasonableness must be judged from the perspective of a reasonable officer on scene, "rather than with 20/20 vision of hindsight," *Graham*, 490 U.S. at 396, "the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways" and "[w]e cannot consider evidence of which the officers were unaware," *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 n.8 (9th Cir. 2011).

Here, Officer Yepez did not have any information regarding Hurtado's use of alcohol or drugs earlier in the day prior to the shooting. Hurtado's statements made to Officer Yepez and the responding paramedic regarding drugs and alcohol were made after the shooting. Defendants' reliance on *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938 (9th Cir. 2009), is misplaced as the facts of *Boyd* are distinguishable from the facts here. As another district court recognized, "[i]n *Boyd*, we have a traumatic life-changing event that caused the amputation of both of the decedent's legs 'that could be tied to police action,' which made it more likely that [the decedent] resolved to place liability for his death on the police, and "there was evidence that [the decedent] was arrested three days prior while performing a 'practice run' during which he exclaimed "kill me," and the decedent "was aware of the substantial damages his family could receive if the police were found liable for his death." *Shirar v. Guerrero*, No. EDCV13906JGBDTBX, 2017 WL 6001270, at *10 (C.D. Cal. Aug. 2, 2017). Here, there was no evidence that Hurtado intended to

provoke a shooting with police nor was there a traumatic life-changing even in Hurtado's past that would have motivated Hurtado to commit suicide by cop.

"Since *Boyd*, the Ninth Circuit appears to have retreated somewhat from its holding." *Estate of Tindle v. Mateu*, No. 18-CV-05755-YGR, 2020 WL 5760287, at *11 (N.D. Cal. Sept. 28, 2020) (citing *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013); *Glenn.*, 673 F.3d at 873 n.8; *see Morad v. City of Long Beach*, No. CV166785MWFAJWX, 2018 WL 11352372, at *6 (C.D. Cal. June 15, 2018) (recognizing that it was "apparent that the Ninth Circuit has clarified its position on unknown, preshooting knowledge, holding that it is inadmissible to establish the reasonableness of an officer's conduct."); *Ruvalcaba v. City of Los Angeles*, No. 2:12-CV-06683-ODW, 2014 WL 4426303, at *2 (C.D. Cal. Sept. 8, 2014) (same). Subsequently, courts have limited *Boyd*'s holding to cases where the suspect's intent or motive is clearly at issue. *See, e.g., Jackson v. Cnty. of San Bernardino*, 194 F. Supp. 3d 1004, 1009 (C.D. Cal. 2016) (declining to apply *Boyd* where the plaintiff's motive or intent was not at issue); *Stringer v. City of Pablo*, No. C 07–03544 MEJ, 2009 WL 5215396, at *3 (N.D. Cal. Dec. 28, 2009) (finding *Boyd* inapposite where the decedent's motivation or intention to provoke the officers to shoot him is not at issue); *Willis v. City of Fresno*, No. 1:09–CV–01766–BAM, 2013 WL 6145232, at *4 (E.D. Cal. Nov. 21, 2013) (declining to admit evidence of prior acts under *Boyd* where the plaintiff's "motive or intent [was] not at issue, as it was in *Boyd*").

In *Boyd*, officers alleged that the decedent was acting erratically, taunting police and goading them to shoot him instead of following commands; thus, the Ninth Circuit found that the district court did not abuse its discretion in admitting of evidence that the decedent was on drugs in order to corroborate the officers' observations of his alleged erratic behavior in relation to the defense's suicide by cop theory that was disputed by the plaintiffs. *Boyd*, 576 F.3d at 944, 949. Here, the only erratic behavior the officers observed happened during the short pursuit on the freeway, while Hurtado was driving his vehicle. However, because Hurtado's driving was captured on the patrol vehicle's dashcam MVAR, irrefutably establishing the officers' account of Hurtado's erratic driving on the freeway, the Court properly found that there was little to no probative value in admitting Hurtado's statements regarding his alcohol and cocaine use to

1  corroborate whether the officers correctly perceived Hurtado's erratic driving given there was

2  irrefutable video evidence of the conduct and that the prejudicial effect outweighed any probative

3  value. *See Estate of Tindle*, 2020 WL 5760287, at *12 (finding that *Boyd* did not require the

4  admission of evidence unknown to the officer that the decedent possessed or fired a gun just prior

5  to the officer's arrival because the officer's body camera captured the entire incident such that

6  there was no material dispute as to the conduct of decedent and the officers before and at the time

7  of the shooting, and therefore, information unknown to the officer had little to no probative value

8  on the question of whether the officer correctly perceived the decedent to be an imminent threat at

9  the time of the shooting).

