# Exhibit 4

```
 1                    UNITED STATES DISTRICT COURT

 2                   EASTERN DISTRICT OF CALIFORNIA

 3                              --oOo--

 4   FRANCISCO HURTADO,            ) Case No. 2:19-CV-02343-DAD-AC
                                   )
 5              Plaintiff,         ) Sacramento, California
           v.                      ) March 19, 2024, 10:46 a.m.
 6                                 )
     STATE OF CALIFORNIA, et al., ) Re: Trial Day 7
 7                                 )
                Defendants.        )
 8

 9                     TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE DALE A. DROZD
10                  UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Plaintiff:      LAW OFFICES OF DALE K. GALIPO by
                             MR. DALE K. GALIPO
13                           21800 Burbank Boulevard, Suite 310
                             Woodland Hills, California  91367
14
                             GUIZAR, HENDERSON & CARRAZCO by
15                           MR. ANGEL CARRAZCO, JR.
                             MR. KENT MATTHEW HENDERSON
16                           18301 Irvine Boulevard
                             Tustin, California  92780
17
     For the Defendants:     OFFICE OF THE ATTORNEY GENERAL
18                           DEPARTMENT OF JUSTICE by
                             MS. LEEANN E. WHITMORE
19                           MR. JOHN C. BRIDGES
                             1300 I Street,
20                           Sacramento, California  95814

21               MARYANN VALENOTI, RMR, CRR
                  Official Court Reporter
22                501 I Street, Suite 4-200
                    Sacramento, CA 95814
23                mvalenotiRMRCRR@gmail.com
                       (916)930-4275
24
     Proceedings reported via mechanical steno - transcript produced
25   via computer-aided transcription
```

1   sentence with -- second sentence with "these charts and
2   summaries."
3         Instruction 14, Page 14, Line 25, "the extent of" and
4   eliminate the word "the," "The extent of Plaintiff Hurtado's
5   injuries."
6         Same instruction, Page 15, Line 2, strike the word
7   "and" after the semicolon.
8         And Instruction 26, Page 30, "During deliberations,"
9   comma, "we will not have."
10        So those are very minor changes to the instructions
11  that we sent out to you last night.  No changes to the verdict
12  form.
13        Does plaintiff have any formal objections to the
14  instructions as I've proposed them that they wish to place on
15  the record?
16        MR. GALIPO:  Plaintiff has no formal objections to the
17  instructions, but there was a few things that I thought we
18  should put on the record related to the instructions, and that
19  would be that there is an agreement, as I understand it, that
20  the defense is withdrawing the request for an instruction on
21  contributory or comparative negligence, which the Court agreed
22  and that's why it is not in the packet.
23        The defense also withdrew their request to have an
24  instruction on mitigation.  I was looking for the word for a
25  second.

1       The plaintiff withdrew the request for punitive
2  damages and that's why there's no instruction on punitive
3  damages.
4       Plaintiff also is not claiming past medical expenses
5  or loss of earnings, so that's why those items were deleted
6  from the instructions.
7       This may relate more to the verdict form, but I think
8  it might be good for the parties just to agree, and I think the
9  Court is correct, that the Fourth Amendment claim and the
10 battery claim could be addressed by one question on the verdict
11 form, which is the current way the verdict form is.  So
12 obviously, if there is a "yes" in favor of the plaintiff on
13 that claim, it would be to both Fourth and battery.  And the
14 converse, if there's a "no," then it would be no to both
15 claims.
16      I just thought it was important to at least put those
17 items on the record from the plaintiff's perspective.
18      THE COURT:  All of what Mr. Galipo has stated with
19 respect to withdrawing instructions as well as the agreement
20 that the excessive force and battery claims were -- both
21 parties and the Court agreed that they were governed by the
22 same legal standards, and, therefore, could and should be
23 combined on the verdict form.  Everything that he said in that
24 regard is consistent with my understanding.
25      Ms. Whitmore, that doesn't mean that you can't

1    disagree.

2         MS. WHITMORE:  No, no, Your Honor, I agree with what
3    he said, that's what we discussed yesterday with you, and the
4    withdrawal of the comparative negligence.

5         THE COURT:  Before you get to formal objections, I
6    know you have some.

7         MS. WHITMORE:  Yes.

8         THE COURT:  Just give me a short break before you move
9    into formal objections, keep going.

10        MS. WHITMORE:  I wasn't there yet.  I was just saying
11   we agree that we withdraw the comparative negligence and the
12   mitigation instruction, which is why the verdict form was
13   withdrawn and the past medical and punitives were waived by
14   plaintiff's counsel.

15        Now I have my formal objections.

16        THE COURT:  Before you do that, let me just put on the
17   record, with respect to the excessive use of force claim under
18   1983 and the battery claim brought under California law by
19   plaintiff, my conclusion, which the parties have agreed with,
20   is based -- that they are governed by -- those two claims are
21   governed by the same legal standard.  I have relied upon Ninth
22   Circuit authority in reaching that conclusion, specifically I
23   believe it's *Saman versus Robbins*, the case is found at 173
24   F.3d 1150 at 1156 and 57 (9th Cir. 1999)*); Arpin versus Santa
25   Clara Valley Transportation Agency*, 261 F.3d 912 at 921, 922

