**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

Humberto M. Guizar, Esq.       (SBN 125769)
Kent M. Henderson, Esq.        (SBN 139530)
Angel Carrazco, Jr., Esq.      (SBN 230845)
**GUIZAR, HENDERSON & CARRAZCO, L.L.P.**
18301 Irvine Boulevard, Tustin, CA 92780
Telephone:     (714) 541-8600
Facsimile:     (714) 541-8601
Email:         hguizar@ghclegal.com
               hendolaw@gmail.com
               angel@carrazcolawapc.com

Attorneys for Plaintiffs I.H., E.H., F.H., and A.H.

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.H., a minor by and through her mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; E.H., a minor by and through her mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; F.H., a minor by and through his mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; and A.H., a minor by and through his mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado; <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF CALIFORNIA; CALIFORNIA HIGHWAY PATROL; EDGARDO YEPEZ aka EDGARDO LOPEZ; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. 2:19-cv-02343-DAD-AC <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES** <br><br> [*Declarations and Exhibits thereto filed concurrently herewith*] <br><br> Date:   February 3, 2025 <br> Time:  1:30 p.m. <br> Crtrm: 4 |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    THE REQUESTED HOURLY RATES ARE REASONABLE ........................... 2

       A.    Defendants Have Failed to Rebut Plaintiffs' Evidence Supporting the
             Requested Hourly Rates ...................................................................................... 2

       B.    Plaintiffs' Attorneys and Staff ............................................................................ 4

             1.     Dale K. Galipo ........................................................................................ 4

             2.     Hang D. Le .............................................................................................. 5

             3.     Kent M. Henderson, Angel Carrazco, Jr., and Humberto Guizar ................. 6

             4.     Christopher L. Holm ............................................................................... 7

             5.     Nathan Henderson ................................................................................... 7

             6.     Legal Assistants/Law Clerks ................................................................. 7

       C.    Local Forum Rates ............................................................................................... 8

III.   PLAINTIFFS ACHIEVED EXCELLENT RESULTS THAT JUSTIFY ALL
       HOURS PLAINTIFFS' ATTORNEYS REASONABLY EXPENDED ............................ 8

IV.    THE NUMBER OF HOURS SPENT WAS REASONABLY NECESSARY TO
       LITIGATION ......................................................................................................... 10

       D.    Block Billing ......................................................................................................... 11

       E.    Duplicative Billing .............................................................................................. 11

       F.    Vague Billing ........................................................................................................ 12

       G.    Tasks Related to Experts .................................................................................. 12

       H.    Review of Medical Records and Payment to Treatment Providers ........................ 13

       I.     Inter/Intraoffice Conferences ............................................................................ 13

       J.     Secretarial and Administrative Tasks .............................................................. 14

       K.    Travel Time .......................................................................................................... 14

       L.     Tasks Related to the Testimony of Mary Meinhard and Dr. Joshua Prager ........... 15

V.     PLAINTIFFS SHOULD BE COMPENSATED FOR THEIR ATTORNEYS'
       WORK ON THIS REPLY AND ANY OTHER RELATED POST-TRIAL WORK ........ 15

VI.    CONCLUSION ...................................................................................................... 15

## **TABLE OF AUTHORITIES**

### Cases

*Amphastar Pharms. Inc. v. Aventis Pharma SA*,
    No. 5:09-CV-00023-SHK, 2020 WL 8680070 (C.D. Cal. Nov. 13, 2020) ........................ 17

*Avila v. Ford Motor Co.*,
    No. 5:22-CV-00395-SPG-SHK, 2024 WL 3311081 (C.D. Cal. May 15, 2024) ................. 9

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*,
    532 U.S. 598 (2001) ............................................................................ 1

*Clark v. City of Los Angeles*,
    803 F.2d 987 (9th Cir. 1986) ............................................................... 18

*Craig v. Cnty. of Orange*,
    Case No. SACV 17-00491-CJC (KESx) ................................................... 6

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
    482 U.S. 437 (1987) ........................................................................... 15

*Cruz ex rel. Cruz v. Alhambra Sch. Dist.*,
    601 F. Supp. 2d 1183 (C.D. Cal. 2009) ................................................. 16

*Dang v. Cross*,
    422 F.3d 800 (9th Cir. 2005) ................................................................. 2

*Davis v. City & Cnty. of San Francisco*,
    976 F.2d 1536 (9th Cir. 1992) ......................................................... 4, 16

*Donastorg v. City of Ontario*,
    Case No. EDCV 18-992 JGB (SPx), 2021 WL 6103545 (C.D. Cal. Sept. 23, 2021).. 6, 7, 8,
    9, 13, 14, 18

*Drummond v. City of Anaheim*,
    343 F.3d 1052 (9th Cir. 2003) ............................................................... 8

*Estate of Aguirre v. Cnty. of Riverside*,
    No. CV 18-762-DMG (SPX), 2024 WL 2107727 (C.D. Cal. Mar. 29, 2024)................. 7

*Estate of Casillas v. City of Fresno*,
    No. 116CV01042AWISAB, 2020 WL 869117 (E.D. Cal. Feb. 21, 2020) ................. 5

*Fox v. Vice*,
    563 U.S. 826 (2011) ....................................................................... 1, 2

*French v. City of Los Angeles*,
    No. EDCV2000416JGBSPX, 2022 WL 2189649 (C.D. Cal. May 10, 2022) ................ 9

