UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.H., *a minor by and through her mother and guardian Priscilla Macias, as successor in interest to Francisco Hurtado*, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>State of California, et al.,<br><br>Defendants. | No. 2:19-cv-02343-DAD-AC<br><br>ORDER DENYING DEFENDANTS' MOTION FOR A NEW TRIAL AND GRANTING DEFENDANTS' MOTION FOR REMITTITUR<br><br>(Doc. Nos. 256, 262) |

This matter came before the court on February 3, 2025 for a hearing on defendants' motion for a new trial or, in the alternative, remittitur. (Doc. Nos. 256, 262.) Attorneys Dale Galipo, Kent Henderson, and Angel Carrazco appeared by video on behalf of plaintiffs, and Deputy Attorney General LeeAnn Whitmore appeared by video on behalf of defendants. (Doc. No. 286.) For the reasons explained below, defendants' motion for a new trial will be denied and their motion for remittitur will be granted.

## BACKGROUND

On November 19, 2019, defendants removed this civil rights action brought pursuant to 42 U.S.C. § 1983 to this federal court. (Doc. No. 1.) The first trial of the case was held in March 2024. (Doc. No. 139.) On the first day of that trial, the court issued a ruling denying in part then-

1

plaintiff Francisco Hurtado's motion *in limine* seeking to exclude all evidence of his drug and alcohol use on the night in question. (Doc. No. 171 at 22.) The court admitted the contested evidence at the first trial on the grounds that it arguably provided some corroboration of the officers' testimony that Hurtado was driving erratically, and because it was somewhat probative of Hurtado's ability to perceive the disputed events on the night in question. (*Id.* at 20–21.) It only later became clear to the court as the trial proceeded that the entire vehicular pursuit was recorded on video, eliminating any probative value the contested evidence may have had in relation to Hurtado's erratic driving. (Doc. No. 210 at 106.) Moreover, at closing arguments, defendants' counsel misused the evidence of Hurtado's drug use to improperly imply that the events of that night, including the gunshot wounds inflicted by the defendant officer, were the result of Hurtado's own "bad choices"—his use of drugs and alcohol.[1]  On March 21, 2024, the first trial ended in a mistrial when the jury was unable to reach a unanimous verdict. (Doc. No. 165.)

/////

/////

---

[1] Defendants' closing argument began as follows:

> This is a case about choices. The only thing we control in life are the choices we make. The choice to do something or not to do something can have long-lasting consequences, but it's the choice that matters.
>
> So let's talk about some of the choices that Mr. Hurtado made on March 15 of 2018. That, day Mr. Hurtado chose to consume some alcohol during the day. Mr. Hurtado chose to snort some cocaine that day, and after drinking alcohol and snorting cocaine, Mr. Hurtado chose to get behind the wheel of a vehicle.

(Doc. No. 211 at 75–76.)
Defense counsel returned to this theme later in the argument:

> But remember, this case isn't about 26-year-old Francisco Hurtado, father, loving spouse, entrepreneur. This case is about 20-year-old Francisco Hurtado. The 20-year-old who decided to drive drunk, the 20-year-old who decided to drive while high on cocaine, the 20-year-old who decided to put a loaded firearm in the center console of his car.

(*Id.* at 90.)

