1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    I.H., et al.,                              No.  2:19-cv-02343-DAD-AC

12                     Plaintiffs,

13           v.                                  ORDER GRANTING IN PART AND
                                                 DENYING IN PART PLAINTIFFS' MOTION
14    STATE OF CALIFORNIA, et al.,               FOR ATTORNEYS' FEES AND COSTS

15                     Defendants.               (Doc. No. 263, 264, 284)

16

17

18           This matter came before the court on February 3, 2025, for hearing of plaintiffs' motion

19    for attorneys' fees pursuant to 42 U.S.C. § 1988(b).  (Doc. No. 286.)  Attorneys Dale K. Galipo,

20    Angel Carrazco, Jr., and Kent Matthew Henderson appeared by video on behalf of the plaintiffs

21    and Deputy Attorney General LeeAnn E. Whitmore appeared by video on behalf of the

22    defendants.  For the reasons explained below, plaintiffs' motion for attorneys' fees will be

23    granted in part.

24                                    **BACKGROUND**

25           The parties are well familiar with the entire background of this long-litigated case.

26    Accordingly, the court will not recount it here and instead incorporates by reference the

27    background section of the court's June 16, 2023 order granting partial summary judgment in

28    /////

                                              1

1    favor of defendants.  (Doc. No. 38.)  The following factual and procedural background is relevant

2    particularly relevant to resolution of the pending motion.

3        Former plaintiff Francisco Hurtado ("Hurtado") filed the complaint initiating this civil

4    rights action against defendants California Highway Patrol ("CHP"), CHP officer Edgardo Yepez

5    ("Yepez"), and the State of California on April 2, 2019.  (Doc. No. 1.)  On December 12, 2019,

6    Hurtado filed a second amended complaint ("SAC") asserting two constitutional claims under 42

7    U.S.C. § 1983 against defendant Yepez:  (1) unreasonable search and seizure, unreasonable

8    and/or excessive force and denial of medical care; and (2) violation of substantive due process.

9    (Doc. No. 9 at 9–11.)  In his SAC, Hurtado also brought state law claims against defendants

10   Yepez, the State of California, and the CHP for:  (3) battery; (4) negligence; and (5) violation of

11   California Civil Code § 52.1 (the "Bane Act").  (*Id.* at 13–16.)  Pursuant to a joint stipulation of

12   the parties, Hurtado's claims based upon the alleged denial of medical care in his first and fourth

13   claims for relief, as well as his fifth claim seeking relief under the Bane Act, were dismissed.

14   (Doc. Nos. 17, 18.)

15       On October 29, 2021, defendants filed a motion seeking summary judgment in their favor

16   as to all of Hurtado's remaining claims.  (Doc. No. 23.)  On August 25, 2022, this case was

17   reassigned to the undersigned.  (Doc. No. 35.)  On June 16, 2023, the court issued an order

18   granting in part and denying in part defendants' motion for summary judgment.  (Doc. No. 38.)

19   In particular, summary judgment was granted in favor of defendants as to Hurtado's Fourteenth

20   Amendment claim and negligence claim brought against defendant CHP for negligent hiring and

21   supervision, but denied as to Hurtado's Fourth Amendment claim, battery claim, negligence claim

22   brought against defendant Yepez, and negligence claim against defendant CHP based on a

23   vicarious liability theory.  (*Id*. at 21–22.)

24       This case first proceeded to trial on March 11, 2024.  (Doc. No. 139.)  The jury was

25   unable to reach a unanimous verdict, and the court declared a mistrial.  (Doc. No. 165.)  On April

26   9, 2024, the court held a status conference and set a date for the retrial of the case of October 16,

27   2024.  (Doc. No. 170.)  On June 28, 2024, Hurtado passed away.  (Doc. No. 273 at 11.)  On

28   August 27, 2024, Hurtado's attorneys filed a motion to substitute his minor children as successors

1  in interest.  (Doc. No. 174.)  On September 18, 2024, the court granted the motion to substitute

2  and substituted minor plaintiffs I.H., E.H., F.H., and A.H. through their mother and guardian as

3  successors in interest for Hurtado.  (Doc. No. 189.)  On October 16, 2024, the second trial began.

4  (Doc. No. 224.)  That trial resulted in a unanimous verdict in favor of plaintiffs.  (Doc. No. 236.)

5  The jury awarded $500,000 in economic damages and $1,000,000 in non-economic damages.

6  (Doc. No. 241 at 3.)  On October 30, 2024, judgment was entered pursuant to the jury's verdict.

7  (Doc. No. 243.)  On November 18, 2024, defendants filed a motion for new trial or, in the

8  alternative, remittitur, (Doc. Nos. 256, 262), which the court granted in part as to remittitur, and

9  subsequently amended the judgment to reflect an award of $23,000 in economic damages, (Doc.

10  Nos. 291, 293).

11          On December 9, 2024, plaintiffs filed the pending motion for attorneys' fees pursuant to

12  42 U.S.C. § 1988.  (Doc. No. 263.)  On December 31, 2024, defendants filed an opposition to the

13  pending motion.  (Doc. No. 273.)  On January 15, 2025, plaintiffs filed a reply.  (Doc. No. 281.)[1]

14                                    **LEGAL STANDARD**

15          In an action brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow

16  the prevailing party, other than the United States, a reasonable attorney's fee as part of the

17  costs . . . ."  42 U.S.C. § 1988(b).  The Supreme Court has explained the historical underpinnings

18  and purpose of § 1988(b) as follows:

19          In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240
            (1975), this Court reaffirmed the "American Rule" that each party in
20          a lawsuit ordinarily shall bear its own attorney's fees unless there is
            express statutory authorization to the contrary.  In response Congress
21          enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42
            U.S.C. § 1988, authorizing the district courts to award a reasonable
22          attorney's fee to prevailing parties in civil rights litigation.  The
            purpose of § 1988 is to ensure "effective access to the judicial
23          process" for persons with civil rights grievances.  H.R. Rep. No. 94-

24  _____

25  [1]  On December 9, 2024, plaintiffs also submitted a bill of costs.  (Doc. No. 264.)  On December
    31, 2024, defendants filed an opposition to the bill of costs.  (Doc. No. 272.)  On January 23,
26  2025, the court issued a minute order informing plaintiffs that their bill of costs did not comply
    with Local Rule 292(b).  (Doc. No. 283.)  On January 30, 2025, plaintiffs submitted a renewed
27  memorandum of costs, which defendants subsequently objected to.  (Doc. Nos. 284, 288.)
    Plaintiffs' request for costs will briefly be addressed below, and the bill of costs taxed will also
28  issue by separate order.

1558, p. 1 (1976).  Accordingly, a prevailing plaintiff "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  S. Rep. No. 94-1011, p. 4 (1976), U.S. Code Cong. & Admin. News 1976, p. 5912 (quoting *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402 (1968)).

*Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (parallel citations omitted); *see also Barnard v. Theobald*, 721 F.3d 1069, 1077 (9th Cir. 2013) ("'[A] court's discretion to deny fees under § 1988 is very narrow and . . . fee awards should be the rule rather than the exception.'"); *Sable Commc'ns of Cal. Inc. v. Pac. Tel. & Tel.*, 890 F.2d 184, 193 (9th Cir. 1989) ("Plaintiffs prevailing in a civil rights action should ordinarily receive attorney's fees unless special circumstances would render such an award unjust.").

A prevailing party is one who succeeds on any significant issue in the litigation, resulting in a "material alteration of the legal relationship of the parties." *Tex. State Tchrs. Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 792–93 (1989).  Given the jury's verdict in plaintiffs' favor, plaintiffs are clearly the prevailing party in this case.  It is the size of the fee award to which plaintiffs' counsel are entitled that is disputed by defendants here.

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.  *See also Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) ("The prevailing party has the burden of submitting billing records to establish that the number of hours it has requested are reasonable."); *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006).  "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992)).

"The Supreme Court has stated that the lodestar is the 'guiding light' of its fee-shifting jurisprudence, a standard that is the fundamental starting point in determining a reasonable attorney's fee." *Van Skike v. Dir., Off. of Workers' Comp. Programs*, 557 F.3d 1041, 1048 (9th Cir. 2009) (quoting *City of Burlingtion v. Dague*, 505 U.S. 557, 562 (1992)); *see also Hensley*, 461 U.S. at 433.  Accordingly, a district court is required "to calculate an award of attorneys' fees

4

by first calculating the 'lodestar' before departing from it." *Camacho*, 523 F.3d at 982 (quoting

*Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000), *as amended* (Nov. 2, 2000)).

"The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably

expended on the litigation by a reasonable hourly rate." *Camacho*, 523 F.3d at 978 (quoting

*Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)); *see also Moreno v.*

*City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The number of hours to be

compensated is calculated by considering whether, in light of the circumstances, the time could

reasonably have been billed to a private client."); *Caudle*, 224 F.3d at 1028; *Morales v. City of*

*San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981

(9th Cir. 1997).  Applying these standards, "a district court should exclude from the lodestar

amount hours that are not reasonably expended because they are 'excessive, redundant, or

otherwise unnecessary.'" *Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d 1066, 1083 (9th

Cir. 2021) (internal citation and quotation marks omitted).

       The lodestar figure is presumptively reasonable.  *See Dague*, 505 U.S. at 562 ("We have

established a 'strong presumption' that the lodestar represents the 'reasonable' fee[.]"); *Edmo v.*

*Corizon, Inc*., 97 F.4th 1165, 1168 (9th Cir. 2024) ("The result of this equation is the lodestar

figure, which is treated as a presumptively reasonable award.").  However, "a district court may

make upward or downward adjustments to the presumptively reasonable lodestar." *Camacho*,

523 F.3d at 982; *see also Edmo*, 97 F.4th at 1169 ("If an enhancement is justified, then the court

may adjust the lodestar upward . . . using a multiplier.") (internal citation and quotation marks

omitted).  In applying these legal standards the court is cognizant of the following overarching

guidance provided by the Ninth Circuit:

> Lawyers must eat, so they generally won't take cases without a
> reasonable prospect of getting paid.  Congress thus recognized that
> private enforcement of civil rights legislation relies on the
> availability of fee awards:  "If private citizens are to be able to assert
> their civil rights, and if those who violate the Nation['s] fundamental
> laws are not to proceed with impunity, then citizens must have the
> opportunity to recover what it costs them to vindicate these rights in
> court."  S. Rep. No. 94-1011, at 2 (1976), as reprinted in 1976
> U.S.C.C.A.N. 5908, 5910. [fn. omitted] At the same time, fee awards
> are not negotiated at arm's length, so there is a risk of
> overcompensation.  A district court thus awards only the fee that it

1    deems reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433
     (1983). The client is free to make up any difference, but few do. As
2    a practical matter, what the district court awards is what the lawyer
     gets.
3
     In making the award, the district court must strike a balance between
4    granting sufficient fees to attract qualified counsel to civil rights
     cases, *City of Riverside v. Rivera*, 477 U.S. 561, 579–80 (1986), and
5    avoiding a windfall to counsel, *see Blum v. Stenson*, 465 U.S. 886,
     897 (1984) (quoting S. Rep. No. 94-1011, at 6 (1976)). The way to
6    do so is to compensate counsel at the prevailing rate in the
     community for similar work; no more, no less.
7
8    *Moreno*, 534 F.3d at 1111. With this guidance in mind, the court will turn to the fee application

9    in this civil rights action.

10                                   **DISCUSSION**

11   **A.      Attorneys' Fees**

12           1.      Hourly Rates

13                   a.      *Forum*

14           Plaintiffs seek hourly rates consistent with the Los Angeles rather than the Sacramento

15   legal community. (Doc. No. 263 at 18.) They argue that Los Angeles rates are appropriate

16   because when it comes to police excessive force cases, Mr. Galipo is at the top of his field, and

17   according to Sacramento-based attorney Mark Merin, no attorneys in the Sacramento area could

18   have or would have taken this case due to the evidentiary challenges in this case, including the

19   presence of a gun in Hurtado's vehicle located next to Hurtado. (*Id.*) In support, plaintiffs have

20   submitted a declaration of attorney Michael J. Haddad who has known Mr. Galipo professionally

21   for ten years and states that there is no other trial attorney in the State of California with Mr.