10       Additionally, as the Court acknowledged at the first trial, in *Estate of Diaz v. City of*

11  *Anaheim*, 840 F.3d 592 (9th Cir. 2016), the Ninth Circuit held that evidence of a suspect's drug

12  use is unduly prejudicial if there is no evidence that the plaintiff was acting erratically nor

13  evidence that the officer believed the plaintiff was acting erratically because he was under the

14  influence. 840 F.3d at 602, n.11; *see Barillas v. City of Los Angeles*, No. CV1808740CJCASX,

15  2021 WL 4434977, at *4–5 (C.D. Cal. Apr. 12, 2021) (excluding evidence of decedent's drug use

16  on the day of the incident because officers did not testify that they suspected decedent of being

17  under the influence of drugs nor have defendants presented evidence of erratic of irrational

18  behavior to be corroborated other than decedent's "threatening movements" that immediately

19  preceded the shooting, which they did not contend was due to drugs); *Dominguez v. City of Los*

20  *Angeles*, No. CV174557DMGPLAX, 2018 WL 6164278, at *2 (C.D. Cal. Oct. 9, 2018)

21  (excluding evidence of drug use on the day of the incident because the decedent's behavior during

22  the incident was "not the sort of 'erratic' behavior that makes the toxicology report so probative as

23  to overcome the high risk of unfair prejudice."). Here, neither Officer Yepez nor Officer Randazzo

24  observed any erratic conduct from Hurtado immediately prior to or at the time of the shooting.

25       Both officers testified that they heard moaning and groaning as they approached the

26  overturned vehicle, which was consistent with their expectation of someone being potentially

27  injured from a severe accident. Officer Yepez thought that, based on the damage to the vehicle, at

28  the very minimum the occupants inside the vehicle were severely injured. When Officer Randazzo

-13-

1    spotted Hurtado inside the vehicle, he was laying on his stomach, wiggling around. Although

2    Officer Randazzo saw a gun near Hurtado's torso, he never saw Hurtado reach for or touch the

3    gun. Officer Yepez never saw Hurtado inside the vehicle until moments before he shot Hurtado,

4    during which he alleged he observed Hurtado reach for the gun (which Hurtado denied),

5    prompting him to shoot Hurtado. Neither officer testified that they suspected that Hurtado was

6    under the influence of drugs or alcohol prior to the shooting. Additionally, Defendants did not

7    designate an expert to explain the relationship between the use of alcohol and cocaine and

8    Hurtado's actions, thereby greatly reducing any probative value the evidence may have. *See*

9    *Dominguez*, 2018 WL 6164278, at \*2 (Defendants' failure to designate an expert to explain the

10   amount of marijuana in the toxicology report and the decedent's actions prior to the shooting

11   greatly reduces the value of the drug evidence because the jury would have no guidance in

12   interpreting the significance of the evidence of drugs to the case).

13        Lastly, at the first trial, where Hurtado's statements at the scene regarding his use of drugs

14   and alcohol were admitted, Defendants failed to cross-examine Hurtado on his ability to perceive

15   or recall the events of the incident or his conduct based on his use of alcohol and drugs that day.

16   Defendants also did not question Hurtado on this issue at his deposition. Thus, Plaintiffs did not

17   have any opportunity to redirect Hurtado on this issue and give Hurtado the opportunity to explain

18   how any alcohol or drug use did not affect his ability to perceive or recall the incident.

19   Accordingly, the admission of Hurtado's statements at the second trial would have been unduly

20   prejudicial as no testimony exists in which Hurtado was challenged regarding his ability to

21   perceive and recall the incident and Hurtado was given the opportunity to clarify or dispute

22   Defendants' contention that his use of drugs or alcohol on the day of the incident affected his

23   ability to perceive or recall the events of the incident.

24        As evidenced by the Court's discussion regarding the Plaintiff's motions *in limine* at the

25   hearing prior to the first trial, revisiting the issue of Hurtado's statements regarding his use of

26   drugs and cocaine during the first trial, and revisiting the issue a second time prior to the start of

27   the second trial, the Court adequately weighed the probative value against its prejudicial effect

28   before excluding Hurtado's statements, a ruling consistent with prior existing case law within the

1  Ninth Circuit. Accordingly, the Court's exclusion of Hurtado's statements at the scene regarding

2  his use of alcohol and cocaine on the day of the incident was neither erroneous nor an abuse of

3  discretion.