1  thing we control in life are the choices we make.  The choice
2  to do something or not to do something can have long-lasting
3  consequences, but it's the choice that matters.
4  　　　　　So let's talk about some of the choices that
5  Mr. Hurtado made on March 15 of 2018.  That day, Mr. Hurtado
6  chose to consume some alcohol during the day.  Mr. Hurtado
7  chose to snort some cocaine that day, and after drinking
8  alcohol and snorting cocaine, Mr. Hurtado chose to get behind
9  the wheel of a vehicle.  He chose to not put on his seat belt
10 when he did that.  He chose to drive on Highway 99 at over
11 80 miles an hour, even though the speed limit is only 65, and
12 it had been raining that day and it was dark out.
13 　　　　　When he saw police lights behind him, he chose to
14 accelerate up to 93 miles an hour, and then he chose to put
15 himself in a position where he was unable to control his
16 vehicle so that he crashed through a guardrail and down an
17 embankment.
18 　　　　　Then, when two police officers came down the
19 embankment to help him, to make sure that he was okay, he chose
20 to ignore every one of their commands, and he chose to reach
21 for the gun that he had in his car.
22 　　　　　Mr. Hurtado made a lot of choices that day, and none
23 of them were good.  There is a difference between making the
24 wrong choice and making a difficult choice, and that's the
25 difference between what Mr. Hurtado did that day and what

1   Officer Yepez did that day.
2           Officer Yepez really only had one choice to make, and
3   it was a difficult one, he could either shoot Mr. Hurtado or he
4   could stand by and let Mr. Hurtado shoot Officer Randazzo.
5   That was the choice that he was faced, and Officer Yepez made
6   the right choice that night.
7           Now, let's talk about the standard for excessive
8   force.  You heard from Mr. Galipo, he showed you the jury
9   instruction.  He talked to you about what it is you're supposed
10  to be looking at in determining whether the force used by
11  Officer Yepez was reasonable or not.  That's really the
12  question, was it objectively reasonable?
13          Based on the totality of the circumstances known to
14  Officer Yepez, did he act the way that a reasonable officer
15  would or would be expected to?  Mr. Galipo also talked to you
16  about the burden of proof in this case, and he admits,
17  accurately, so that the burden of proof is on him, it's on
18  Mr. Hurtado to establish to you that by a preponderance of the
19  evidence that his claims are more probably true than not true.
20          So if you think of a scale, he has to tip the scales
21  every so slightly in his favor in order to prevail on his
22  claims.  If the claim is simply, "I did something," and the
23  other person says, "No, you didn't do that," or vice versa, and
24  all things are equal, he cannot prevail in this case.
25          So let's talk about Mr. Hurtado's criticisms of

1    which is now the floor, for our purposes.
2            He told you that he saw Mr. Hurtado put his hand on
3    top of the gun with the tips of his fingers bent just a little
4    bit like this [demonstrating].  And I will submit to you that
5    if I lift my hand like this [demonstrating], I'm not grabbing
6    this case that I'm demonstrating with right now.  But in order
7    to grab it, all I have to do is that [demonstrating].
8            So whether he grabbed it or not, there's this question
9    of did it constitute an immediate threat.  I believe Mr. Galipo
10   said it has to be immediately life threatening.  I would say
11   from this to this [demonstrating] is about as immediate as you
12   can get.
13           Now, you have the two stories from Mr. Hurtado and
14   from Officer Yepez about whether or not Mr. Hurtado actually
15   reached for the gun, not only grabbed it, but did he reach for
16   it.
17           On the one hand you have a person who was making one
18   bad choice after another that night, who is here today asking
19   you to award him over almost $17 million just for medical care,
20   not counting the pain and suffering they're also asking you to
21   give him, who didn't tell you a single detail about the
22   incident itself, not one, other than the fact that he is
23   absolutely positively certain that he didn't reach for the gun.
24           He was on the stand.  He could have explained what
25   happened that night, explained what he was doing, what he saw,

1   what he remembers.  He didn't tell you any of that.  Why not?
2   What was he trying to hide from you?  On the other side of
3   that, you have Officer Yepez, who -- trained police officer,
4   who had been on patrol for nine months, who told you that he
5   saw Mr. Hurtado reach for the gun and put his hand on it.
6        The question I ask when I hear this testimony, is if
7   Officer Yepez is lying about that, why wouldn't he just say
8   that he grabbed the gun?  Why wouldn't he say that he grabbed
9   the gun and lifted it off the roof of the car?  Why not say he
10  grabbed the gun, lifted it off the roof of the car and pointed
11  it at Officer Randazzo?  There's only two explanations of that:
12  He's either the worst liar on the face of the Earth, or he's
13  telling you the truth about what he saw inside the car.
14       Now, you heard a lot from him, from Officer Yepez,
15  during this trial, and obviously, you can decide if he was
16  being honest or not.  But you heard very little from
17  Mr. Hurtado during this trial, and you can decide if he was
18  being honest or not, too.
19       Now, I will say, Mr. Galipo is an excellent attorney.
20  He's done a great job in this case.  And he's done one thing in
21  particular which has been very, very effective, and that is
22  that he has taken a case that is very, very, very simple and he
23  has made it extremely confusing.  Was it one second, was it one
24  and a half seconds, was it two seconds, five seconds, was he
25  squatting, was he prone, was he crouching, who's doing what

```
 1                     C E R T I F I C A T E
 2
 3       I certify that the foregoing is a true and correct
 4   transcript of the proceedings in the above-entitled matter.
 5
 6   /s/ Maryann Valenoti
 7   _____         October 9, 2024
     MARYANN VALENOTI, RMR, CRR                  DATE
     Official Court Reporter
 8   CA CSR #11266
 9
10
...
25
```