*Frias v. City of Los Angeles*,
    Case No. CV 16-4626 PSG (SKx), 2020 WL 4001620 (C.D. Cal. Apr. 23, 2020) ........... 13

*Gates v. Deukmjian,*
    987 F.2d 1392 (9th Cir. 1992) ...................................................................... 3, 4, 15

*Hardisty v. Astrue,*
    592 F.3d 1072 (9th Cir. 2010) .................................................................................. 1

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) .............................................................................. 1, 10, 11

*Ibrahim v. U.S. Dep't of Homeland Sec.,*
    912 F.3d 1147 (9th Cir. 2019) ............................................................................ 11

*Jones v. Cnty. of Sacramento,*
    No. CIV S-09-1025 DAD, 2011 WL 3584332 (E.D. Cal. Aug. 12, 2011) .......................... 4

*Lehr v. City of Sacramento,*
    No. 2:07-CV-01565-MCE, 2013 WL 1326546 (E.D. Cal. Apr. 2, 2013) .......................... 4

*Moreno v. City of Sacramento,*
    534 F.3d 1106 (9th Cir. 2008) ........................................................................ 13, 14

*Olguin v. FCA US LLC,*
    No. 1:21-CV-1789 JLT CDB, 2024 WL 4012103 (E.D. Cal. Aug. 30, 2024) .............. 6, 10

*Prehired, LLC v. Provins,*
    No. 2:22-CV-00384-DAD-AC, 2023 WL 4187461 (E.D. Cal. June 26, 2023) ................. 10

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.,*
    743 F. Supp. 2d 1136 (C.D. Cal. 2010) ................................................................ 14

*Rodriguez v. Cnty. of Los Angeles,*
    96 F. Supp. 3d 1012 (9th Cir. 2014) ............................................................. 13, 14

*Schmidt v. City of Modesto,*
    No. 117CV01411DADMJS, 2018 WL 6593362 (E.D. Cal. Dec. 14, 2018) ..................... 3

*Schwarz v. Sec'y of Health & Hum. Servs.,*
    73 F.3d 895 (9th Cir. 1995) ......................................................................... 1, 11

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
    896 F.2d 403 (9th Cir. 1990) .............................................................................. 3

*Valenzuela v. City of Anaheim,*
    No. SACV1700278CJCDFMX, 2023 WL 2249178 (C.D. Cal. Feb. 23, 2023) ................. 6

*Webb v. Sloan,*
    330 F.3d 1158 (9th Cir. 2003) ........................................................................... 11

*West Virginia Univ. Hosps., Inc. v. Casey,*
    499 U.S. 83 (1991) ........................................................................................ 15

*Wit v. United Behav. Health,*
    578 F. Supp. 3d 1060 (N.D. Cal. 2022) ............................................................... 15

*Zelaya v. City of Los Angeles*,
No. 2:20-CV-08382-ODW (MAAX), 2024 WL 3183882 (C.D. Cal. June 25, 2024). 6, 7, 9, 17

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3

"A request for attorneys' fees should not result in a second major litigation." *Hensley v.*

4  *Eckerhart*, 461 U.S. 424, 437 (1983). This admonition holds true for Plaintiffs' Motion for

5  Attorneys' Fee, but not due to the amount of fees requested as Defendants contend, but because of

6  Defendants' attempts to re-litigate the merits' of Plaintiffs' case in arguing that Plaintiffs had

7  limited success at trial and asking the Court to reduce the requested fee amount for tasks

8  Defendants perceived as "unnecessary" to Plaintiffs' alleged "limited success." Indeed, the

9  Supreme Court and the Ninth Circuit have rejected this sort of merit-based, highly fact-bound

10  review in awarding attorney fees that Defendants appear to request in arguing that Plaintiffs

11  achieved "limited success" and should not be allowed to recover fees for tasks Defendants deem

12  as "unnecessary." *See, e.g., Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health &*

13  *Hum. Res.*, 532 U.S. 598, 609-10 (2001); *Hardisty v. Astrue*, 592 F.3d 1072, 1078 (9th Cir. 2010);

14  *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 902 (9th Cir. 1995). After reemphasizing

15  that the determination of fees should not result in a second major litigation, the Supreme Court in

16  *Fox v. Vice*, 563 U.S. 826 (2011), went on to state,

17
18
19
20
21
> [T]rial courts need not, and indeed should not, become green-eyeshade
> accountants. The essential goal in shifting fees (to either party) is to do rough
> justice, not to achieve auditing perfection. So trial courts may take into account
> their overall sense of a suit, and may use estimates in calculating and allocating an
> attorney's time. And appellate courts must give substantial deference to these
> determinations, in light "of the district court's superior understanding of the
> litigation.

22  563 U.S. at 838 (internal citations omitted).

23  This was a complex case on liability and damages. While Plaintiffs' lead counsel has the

24  ability to distill complex issues into simple inquiries for the jury to understand, this provides

25  support more for Mr. Galipo's requested hourly rate rather than Defendants' argument to reduce

26  Plaintiffs' attorneys' fees in half. In a world where more and more police interactions are being

27  captured on video, making it easier for a jury to review the events and determine whether officer

28  conduct was reasonable, this officer-involved shooting was not. Thus, Plaintiffs' counsel had to

---

-1-

lead the jury through circumstantial evidence, forensic evidence, inconsistent testimony, and police officer training and practices, to show that the shooting did not happen as described by Officer Edgardo Yepez in order for the jury to reach its verdict in favor of Plaintiffs. Moreover, Francisco Hurtado's resulting injuries from the shooting were esoteric and complex, requiring the evaluation and treatment of multiple medical and health professionals, and the explanation of Hurtado's complex injuries within a short of amount of time to the jury. Plaintiffs' inability to present the same medical evidence and testimony at the retrial due to Hurtado's death, an event outside of Plaintiffs' and the Court's control, does not negate the work that was done in good faith for Hurtado's future medical care damages and past and future pain and suffering. This Court should permit the full fee award and grant Plaintiffs' requested attorneys' fees in its entirety.