2

1    Francisco Hurtado passed away due to reasons unrelated to this action on June 28, 2024.
2    (*See* Doc. No. 189.)  On September 18, 2024, the court issued an order substituting his minor
3    children as successors in interest to plaintiff in this action.  (*Id.*)
4    The second trial of this action took place in October 2024.  (Doc. Nos. 224–236.)  At the
5    second trial, the court reversed its prior ruling on plaintiffs' motion *in limine* seeking to exclude
6    evidence of Hurtado's drug use in light of the video of the vehicular pursuit and defendants'
7    counsel's misuse of the evidence for an improper purpose during closing argument at the first
8    trial.  (Doc. No. 224.)  On October 24, 2024, the jury reached a verdict in favor of plaintiffs and
9    awarded them $500,000 in past economic damages and $1 million in past non-economic
10   damages.  (Doc. No. 241.)  Judgment was entered pursuant to the jury verdict on October 30,
11   2024.  (Doc. No. 243.)
12   On November 18, 2024, defendants timely filed the pending motion for a new trial or, in
13   the alternative, remittitur of past economic damages.  (Doc. No. 256); *see also* Fed. R. Civ.
14   P. 59(b) ("A motion for a new trial must be filed no later than 28 days after the entry of
15   judgment.").  In their pending motion, defendants do not challenge the non-economic damages
16   award.  (*Id.*)  Plaintiffs filed their opposition to the motion on December 31, 2024.  (Doc.
17   No. 275.)  On January 8, 2025, defendants filed their reply thereto.  (Doc. No. 276.)

## LEGAL STANDARD

19   Rule 59 of the Federal Rules of Civil Procedure provides that "[t]he court may, on motion,
20   grant a new trial . . . for any reason for which a new trial has heretofore been granted in an action
21   at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  Rather than specify the grounds on which a
22   motion for a new trial may be granted, Rule 59 states that courts are bound by historically
23   recognized grounds, which include, but are not limited to, claims "that the verdict is against the
24   weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not
25   fair to the party moving."  *Molksi v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).  The
26   district court may correct manifest errors of law or fact, but the burden of showing that harmful
27   error exists falls on the party seeking the new trial.  *Malhoit v. S. Cal. Retail Clerks Union*, 735
28   F.2d 1133, 1137 (9th Cir. 1984); *see also* 11 Wright, Miller & Kane, *Federal Practice and*

*Procedure*: Civil 3d § 2803 (2024).  "While the trial court may weigh the evidence and credibility of the witnesses, the court is not justified in granting a new trial 'merely because it might have come to a different result from that reached by the jury.'"  *Roy v. Volkswagen of Am. Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990), *opinion amended on denial of reh'g*, 920 F.2d 618 (9th Cir. 1990); *see also Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) ("[A] district court may not grant a new trial simply because it would have arrived at a different verdict.").  The authority to grant a new trial under Rule 59 is left almost entirely to the discretion of the trial court.  *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 36 (1980).

In considering a motion brought under Rule 59(e), "[a] jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion."  *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016).  The court is to "afford 'substantial deference to a jury's finding of the appropriate amount of damages.'"  *Harper v. City of Los Angeles*, 533 F.3d 1010, 1028 (9th Cir. 2008).  Therefore, a court should not alter a jury's assessment of the amount of damages to be awarded unless:  (1) the amount is "grossly excessive or monstrous"; (2) the evidence "clearly does not support the damage award"; or (3) the award "could only have been based on speculation or guesswork."  *Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1216 (9th Cir. 1983).  If the jury's verdict is unsupported by substantial evidence, the "prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified."  *Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983).

## ANALYSIS

**A.    Whether A New Trial is Warranted Due to the Court's Evidentiary Ruling**

Defendants argue that the court erred in excluding under Rule 403 the evidence of Hurtado's drug and alcohol use at the second trial. (Doc. No. 256 at 5.)  Defendants argue that the evidence was relevant because it undercut Hurtado's ability to accurately perceive and recall the events of that night. (*Id.* at 5–6.)  Defendants do not appear to now argue that the contested evidence is relevant for the purpose of corroborating the testimony of officers Yepez and Randazzo that Hurtado was driving erratically.  (*See id.*)

Plaintiffs argue in opposition that permitting the contested evidence at the second trial would have unfairly prejudiced them because Hurtado's death would have made it impossible for plaintiffs to rebut such evidence. (Doc. No. 275 at 18.) Plaintiffs argue that defendants did not cross-examine Hurtado at the first trial on whether any potential use of drugs and alcohol on his part impacted his perceptions, nor did defendants question Hurtado on this issue at his deposition. (*Id.*) Consequently, according to plaintiffs, no testimony from Hurtado existed wherein Hurtado's perceptions were challenged, and no testimony exists rebutting such a challenge. (*Id.*)

Defendants argue in reply that Hurtado's death also meant that defendants were unable to cross-examine Hurtado as to his perceptions at the second trial. (Doc. No. 276 at 3–4.) Finally, defendants argue that excluding the evidence substantially prejudiced them because the first trial, where the evidence was introduced, ended in a mistrial. (*Id.* at 4.)