22   Galipo's skills, experience, and success in prevailing in police misconduct cases. (Doc. No. 263-

23   34 at ¶¶ 17, 23.) Plaintiffs have also submitted a declaration of attorney Merin describing his

24   experience in the Eastern District representing clients in police misconduct cases and stating that

25   "[w]hile I have taken some tough cases, I would have declined Mr. Hurtado's case because of the

26   evidence regarding the gun" which was present in Hurtado's vehicle and located near him at the

27   time of the incident. (Doc. No. 263-35 at ¶ 45.) Attorney Merin also avers that "[t]here are no

28   attorneys in the Sacramento area who could have or would have taken this case." (*Id.* at ¶ 45.)

                                          6

1    In opposition, defendants argue that plaintiffs "have produced insufficient evidence that

2    Sacramento area attorneys were unable to take the case."  (Doc. No. 273 at 17.)  Defendants

3    present no contrary evidence that Sacramento attorneys were available to do so.  Instead, they

4    point to a decision in which another judge of this district ruled that Mr. Galipo and his co-counsel

5    were not entitled to be paid at the hourly rate from a forum other than the Fresno Division of the

6    Eastern District.  (*Id.*) (citing *Est. of Casillas v. City of Fresno*, No. 1:16-cv-01042-AWI-SAB,

7    2020 WL 869117, at *9 (E.D. Cal. Feb. 21, 2020) (holding that "plaintiffs' mere assertions that 'it

8    is unlikely that there were any attorneys who were available in the Fresno area (or any other area

9    for that matter) with the skill, experience and reputation comparable to that of Mr. Galipo' and

10   that 'defense counsel would be hard-pressed to find another attorney, let alone a local Fresno

11   attorney, with comparable skill and experience to that of Mr. Galipo'" were insufficient to

12   establish that Central District hourly billing rates should apply)).

13   Reasonable fees under § 1988 are calculated according to the prevailing market rates in

14   the relevant legal community, *Blum*, 465 U.S. at 895, and the general rule is that the rates of

15   attorneys practicing in the forum district, here the Eastern District of California, are used.  *Davis*

16   *v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991).  Rates other than those of the forum may

17   be employed if local counsel was unavailable, either because they are unwilling to accept the case

18   or unable to perform because they lack the degree of experience, expertise, or specialization

19   required to handle properly the case.  *Gates*, 987 F.2d at 1405 (affirming the district court's

20   decision to award fees at San Francisco rates rather than Sacramento rates where the plaintiffs

21   offered "evidence demonstrating that . . . Sacramento attorneys and law firms with the requisite

22   expertise and experience to handle this type of complex institutional prison reform litigation were

23   unavailable" and the defendants' rebuttal evidence that "Sacramento attorneys were capable of

24   handling a case of this complexity" was not persuasive).  The Ninth Circuit has made clear "that

25   the failure to solicit local counsel is not necessarily fatal to proving unavailability."  *Barjon v.*

26   *Dalton*, 132 F.3d 496, 501–02 (9th Cir. 1997) ("Barjon and Duran admit that they never solicited

27   other attorneys before hiring Wallace.  . . . .  In establishing unavailability, *Gates* allows proof of

28   /////

1    either unwillingness or inability due to lack of experience, expertise, or specialization. There is

2    no requirement that plaintiffs prove both.")

3        The court finds plaintiffs' argument, supported by attorney Merin's declaration, that no

4    attorneys in the Sacramento area could have or would have taken this case, to be pertinent and

5    persuasive. Attorney Merin states that he is "familiar with the facts of the instant case" and

6    "watched parts of both trials" and believes it "was a very difficult case for plaintiffs." (Doc. No.

7    263-35 at ¶ 44.) He states that he has "taken some tough cases" during the course of his career

8    but "would have declined Mr. Hurtado's case because of the evidence regarding the gun" which

9    was in Hurtado's vehicle and located next to him at the time he was shot by defendant Yepez.

10   (*Id*. at ¶ 45.) Regarding other attorneys in the Sacramento area, attorney Merin declares that there

11   are none "who could have or would have taken this case" and he believes there is an

12   "unavailability of local counsel with the requisite experience and expertise to take on such a

13   difficult police misconduct case." (*Id*. at ¶ 46.) As to plaintiffs' legal team, attorney Merin states

14   that he has had a personal relationship with Mr. Galipo for nine years, has followed his "record of

15   success as a civil rights attorney for more than 20 years," and has sought his input in matters

16   previously before this court, including *Estate of Sanchez v. County of Stanislaus*, No. 1:18-cv-

17   00977-DAD-CKD (E.D. Cal.), which subsequently settled pre-trial, and *Estate of Rushing v. City*

18   *of Chico*, No. 2:18-cv-01692-DAD-AC (E.D. Cal.), "which Mr. Galipo correctly predicted was a

19   hard case." (*Id*. at ¶¶ 39–42.) Attorney Merin has also worked with Mr. Galipo as co-counsel

20   and "share[s] the opinions of several other courts recognizing that Mr. Galipo is unquestionably at

21   the top of his field." (*Id*. at ¶ 43.)

22       Attorney Merin has practiced as a civil rights attorney in the Sacramento area for decades

23   and has been regarded by judges of this district as "unique[]" in Sacramento and "one of the most

24   experienced and successful civil rights attorneys in the Sacramento area." (Doc. No. 263-35 at

25   ¶ 38.) He has also represented plaintiffs injured or killed by law enforcement in over twenty

26   cases in this district court over the last ten years alone. (*Id*. at ¶ 32.) Accordingly, attorney Merin

27   is familiar with such cases and with the local legal market and pool of plaintiffs' civil rights

28   attorneys available and willing to handle a case like this one. The court therefore finds that

1    plaintiffs have offered sufficient persuasive evidence through Mr. Merin's declaration to support

2    the unavailability of willing, skilled local counsel for this case to fully justify the application of

3    hourly rates from outside this district.[2]  *See Ariz. Dream Act Coal. v. Brewer*, No. 12-cv-02546-

4    PHX-DGC, 2018 WL 6448395 at *2–3 (D. Ariz. Dec. 10, 2018) (finding that the plaintiffs'

5    submitted statement from the legal director of the ACLU-AZ that "there were not sufficient

6    lawyers or law firms in Arizona with the necessary expertise, capacity, and willingness to take on

7    a case of this magnitude and complexity" was sufficient to justify application of out-of-state

8    hourly rates).  Because attorney Galipo first appeared in this case on February 21, 2024, shortly

9    before the first trial, and attorneys Guizar, Henderson, and Carrazco are the counsel who were

10    initially willing to take the case and filed the original complaint in 2019, the court will consider

11    Los Angeles and Central District of California based rates in determining the appropriate hourly

12    rate for all counsel in this matter, not just counsel who conducted the trials.[3]

13              b.    *Mr. Galipo's Rate*

14          Plaintiffs seek an hourly rate of $1400 for the services rendered by attorney Galipo.  (Doc.

15    No. 263 at 20.)  They argue that this rate is well within the reasonable range of billing rates for

16    civil rights attorneys in Los Angeles, and they cite recent orders issued by judges of the Central

17    District of California awarding Mr. Galipo hourly rates between $1,200 and $1,400.  (*Id.* at 20–

18    21) (citing *Zelaya v. City of Los Angeles*, No. 2:20-cv-08382-ODW-MAA, 2024 WL 3183882, at

19

---

20    [2]  The undersigned's own experience in this district, 17 years as a magistrate judge and almost 10
21    years as a district judge, leads to the conclusion that attorney Merin's opinions in this regard are
      entirely consistent with the court's own observations.

22    [3]  The undersigned pauses to express some concern that, given the rise of remote work and the
23    prevalence of lawyers from outside regions representing clients in the Eastern District of
      California, community-based rates may not remain the most sound or realistic approach to
24    resolving fee applications such as this one.  A very high percentage of the litigators appearing
      before this court are based in the San Francisco or Los Angeles regions and conduct the majority
25    of their case work from those regions.  The community-based rate approach essentially discounts
      work performed by those lawyers for cases taken in the Eastern District, likely making it more
26    difficult for plaintiffs in this district to find representation.  *See Kissinger v. Mennonite Home*,
      No. 20-cv-03000, 2022 WL 596300, at *4 (E.D. Pa. Feb. 28, 2022) (finding it "important to
27    note . . . that a significant amount of preparatory work took place remotely" and the court is
      limited in its "ability to determine where pre-trial activities related to this litigation took place").

28

*3 (C.D. Cal. June 25, 2024) ("[Plaintiff's] counsel requests an hourly rate of $1,300 for Mr. Galipo.  Mr. Galipo bases his rate on his thirty-four years of civil rights practice experience, his track record of success, and his numerous recognitions for his work in civil rights. . . .  The Court agrees that Mr. Galipo is unquestionably at the top of his field and finds Mr. Galipo's requested rate is appropriate given his experience, skill, and reputation.); *Valenzuela v. City of Anaheim*, No. 17-cv-00278-CJC-DFM, 2023 WL 2249178, at *3 (C.D. Cal. Feb. 23, 2023) (noting "Mr. Galipo's strong reputation within the legal community, his continued consistent record of success with over $85 million in recovery in civil rights cases since 2019, and multiple courts [] awarded him $1,100 hourly rates as early as 2020" in concluding that "$1,200 is a reasonable hourly rate for Mr. Galipo"); *Craig et al. v. Cnty. of Orange*, No. 8:17-cv-00491-CJC-KES, Doc. No. 290, at *4–6 (C.D. Cal. Feb. 21, 2023) ("The Court finds that a $1,200 hourly rate is reasonable for Mr. Galipo's work over the past three years.  Mr. Galipo has continued to demonstrate the value of his advocacy with over $85 million in recovery in civil rights cases in just a few years.  Although this rate is high, it reflects Mr. Galipo's strong reputation within the legal community and his continued consistent record of success.  It is also consistent with the prevailing rate of other attorneys who practice civil rights litigation in the Central District who graduated law school when Mr. Galipo did.")); (Doc. No. 263-1 at ¶ 25) (citing *French v. City of Los Angeles*, No. 20-cv-00416-JGB-SP, Doc. No. 188, at *6 (C.D. Cal. Feb. 21, 2024) (wherein the court concluded that Mr. Galipo's requested rate of $1,400 is reasonable)).

Here, attorney Galipo bases his requested rate on his thirty-six years of civil rights practice experience, his track record of success, and the numerous recognitions for his work in civil rights.  (Doc. No. 263 at 20–22.)  Attorney Galipo has managed his own litigation firm since 1991 and regularly handles civil rights cases, especially ones involving alleged police misconduct.  (Doc. No. 263-1 at ¶ 4.)  He has received several accolades over the years, including being selected to give the UCLA Law Irving H. Green Memorial Lecture in 2019 and for the "Trial Lawyer of the Year" award from the Consumer Attorneys Association of Los Angeles in 2020. (*Id*. at ¶¶ 9, 10.)  He is also a member of the Inner Circle of Advocates, a group considered to represent the top one hundred plaintiffs' attorneys in the United States.  (*Id*. at ¶ 8.)  He has

1    tried more than one hundred civil cases through to verdict, has won the majority of those cases,

2    and has secured numerous seven and eight-figure verdicts on behalf of his clients.  (*Id.* at 4–8.)

3    Attorney Galipo represents that the going hourly rate that top litigators at top law firms bill their

4    clients is between $1,200 and $1,800 per hour, and that he has more trial experience and expertise

5    than most major law firm partners.  (*Id.* at ¶ 30.)  He also indicates that this was a particularly

6    difficult case given Hurtado's reckless driving and possession of a gun at the time of the shooting,

7    warranting an hourly rate of $1,400 due to the skill, experience and ability necessary to prevail at

8    trial.  (*Id.* at ¶¶ 28, 29.)