4          2.   *Admission of Hurtado's Statements at the Scene Would Not Have Changed the*
               *Jury's Verdict*

5

6          Even assuming *arguendo* that the exclusion of Hurtado's statements at the scene was

7  erroneous, a new trial is not warranted because the error was harmless and had Hurtado's

8  statements been introduced at trial, it would not have changed the jury's verdict in light of the

9  totality of the evidence presented at trial. Defendants contend that the Court's exclusion evidence

10  of Hurtado's statements regarding his use of cocaine and alcohol substantially prejudiced their

11  ability to challenge Hurtado's ability to recall events and perception of events. However,

12  Defendants could have easily challenged Hurtado's ability to recall events and his perception of

13  events but never did. It was undisputed that the accident that Hurtado had just been in appeared to

14  be severe, given the position and damage to the vehicle, and that the officers' impression was that

15  the occupants of the vehicle could be severely injured. A reasonable inference, as the Court

16  acknowledged, is that Hurtado was dazed from having just tumbled down an embankment and

17  ending up on the roof of an overturned car. Anyone in that position could have had trouble

18  accurately processing what was happening around him and later, have trouble recalling what was

19  happening right after a traumatic accident. Defendants could have used the reasonable inference

20  that Hurtado was dazed from such a severe accident to challenge his ability to recall and perceive

21  events on the night of the incident without having to resort to evidence of drugs and alcohol.

22          Defendants also could have, and did, use bias to challenge Hurtado's recall and perception

23  of the incident. During closing arguments at the first trial (where Hurtado's statements regarding

24  his use of alcohol and cocaine were admitted), defense counsel, in advocating for the jury to

25  choose Officer Yepez's version of events instead of Hurtado's, stated:

26          On the one hand you have a person who was making one bad choice after another
            that night, who is here today asking you to award him almost $17 million just for
27          medical care…who didn't tell you a single detail about the incident itself, not one,
            other than the fact that he is absolutely positively certain that he didn't reach for
28          the gun.

-15-

> He was on the stand. He could have explained what happened that night, explained what he was doing, what he saw, what he remembers. He didn't tell you any of that. Why not? What was he trying to hide from you?

(Trial Tr. March 19, 2024 at 87:17-88:2). Defense counsel did not use Hurtado's cocaine or alcohol use to challenge Hurtado's inability to recall the events of that night; instead, he implied that Hurtado was lying because his actions that night conformed to Officer Yepez's version of what happened.

Defendants also had every opportunity to cross-examine Hurtado during the first trial regarding whether his use of cocaine or alcohol on the day of the incident could have impaired his ability to perceive and recall the events of the incident but did not do so. Instead, Defendants used the admission of Hurtado's statements to inflame the jury against Hurtado, arguing that Hurtado had made "bad choices" on the day of the incident, including using cocaine and alcohol, and that the jury should not award Hurtado for those bad choices. As a result, Defendants did not have any prior testimony from Hurtado to present to the jury at the second trial to connect his use of alcohol and drugs on the day of the incident to his ability or inability to perceive and recall the events of the incident.

Additionally, whether or not Hurtado accurately recalled reaching for or touching the gun on the night of the incident was not the crux of this case. The main issue was whether Hurtado got up from his stomach and into a crouched position and grabbed the gun at the time of the shooting, as alleged by Officer Yepez at trial, or whether Hurtado was still in the prone position and had not grabbed the gun and was not holding it in a manner to immediately shoot the officers, as supported by the bullet trajectories, the timing of the shooting, Officer Randazzo's observation of Hurtado moments prior to the shooting, Officer Yepez's prior deposition testimony, and the totality of the circumstances. At trial, Plaintiffs presented substantial evidence that Hurtado could not have been in the crouched position and reaching for the gun at the time he was shot, as alleged by Officer Yepez.

Hurtado had just been in a serious car accident, where he ended up on the roof of his upturned vehicle at the bottom of an embankment. A jury could reasonably infer that Hurtado was