## II.   THE REQUESTED HOURLY RATES ARE REASONABLE

### A.   Defendants Have Failed to Rebut Plaintiffs' Evidence Supporting the Requested Hourly Rates

It is unclear to Plaintiffs as to why Defendants use the twelve *Kerr* factors in assessing the reasonableness of Plaintiffs' attorneys' requested hourly rates. As stated in Plaintiffs' Motion, to determine whether hourly rates are reasonable under § 1988, fees "are calculated according to the prevailing market rates in the relevant community, taking into consideration the experience, skill and reputation of the attorney." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005). However, market rates outside of the district in which this court sits are permitted if there is proof that "Sacramento firms could not successfully have provided the expert representation required to effectively represent litigants in this matter." *Gates v. Deukmjian*, 987 F.2d 1392, 1405 (9th Cir. 1992). This Court has recognized that, "District courts in the Eastern District of California have permitted the use of out-of-forum hourly rates where…there are a lack of attorneys who handle the particular type of case being brought[] or [] plaintiff demonstrates that they made an affirmative attempt to secure local counsel and were unable to do so, for varying reasons." *Schmidt v. City of Modesto*, No. 117CV01411DADMJS, 2018 WL 6593362, at *5 (E.D. Cal. Dec. 14, 2018) (collecting cases). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for

1   the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United*

2   *Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

3         Plaintiffs have provided evidence that attorneys in Sacramento lacked the experience,

4   expertise, and specialization to successfully provide expert representation to effectively represent

5   Plaintiffs. Plaintiffs submitted declarations from two prominent civil rights attorneys—Michael

6   Haddad in Oakland, California and Mark Merin in Sacramento, California—attesting to the fact

7   that there are no attorneys with the requisite expertise and skill in Sacramento who could have and

8   would have accepted this case and successfully won this case at trial. (*See* Doc. No. 263-34 ¶¶ 2-

9   16, 19; Doc. No. 263-35 ¶¶ 8-20, 30-32, 44-46).

10         Mr. Merin has been recognized within the Eastern District of California as "one of the

11   most experienced and successful civil rights attorneys in the Sacramento area." *Lehr v. City of*

12   *Sacramento*, No. 2:07-CV-01565-MCE, 2013 WL 1326546, at *7 (E.D. Cal. Apr. 2, 2013). Even

13   this Court has taken Mr. Merin's fee rates recommendations into consideration when awarding

14   attorneys' fees in civil rights cases because his "extensive experience in civil rights litigation is

15   well-known to this court." *Jones v. Cnty. of Sacramento*, No. CIV S-09-1025 DAD, 2011 WL

16   3584332, at *6 (E.D. Cal. Aug. 12, 2011). Mr. Merin, who is specifically familiar with the facts of

17   this case, acknowledged that this case was a very difficult case for Plaintiffs and that "[t]here are

18   no attorneys in the Sacramento area who could have or would have taken this case," including

19   himself, due to the negative evidence regarding the gun and drugs. (Doc. No. 263-35 ¶¶ 44, 45).

20   Mr. Merin concludes that Mr. Galipo's requested hourly rate of $1,400 and his team's

21   corresponding Los Angeles legal community rates "are reasonable rates given the difficulty in

22   taken and prosecuting the case to a Plaintiffs' verdict and the unavailability of local counsel with

23   the requisite experience and expertise to take on such a difficult police misconduct case." (Doc.

24   No. 263-35 ¶ 46).

25         Once the party claiming fees presents evidence supporting the claimed rate, the burden

26   shifts to the party opposing fees to present equally specific countervailing evidence. *See Gates*,

27   987 F.2d at 1405; *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1546-47 (9th Cir.

28   1992), *modified on other grounds*, 984 F.2d 335 (9th Cir. 1993). Defendants have not provided

-3-
PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

any evidence to rebut Plaintiffs' submitted proof that Sacramento attorneys could not have successfully provided the expert representation required to effectively represent Plaintiffs in this matter nor have Defendants provided any evidence to rebut Plaintiffs' submitted proof that the requested rates are the prevailing hourly rates in the Los Angles legal community. Defendants only conclusorily argue that Plaintiffs have provided insufficient evidence and rely on *Estate of Casillas v. City of Fresno*, No. 116CV01042AWISAB, 2020 WL 869117 (E.D. Cal. Feb. 21, 2020), in arguing that local forum rates should apply. However, *Estate of Casillas* is inapposite.