        1.    <u>The Court Properly Excluded All Evidence of Drug and Alcohol Use</u>

Federal Rule of Evidence 403 permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 403's "major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).

The court easily concludes that it did not err in excluding the drug evidence at the second trial of this case. As noted, it is unclear from defendants' briefing whether they are continuing to argue that the drug evidence is relevant insofar as it supports the officers' testimony that Hurtado was driving erratically. In any event, it is not. The contested evidence has almost no probative value in this regard in light of the video footage of the pursuit that was entered into evidence and played for the jury. *Cf. Estate of O'Brien v. City of Livingston*, No. 18-cv-00106-BLG-TJC, 2021 WL 3565574, at *1–2 (D. Mont. Aug. 12, 2021) (excluding evidence of the decedent's drug use during the incident in question in the context of Montana state negligence claims where a video recording of the interaction existed, such that it was "not a situation where evidence of intoxication may tend to support one version of events over another").

/////

The court also finds that, with regard to Hurtado's ability to perceive the events of that evening, the probative value of the contested evidence was significantly weakened by the undisputed evidence introduced at the second trial that Hurtado's car rolled down a hill, he was found face down on the roof of the overturned car, and he was moaning and groaning and barely moving when discovered by the officers. That is, there was much evidence already before the jury calling into question Hurtado's ability to accurately perceive and recall the events immediately prior to the shooting. *Cf. Sparkman v. C.I.R.*, 509 F.3d 1149, 1157 (9th Cir. 2007) ("Federal Rule of Evidence 403 allows even relevant evidence to be excluded if its admission would result in 'needless presentation of cumulative evidence.'").

The above discussion is sufficient for the court to reaffirm that the danger of significant undue prejudice from the contested evidence "substantially outweighed" the evidence's slight probative value, if any. Fed. R. Evid. 403. However, the court notes that its conclusion in this regard is further strengthened by the conduct of defendants' counsel during closing argument at the first trial. In its ruling on the motion *in limine* at the first trial, the court found that the evidence had some relevance as to corroborating the officers' testimony of Hurtado's erratic driving and undercutting the reliability of Hurtado's perceptions. (Doc. No. 171 at 20–21.) Yet during closing arguments, defendants' counsel made no attempt to connect the evidence of Hurtado's drug use to the reliability of Hurtado's perceptions or his driving. Instead, defendants' counsel suggested repeatedly that Hurtado's drug and alcohol use was to blame for his injuries inflicted by the defendant officer's gunshots. Defendants' counsel's closing argument in this regard clearly exploited the undue prejudice arising from the drug evidence. Defendants' briefing does not mention the defense's misuse of the drug evidence at the first trial, despite the court expressly noting its concern in this regard at the motions *in limine* hearing before the second trial, as well as plaintiffs' counsel raising the issue in their opposition.

Against this background, the court is not at all persuaded that it erred in excluding evidence with little probative value and a great risk of undue prejudice, particularly in light of the defense's closing argument at the first trial. Rather, the contested evidence here was "of scant or

/////

6

cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Hankey*, 203 F.3d at 1172.

### 2. Excluding the Evidence Did Not Substantially Prejudice Defendants

Even assuming *arguendo* that the court erred in excluding the drug evidence at the second trial, the court also concludes that defendants were not substantially prejudiced by its ruling. *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) ("A new trial is only warranted when an erroneous evidentiary ruling 'substantially prejudiced' a party.").