9         In opposition, defendants argue that the $1,400 requested rate is not reasonable because

10    "hourly rates for attorneys with over 15 years of experience in the Eastern District generally are

11    capped at $550" and "Mr. Galipo only joined this matter shortly before the initial trial."  (Doc.

12    No. 273 at 17–18.)

13        The court is unpersuaded by defendants' arguments in this regard.  The court has already

14    addressed the applicability of rates outside of the Eastern District, and defendants' purported

15    authority suggesting the existence of a $550 upper bound on rates is dated—from over eight years

16    ago.  (Doc. No. 273 at 17–18) (citing *Z.F. ex rel. M.A.F. J.F. v. Ripon Unified Sch. Dist.*, No.

17    2:10-cv-00523-TLN-CKD, 2017 WL 1064679, at *3 (E.D. Cal. Mar. 21, 2017)).  Further,

18    defendants have cited no authority suggesting that the timing of attorney Galipo's initial

19    involvement in this case would support a reduction in the hourly rate for the time he did devote to

20    the case.

21        Based on attorney Galipo's experience, the result he obtained in this action, the nature and

22    difficulty of this case, his previously awarded rates in other federal courts, and the lack of any

23    persuasive opposition from defendants, the court finds that $1,300 is a reasonable hourly rate for

24    attorney Galipo's work performed on behalf of the plaintiffs.  *See Est. of Aguirre v. Cnty. of*

25    *Riverside*, No. 18-cv-00762-DMG-SP, 2024 WL 2107727, at *3 (C.D. Cal. Mar. 29, 2024)

26    (awarding attorney Galipo an hourly rate of $1,250 following a jury trial in an officer-involved

27    death case).

28    /////

c.    *Attorney Le's Rate*

Plaintiffs seek an hourly rate of $700 for the services rendered by attorney Le.  (Doc. No. 263 at 22.)  They argue that this is a reasonable rate for an attorney with her experience, skill, and expertise.  (*Id*.)  In opposition, defendants argue that attorney Le's hourly rate should be $350 because her "involvement in this case was limited to preparing trial documents and motions." (Doc. No. 273 at 18.)

Attorney Le is a 2013 graduate of University of Southern California Gould School of Law and has worked with attorney Galipo since 2014.  (Doc. No. 263-12 at ¶¶ 4, 6.)  She is the primary associate at Mr. Galipo's office assigned to this case and was responsible for the case's day-to-day management.  (*Id*. at ¶ 6.)  She has worked "almost exclusively on 42 U.S.C. § 1983 civil rights cases involving police excessive force" over the last ten years.  (*Id*.)  In this time, attorney Le has been the managing attorney of at least thirty cases with six, seven, or eight-figure settlements or jury awards.  (*Id.* at ¶¶ 8–10.)

Attorney Le's highest hourly rate awarded by a federal court to date was $650 in 2024. *See Est. of Aguirre*, 2024 WL 2107727, at *4.  Based on her relevant experience, and in light of defendants' lack of authority to support their argument that trial preparation and motion work should be awarded at lower rates than other case work, the court finds $650 to be a reasonable hourly rate for attorney Le's time expended on this matter.  *See Donastorg v. City of Ontario*, No. 18-cv-00992-JGB-SP, 2021 WL 6103545, at *9 (C.D. Cal. Sept. 23, 2021) (awarding attorney Le her requested hourly rate of $550).

d.    *Attorney Kent Henderson's Rate*

Plaintiffs seek an hourly rate of $1,100 for the services rendered by attorney Kent Henderson in light of his decades of experience in police use of force and personal injury cases. (Doc. No. 263 at 23.)  They argue that his thirty-five years of experience in personal injury, police misconduct, and civil rights cases, including trying over forty cases to jury verdict and serving as the principal attorney on several cases resulting in multimillion dollar settlements, justify this rate.  (*Id*.)  In opposition, defendants argue that his hourly rate should be $473, which is the rate suggested by defendants' retained auditor James P. Schratz upon reviewing rates awarded in five

12

1   cases in the Eastern District in recent years and applying approximately a 4–5% rate increase year

2   over year.  (Doc. Nos. 273 at 18; 273-1 at 36–42.)

3           Plaintiffs have attached a declaration describing attorney Henderson's experience and

4   previously performed case work in more detail (Doc. No. 263-14), but they do not include

5   additional information regarding fees he has been awarded by courts, rates he has charged, or any

6   comparison between himself and similarly experienced attorneys and the rates that those

7   attorneys have been awarded.  Accordingly, the court finds that plaintiffs have not carried their

8   burden of establishing that a $1,100 rate is reasonable as to attorney Henderson.  *See Gonzalez*,

9   729 F.3d at 1206 ("Importantly, the fee applicant has the burden of producing satisfactory

10  evidence that the rates he requests meet these standards.") (internal citation and quotation marks

11  omitted).  "Nevertheless, the Ninth Circuit has agreed with the approach of other circuits holding

12  that judges may rely on their own knowledge of customary rates and their experience concerning

13  reasonable and proper fees."  *Abrego v. City of Los Angeles*, No. 15-cv-00039-BRO-JEM, 2017

14  WL 3453293, at *6 (C.D. Cal. June 16, 2017) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 928

15  (9th Cir. 2011) ("We conclude that the district court did not abuse its discretion either by relying,

16  in part, on its own knowledge and experience . . . .")).

17          Lacking evidence from plaintiffs as to a reasonable hourly rate for work performed by

18  attorney Henderson, the court turns to its own experience, rates awarded by other district courts

19  under similar circumstances, and the 2024 Real Rate Report:  The Industry's Leading Analysis of

20  Law Firm Rates, Trends, and Practices (the "Report") for guidance, finding the Report to be a

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

13

helpful starting point.[4]  *See Abrego*, 2017 WL 3453293, at *5 (turning "to its own experience and the 2015 Real Rate Report Snapshot" for guidance where the plaintiffs "failed to meet their burden of establishing that their hourly rates" are reasonable).  According to the Report, the median rate for litigation partners in Los Angeles in 2024 was $895 per hour, while the mean rate was $933 per hour.  (Report at 16.)  Further, several years ago a district judge of the Central District has found, in a civil rights lawsuit against the sheriff's department, that $875 was a reasonable hourly rate for two lawyers with 30 and 32 years of experience.  *See McKibben v. McMahon*, No. 14-cv-02171-JGB-SP, 2019 WL 1109683, at *14 (C.D. Cal. Feb. 28, 2019).  Additionally, the court has identified one previous fee award over thirteen years ago in a civil rights case in which attorney Kent Henderson was awarded a $500 hourly rate.  *See Rodriguez v. City of Long Beach*, No. 10-cv-00271-DOC-AN, 2012 WL 12886497, at *6 (C.D. Cal. Mar. 6, 2012).  If the court applied a 4% adjustment per year, which is approximately the rate of annual upward movement that auditor Schratz identified as applicable to rates in the legal industry in his declaration, attorney Henderson would have been awarded an hourly rate of $833 today, without even taking into account the additional experience he has gained in the intervening years.  Accordingly, the court finds that an hourly rate of $875 for attorney Henderson, rather than

---

[4]  The Report is a "Wolters Kluwer ELM Solutions publication that identifies attorney rates by location, experience, firm size, areas of expertise, and industry." *Abrego*, 2017 WL 3453293. The Report is "based on actual legal billing, matter information, and paid and processed invoices from more than eighty companies," and on this basis, courts have found that it provides a "better reflection of true market rates than self-reported rates." *Donastorg*, 2021 WL 6103545, at *8. The court acknowledges that some district judges have observed that the Report is "designed for lawyers who work for corporate clients" and have avoided its use in other contexts. *See Johnson v. Hey Now Props.*, No. 2:16-cv-02931-WBS-KJN, 2019 WL 586753, at *3 (E.D. Cal. Feb. 13, 2019) (rejecting the plaintiff's reliance on the Report "in a routine disability access case"); *Craig*, 2019 WL 12378994, at *5 (noting that the plaintiffs fail to explain how the Report has "bearing on the prevailing rate in the community for a plaintiff's civil rights lawyer"). However, other courts have found the Report persuasive in excessive use of force cases, particularly "as a starting point," in determining reasonable attorney and paralegal rates. *Frias v. City of Los Angeles*, No. 16-cv-04626 PSG-SK, 2020 WL 4001620, at *2 (C.D. Cal. Apr. 23, 2020); *see also Abrego*, 2017 WL 3453293, at *6; *French v. City of Los Angeles*, No. 20-cv-00416-JGB-SP, 2022 WL 2189649, at *18 (C.D. Cal. May 10, 2022) ("While Plaintiffs are correct that the Real Rate Report does not address civil rights practice, this Court has found that the report provides a helpful reference point and consults it here."), *aff'd*, No. 22-55571, 2023 WL 6803559 (9th Cir. Oct. 16, 2023), *amended on denial of reh'g*, No. 22-55571, 2023 WL 8179284 (9th Cir. Nov. 27, 2023).

1    plaintiffs' requested rate of $1,100 or defendants' proposed rate of $473, is the reasonable hourly

2    rate to be employed as to work performed by attorney Kent Henderson in this case.

3                          e.    *Attorney Carrazco's Rate*

4           Plaintiffs seek an hourly rate of $1,000 for the services rendered by attorney Carrazco.

5    (Doc. No. 263 at 24.)  In opposition, defendants argue that his rate should be $473 per hour.

6    (Doc. No. 273 at 18.)

7           Attorney Carrazco manages his own law firm and has been a civil rights lawyer for twenty

8    years.  (Doc. No. 263-13 at ¶ 4.)  He has litigated approximately 110 civil rights cases, trying at

9    least thirty to jury verdict, and has received various awards and recognition.  (*Id*. at ¶¶ 7–12.)  The

10   court once again refers to the Report, indicating a median $895 hourly rate for partners in Los

11   Angeles, (Report at 16), and Central District fee awards discussing appropriate rates for lawyers

12   with approximately twenty years of experience.  *See ACF 2006 Corp v. L. Offs. of Michael J.*

13   *Libman APC*, No. 19-cv-02920-DMG-JC, 2020 WL 6417039, at *1 (C.D. Cal. Sept. 17, 2020)

14   (finding $650 to be a reasonable rate for an attorney with 18 years of experience in a "less than

15   complex" action); *Pierce v. Cnty. of Orange*, 905 F. Supp. 2d 1017, 1036 (C.D. Cal. 2012)

16   (finding $625 to be a reasonable hourly rate for work performed in 2011 by a partner with "23

17   years of experience litigating complex class action and civil rights cases"); *see also Smith v. City*

18   *of La Verne*, No. 23-cv-00644-KK-E, 2024 WL 4331733, at *3 (C.D. Cal. Sept. 4, 2024) (finding

19   $850 to be an appropriate hourly rate for a managing partner in an excessive force action).  Given

20   the complexity of this matter, and the years and volume of attorney Carrazco's experience in

21   litigating civil rights actions such as this one, the court finds an hourly rate of $750 to be

22   appropriate.

23                          f.    *Attorney Guizar's Rate*

24          Plaintiffs seek an hourly rate of $975 for the services rendered by attorney Guizar.  (Doc.

25   No. 263 at 24.)  They argue that his thirty-seven years of legal experience prosecuting civil rights

26   actions, including trying 140 cases through to verdict and generating $75 million in verdicts and

27   settlements, support this requested hourly rate.  (*Id*.)  In opposition, defendants argue that attorney

28   Guizar's rate should be $473 per hour.  (Doc. No. 273 at 18.)  The court notes that it has been

1    able to identify one previous fee award involving attorney Guizar, in which a district court

2    awarded him a $500 hourly rate back in 2012.  *See P.C. v. City of Los Angeles*, No. 07-cv-03413-

3    PLA, 2012 WL 12920203, at *6 (C.D. Cal. Sept. 14, 2012).  Given the passage of time since this

4    prior award, the Report's indication that median rates for litigation partners in Los Angeles hover

5    just under $900 per hour, (Report at 16), and persuasive authority indicating that a rate of $875 is

6    reasonable for a civil rights lawyer in the Central District of California with over thirty years of

7    experience, *McKibben,* 2019 WL 1109683, at *14, the court finds that an hourly rate of $875 for

8    attorney Guizar is reasonable.