dazed, potentially had a head injury, and was in no position to move with any purpose. Additionally, when Officer Randazzo saw Hurtado, Hurtado was in prone position, wiggling around, but not reaching for or touching the gun that was near his torso. Officer Randazzo then announced, "Gun, gun," but never unholstered his gun. The shooting occurred no more than one and a half seconds after Officer Randazzo announced, "Gun, gun." As Officer Yepez was shooting, Officer Randazzo yelled at his partner to "Stop firing." While Officer Randazzo claimed that he looked away from Hurtado at the time of the shooting, a reasonable inference was that Officer Randazzo could still see Hurtado and saw that he was not a threat and therefore yelled to his partner to stop firing. Moreover, Plaintiffs' police practices expert, Scott DeFoe, testified that a reasonably trained officer in that situation, after having seen a gun, would not have taken his eyes off the subject and the gun. After the shooting, Officer Randazzo returned to help Hurtado and found him still chest down with the gun still in the same place he had previously seen it in. This is in accord with Hurtado's prior testimony that he never reached for or touched the gun. Even Officer Yepez conceded at his deposition and at trial that Hurtado did not grab the gun, was not holding the gun, was not pointing the gun, and the gun was not coming up in Officer Yepez's direction at the time of the shooting and that Hurtado did not make eye contact with Officer Yepez prior to the shooting. Further, Plaintiffs' biomechanical and accident reconstructionist expert, Jesse Wobrock, Ph.D., testified the gunshot wound to Hurtado's body and the wound trajectories through Huratdo's body are consistent with Hurtado laying flat, prone, chest down on the roof of the vehicle at the time he sustained the wounds and not consistent with him being in a crouched position.

Plaintiffs also elicited testimony from both Plaintiffs' and Defendants' police practices expert, who both agreed that a gun in the hand is not enough to justify the use of deadly force—the gun must be grabbed and held in a way to immediately shoot the officers in order for the officer to appropriately use deadly force. Both experts also agreed that deadly force can only be used in an immediate defense of life (IDOL) situation, when no other reasonable alternatives are available, and that a warning that deadly force will be used must be given when feasible. Moreover, Defendants' police practices expert testified that there must be a completed threat—not

just a potential threat—to justify deadly force, and that under the facts of this case, if Hurtado did not have the gun and had not acquired the gun, the shooting would have been inconsistent with police officer training on deadly force. As evidenced by Officer Yepez's testimony, Officer Randazzo's testimony, Hurtado's prior trial testimony and the circumstantial evidence, the facts of this case did not meet the standards as explained by the police practices experts on the circumstances that would justify the use of deadly force under the facts of this case.

Additionally, Plaintiffs presented evidence at trial that substantially undermined Officer Yepez's credibility and version of events. For example, Officer Yepez claimed that after he heard Officer Randazzo announce, "Gun, gun," he crouched down and illuminated the inside of the car with his flashlight and for the first time saw Hurtado and a gun by his foot. Officer Yepez further claimed that at that time, he initially did not believe Hurtado was a threat because he was not reaching for the gun and thus, Officer Yepez still had his gun holstered. Officer Yepez further claimed a second and a half passed before Hurtado reached for the gun, at which point Officer Yepez unholstered his gun, pointed it at Mr. Hurtado, and shot four shots. However, the patrol dashcam video captured the audio of the shooting and showed that only approximately a second and a half passed between the time Officer Randazzo announced, "Gun, gun," and when the shots began. Additionally, Plaintiffs presented evidence that when Officer Yepez gave his initial statement regarding the shooting, he told investigators that after the shooting, it appeared to him that Hurtado did not drop down. Later, in a declaration submitted to the Court under penalty of perjury, he claimed that Hurtado remained in crouched position after the shooting. Then at trial, in order to explain how Officer Randazzo saw him in the same prone position he had seen him in earlier after the shooting, Officer Yepez claimed that Hurtado immediately dropped down after the shooting.  Lastly, Plaintiffs presented evidence that at his deposition, Officer Yepez admitted that he did not see Hurtado grab or holding the gun prior to the shooting.

This case did not hang on whether Hurtado could accurately recall the events of the night of the incident, including whether or not he reached for the gun. There was substantial evidence presented at trial to support the jury's verdict such that had Hurtado's statements at the scene on the day of the incident regarding his use of cocaine and alcohol been admitted at trial to challenge

Hurtado's recall and perception of events, it would not have affected the jury's verdict. Even without Hurtado's testimony, there was substantial evidence for the jury to find in favor of Plaintiffs as the testimony of Officer Yepez, Officer Randazzo, the two police practices experts, and Plaintiffs' biomechanical and accident reconstruction expert solidified a finding of liability in favor of Plaintiffs. Accordingly, the Court's exclusion of Hurtado's statements at the scene did not substantially prejudice Defendants.

## VI.  **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for a New Trial in its entirety.

Respectfully submitted,

DATED: December 31, 2024          LAW OFFICES OF DALE K. GALIPO

By_____*/s/ Hang D. Le*_____
        Dale K. Galipo
        Hang D. Le
        Attorneys for Plaintiffs