In *Estate of Casillas*, the district court found that plaintiffs failed to show that local forum rates of the Eastern District should not apply to the attorneys because, unlike here, Plaintiffs did not submit any evidence that local counsel was unavailable either because they were unwilling or unable to perform due to lack of experience, expertise, or specialization required to properly handle the case. 2020 WL 869117, at *9. Plaintiffs merely asserted that "it is unlikely there were any attorneys who were available in the Fresno area (or any other area for that matter) with the skill, experience and reputation comparable to that of Mr. Galipo" but failed to submit any evidence supporting that assertion. *Id.*

Defendants have failed to rebut Plaintiffs' submitted evidence supporting Plaintiffs' request for hourly rates outside of the local forum. Instead, Defendants have summarily argued that besides Mr. Galipo, Plaintiffs' attorneys have failed to provide any support for the fees they seek; inexplicably ignoring the declarations Plaintiffs submitted in support of the requested hourly rates and citations to other cases in which district courts have awarded Plaintiffs' attorneys, or attorneys with comparable experience, similar hourly rates. Plaintiffs address Plaintiffs' arguments regarding Plaintiffs' attorneys and staff in turn below.

### B. Plaintiffs' Attorneys and Staff

#### 1. Dale K. Galipo

Defendants contend that Mr. Galipo's hourly rate should be capped at $550 because that is the ceiling hourly rate for attorneys with more than fifteen years of experience, and Mr. Galipo is not deserving of more because he did was not involved in the bulk of the pre-trial work. As discussed further below, Defendants' contention that the hourly rate in the Eastern District is

capped at $550 is incorrect. *See Olguin v. FCA US LLC*, No. 1:21-CV-1789 JLT CDB, 2024 WL 4012103, at *7 (E.D. Cal. Aug. 30, 2024).

Plaintiffs have submitted more than sufficient evidence to support Mr. Galipo's requested hourly rate of $1,400. Mr. Galipo has over 36 years of experience, the majority of which was spent litigating civil rights cases involving police excessive force. He has been awarded hourly rates ranging from $1,100 to $1,400 in recent years, with the latest hourly award of $1,400 being awarded in February 2024. (*See* Doc. Nos. 263-5—263-11). Courts within the Central District of California have consistently recognized Mr. Galipo to be at the top of his field in police excessive force cases. *See, e.g.*, *Zelaya v. City of Los Angeles*, No. 2:20-CV-08382-ODW (MAAX), 2024 WL 3183882, at *3 (C.D. Cal. June 25, 2024); *Valenzuela v. City of Anaheim*, No. SACV1700278CJCDFMX, 2023 WL 2249178, at *3 (C.D. Cal. Feb. 23, 2023); *Craig v. Cnty. of Orange*, Case No. SACV 17-00491-CJC (KESx), Dkt. 280, at 5-6; *Donastorg v. City of Ontario*, Case No. EDCV 18-992 JGB (SPx), 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021). Mr. Galipo's colleagues and peers have recognized the same. (*See* Doc. No. 263-34 ¶¶ 17, 23; Doc. No. 263-35 ¶¶ 39-43). Indeed, even Defendants recognized that "Mr. Galipo is an excellent attorney" (Doc. No. 273 at 16:18) whose "experience was evidenced by him streamlining the issues, cross-examining the officers and limiting the defense's ability to cross-examine Mr. Hurtado[,]" (Doc. No. 273 at 14:8-10) and whose skills "are reflected in the hourly rates he has been awarded in the past" (Doc. No. 273 at 14:10-11). Accordingly, Plaintiffs have submitted sufficient evidence of prevailing community rates and evidence of Mr. Galipo's experience, skill and reputation to show that his requested hourly rate is reasonable.

### 2.  Hang D. Le

Ms. Le requested an hourly rate of $700, based on previous hourly rates awarded to her by district courts and recent hourly rates awarded to her colleagues with comparable experience and skills. *See Estate of Aguirre v. Cnty. of Riverside*, No. CV 18-762-DMG (SPX), 2024 WL 2107727, at *4 (C.D. Cal. Mar. 29, 2024); *Donastorg*, 2021 WL 6103545, at *9; *Zelaya*, 2024 WL 3183882, at *3. Ms. Le has worked almost exclusively on civil rights police excessive force cases over the past ten years. (Doc. No. 263-12 ¶ 6). She has been the managing day-to-day attorney in

cases with Mr. Galipo that resulted in seven-figure settlements and verdicts, and the managing attorney and second chair at trial for two cases that resulted in eight-figure jury verdicts. (*Id.* ¶¶ 8-9). Ms. Le was selected to the "Southern California Rising Stars" list in the field of civil rights in 2022 and 2023 and was selected as a "Super Lawyer" in the field of civil rights in 2024 and 2025. (*Id.* ¶¶ 11). Mr. Galipo is routinely asked by other attorneys interested in civil rights litigation for advice and Mr. Galipo refers those attorneys to Ms. Le for her guidance and opinions in assisting colleagues to successfully litigate their cases. (Doc. No. 263-1 ¶ 31). Many of the attorneys seeking her consultation are many years her senior and Ms. Le has developed a great reputation in the community. (*Id.*). Accordingly, Plaintiffs have submitted sufficient evidence of prevailing community rates and evidence of Ms. Le's experience, skill and reputation to show that her requested hourly rate is reasonable.