As laid out in detail in plaintiffs' opposition, the evidence at trial overwhelmingly supported plaintiffs' theory of the case, i.e., that Hurtado posed no immediate threat to anyone at the time he was shot by defendant officer Yepez. (*See* Doc. No. 275 at 20–23.) Defendants' theory of the case—namely, that Hurtado was laying prone on the roof of the overturned car when officers Randazzo and Yepez first saw him, then leapt into a crouch and reached for his gun at the exact moment officer Randazzo looked away, then was shot several times by defendant officer Yepez, then immediately collapsed back to the same prone position by the time officer Randazzo looked back seconds after looking away—was contradicted by nearly all of the evidence presented at trial, including defendant officer Yepez's prior statements and testimony. Virtually the only evidence supporting defendants' version of events was defendant officer Yepez's testimony given at the second trial. The jury apparently found that testimony not to be credible in reaching their verdict.

Defendants argue in their reply that excluding the drug evidence was substantially prejudicial, as shown by the fact that a mistrial had resulted when the evidence was introduced at the first trial. (Doc. No. 276 at 4.) This argument is speculative and unpersuasive for a number of reasons, not the least of which is that, as discussed, defendants' counsel misused the drug and alcohol evidence at that first trial to incite undue prejudice against then-plaintiff Hurtado. Defendants were simply not substantially prejudiced by the court's evidentiary ruling. *See Stroh v. Saturna Capital Corp.*, 746 F. App'x 639, 640 (9th Cir. 2018) ("Although it was an abuse of discretion to exclude this evidence, the exclusion was harmless. In light of the totality of evidence presented at trial, it is highly unlikely that the admission of this evidence and any

7

accompanying instruction would have changed the verdict.")[2]; *cf. Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1439 (9th Cir. 1990) (noting that "harmless errors do not justify reversal" of a district court's erroneous evidentiary ruling).

Accordingly, defendants' motion for a new trial, brought on the basis of the court excluding the evidence of Hurtado's drug and alcohol use, will be denied.

**B.      Defendants' Motion for New Trial or Remittitur**

Defendants next argue that plaintiffs only presented evidence of $23,000 in medical costs from Dr. Stephenson and that no other evidence of economic damages was presented, yet the jury returned an award of $500,000 in past economic damages.  (Doc. No. 256 at 4.)  Defendants argue this award is excessive, unsupported by the evidence, and based on speculation.  (*Id.*) Plaintiffs argue in opposition that they presented evidence that Hurtado required additional medical care in addition to the treatments provided by Dr. Stephenson that totaled $23,000.  (Doc. No. 275 at 13–14.)  Plaintiffs further contend that they presented evidence at trial regarding Hurtado's inability to work immediately after the incident and his very limited ability to work thereafter, and that the consequent decreased earnings led to greater need for household services and expenses.  (*Id.*)  Plaintiffs do not cite any authority supporting their arguments in this regard, nor did they provide any supporting authority when asked at the February 3, 2025 hearing on the pending motion.

In reply, defendants argue that the verdict form only permitted the jury to award two types of economic damages:  (1) the reasonable value of medical care, and (2) the reasonable value of necessary household services.  (Doc. No. 276 at 3.)  Defendants contend that plaintiffs failed to provide any evidence of medical costs apart from the $23,000, nor did plaintiffs provide evidence regarding the reasonable value of household services.  (*Id.*)  Defendants also note that plaintiffs' counsel expressly stated in his closing argument to the jury that the only evidence of past economic damages was the $23,000.  (*Id.* at 2–3; *see also* Doc. No. 276-1 at 9–10 ("Past economic damages.  The only thing we put into evidence on that is really Dr. Stephenson's

---

[2] Citation to the unpublished Ninth Circuit opinions in this order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1 medical bills, outstanding, 23,000, all we put into evidence on that.  So that would be the number,

2 if you get there.  The more difficult question is, what's the damages for past noneconomic?")).