9              g.    *Attorney Holm's Rate*

10         Plaintiffs seek an hourly rate of $600 for the services rendered by attorney Holm in

11   connection with this case.  (Doc. No. 263 at 25.)  In opposition, defendants argue that attorney

12   Holm's hourly rate should be $331, again relying on auditor Schratz's review of five awards in

13   the Eastern District and adjustments to rates year over year.  (Doc. No. 273 at 18.)

14         Attorney Holm has eight years of experience as a litigator working on civil rights and

15   personal injury cases.  (Doc. No. 263-10 at ¶¶ 4, 5.)  The court observes that the Report identifies

16   $713 as the median hourly rate for a litigation associate in Los Angeles.  (Report at 16.)  With

17   eight years of experience, Attorney Holm is more senior than the average associate.  Further, a

18   review of fee awards for similarly experienced lawyers in civil rights cases in the Central District

19   of California indicates that plaintiffs' proposed rate for attorney Holm is not unreasonable.  *See*

20   *McKibben*, 2019 WL 1109683 (finding a $600 per hour rate reasonable for a civil rights attorney

21   with ten years of experience); *Donastorg*, 2021 WL 6103545, at *9 (awarding an hourly rate of

22   $550 for an associate with eight years of experience in excessive use of force cases).

23   Accordingly, the court finds plaintiffs' requested hourly rate of $600 to be reasonable for Mr.

24   Holm.

25              h.    *Nathan Henderson's Rate*

26         Plaintiffs seek an hourly rate of $300 for the services rendered by Nathan Henderson.

27   (Doc. No. 263 at 25.)  In opposition, defendants argue that attorney Nathan Henderson's rate

28   /////

16

1   should be $118 per hour, which is the rate that auditor Schratz found appropriate in his

2   declaration.  (Doc. No. 273 at 18.)

3          Nathan Henderson began working as a legal assistant in 2017 and continued working in

4   this capacity while he enrolled in law school in 2021.  (Doc. No. 263-22 at ¶ 4.)  Nathan

5   Henderson graduated from Chapman University's Fowler School of Law in May of 2024 and

6   passed the July 2024 California Bar Exam.  (*Id*. at ¶ 3.)  However, all of his billed hours in this

7   case were for work he performed between August 2023 and October 2024, before he would have

8   been eligible to join the California bar, and accordingly, his time entries will be treated in line

9   with paralegal or law clerk rates.  (Doc. No. 263-23.)

10          Plaintiffs argue that given his experience, skill, and expertise, Nathan Henderson should

11   be awarded an hourly rate of $300, and in support they cite a district court order awarding $300

12   hourly rates to "senior paralegals."  (Doc. No. 263 at 26) (citing *Avila v. Ford Motor Co.*, No.

13   5:22-cv-00395-SPG-SHK, 2024 WL 3311081, at *4 (C.D. Cal. May 15, 2024) (awarding $300

14   hourly rates to senior paralegals without specifying how many years of experience those

15   paralegals had)).  In light of this limited authority in support of plaintiffs' proposed rate, the court

16   has reviewed the Report and observes that it indicates that paralegals typically earn hourly rates

17   between $100 and $285, with an average hourly rate of $225.  (Report at 69–70.)  Further, the

18   court notes that district courts have found rates around $200 per hour to be reasonable for support

19   staff in the Los Angeles area working on civil rights cases.  *See Donastorg*, 2021 WL 6103545, at

20   *9 (noting that the "2020 Real Rate Report shows that paralegals typically earn between $175 and

21   $311" and awarding $200 per hour to a paralegal with 28 years of experience and $125 per hour

22   to a law student clerk); *McKibben*, 2019 WL 1109683, at *14 (awarding rates of $335 and $195

23   to senior paralegals, $175 to a junior paralegal, and $225 to law clerks); *W.S. v. Huntington Beach*

24   *Union High Sch. Dist.*, No. 15-cv-01643-JVS-DFM, 2017 WL 11636676, at *5 (C.D. Cal. Oct.

25   10, 2017) (awarding an hourly rate of $150 to a paralegal with two years of experience).

26   Accordingly, the court finds that an hourly rate of $200 is reasonable for Nathan Henderson's

27   work performed in this case.

28   /////

i.    *Litigation Assistant Gallegos's Rate*

Plaintiffs seek an hourly rate of $175 for the services rendered by litigation assistant Gallegos.  (Doc. No. 263 at 26.)  In opposition, defendants argue that his rate should be $118 per hour.  (Doc. No. 273 at 19.)

Mr. Gallegos began working as a litigation assistant in 2020 and is currently attending law school.  (Doc. No. 263-24 at ¶¶ 2–5.)  As noted above, the Report indicates that paralegals earn average hourly rates of $225.  (Report at 69–70.)  Further, the undersigned held over ten years ago that a $150 hourly rate was reasonable for work performed by paralegals even when applying Eastern District rates.  *See Hall v. City of Fairfield*, No. 2:10-cv-00508-DAD, 2014 WL 1286001, at *15 (E.D. Cal. Mar. 31, 2014).  Accordingly, the court finds that plaintiffs' requested rate of $175 per hour for Mr. Gallegos is reasonable.

j.    *Legal Assistant Arraiga's Rate*

Plaintiffs seek an hourly rate of $200 for the services rendered by Ms. Arraiga.  (Doc. No. 263 at 26.)  In opposition, defendants argue that her rate should be $118 per hour.  (Doc. No. 273 at 19.)

Ms. Arraiga began working as a legal assistant with Guizar, Henderson & Carrazco in 2010 and has now worked on over 200 cases.  (Doc. No. 263-26 at ¶¶ 2–3.)  The court finds that plaintiffs' requested hourly rate of $200 for Ms. Arraiga is reasonable in light of her many years of experience, the Report's average hourly rate of $225 for paralegals, and the previously discussed district court awards for experienced legal support staff.  *See e.g., Donastorg*, 2021 WL 6103545, at *9.

l.    *Litigation Assistant Laurel's Rate*

Plaintiffs seek an hourly rate of $220 for the services rendered by Mr. Laurel.  (Doc. No. 263 at 27.)  In opposition, defendants argue that his rate should be $118 per hour.  (Doc. No. 273 at 19.)

Mr. Laurel has approximately seventeen years of experience in the legal field as a legal and litigation assistant.  (Doc. No. 263-30 at ¶ 2.)  He joined attorney Galipo's law firm in 2021 and assists attorney Galipo and eight other attorneys at the firm.  (*Id*. at ¶ 3.)  Mr. Laurel has been

18

1    awarded hourly rates of $200 and $220 per hour in recent excessive use of force cases in the

2    Central District of California.  *See French*, 2022 WL 2189649, at *17 (awarding Mr. Laurel $200

3    per hour for his services); *Zelaya*, 2024 WL 3183882, at *4 (awarding Mr. Laurel $220 per hour

4    for his services).  The court finds it appropriate to award Mr. Laurel his requested hourly rate of

5    $220 for his work in this matter.

6              2.    Hours Expended

7         As noted above, the attorneys' fee applicant also bears the burden of establishing the

8    appropriate number of hours expended.  *Hensley*, 461 U.S. at 437; *see also Carson*, 470 F.3d at

9    891; *Jadwin v. Cnty. of Kern*, 767 F. Supp. 2d 1069, 1100 (E.D. Cal. 2011) ("The fee applicant

10   bears the burden of documenting the appropriate hours expended in the litigation and must submit

11   evidence in support of those hours worked.").  The party opposing the fee application has the

12   burden of rebutting that evidence.  *Camacho*, 523 F.3d at 982; *see also Jadwin*, 767 F. Supp. 2d

13   at 1100 ("The party opposing the fee application has a burden of rebuttal that requires submission

14   of evidence to the district court challenging the accuracy and reasonableness of the hours charged

15   or the facts asserted by the prevailing party in its submitted affidavits.").

16        Here, plaintiffs seek to recover attorneys' fees for 4,778 hours expended in connection

17   with this case, plus an additional 41.5 hours for post-trial work performed.  (Doc. Nos. 263, 281.)

18   Asserting a number of individual objections, defendants argue that the number of attorney hours

19   for which plaintiffs' counsel seek compensation include time that was billed to this matter

20   unreasonably.  (Doc. No. 273.)  In considering defendants' objections the court is mindful of the

21   Ninth Circuit admonition that, as a rule, "the court should defer to the winning lawyer's

22   professional judgment as to how much time he was required to spend on the case."  *Moreno*, 534

23   F.3d at 1112.  Moreover, that general rule applies with particular force with respect to a plaintiff's

24   attorney in a civil rights action, who typically works on a contingency basis, and therefore has

25   little incentive to expend unnecessary hours in connection with the litigation.  As the Ninth

26   Circuit has also observed:

27              Lawyers are not likely to spend unnecessary time on contingency fee
                cases in the hope of inflating their fees.  The payoff is too uncertain,
28              as to the result and the amount of the fee.  It would therefore be the

1
2
3

> highly atypical civil rights case where plaintiff's lawyer engages in churning.  By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

4   *Nadarajah v. Holder*, 569 F.3d 906, 922 (9th Cir. 2009) (quoting *Moreno*, 534 F.3d at 1112); *see*

5   *also Deocampo v. Potts*, No. 2:06-cv-01283-WBS-CMK, 2014 WL 788429, at *2 (E.D. Cal. Feb.

6   25, 2014); *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1080 (N.D. Cal. 2010) ("[I]f anything, an

7   attorney working on contingency is less likely to expend unnecessary hours because the payoff is

8   too uncertain.")  With these principles in mind, below the court will address each of defendants'

9   objections to the hours expended by plaintiffs' counsel on this case according to their pending

10  motion.

11           a.      *Billed Hours*

12          As noted, plaintiffs seek to recover attorneys' fees for 4,778 hours in connection with this

13  case, plus an additional 41.5 hours for post-trial work performed opposing defendants' motion for

14  new trial and filing a reply in support of their motion for attorneys' fees.[5]  (Doc. Nos. 263, 281.)

15  As to the 4,778 hours that plaintiffs seek, 746 hours are attributed to attorney Chris Holm.  (Doc.

16  No. 263 at 22.)  Defendants object to the number of hours purportedly billed by attorney Holm,

17  noting that their retained auditor James Schratz calculated the sum of each timekeeper's time

18  entries and found a difference in over 200 hours when comparing the number of hours that

19  attorney Holm actually billed in his billing statement and the number that plaintiffs have applied

20  for on behalf of him in their pending fee motion.  (Doc. No. 273 at 12) (citing Doc. No. 273-1 at

21  17).  The court has independently summed attorney Holm's time entries and agrees with auditor

22  Schratz that attorney Holm billed only 471.5 hours, and not the 746 hours requested in plaintiffs'

23  fee motion.  Accordingly, the court's lodestar calculation will be reduced to reflect that only

24  471.5 hours were billed by attorney Holm.

25  /////

26

---

27  [5]  "A plaintiff may seek reasonable attorneys' fees for time spent obtaining those fees."  *Jones v.*
    *Cnty. of Sacramento*, No. 09-cv-01025-DAD, 2011 WL 3584332, at *20 (E.D. Cal. Aug. 12,
28  2011) (citing *Camacho*, 523 F.3d at 981).

1          b.      *Block Billing*

2          "Block billing is the time-keeping method by which each lawyer and legal assistant enters

3    the total daily time spent working on a case, rather than itemizing the time expended on specific

4    tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n. 2 (9th Cir. 2007).  As noted above, the

5    fee applicant bears the burden to document the time for which compensation is requested.  *Id.* at

6    945–46.  A district court may therefore impose reductions if it is unable to attribute hours to one

7    or another task, i.e., for block billing.  *Id*. at 948.  However, "counsel is not required to record in

8    great detail how each minute of [their] time was expended.'"  *Pollinator Stewardship Council v.*

9    *U.S. EPA*, No. 13-72346, 2017 WL 3096105, at *7 (9th Cir. June 27, 2017) (internal quotations

10   and citations omitted).[6]  "[A]ttorneys need only keep records in sufficient detail that a neutral

11   judge can make a fair evaluation of the time expended, the nature and need for the service, and

12   the reasonable fees to be allowed." *Parsons v. Ryan*, 949 F.3d 443, 462 (9th Cir. 2020) (internal

13   quotations and citations omitted).

14         Defendants argue that plaintiffs' time records demonstrate "several instances of improper

15   blocked billing where the time spent on each specific task cannot be scrutinized."  (Doc. No. 273

16   at 20.)  Defendants point to attorney Kent Henderson's time entries on December 2, 2021 and

17   March 7, 2024, attorney Galipo's time entries from October 5 and October 6, 2024, and to

18   attorney Henderson's and attorney Carrazco's time entries from trial.  (*Id*. at 20–21; Doc. No. 287

19   at 1.)  Defendants argue that the inappropriate blocked billing should be reduced by 30%.  (Doc.

20   No. 273 at 20–21.)

21         On December 2, 2021, attorney Henderson billed six hours for "draft[ing] 14th

22   Amendment Battery and Negligence sections of MSJ opp, emails back and forth, plus research,"

23   and on March 7, 2024, he billed eight hours for "Further trial preparation, review of materials,

24   contact of experts."  (Doc. No. 263-15 at 13, 40.)  On October 5 and October 6, 2024, attorney

25   Galipo billed twelve hours and seven hours for "Review of Expert Reports – Trial Preparation."

26   /////

27   _____

28   [6] Citation to unpublished Ninth Circuit opinions throughout this order is appropriate pursuant to
     Ninth Circuit Rule 36-3(b).

1    (Doc. No. 263-2 at 5.)  Plaintiffs argue that these entries "provide enough clarity for the Court to

2    discern the reasonable hours worked."  (Doc. No. 281 at 16.)

3        The court has reviewed these entries and to at least some extent agrees that it cannot

4    clearly evaluate the time expended given these descriptions.  *See Miller v. Schmitz*, No. 1:12-cv-

5    00137-LJO-SAB, 2017 WL 633892, at *14 (E.D. Cal. Feb. 15, 2017) (finding the plaintiff's

6    entries with "minimal description of the tasks involved" and no explanation of why a task "took

7    the time it did" to be "a form of block billing" warranting a reduction in the number of hours);

8    *Flores v. FCA*, No. 17-cv-00557-MRW, 2020 WL 10786544, at *3 (C.D. Cal. Nov. 24, 2020)

9    (trimming hours as block billing for a timekeeper's "[r]eview of case materials and preparation of

10    basic trial documents").  However, defendants have provided no justification for their proposal of

11    a 30% reduction in the hours rather than a 10% "haircut."  *Moreno*, 534 F.3d at 1112 (holding

12    that for a reduction of more than 10%—a "haircut"—the court must give a "specific

13    explanation").  Accordingly, the court will reduce the number of hours spent by attorney

14    Henderson and attorney Galipo by ten percent, or 1.4 hours and 1.9 hours respectively.  *See*

15    *Miller*, 2017 WL 633892, at *13–14 (reducing the plaintiff's hours by ten percent for vague

16    entries regarding a summary judgment brief).

17        Defendants also argue that attorney Henderson and attorney Carrazco improperly block

18    billed for trial days, arguing that their trial entries do not identify what work they did, and

19    suggesting that because they were not the lead trial attorneys in this case it was unnecessary for

20    them to even attend the trials.  (Doc. No. 273 at 21.)  Plaintiffs respond by arguing that trial

21    preparation and time spent in trial are tasks that generally lend themselves to block billing.  (Doc.

22    No. 281 at 16.)

23        The participation of more than one attorney does not *per se* constitute an unnecessary

24    duplication of effort.  *See Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 785 (9th Cir. 1986),

25    *cert. denied*, 476 U.S. 1170 (1986).  Instead, participation of more than one attorney can

26    constitute a reasonable necessity given the complexity of legal issues and the breadth of factual

27    evidence involved. *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989).  Given the nature

28    of the lengthy litigation and the issues and evidence in this case, as well as the participation of

22

two different attorneys on behalf of defendants, and attorney Henderson's role during conferences at the bench and while the jury was deliberating, the court can make a fair evaluation of the time expended and does not find attorney Henderson's attendance at the trials to be duplicative such that any reduction in hours is warranted.  *See Castillo v. Nielsen*, No. 5:18-cv-01317-ODW-KES, 2020 WL 2840065, at *7 (C.D. Cal. June 1, 2020) (finding that defendants' argument that the presence of two attorneys for the plaintiff was unnecessary was "unfounded" and "undermined by the presence of its own two attorneys at the same proceeding"); *Arroyo v. U.S. Dep't of Homeland Sec.*, No. 19-cv-00815-JGB-SHK, 2020 WL 1228665, at *5 (C.D. Cal. Jan. 2, 2020) (finding no redundancies in the plaintiffs' hour calculation where the plaintiffs had two attorneys present for a hearing because the defendants "had three attorneys present at the hearing"). However, plaintiffs have not fully justified the need for a third attorney present at the trial. According to attorney Carrazco's time entries, he spent exactly fifteen hours on ten different trial days preparing for, attending, and debriefing trial, and then he has also billed additional time expended on those trial days for more specific tasks.  (Doc. No. 263-17 at 20–25.)  The court will implement defendants' proposed 30% reduction to attorney Carrazco's 15-hour trial day entries, thereby eliminating 45 of his billed hours, finding defendants' explanation that the reduction is warranted because attorney Carrazco did not question any witnesses or make any arguments at the trials but submitted identical daily entries for a large number of hours to be sufficient to justify a significant reduction in the number of attorney hours sought by plaintiffs' counsel.  *See Quevedo v. New Albertsons, Inc*, No. 13-cv-01160-JLS-JPR, 2015 WL 10939716, at *4–5 (C.D. Cal. May 27, 2015) (reducing the trial attendance hours entirely for the plaintiff's additional lawyer who observed the trial but did not participate).  This 30% reduction in attorney Carrazco's trial hours also reflects the reality that his presence was at least in significant part appropriate in order to maintain continuity of counsel and in light of attorney Galipo's joining the case just a few weeks prior to the commencement of the first trial.

b.    *Duplicative Billing*

Defendants next argue that duplicative billing occurred at three different depositions and one hearing.  (Doc. No. 273 at 22–23.)  Defendants argue that the court should disallow or reduce

1    the hours billed by attorney Carrazco for defending Dr. Wobrock's deposition and Ms. Macias'

2    deposition, which were actually defended by attorney Guizar and attorney Contreras, the hours

3    billed by attorney Henderson for taking Dr. Ravani's deposition when attorney Carrazco actually

4    took that deposition, and the hours billed by attorney Le for a March 5, 2024 hearing in which she

5    did not participate.  (*Id.*)  In response, plaintiffs argue that "duplicative work was necessary to

6    strategize, ensure that relevant and important testimony was elicited at depositions and trial, and

7    to serve as sounding boards."  (Doc. No. 281 at 16.)

8            As to the three depositions, the court agrees with defendants that "the attendance of a

9    second senior-level attorney at these depositions was unnecessary, especially in light of the skill

10   levels that support the hourly rates that plaintiffs' counsel are seeking."  *Marbled Murrelet v. Pac.*

11   *Lumber Co.*, 163 F.R.D. 308, 324 (N.D. Cal. 1995).  Plaintiffs have not sufficiently demonstrated

12   that attendance of a second attorney was reasonable and necessary for each of the three

13   depositions identified and, accordingly, those hours will be disallowed as duplicative.  *See id.*

14   (disallowing 61.3 hours of attorney time as duplicative from depositions where two senior

15   attorneys attended); *Quevedo*, 2015 WL 10939716, at *5 (disallowing 23.6 hours billed by a

16   second attorney attending depositions where there was no explanation for "why both attorneys'

17   attendance was necessary for these relatively straightforward proceedings"); *see also Pringle v.*

18   *Adams*, No. 10-cv-01656-JLS-RZ, 2014 WL 3706826, at *6 (C.D. Cal. July 23, 2014) (imposing

19   a 15% reduction in hours across the board for duplication, including for multiple attendants at

20   depositions).  Accordingly, 5.5 of attorney Carrazco's hours and 3.5 of attorney Henderson's

21   hours will be deducted to account for these depositions.

22           Further, the court has reviewed attorney Le's March 5, 2024 entry, which is disputed by

23   defendants, in which she billed 1.1 hours for "Hearing on MILs and Plaintiff's Motion re Trial

24   Schedule."  (Doc. No. 263-13 at 2.)  The court has reviewed the hearing minutes and transcript of

25   the hearing, neither of which reflect an appearance by attorney Le at the March 5, 2024 hearing.

26   Accordingly, 1.1 of her requested billed hours will be disallowed.

27   /////

28   /////

c.     *Vague Entries*

Defendants next argue that the court should review and reduce 520.4 hours of entries associated with several timekeepers that auditor Schratz has identified as vague.  (Doc. No. 273 at 23.)  Plaintiffs argue that several of those entries are not vague at all.  (Doc. No. 281 at 17.)

As noted, a lack of meaningful descriptions of various tasks performed creates a problem in reviewing the reasonableness of time entries.  *See Miller*, 2017 WL 633892, at *12.  The court has reviewed the entries identified by Mr. Schratz as vague and agrees that many of them lack descriptions that would make it possible for the court to assess reasonableness of the time billed.  For example, attorney Holm billed several hours with the description "reviewed email and attachments regarding case."  (Doc. No. 273-2 at 188.)  Without any description as to the volume or nature of the documents reviewed, it is impossible for the court to assess the reasonableness of the attorney time spent on this activity.  Upon reviewing Mr. Schratz's noted entries and eliminating those that have already been subject to reduction, the court determines that a ten percent reduction is warranted regarding 121.1 hours billed by attorney Holm, 67.5 hours billed by attorney Carrazco, 111.1 hours billed by attorney Galipo, and 177.4 hours billed by attorney Kent Henderson.  *See Miller*, 2017 WL 633892, at *12 (finding a ten percent reduction appropriate for "vaguely documented time spent on multiple discovery tasks").

d.     *Time Preparing Experts*

Defendants next argue that plaintiffs are not entitled to recover attorneys' fees for any billing related to experts, because expert fees are not recoverable in actions brought pursuant to 42 U.S.C. § 1983.  (Doc. No. 273 at 23.)  In reply, plaintiffs argue that the prohibition against recovery of expert fees concerns the fees paid to the expert witnesses, and not the time spent by attorneys working on expert-related tasks.  (Doc. No. 281 at 18.)

It is the case, as the undersigned has previously held, that a prevailing plaintiff in a § 1983 excessive use of force case may not recover expert witness fees pursuant to § 1988.  *Jones*, 2011 WL 3584332, at *19; *see also Dominguez v. City of San Jose*, No. 18-cv-04826-BLF, 2023 WL 2717266, at *8 (N.D. Cal. Mar. 29, 2023) ("Plaintiffs concede that expert fees are not recoverable.  . . .  And the Court agrees.  *See* 42 U.S.C. § 1988(c)."), *aff'd sub nom. Dominguez v.*

*Pina*, No. 23-15554, 2024 WL 2103271 (9th Cir. May 10, 2024).  However, defendants have

presented no authority suggesting that attorneys in actions brought pursuant to 42 U.S.C. § 1983

are prohibited from recovering for attorney hours spent working on attorney tasks related to

presentation of experts and that courts should eliminate or reduce any such attorney hours.  Even

further, the authority that defendants rely on to support this contention is both inapposite and has

been abrogated by the Ninth Circuit.  *See Rock River Commc'ns, Inc. v. Universal Music Grp*.,

276 F.R.D. 633, 637 (C.D. Cal. 2011) (holding that the deposing party was not required to pay for

expert witness deposition preparation fees), *abrogated by Miller v. Sawant*, 114 F.4th 1071 (9th

Cir. 2024).  Accordingly, the court declines to reduce any of plaintiffs' attorneys' billed hours

based on defendants' misguided argument regarding plaintiffs' inability to recover expert witness

fees.

          e.     *Time Reviewing Medical Records*

        Next, defendants argue that attorney Carrazco's and attorney Henderson's hours spent

reviewing medical records should be disallowed because these attorneys did not question any

medical witnesses at the trials in this case.  (Doc. No. 273 at 24.)  In reply, plaintiffs argue that

this time spent was necessary because attorneys Henderson and Carrazco took and defended the

expert depositions and prepared the medical aspect of this case for trial.  (Doc. No. 281 at 16.)

        Defendants have not pointed the court to the specific entries that they challenge with this

argument, nor do they provide a sum of the hours attributable to each timekeeper that they wish

the court to disallow.  Regardless, the court is also not compelled by defendants' argument, which

lacks supporting authority, that simply because attorney Galipo questioned all of the witnesses at

the trials in this case, time spent by other attorney timekeepers reviewing records and preparing

witnesses should be disallowed.  Accordingly, the court rejects defendants' request to reduce the

hours billed by attorneys Henderson and Carrazco on this ground.

          f.     *Conferences*

        Defendants also argue that plaintiffs' attorneys' billed hours should be reduced due to

excessive amounts of intra-office conferencing.  (Doc. No. 273 at 24.)  Defendants' auditor

purports to have identified that attorney Holm billed 285 hours for conferencing, attorney

1   Carrazco billed 142.15 hours for conferencing, attorney Henderson billed 374.8 hours for

2   conferencing, and attorney Guizar billed 11.7 hours for conferencing.  (*Id*. at 24–25.)  In reply,

3   plaintiffs argue that the nature of this case required a great deal of communicating to bring the

4   case to trial, and they also argue that many of the time entries that defendants identify describe

5   tasks performed by plaintiffs' attorneys that did not involve communications between counsel.

6   (Doc. No. 281 at 18–19.)

7          The court at first blush was concerned that this large number of hours, which defendants

8   contend are attributed solely to conferences, may be excessive.  However, upon reviewing the

9   billing entries objected to by defendants, the court agrees with the position taken by plaintiffs in

10  reply and finds that the majority of the objected to entries do not relate to intra-office

11  conferencing, but rather to more substantive tasks such as drafting documents and pleadings,

12  conducting legal research, and appearing at hearings, or communications with opposing counsel

13  and the court.  (Doc. No. 273-2 at 398–455.)

14         Nonetheless, the court has reviewed the objected to entries and concludes that 50.7 hours

15  of attorney Holm's billed time was excessive since it is attributed on the billing records merely to

16  conferencing with respect to "strategy" or "the case" with no further explanation.  (*See* Doc. No.

17  273-2 at 201–06).  The court also finds that 7.2 hours of attorney Guizar's time, 23.5 hours of

18  attorney Carrazco's time, 25.4 hours of attorney Kent Henderson's time, and 1.3 hours of attorney

19  Le's time was excessive since it is attributed on the billing records to various meetings with no

20  specificity.  (*Id*. at 417–57) (billing time to "partner weekly review to discuss case" or

21  "partnership meeting regarding client" and the like).  Accordingly, the court will deduct these

22  hours as excessive.  *See Hall*, 2014 WL 1286001, at *13 (removing 8.6 hours of attorney time as

23  unreasonable "since it is attributed on the billing records merely to conferencing with one another

24  with respect to 'status,' 'strategy,' 'trial preparation,' or the like with no further explanation").

25              g.    *Secretarial Tasks*

26         Defendants contest various time entries in connection with plaintiffs' pending motion as

27  relating to purely clerical work.  (Doc. No. 273 at 25–26.)  Defendants argue that purely clerical

28  tasks are generally not recoverable and should instead be subsumed in normal overhead costs.

1    (*Id.*)  In response, plaintiffs argue that not all of defendants' identified entries relate to purely

2    clerical work, because tasks such as drafting discovery correspondence, preparing deposition

3    notices, and reviewing and organizing case files is compensable attorney time.  (Doc. No. 281 at

4    19.)

5            The court agrees that clerical and secretarial tasks are not recoverable.  *See, e.g., Missouri*

6    *v. Jenkins ex re. Agyei*, 491 U.S. 274, 288, n. 10 (1989) ("[P]urely clerical or secretarial tasks

7    should not be billed at a paralegal rate . . . ."); *Neil v. Comm'r of Soc. Sec.*, 495 F. App'x 845, 847

8    (9th Cir. 2012) (holding that "the district court did not abuse its discretion in declining to award

9    [ ] attorney's fees for purely clerical tasks"); *Nadarajah*, 569 F.3d at 921 (holding that clerical

10   tasks "should have been subsumed in firm overhead rather than billed at paralegal rates"); *Zelaya*,

11   2024 WL 3183882, at *5 ("Purely clerical or secretarial tasks are not compensable.").  "However,

12   it is appropriate to distinguish between non-legal, 'purely clerical' work, which is not

13   compensable, and substantive legal work, which may be."  *Zelaya*, 2024 WL 3183882, at *5

14   (citing *Nadarajah*, 569 F.3d at 921).

15           The court has reviewed the time entries that defendants' auditor Schratz has identified as

16   clerical and finds that while some entries reflect tasks considered purely clerical in nature, other

17   entries reflect compensable time.  (Doc. No. 273-2 at 284–337.)  For instance, time spent

18   searching through discovery and drafting various notices, such as notices for depositions, for

19   continuances, and for the posting of jury fees, are entries reflecting non-clerical tasks.  *See*

20   *French*, 2022 WL 2189649, at *20 (noting that preparing deposition notices and reviewing case

21   files are not purely clerical tasks).  Accordingly, the court disagrees that all of Mr. Schratz's

22   identified entries are for purely clerical work.  Nonetheless, the court but will reduce the time

23   billed for purely clerical work as follows:  Mr. Gallegos' time will be reduced by 0.5 hours, Ms.

24   Gomez's hours will be reduced by 69.5 hours and therefore eliminated, Ms. Arraiga's hours will

25   be reduced by 59.2 hours, Ms. Laurel's hours will be reduced by 7.75 hours, and Ms. De Leon's

26   /////

27   /////

28   /////

28

1  hours will be reduced by 16 hours and therefore eliminated.[7]  (*See* Doc. Nos. 273-2, 263-31, 263-

2  33.)

3              h.    *Travel Time*

4        As to travel time, defendants first object to fees for travel time for "three attorneys and

5  two law clerks to travel to Sacramento for trial" as unreasonable.  (Doc. No. 273 at 26.)

6  However, defendants do not point the court to the line items that this challenge relates to.  The

7  court has reviewed Mr. Schratz's declaration and finds that he also does not identify or discuss

8  travel-related line items or provide insight as to which law clerks/legal assistants have billed

9  travel hours that defendants intend to challenge, how many hours have been billed for travel, and

10 when or as to which trial the challenged travel took place.  The court raised this issue to

11 defendants at the hearing on the pending motion and defendants' counsel was unable to provide

12 clarification at that time.  Moreover, the letter that defendants submitted to the court following the

13 hearing also contains no such clarification.  Accordingly, the court rejects this challenge as too

14 unspecific to be evaluated.

15       Next, defendants challenge attorney Carrazco's three-hour entry for driving Hurtado to a

16 medical evaluation with Dr. Jacobs and twelve hours of travel time for Hurtado to meet with Dr.

17 Wobrock.  (Doc. No. 273 at 26–27.)  Plaintiffs argue that this travel time was necessary to the

18 success of the case because attorney Carrazco's presence was required to address any issues or

19 questions regarding the doctors' consultations with Hurtado.  (Doc. No. 281 at 19.)  However, the

20 court has reviewed the challenged time entries, which simply state "Drove plaintiff to medical

21 psychological evaluation with Dr. Jacobs," "Drove from Tustin to Modesto to meet Dr. Wobrock

22 and family," and "Drove from Modesto to Tustin," and those entries do not reflect that attorney

23 Carrazco then addressed issues and questions or facilitated Mr. Hurtado's meetings with these

24 physicians for the purposes of the representation in this matter.  Accordingly, the court will

25 deduct these fifteen hours from attorney Carrazco's billed hours.  *See Smith v. Gen. Info. Servs.*,

26

27  [7]  Because their billed hours are eliminated in full as clerical, the court does not address in this

28  order the parties' arguments regarding the reasonableness of plaintiffs' proposed hourly rates for
     Ms. Gomez and Ms. De Leon.

1    No. 1:17-cv-00542-DAD-SAB, 2019 WL 2106171, at *6 (E.D. Cal. May 14, 2019) ("Although

2    time spent by an attorney in travel necessary to the representation is recoverable at an attorney's

3    normal hourly rate as discussed above, the court declines to award attorneys' fees for attorney

4    time expended purely to transport plaintiff.").

5         Defendants next challenge attorney Carrazco's travel time to Sacramento for the March

6    2024 trial, arguing that he "billed either five or eight hours" when a flight from Southern

7    California to Sacramento takes at most two hours. (Doc. No. 273 at 27.) The court has reviewed

8    attorney Carrazco's time entry and confirms that he billed five hours for this travel, which the

9    court finds reasonable in light of the time needed to travel to the airport, board, fly, retrieve

10   baggage, and travel to a hotel. Defendants also challenge the timing of attorney Henderson's and

11   attorney Carrazco's travel to the March 2024 trial, noting that they traveled on March 6, 2024,

12   when the trial did not begin until March 11, 2024. (Doc. No. 273 at 27.) Defendants have

13   provided no authority supporting their seeming contention that travel time should be eliminated

14   unless expended immediately prior to the commencement of a trial, and the court is unpersuaded

15   that is the case.

16              i.    *Future Care: Ms. Meinhard and Dr. Prager*

17        Defendants argue that plaintiffs' request for fees related to the preparation of witnesses,

18   arguments, or documents concerning future medical care claims should be disallowed as

19   unnecessary, given Mr. Hurtado's death following the first trial in this case which rendered the

20   future medical care evidence moot by the time of the second trial. (Doc. No. 273 at 27.) They

21   identify and specifically object to 0.4 hours billed by attorney Le, 2.4 hours billed by attorney

22   Kent Henderson, and 2.2 hours billed by attorney Carrazco, which reflect entries for time spent

23   scheduling Dr. Prager and Ms. Meinhard to appear as plaintiff witnesses at the retrial of this

24   action. (Doc. No. 287 at 2.) In response, plaintiffs argue that the testimony of Ms. Meinhard and

25   Dr. Prager was necessary to show the pain and suffering and difficulties that Hurtado faced due to

26   his injuries while he was alive. (Doc. No. 281 at 20.) However, because the specific attorney

27   time entries identified by defendants in this regard appear to be for time that was purely clerical in

28   nature, the court will deduct them from the billed hours on that ground.

1       3.      <u>Adjustment to the Lodestar</u>

Applying the analysis set forth above to plaintiffs' application for attorneys' fees, the following timekeepers are entitled to following rates and hours, resulting in a total lodestar of $3,449,892.25.

| Timekeeper | Rate | Hours | Total |
|---|---|---|---|
| Dale K. Galipo | $1300 | 701.49 | $911,937 |
| Hang D. Le | $650 | 91.6 | $59,540 |
| Kent M. Henderson | $875 | 1724.91 | $1,509,296.25 |
| Angel Carrazco, Jr. | $750 | 827.25 | $620,437.50 |
| Humberto Guizar | $875 | 33.5 | $29,312.50 |
| Christopher L. Holm | $600 | 408.69 | $245,214 |
| Nathan Henderson | $200 | 317.7 | $63,540 |
| Antonio Gallegos | $175 | 50.6 | $8,855 |
| Ely Arraiga | $200 | 6.6 | $1,320 |
| Santiago Laurel | $220 | 2 | $440 |
| **Grand Total:** | | | $3,449,892.25 |

Plaintiffs seek a 50% enhancement to the lodestar, arguing that an enhancement is justified due to the thousands of hours of uncompensated work plaintiffs' counsel poured into this case over six years, and the fact that they continued to tirelessly work advocating for plaintiffs despite the significant reduction in the value of the case by the time of the second trial after Mr. Hurtado's untimely death. (Doc. No. 263 at 28–29.) Defendants argue that upward adjustment to the lodestar is not warranted, and instead, the court should adjust the lodestar down 50% due to plaintiffs' limited success. (Doc. No. 273 at 28–30.)

As observed at the outset, the lodestar figure arrived at above is presumptively reasonable. *Dague*, 505 U.S. at 562. "Any adjustments to the lodestar amount must be carefully tailored" and

1    based only on the limited factors relevant to the reasonableness determination and "only to the

2    extent a factor has not been subsumed within the lodestar calculation" itself. *Schmidt v. City of*

3    *Modesto*, No. 1:17-cv-01411-DAD-MJS, 2018 WL 6593362, at *2 (E.D. Cal. Dec. 14, 2018)

4    (citing *Camacho*, 523 F.3d at 982). Those factors include: the time and labor required, the

5    novelty and difficulty of the questions involved, the skill requisite to perform the legal service

6    properly, the preclusion of other employment by the attorney due to acceptance of the case, the

7    customary fee, time limitations imposed by the client or the circumstances, the amount involved

8    and the results obtained, the experience, reputation, and ability of the attorneys, the

9    'undesirability' of the case, the nature and length of the professional relationship with the client,

10   and awards in similar cases. *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975)

11   (*abrogated on other grounds by City of Burlington*, 505 U.S. 557); *see also Craig*, 2019 WL

12   12378974, at *6 (considering factors such as "the amount involved and the results obtained, the

13   nature and length of the professional relationship with the client, and awards in similar cases" and

14   noting that "[t]he contingency nature of a fee is not considered as a factor bearing on the amount

15   of attorneys' fees under federal law").

16        An enhancement to the lodestar may be awarded in "rare" and "exceptional"

17   circumstances. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 543 (2010). "[A]n applicant

18   seeking an enhancement must produce 'specific evidence' supporting the award." *Id*. (quoting

19   *Blum*, 465 U.S. at 899–900).

20        Plaintiffs argue that such exceptional circumstances exist here because this case was

21   "lengthy and demanding," "the liability and damages issues in this case were complex" and

22   required the retention of numerous experts for which plaintiffs' counsel had to front the costs,

23   "counsel had to spend weeks out of office and hundreds of miles away from home for the first

24   and second trial," and "the value of the case was significantly reduced at the time of the second

25   trial." (Doc. No. 263 at 28–29.) Plaintiffs contend that they are entitled to an enhancement

26   because they continued to work tirelessly on behalf of their clients despite the unanticipated

27   setbacks. (*Id*. at 29.) In opposition, defendants argue that an upward enhancement is not

28   /////

1    warranted because Mr. Hurtado's death was completely unrelated to the incident in this case, and

2    its effect on the value of the claims is simply a risk of litigation.  (Doc. No. 273 at 29.)

3        Despite the stellar performance rendered by plaintiffs' counsel at trial, the court finds that

4    plaintiffs have not offered sufficient evidence demonstrating that this is a rare case in which an

5    enhancement to the lodestar amount is warranted.  Attorney Carrazco has submitted a declaration

6    in which he explains the lending and interest rates involved in funding this litigation, but

7    plaintiffs do not argue that these costs have any bearing on the several delineated factors that

8    district courts consider in deciding whether to adjust the lodestar.  (Doc. No. 265.)  Further, while

9    Mr. Hurtado's death during the pendency of this litigation was unfortunate and no doubt

10   devastating to his loved ones, the court finds persuasive defendants' arguments that his death was

11   unrelated to the incident in this case and to the factors the court is to consider in evaluating

12   plaintiffs' pending motion.  And while this case was certainly "lengthy and demanding," the time

13   expended by plaintiffs' counsel has already been fully accounted for in calculating the lodestar

14   amount through the hours billed.  Accordingly, the court is not persuaded that any upward

15   adjustment to the lodestar amount is warranted in this case.

16       Alternatively, defendants argue that analysis of the *Kerr* factors, and primarily the "results

17   obtained" factor, warrants a downward adjustment to the lodestar.  (Doc. No. 273 at 13–17, 29–

18   30.)  Plaintiffs have not responded in their reply to defendants' request for a downward

19   adjustment to the lodestar on this basis.  (Doc. No. 281.)

20       As mentioned above, any adjustments to the lodestar amount must be carefully tailored

21   and based only on those relevant factors not already subsumed within the lodestar calculation

22   itself.  *Gonzalez*, 729 F.3d at 1209 & n.11 (citing *Moreno*, 534 F.3d at 1111); *Camacho*, 523 F.3d

23   at 982 (citing *Kerr*, 526 F.2d at 70).  Here, the court has already considered several *Kerr* factors

24   in calculating the lodestar through the determination of the appropriate hours and rates, such as

25   the time and labor this case required, the novelty and difficulty of the questions involved, the skill

26   required, the customary fee, the reputation and ability of the attorneys, and the "undesirability" of

27   the case.  Therefore, the court will consider defendants' arguments made as to the preclusion of

28   employment, time limitations imposed by the client, and results obtained factors.

33

1    As to preclusion of employment, defendants simply argue that attorneys Galipo,

2    Henderson, Carrazco currently have dozens of other cases pending before various courts and thus

3    were not precluded from representing other clients due to their participation in this case.  (Doc.

4    No. 273 at 14–15.)  As to time limitations imposed by the client, defendants argue that there is no

5    evidence to support that any such time limitations were imposed, and this case "was extremely

6    efficiently litigated and tried."  (Doc. No. 273 at 16.)  The court has considered these arguments

7    and finds that neither demonstrates noteworthy circumstances that would support a downward

8    departure from the presumptively reasonable lodestar figure.  However, defendants also urge the

9    court to consider the *Kerr* factor regarding the results obtained and plaintiffs' degree of success.

10   Defendants note that plaintiffs "were not the prevailing party at the March 2024 trial" due to the

11   deadlocked jury, and they note that the jury's award of $1.5 million "was significantly less than

12   the requested award sought by Mr. Galipo in his closing argument or during any settlement

13   discussions."[8]  (Doc. No. 273 at 16.)

14       It has been recognized that "attorney's fees awarded under 42 U.S.C. § 1988 must be

15   adjusted downward where the plaintiff has obtained limited success on his pleaded claims, and

16   the result does not confer a meaningful public benefit."  *McCown v. City of Fontana*, 565 F.3d

17   1097, 1103 (9th Cir. 2009).  In considering an adjustment to the lodestar on this basis, the court

18   must first determine whether "the plaintiff[s] fail[ed] to prevail on claims that were unrelated to

19   the claims on which [they] succeeded[.]"  *Hensley*, 461 F.3d at 434; *see also Capistrano Unified*

20   *Sch. Dist. v. S.W.*, No. 22-55295, 2023 WL 355419, at *2 n.2 (9th Cir. Jan. 23, 2023) ("[H]ours

21   expended on unrelated, unsuccessful claims should not be included in an award of fees[.]")

---

[8]  The parties disagree as to whether and how their settlement discussions should bear on any measure of plaintiffs' degree of success.  Defendants argue that the $1.5 million that the jury awarded is far less than what attorney Galipo sought during the parties' settlement discussions, and in support, attorney Whitmore declares that after Hurtado's death, in August 2024, Mr. Galipo sought $5 million to settle the case.  (Doc. Nos. 273 at 29–30; 273-3 at ¶ 19.)  Plaintiffs, however, argue that their last and final demand to avoid a second trial was $957,000 which suggests that they achieved excellent results as reflected in the jury's verdict at the second trial. (Doc. No. 281 at 15.)  This issue, and other details regarding the positions taken during settlement talks, was discussed with the parties at the hearing on the pending motion.  The court expressed at that time that in light of the unique circumstances of this case, the parties' settlement negotiations, whatever the specifics, should play no role in the court's assessment of the pending fee motion.

34

1  (internal citation omitted).  The Ninth Circuit has acknowledged that "the test for relatedness of

2  claims is not precise" but has offered some guidance to district courts, explaining that "the focus

3  is to be on whether the unsuccessful and successful claims arose out of the same 'course of

4  conduct.'"  *Webb v. Sloan*, 330 F.3d 1158, 1168–69 (9th Cir. 2003); *see also Edmo*, 97 F.4th at

5  1169 (describing related claims as those "with similar legal theories or a 'common core of

6  facts'").

7          In this case, all of the plaintiffs' claims arose from the same common core of facts,

8  namely, the conduct surrounding the shooting of Hurtado by defendant Yepez on March 15, 2018.

9  Under such circumstances, "the court proceeds to the second step, where the most critical factor is

10  the degree of success obtained."  *Edmo*, 97 F.4th at 1169 (internal citation and quotations

11  omitted); *see also Hensley*, 461 U.S. at 44 ("[T]he extent of a plaintiff's success is a crucial factor

12  for determining the proper amount of an award of attorney's fees under 42 U.S. § 1988."); *A.D. v.

13  California Highway Patrol*, 712 F.3d 446, 460 (9th Cir. 2013).  The court recognizes that in

14  determining appropriate attorneys' fees in actions involving only partial success by the prevailing

15  party, the Supreme Court has uniformly rejected application of strict proportionality or simple

16  arithmetic proration.  *City of Riverside*, 477 U.S. at 574 ("We reject the proposition that fee

17  awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights

18  plaintiff actually recovers."); *Hensley*, 461 U.S. at 435 n. 11 ("We agree with the District Court's

19  rejection of a mathematical approach comparing the total number of issues in the case with those

20  actually prevailed upon.") (internal quotation marks omitted); *McCown*, 565 F.3d at 1103 ("[T]he

21  Supreme Court has disavowed a test of strict proportionality."); *see also McGinnis v. Kentucky

22  Fried Chicken of California*, 51 F.3d 805, 808 (9th Cir. 1995) (rejecting arithmetic proration of

23  the lodestar based upon percentage of claims upon which the plaintiff prevailed because that

24  proposition "makes no practical sense").

25          Here, plaintiff Hurtado initially brought more claims than the ones that plaintiffs, his

26  heirs, ultimately prevailed on at trial.  As previously discussed, of the five claims Hurtado

27  brought pursuant to this incident, he stipulated to dismiss his first and fourth claims as predicated

28  upon alleged denial of medical case and his fifth claim seeking relief under the Bane Act.  (Doc.

No. 38 at 6.)  Later, the court granted summary judgment in favor of defendants as to Hurtado's

Fourteenth Amendment claim and negligence claim against defendant CHP for negligent hiring

and supervision, but denied summary judgment as to Hurtado's Fourth Amendment claim, battery

claim, negligence claim against defendant Yepez, and negligence claim against defendant CHP

based on a vicarious liability theory.  (Doc. No. 38.)  Accordingly, plaintiffs' time spent opposing

summary judgment met with mixed success in this case.  At the second trial, the jury found

liability on plaintiffs' excessive use of force claim and state law negligence claim and awarded

$500,000 for past economic damages and $1,000,000 for past non-economic damages.  (Doc. No.

241.)  After the second trial, defendants filed a motion for new trial, or in the alternative,

remittitur.  (Doc. Nos. 256, 262.)  The court denied defendants' motion for a new trial but granted

remittitur, reducing plaintiffs' past economic damages from $500,000 to $23,000 based on the

evidence presented at trial.  (Doc. No. 291.)

        The court first addresses defendants' argument that it should consider the jury's deadlock

at the first trial in determining the success achieved in this case and adjust the lodestar

downwards accordingly.  (Doc. No. 273 at 16; *see also* Doc. No. 165.)  Defendants have provided

no authority to support that a jury's deadlock in an earlier trial should impact the court's analysis

of the overall results obtained or any other *Kerr* factor.  Instead, the court's research demonstrates

that when neither party causes the mistrial, the court should not reduce the prevailing party's fee

award following a subsequent trial.  *Compare Nwauzor v. GEO Grp.*, No. 3:17-cv-05769-RJB,

2021 WL 5907797, at *3 (W.D. Wash. Dec. 14, 2021) ("Neither side caused the mistrial. . . .

The preparation for, and conducting, the first trial cannot reasonably be separated out from the

whole litigation effort that finally led to the resulting jury verdict.  Plaintiffs should be awarded

the time their lawyers spent on the first trial."); *Jones v. George Fox Univ.*, No. 3:19-cv-00005-

JR, 2022 WL 4120783, at *3 (D. Or. Sept. 9, 2022) ("There is nothing to suggest either party was

responsible for the hung jury other than each side provided an excellent presentation of their case

and the jury was simply unable to reach a conclusion as to which party should prevail.

Accordingly, the Court declines to reduce the fee award for time spent on the first trial.") *with*

*Goldstine v. FedEx Freight Inc.*, No. 18-cv-01164-MJP, 2021 WL 952325, at *5 (W.D. Wash.

36

Mar. 12, 2021) (not awarding the plaintiff for "the time spent preparing for the earlier trial that he has identified as necessarily duplicated in the second trial" where "both sides bear responsibility" for the mistrial due to "unreadiness"); *Athena Cosms., Inc. v. AMN Distrib. Inc.*, No. 2:20-cv-05526-SVW-SHK, 2022 WL 20766003, at *4 (C.D. Cal. Nov. 15, 2022) (deducting from the award of fees the time that the plaintiff's lawyer spent during the first trial because her "disruption . . . caused a mistrial"), *aff'd and remanded*, No. 22-cv-56178, 2024 WL 3423712 (9th Cir. July 16, 2024); *Tallman v. CPS Sec.(USA), Inc.*, 23 F. Supp. 3d 1249, 1255–56, 1264 (D. Nev. 2014) (finding that, where the plaintiffs' attorney caused a mistrial by eliciting evidence that had already been ruled inadmissible by the trial court, the plaintiffs could still recover for the time spent preparing for the trial, noting that they had already deleted from their fee request any hours spent at the trial in light of the mistrial), *aff'd*, 655 F. App'x 602 (9th Cir. 2016). Because the mistrial in this case was caused by a hung jury and came about through no fault of counsel on either side, the court will not consider this outcome as a basis upon which to reduce plaintiffs' calculation of attorneys' fees.

However, the court will consider the differences between all the claims and theories pursued throughout the course of this action and those prevailed upon at trial in determining plaintiffs' degree of success. The court finds that because various claims were eliminated before trial, some by stipulation of the parties and importantly, some by the court in its order on summary judgment, plaintiffs necessarily expended time on claims they ultimately did not prevail on. In light of the slightly narrowed nature of the success at trial given the previously eliminated claims, the court concludes that some downward adjustment to the lodestar is warranted. *See Hall*, 2014 WL 1286001 at *17 (finding that a 40% downward adjustment to the lodestar was justified where the plaintiffs' complaint alleged six causes of action against multiple defendants yet they obtained a verdict in their favor on only one claim brought against one defendant and "were awarded a total of merely $12,150"); *Hunter v. Cnty. of Sacramento*, No. 2:06-cv-00457-GEB-EFB, 2013 WL 5597134, at *10 (E.D. Cal. Oct. 11, 2013) (finding that "a 50% downward adjustment to the lodestar was appropriate to reflect the extent of [the] [p]laintiffs' success" where the plaintiffs initially brought multiple claims but only one was tried to the jury and "each

1    [p]laintiff was awarded only $1.00 in nominal damages").  However, given the jury's substantial

2    damages award (considering the unavailability of future damages), even in light of the court's

3    later remittitur, and the meaningful public benefit conferred by the result, the court finds that

4    plaintiffs still achieved a very high overall level of success, and that only a 7.5% reduction to the

5    lodestar is warranted in this case.  *See Donastorg*, 2021 WL 6103545, at *13 (finding a 15%

6    downward adjustment to the lodestar warranted where the plaintiff "prevailed on his Fourth

7    Amendment claim against Defendant Hovey and was awarded $500,000 in damages" but did not

8    prevail on his intentional infliction of emotional distress claim or vicarious liability claim or his

9    claims against the other eleven individual defendants); *Sanchez v. Cnty. of San Bernardino*, No.

10   10-cv-09384-MMM-OP, 2014 WL 12734756, at *2 (C.D. Cal. Mar. 10, 2014) (finding no

11   downward adjustment warranted where the first jury "could not reach a unanimous verdict on

12   plaintiffs' excessive force claim" but the "second jury returned a unanimous verdict in favor of

13   plaintiffs and awarded $200,000.00 in damages" which the court considered to be an excellent

14   result for the plaintiffs); *Morales*, 96 F.3d at 364–54 ("Because [the jury] assessed damages

15   against the defendants, the verdict established a deterrent to the City, its law enforcement officials

16   and others who establish and implement official policies governing arrests of citizens.  Thus, it

17   served the public purpose of helping to protect Morales and persons like him from being

18   subjected to similar unlawful treatment in the future.").

19        The conclusion reached above results in an adjusted lodestar of $3,191,150.33 and

20   attorneys' fees in that amount will be awarded to plaintiffs' attorneys pursuant to 42 U.S.C.

21   § 1988.

22   **B.    Costs**

23        Federal Rule of Civil Procedure 54(d)(1) and Local Rule 292(f) govern the taxation of

24   costs, other than attorney's fees, awarded to the prevailing party in a civil matter.  The Supreme

25   Court has interpreted Rule 54(d)(1) to require that district courts consider only those costs

26   enumerated in 28 U.S.C. § 1920.  *See Crawford Fitting Co. v. J.T. Gibbons, Inc*., 482 U.S. 437,

27   441–42 (1987).  Section 1920 provides that:

28   /////

1    A judge or clerk of the court may tax the following:

2    (1) Fees of the clerk and marshal;

3    (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

4

5    (3) Fees and disbursements for printing and witnesses;

6    (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

7

8    (5) Docket fees under section 1923 of this title;

9    (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

10

11    A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

12    28 U.S.C. § 1920. Federal Rule of Civil Procedure 54(d) establishes a presumption that costs will

13    be awarded to the prevailing party but allows the court discretion to decide otherwise. *Ass'n of*

14    *Mexican-Am. Educators v. State of California*, 231 F.3d 572, 591–92 (9th Cir. 2000). When

15    considering whether to reduce an award of costs, district courts may consider such factors as

16    "(1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in

17    the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial

18    resources, and (5) the economic disparity between parties." *Escriba v. Foster Poultry Farms,*

19    *Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014).

20        As stated previously, defendants have filed objections to plaintiffs' bill of costs. To the

21    extent that defendants' objections rely on their argument that many of plaintiffs' expenses were

22    not "necessary," not "reasonably expended," or were merely for "the convenience of counsel,"

23    the court is not persuaded. From the court's perspective, plaintiffs' counsel had no incentive in

24    this case to spend unnecessarily or amass exorbitant fees simply for their convenience. This is

25    clear because had they done so plaintiffs' counsel would have known they were running the risk

26    of never recovering those costs.

27        The court is persuaded, however, that some of plaintiffs' listed costs are simply not

28    allowable costs under 28 U.S.C. § 1920, such as service charges from litigation support platforms,

1    *San Joaquin Cnty. Emps.' Ret. Ass'n v. Travelers Cas. & Sur. Co. of Am.*, No. 2:18-cv-02042-

2    JAM-CKD, 2020 WL 1874040, at *3 (E.D. Cal. Apr. 15, 2020), interest on a litigation loan, *B.K.*

3    *v. Toms River Bd. of Educ.*, 998 F. Supp. 462, 476–77 (D.N.J. 1998), and expert witness fees,[9]

4    *Jones*, 2011 WL 3584332, at *19.

5              On the other hand, several of the arguments advanced by defendants regarding costs that

6    are not allowable are concerningly misleading.  Defendants argue that "process server costs are

7    not recoverable under 28 U.S.C. § 1920," and they cite an Eighth Circuit case in support of this

8    assertion.  (Doc. No. 288 at 14–19) (citing *Crues v. KFC Corp.*, 768 F.2d 230 (8th Cir. 1985)).

9    Defendants conveniently ignore and do not direct the court towards Ninth Circuit precedent

10   dictating the exact opposite conclusion.  *See Alflex Corp. v. Underwriters Lab'ys, Inc.*, 914 F.2d

11   175, 176–78 (9th Cir. 1990) ("We affirm the district court and hold that the taxing of costs for

12   copies of depositions and private service of process fees was proper. . . .  We [] hold that private

13   process servers' fees are properly taxed as costs.").[10]  Defendants also, in objecting to process

14   server fees, cite the decision in *Coats v. Penrod Drilling Corp.*, 5 F.3d 877 (5th Cir. 1993), for the

15   proposition that "costs to obtain testimony for purely investigative purposes are not recoverable."

16   (Doc. No. 288 at 13–20.)  However, the Fifth Circuit held in *Coats* that the district court did not

17   abuse its discretion in refusing to tax a witness fee for a witness "who attended trial but did not

18   testify as a result of the court's directed verdict."  *Coats*, 5 F.3d at 891 (5th Cir. 1993), *opinion*

---

[9]  Plaintiffs request $618,428.35 for "fees for witnesses" in their bill of costs.  Despite the court's instructions that plaintiffs may only claim costs that are "allowable by law" (Doc. No. 283) and that documentation must be attached to the bill to support all requested costs, (Doc. No. 264 at 1), plaintiffs appear to broadly request the costs charged to them by their retained experts, and the court cannot even reach plaintiffs' sum of $618,428.35 when reviewing plaintiffs' supporting documentation.  Accordingly, this category of costs will be heavily reduced and will account only for the ten days of testimony that can be discerned from the documentation provided by plaintiffs' counsel.  Further, after the court provided its instruction plaintiffs still did not submit any itemized documentation supporting their requests for $8,737.30 for exemplification and $32,945.43 for "other costs."  Accordingly, these costs will not be taxed.

[10]  The court also notes that defendants cite the decision in *Ruff v. Cnty. of Kings*, 700 F. Supp. 2d 1225 (E.D. Cal. 2010) to support their argument that expert witness fees are not taxable costs, without noting that the court in *Ruff* discussed private process servers as well and clearly concluded that in the Ninth Circuit, fees for the service of subpoenas "by private process servers are taxable as costs."  *Id.* at 1246.

1    *reinstated in part on reh'g*, 61 F.3d 1113 (5th Cir. 1995)).  This holding, however, has little

2    applicability here.

3         Therefore, consistent with the bill that will issue, defendants will be taxed costs in the

4    amount of $30,880.37.

5                                   **CONCLUSION**

6         For the reasons explained above:

7    1.       Plaintiffs' motion for an award of attorneys' fees and costs (Doc. Nos. 263, 264) is

8             GRANTED in part as follows;

9             a.      The court awards 3,191,150.33 to plaintiffs in attorneys' fees; and

10            b.      The court awards $30,880.37 to plaintiffs in costs; and

11   2.       Defendants are directed to pay plaintiffs through their counsel the amount awarded

12            above.

13        IT IS SO ORDERED.

14   Dated:   **April 18, 2025**                   _____

15                                                 DALE A. DROZD
                                                   UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28