### 3. Kent M. Henderson, Angel Carrazco, Jr., and Humberto Guizar

Mr. Henderson, Mr. Carrazco, and Mr. Guizar's requested hourly rates, which range from $975 to $1,100 are also reasonable as they are all partners who manage their own firm and have a range of twenty (20) to thirty-seven (37) years of experience. A district court in the Central District previously recognized that, "According to the 2020 Real Rate Report, partners working in commercial litigation at large firms in Los Angeles earn between $941 and $1,235." *Donastorg*, 2021 WL 6103545, at *8; Doc. No. 263-6 at 11. Additionally, current litigators at top law firms bill at between $1,200 to $1,800 per hour for trial work and preparation. (Doc. No. 263-18 ¶ 7). Mr. Henderson has been involved in a number of important civil rights cases, including the Rodney King federal civil case and *Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003). (Doc. No. 263-14 ¶¶ 5-7). Mr. Carrazco has obtained several recognitions for his work in civil rights, including the "Top Gun" Trial Lawyer of the Year award from the Orange County Trial Lawyers Association in 2018 and 2022, and was a finalist for the "2022 Street Fighter of the Year" award from the Consumer Attorneys of California (CAOC). (Doc. No. 263-16 ¶¶ 7, 8). Mr. Carrazco has also been selected as a "Super Lawyer" every year since 2019. (*Id.* ¶ 10). Mr. Guizar is one of the founders of Justice X, a coalition of Latino and black attorneys who advocate for the Los Angeles community of color to seek justice in the battle of systemic inequality. (Doc. No.

263-18 ¶ 5). He is also the only known lawyer in California who also works as a "Gang Expert." (*Id.* ¶ 6). Thus, Plaintiffs have submitted sufficient evidence of the prevailing community rates and evidence of Mr. Henderson, Mr. Carrazco, and Mr. Guizar's experience, skill and reputation to show that their requested hourly rates are reasonable.

### 4. Christopher L. Holm

Mr. Holm requested an hourly rate of $600, based on a district court in the Central District's previous hourly rate award to an attorney of comparable experience and skills. (*See generally*, Doc. No. 263 at 17; Doc. No. 263-20). And, contrary to Defendant's contention that Mr. Holm only reviewed e-mails and participated in firm meetings, Mr. Holm performed a substantial amount of substantive work in this case, including the preparation of the Opposition to the Motion for Summary Judgment. (Doc. No. 263-20 ¶ 16; Holm Decl. in Further Support of Pltfs.' Mot. for Attys.' Fees & Costs ¶¶ 2-3). In 2021, the district Court in the Central District of California awarded Ms. Le, who had eight years of experience then, an hourly rate of $550. *Donastorg*, 2021 WL 6103545, at *9. Accordingly, Plaintiffs have submitted sufficient evidence of prevailing community rates and evidence of Mr. Holm's experience, skill and reputation to show that his requested hourly rate is reasonable.

### 5. Nathan Henderson

Mr. Henderson requested an hourly rate of $300. He has approximately seven years of experience in the legal field, recently graduated with a Juris Doctor from Chapman University in May of 2024, and recently passed the July 2024 California Bar Exam. (Doc. No. 263-22 ¶¶ 2-3). District courts in the Central District of California have found an hourly rate of $300 to be reasonable for paralegals. *See, e.g., Avila v. Ford Motor Co.*, No. 5:22-CV-00395-SPG-SHK, 2024 WL 3311081, at *4 (C.D. Cal. May 15, 2024). Accordingly, Plaintiffs have submitted sufficient evidence of prevailing community rates and evidence of Mr. Henderson's experience, skill and reputation to show that his requested hourly rate is reasonable.

### 6. Legal Assistants/Law Clerks

The legal assistants that staffed Plaintiffs' case have varying years of experience, from four years to seventeen years and varying levels of expertise in the field of civil rights. Thus, the

requested rates are based on their level of experience and expertise. (*See generally,* Doc. No. 263 at 18-20; Doc. Nos. 263-24, 263-26, 263-28, 263-30, 263-32). In 2022, a district court in the Central District of California awarded Mr. Laurel, who has the highest level of experience of the legal assistants, an hourly rate of $200. *French v. City of Los Angeles*, No. EDCV2000416JGBSPX, 2022 WL 2189649, at *19 (C.D. Cal. May 10, 2022). In 2024, another district court in the Central District of California awarded Mr. Laurel an hourly rate of $220. *Zelaya*, 2024 WL 3183882, at *4. Plaintiffs contend that they have submitted sufficient evidence of prevailing community rates and evidence of the legal assistants' experience and skills to show that their requested rates are reasonable.

### C. <u>Local Forum Rates</u>

Should the Court find that Plaintiffs have not submitted sufficient evidence to justify Los Angeles legal market rates, Plaintiffs contend that Plaintiffs' attorneys and staff should be awarded the upper limits of this local forum's hourly rates for attorneys of commensurate experience based on the difficulty and complexities of the case and the amount of time and cost commitment that the case required. The Sacramento Division of the Eastern District has awarded hourly rates of upwards of $750 per hour. *See Olguin*, 2024 WL 4012103, at *7 ("This Court has also performed a comprehensive survey of fees awarded in the Eastern District, and finds the current hourly rates range from $200 to $750, with rates exceeding $600 reserved for attorneys who have practiced approximately 30 years."). In *Prehired, LLC v. Provins*, No. 2:22-CV-00384-DAD-AC, 2023 WL 4187461 (E.D. Cal. June 26, 2023), this Court stated, "[T]he undersigned has previously found the following ranges of hourly rates to be reasonable: $650–$750 for senior partners with over thirty years of experience; $545–$695 for partners and senior counsel; $475–$575 for senior associates; $330–$400 for junior associates; $200 for paralegals." 2023 WL 4187461, at *4.

### III. <u>PLAINTIFFS ACHIEVED EXCELLENT RESULTS THAT JUSTIFY ALL HOURS PLAINTIFFS' ATTORNEYS REASONABLY EXPENDED</u>

The Supreme Court has recognized that in civil rights litigation, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."

*Hensley*, 461 U.S. at 435. The Supreme Court went on to state, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* In agreeing with its sister circuits, the Ninth Circuit stated, "a district court's 'failure to reach' certain grounds does not make those grounds 'unsuccessful[.]'" *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1173 (9th Cir. 2019).

The *Hensley* Court elucidated a two-prong approach for determining the amount of fees to award a plaintiff if the plaintiff prevails on only some of his claims for relief or achieves "limited success." First, the Court must ask, "did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?" *Hensley*, 461 U.S. at 434. The Ninth Circuit has held that "related claims involve a common core of facts *or* are based on related legal theories. *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (citations omitted). The focus is on "whether the unsuccessful and successful claims arose out of the same 'course of conduct.' If they didn't, they are unrelated under *Hensley*." *Schwarz.*, 73 F.3d at 903. Second, the Court asks whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 434. If the Court concludes the prevailing party achieved "excellent results," it may permit a full fee award. *Id.* at 435.

Defendants contend that Plaintiffs only achieved limited success because Hurtado voluntarily dismissed his claims for denial of medical care, violation of California Civil Code § 52.1 (Bane Act), and punitive damages; the Court granted summary judgment on Hurtado's claims under the Fourteenth Amendment, and against the California Highway Patrol for negligent hiring, supervision, and training; Plaintiffs were foreclosed from seeking future medical care damages at the second trial due to Hurtado's untimely death. But all of Hurtado's claims and damages arose from a "common course of conduct" and are therefore related under *Hensley*. Hurtado's lawsuit was, at its core, a challenge to Officer Yepez's use of deadly force against him. Specifically, Hurtado, and then Plaintiffs, alleged that Officer Yepez used excessive and unreasonable force against Hurtado despite Hurtado posing no immediate threat of death or serious bodily injury to anyone at the time. All of Hurtado's claims were alternative theories regarding Officer Yepez's conduct, three of which went to trial: excessive force under the Fourth Amendment, battery, and

1    negligence. Hurtado's sought damages also arose from Officer Yepez's use of deadly force against

2    Hurtado. Although Plaintiffs were unable to seek future medical care damages on behalf of

3    Hurtado during the second trial due to Hurtado's death, an event that was outside of Plaintiffs' and

4    the Court's control, these damages were previously sought in relation to Officer Yepez's use of

5    deadly force against Hurtado. Thus, Plaintiffs' attorneys should be compensated for their work

6    done for Hurtado's future medical care costs and related past and future pain and suffering.

7           The jury's verdict, finding liability against Officer Yepez on all three claims that were

8    presented to them, and awarding Plaintiffs $1.5 million, constituted "excellent results" that should

9    permit Plaintiffs to recover full attorneys' fees. Defendants contend that this "was a not a

10   complicated excessive force case," "a simple trial" (Doc. No. 273 at 1), a "straightforward Fourth

11   Amendment violation case," where "the manner of the injury, the gun shout (sic) wound, and the

12   results of the wound were not complex" and "the main contested issue on damages was Mr.

13   Hurtado's functional level and future medical care needs" (Doc NO. 273 at 7). But this is belied

14   by the fact that Defendants did not offer any meaningful settlement offer before the first or second

15   trial, despite facing an estimated $17 million life care plan at the first trial, and their arguments to

16   the jury at both trials. Defendants further attempt to downplay Plaintiffs' success by arguing that

17   the jury returned a verdict for $1.5 million when Plaintiffs had demanded high settlement amounts

18   and asked for a higher amount from the jury. The $20 million settlement demand was in light of

19   Hurtado's then-existing future medical care damages. The subsequent $5 million settlement

20   demand was the *initial* demand at the subsequent mediation after Hurtado's passing; Plaintiffs'

21   last and final demand before the second trial was $1.8 million or $957,000 and allowing Plaintiffs

22   to separately apply for statutory attorneys' fees. The jury award is proportional to the last and final

23   settlement amount sought by Plaintiffs before the second trial. Thus, Plaintiffs achieved excellent

24   results and should be awarded full attorneys' fees.

25   **IV.    THE NUMBER OF HOURS SPENT WAS REASONABLY NECESSARY TO
            LITIGATION**

26

27          It must [] be kept in mind that lawyers are not likely to spend unnecessary time on
       contingency fee cases in the hope of inflating their fees. The payoff is too
28     uncertain, as to both the result and the amount of the fee. It would therefore be the

highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

### D.  Block Billing

"Although courts can reduce fees due to block-billing when it hinders their ability to discern the reasonable hours worked, block billing is not per se objectionable." *Frias v. City of Los Angeles*, Case No. CV 16-4626 PSG (SKx), 2020 WL 4001620, at *4 (C.D. Cal. Apr. 23, 2020) (internal citations omitted). Here, the entries Defendants identify as "block billing" provide enough clarity for the Court to discern the reasonable hours worked. Most of the entries identified are entries of pre-trial preparation or time spent in trial. The nature of those tasks generally lend themselves to block-billing.

### E.  Duplicative Billing

The Ninth Circuit has recognized that duplication is necessary and inherent in the process of litigation over time. *Moreno*, 534 F.3d at 1112. Moreover, it is reasonable to have three attorneys at trial, including to "serve as a sounding board or be necessary to assure that valuable testimony is obtained during the limited time allotted for depositions and trial." *Donastorg*, 2021 WL 6103545, at *11 (citing *Rodriguez v. Cnty. of Los Angeles*, 96 F. Supp. 3d 1012, 1024 (9th Cir. 2014)). Additionally, "employing multiple attorneys or firms is per se not unreasonable, and multiple attorneys may be essential for planning strategy, eliciting testimony, or evaluating facts or law, including at trial." *Id.* (cleaned up) (citing *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 743 F. Supp. 2d 1136, 1157 (C.D. Cal. 2010)); *see also Moreno*, 534 F.3d at 1112 (noting that the "district court may not set the fee based on speculation as to how other firms would have staffed the case"). "Indeed, division of responsibility may make it necessary for more than one attorney to attend activities such as depositions and hearings." *PSM Holding Corp.*, 743 F. Supp. 2d at 1157.

Here, while multiple attorneys did participate in trial, strategy meetings, and depositions, duplicative work was necessary to strategize, ensure that relevant and important testimony was elicited at depositions and trial, and to serve as sounding boards. (*See* Henderson Decl. ISO Reply

-11-

¶¶ 6, 8-10, 13, 44); *see Rodriguez*, 96 F. Supp. at 1024 (declining to reduce plaintiffs' requested fee based on duplicative attendance at depositions).

**F.  Vague Billing**

Defendants' argument regarding vague entries depends entirely on Defendants' alleged billing expert, James Schartz's opinions on Plaintiffs' billing entries. However, a review of Exhibit 11 to Mr. Schratz's declaration, which Mr. Schratz contends is a list of the vague entries he identified, reveals that a large bulk of those entries are not vague at all. For example, a significant number of entries dealt with trial days, during which Plaintiffs' attorneys spent preparing for trial, spent in trial, and debriefing and strategizing during breaks and after the day concluded. The Court was able to observe firsthand the level and quality of work on the case, including the preparedness and presentation at both trials. Thus, Plaintiffs' attorneys' description of such are sufficiently detailed to enable the court to determine the reasonableness of the hours expended. Additionally, Mr. Schratz does not explain the methodology he employs in identifying vague entries, and courts have previously found Mr. Schratz's methodology in identifying vague entries to be flawed and unreliable. *See Wit v. United Behav. Health*, 578 F. Supp. 3d 1060, 1085 (N.D. Cal. 2022), *vacated and remanded unopposed*, No. 22-15184, 2023 WL 8723695 (9th Cir. Dec. 15, 2023).

**G.  Tasks Related to Experts**

Defendants misunderstand the rule prohibiting the recovery of expert fees under 42 U.S.C. § 1988. The Supreme Court has held "that when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987).  In *West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83 (1991), the Supreme Court further held that "§ 1988 conveys no authority to shift expert fees." 499 U.S. at 102. After *Casey*, the Ninth Circuit recognized that "[i]n *Casey* the Court held that § 1988 does not convey authority to shift expert fees in civil rights litigation to the losing party and that when experts appear at trial they are eligible for the fee provided by 28 U.S.C. §§ 1920 and 1821, but that the prevailing party may not be awarded more than this amount for expert witnesses' trial

testimony and is not entitled to anything for services rendered by experts in a nontestimonial capacity." *Gates*, 987 F.2d at 1407. Thus, the prohibition against recovery of expert fees paid *to* expert witnesses, not fees accrued by attorneys in working on expert witness-related tasks. Accordingly, Plaintiffs may recover attorneys' fees for tasks performed related to experts.

## H. Review of Medical Records and Payment to Treatment Providers

Plaintiffs' attorneys and staff's time spent reviewing medical records was necessary to the success of this case. Mr. Henderson and Mr. Carrazco took and defended all expert depositions and played a significant role in preparing the medical aspect of this case for trial. Thus, it was essential that they had a detailed understanding of the records that the medical experts relied upon in forming their opinions. (*See* Henderson Decl. ISO Reply ¶¶ 3-4, 31-38).

The Ninth Circuit has recognized, "[P]revailing civil rights counsel are entitled to compensation for the same tasks as a private attorney." *Davis*, 976 F.2d at 1545. Where work is directly related to the successful representation of their clients, and private attorneys do such work and bill their clients for that work, prevailing civil rights plaintiffs may do the same. *See id.* Mr. Carrazco's time spent reviewing invoices and seeking recovery of fees for Hurtado's medical treatments, which is directly related to Hurtado's medical damages in this case, is recoverable.

## I. Inter/Intraoffice Conferences

"Time billed for internal conferencing is recoverable to the extent it is reasonably necessary to conducting the litigation." *Cruz ex rel. Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1192 (C.D. Cal. 2009) (citing *Davis*, 976 F.2d at 1545). Even Mr. Schratz concedes that "attorneys within a firm need to coordinate work and discuss strategy," and that "strategic conferencing among attorneys does have value." (Doc. No. 273-1 ¶¶ 150, 151). The nature of this case required a lot of communication and updating to bring the case to trial. (Henderson Decl. ISO Reply ¶ 10; Carrazco Decl. ISO Reply ¶ 8). Plaintiffs' attorney and staff only put in the amount of work that was necessary as they had zero incentive to overstaff or overbill due to the contingency-based compensation and difficulty in winning police excessive force cases. (*Id.* ¶¶ 11-14).

Additionally, Mr. Schratz's opinions on excessive conferencing are unreliable because his methodology in identifying inter/intraoffice conferencing is flawed. Mr. Schratz overstates the

1   time attorneys spend on conferencing and includes numerous entries that describe tasks that do not

2   involve communications between counsel and/or are not properly considered conferencing. *See*

3   *Wit*, 578 F. Supp. 3d at 1086; *Amphastar Pharms. Inc. v. Aventis Pharma SA*, No. 5:09-CV-

4   00023-SHK, 2020 WL 8680070, at *18–20 (C.D. Cal. Nov. 13, 2020); *see, e.g.*, Doc. No. 273-2 at

5   439. Thus, Defendants' entire argument regarding inter/intraoffice conferencing, which wholly

6   relies on Mr. Schratz's opinions, is unconvincing because Mr. Schratz's opinions are unreliable.

7       **J.   Secretarial and Administrative Tasks**

8           Defendants contend that the Court should disallow all hours sought by Plaintiffs' legal

9   assistants because purely clerical or secretarial tasks are not compensable. While that may be true,

10  legal assistants do not perform purely clerical tasks, and "it is appropriate to distinguish between

11  non-legal, 'purely clerical' work, which is not compensable, and substantive legal work, which

12  may be." *Zelaya*, 2024 WL 3183882, at *5. "[T]asks like drafting discovery correspondence,

13  preparing deposition notices, and reviewing and organizing case files are not necessarily purely

14  clerical tasks and may be compensable. *Id.* The tasks performed by the legal assistants were not all

15  purely clerical tasks. Thus, the Court should not disallow all hours billed by the legal assistants.

16      **K.   Travel Time**

17          Mr. Carrazco's travel time in accompanying Hurtado to meet with Dr. Wobrock was

18  necessary to the success of the case as his presence was required to address any issues or questions

19  Dr. Wobrock may have in his consultation with Hurtado. (Carrazco Decl. ISO Reply ¶ 9). The

20  same is true for Mr. Carrazco's travel time in accompanying Hurtado to his medical evaluation

21  with Dr. Jacobs. (*Id.*). And while it is true that the in-air time of a flight from Los Angeles to

22  Sacramento is approximately two hours, this does not take into consideration the travel time to the

23  airport, the check-in and boarding of the flight, deplaning and baggage pickup, and the travel to

24  lodgings. All told, five hours of travel time is reasonable.

25          Mr. Henderson's travel time of nine hours to Sacramento is also reasonable because Mr.

26  Henderson had to *drive* to Sacramento due to all the trial materials he had to take with him.

27  (Carrazco Decl. ISO Reply ¶ 10). Lastly, Mr. Henderson and Mr. Carrazco's presence in

28  Sacramento a week early does not change the fact that Mr. Henderson and Mr. Carrazco were in

1   Sacramento for the Hurtado trial. During the week before trial, Mr. Henderson and Mr. Carrazco
2   spent the week preparing for trial, including spending time in person with Hurtado and his family,
3   preparing them for trial.

4   **L.   Tasks Related to the Testimony of Mary Meinhard and Dr. Joshua Prager**

5          The testimony of Mary Meinhard and Dr. Prager at the second trial was necessary to show
6   the pain and suffering and the difficulties Hurtado faced due to his injuries while he was alive. The
7   jury was able to extrapolate what the difficulties Hurtado faced from Hurtado's future care and life
8   care plan. Accordingly, Plaintiffs should recover fees for tasks related to the testimony of Mary
9   Meinhard and Dr. Joshua Prager at the retrial.

10  **V.   PLAINTIFFS SHOULD BE COMPENSATED FOR THEIR ATTORNEYS' WORK ON THIS REPLY AND ANY OTHER RELATED POST-TRIAL WORK**
11

12         Plaintiffs are entitled to fees for the time Plaintiffs' counsel spends in establishing their
13  right to attorneys' fees in the amount request. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992
14  (9th Cir. 1986). Ms. Le spent an additional 16.7 hours researching case law and drafting Plaintiffs'
    Opposition to Defendants' Motion for New Trial. She further spent an additional 20.3 hours
15  researching case law and drafting this Reply. Mr. Henderson spent an additional 10.5 hours on
16  research and drafting his declaration. (Henderson Decl. ISO Reply ¶ 54). Mr. Galipo spent a total
17  of 1 hour reviewing Defendants' Opposition and drafts of Plaintiffs' Opposition to Defendants'
18  Motion for New Trial and this Reply. Thus, Plaintiffs request that the Court award additional
19  attorneys' fees in the amount of $38,800 ($700 x 30 + $1,100 x 10.5 + $1,400 x 1) for additional
20  post-trial work performed. See *Donastorg*, 2021 WL 6103545, at *12 (awarding time spent on
21  drafting the motion for attorneys' fees and reply). Plaintiffs further request that the Court award
22  additional attorneys' fees related for work related to any hearing the Court may hold on post-trial
23  motions.
24
    **VI.   CONCLUSION**
25
26         For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs'
27  Motion for Attorneys' Fees in its entirety.
28

1  Respectfully submitted,

2  DATED: January 15, 2025                    LAW OFFICES OF DALE K. GALIPO

3

4                                           By_____/s/ Hang D. Le_____

5                                               Dale K. Galipo
                                                Hang D. Le
6                                               Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28