3     As an initial matter, the court recognizes that a jury is "entitled to disregard the amount
4 asked for when there was other evidence from which the jurors could draw their own
5 conclusions."  *Glovatorium, Inc. v. NCR Corp.*, 684 F.2d 658, 664 (9th Cir. 1982).  Here,
6 counsel's statement during closing argument that plaintiffs were only requesting $23,000 in past
7 economic damages, while relevant, is therefore not necessarily dispositive of the issue.

8     Nevertheless, the court concludes that the jury's award of $500,000 in economic damages
9 was clearly unsupported by the evidence admitted at trial and "could only have been based on
10 speculation or guesswork."  *Blanton*, 721 F.2d at 1216.  Indeed, plaintiff's counsel acknowledged
11 at the February 3, 2025 hearing on the pending motion that it was difficult to imagine how the
12 jury could have found $500,000 in economic damages based on the evidence presented at trial.

13     The court must therefore determine an amount it considers justified.  *Fenner*, 716 F.2d at
14 603.  While plaintiffs contend that Hurtado's lost income created a need for additional household
15 help and services and additional expenses (Doc. No. 275 at 13–14), plaintiffs do not cite to
16 anywhere in the trial transcript where evidence of such expenses was presented, and the court has
17 found none.  Plaintiffs also did not present any evidence of the cost of the medical treatments that
18 Hurtado received, nor whether Hurtado paid for those treatments himself.  Any estimation of the
19 reasonable value of Hurtado's medical costs, apart from the $23,000 charged by Dr. Stephenson,
20 "could only [be] based on speculation or guesswork."  *Blanton*, 721 F.2d at 1216.  Ultimately, the
21 court agrees with plaintiffs' counsel's statement made as to economic damages during his closing
22 argument.  *See Cosby v. Autozone, Inc.*, 445 F. App'x 914, 916–17 (9th Cir. 2011) (reversing the
23 district court's denial of a motion for new trial and remittitur where the plaintiff's "damages
24 expert testified that the economic loss . . . was $4,917.60" and the plaintiff's counsel, "in closing
25 arguments, asked specifically for this amount," and remanding the action to the district court with
26 instructions that that "the amount for remittitur on economic damages is not to exceed $4,917.60,
27 the amount specifically requested by [the plaintiff] at trial").  Accordingly, the court will grant
28 defendants' motion to remit the economic damages to $23,000.

Plaintiffs may choose between accepting the remittitur or a new trial on the issue of economic damages. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1088–89 (9th Cir. 2022) ("[T]he rule that a court's use of the remittitur should minimally interfere with a jury's verdict militates in favor of restricting a new trial—should [the plaintiff] reject this new remittitur amount—only to the issue of damages, given that we do not find a reason to upset the district court's evidentiary decisions or otherwise conclude that the jury's liability verdict should be displaced."); *Wright v. Old Gringo Inc.*, No. 17-cv-01996-RSH-MSB, 2023 WL 11994325, at *8–10, 12 (S.D. Cal. July 14, 2023) (granting the defendants' request for remittitur of the jury's award of economic damages, denying the defendants' request for remittitur of the jury's award of emotional distress damages, and directing the plaintiff to "file a notice indicating whether she accepts the Court's remittitur of her economic damages to $157,000 or seeks a new trial on the issue of economic damages").

## CONCLUSION

For the reasons discussed above:

1. Defendants' motion seeking a new trial or, in the alternative, a reduction of damages (Doc. Nos. 256, 262) is granted in part and denied in part as follows:

    a. Defendants' motion seeking a new trial is denied;

    b. Defendants' motion seeking a reduction of past economic damages is granted;

2. Within twenty-one (21) days of the date of entry of this order, plaintiffs shall inform the court in writing whether they: (1) consent to the remitted past economic damages award of $23,000; (2) seek a new trial as to past economic damages; or (3) intend to appeal from the remittitur.

IT IS SO ORDERED.

Dated: **February 14, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE